UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 08 CR 846 |
| | ) | |
| JON BURGE | ) | Judge Lefkow |

**NOTICE OF MOTION**

TO:    Richard M. Beuke       William G. Gamboney, Jr    Marc W. Martin
        53 W. Jackson, Ste. 1410    216 South Marion Street     53 W. Jackson, Suite 1420
        Chicago, IL  60604            Oak Park, IL 60302          Chicago, IL 60604

      **PLEASE TAKE NOTICE** that on Friday, January 16, 2009, pursuant to the briefing schedule previously set by the Court, the undersigned filed with the Clerk, U.S. District Court, 219 S. Dearborn, Chicago, the "Government's Motion *in Limine* to Admit Former Testimony of Deceased Witness under Rule 804(b)(1)."  A copy is served upon you herewith.

               Respectfully submitted,

               PATRICK J. FITZGERALD
               United States Attorney

       By:     /s Jeffrey H. Cramer
               Jeffrey H. Cramer
               Barry A. Miller
               Assistant United States Attorneys

               BETSY BIFFL
               Trial Attorney, Criminal Section,
               Civil Rights Division

               219 South Dearborn Street, 5th Floor
               Chicago, Illinois  60604
               (312) 353-5300

**Certificate of Service**

      The undersigned Assistant U.S. Attorney hereby certifies that the afore-said documents were served on January 16, 2009, in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

               /s Jeffrey H. Cramer

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA ) 
 )
     v. )    No. 08 CR 846
 )
JON BURGE )    Judge Lefkow

### GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT FORMER TESTIMONY OF DECEASED WITNESS UNDER RULE 804(b)(1)

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, U. S. Attorney for the Northern District of Illinois, moves *in limine* under Federal Rule of Evidence 804(b)(1) to admit former testimony of Andrew Wilson.

Wilson, now deceased, was convicted of murder. He testified four times in cases where Jon Burge was a defendant (and an additional time in a hearing on a motion to suppress). Wilson testified under direct and cross-examination that Burge tortured him, and that Burge knew of abuse by others under Burge's command. Wilson testified that he was hit, kicked, electrocuted, and burned while in Burge's custody. Wilson's injuries are corroborated by witnesses and photos.

## I. PROCEDURAL BACKGROUND OF THIS CASE.

A.    History of Charges of Torture.

There have been a series of allegations of torture against detectives who worked under the command of defendant, a former Chicago police commander who supervised detectives at three commands (Area Two, Area Three, and the Bomb & Arson Squad) in the 1980's and early 1990's. These charges have been raised in motions to suppress and trials in criminal cases, in post-conviction proceedings in state and federal courts, and in civil lawsuits by alleged victims.[1]

---

[1]    Cases discussing the allegations include *Hobley v. Burge*, 433 F.3d 946, 947 (7th Cir. 2006); *Hinton v. Uchtman*, 395 F.3d 810, 812-15 (7th Cir. 2005); and *People v. Patterson*, 192 Ill. 2d 93, 735 N.E.2d 616, 625-33 (2000).

B.     The *Hobley* Case.

Burge has been sued in several cases in state and federal courts.  In one case,  *Hobley v. Burge*, No. 03 C 3678 (N.D. Ill.), Madison Hobley charged in his complaint (Dkt#1) that he was wrongly convicted due to police misconduct.  Hobley alleged that officers tortured him by beatings and suffocation with a bag (¶17).  He also alleged that Burge had participated in a cover-up (¶27), and that Burge led a team that engaged in a pattern and practice of torture.  (¶¶32-33)

The Indictment in this case alleges that Burge filed false answers to interrogatories in *Hobley*.  Burge answered two sets of interrogatories in November 2003 directed at his participation in and/or knowledge of a pattern of torture at Area Two.[2]  In the first set of answers, Burge was asked:

> whether you have ever used methods, procedures or techniques involving any form of verbal or physical coercion of suspects while in detention or during interrogation, such as deprivation of sleep, quiet, food, drink, bathroom facilities, or contact with legal counsel and/or family members; the use of verbal and/or physical threats or intimidation, physical beatings, or hangings; the use of racial slurs or profanity; the use of physical restraints, such as handcuffs; the use of photographs or polygraph testing; and the use of physical objects to inflict pain, suffering or fear, such as firearms, telephone books, typewriter covers, radiators, or machines that deliver an electric shock.

On or about Nov. 12, 2003 Burge answered, in relevant part:

> *I have never used any techniques set forth above as a means of improper coercion of suspects while in detention or during interrogation.*

Burge was also asked whether he was:

> aware of any Chicago Police Officer, including but not limited to officers under your command, ever using methods, procedures or techniques involving any form of verbal or physical coercion of suspects while in detention or during interrogation, such as deprivation of sleep, quiet, food, drink, bathroom facilities, or contact with

---

[2]    Burge's participation in and/or knowledge of other instances of torture was material, *inter alia*, to Burge's own potential liability to Hobley, and to establishing the potential liability of the City.

legal counsel and/or family members; the use of verbal and/or physical threats or intimidation, physical beatings, or hanging; the use of racial slurs or profanity; the use of physical restraints, such as handcuffs, the use of photographs or polygraph testing; and the use of physical objects to inflict pain, suffering or fear, such as firearms, telephone books, typewriter covers, radiators, or machines that deliver an electric shock.

Burge answered, in relevant part, "*I am not aware of any.*"

In the second set of interrogatories, Burge was asked:

Is the manner in which Madison Hobley claims he was physically abused and/or tortured as described in Plaintiffs Complaint (including, for example, the allegation of "bagging" with a typewriter cover) consistent with any other examples of physical abuse and/or torture on the part of Chicago Police officers at Area 2 which you observed or have knowledge of?

Burge signed his response on or about Nov. 25, 2008, and answered:

ANSWER   *I have not observed nor do I have knowledge of any other examples of physical abuse and/or torture on the part of Chicago Police officers at Area 2.*

C.    The Current Criminal Charges Against Burge.

Burge was indicted on Oct. 16, 2008, and charged with one count of perjury and two counts of obstruction of justice in connection with the answers to interrogatories in *Hobley*.  Count 1 charged Burge with obstruction for his answer on Nov. 12, 2003, because Burge had in fact partici-pated in physical coercion of suspects while they were in detention and/or were being interrogated, and was aware of the abuse or torture of people in custody.  (Count 1, ¶8).  Count 2 charged that Burge committed perjury by signing the second set of interrogatories, because he had observed, participated in, and knew of abuse and torture at Area Two, including suffocation by bagging. (Count 2, ¶3).  Count 3 charged that the conduct charged in Count 2 also constituted obstruction.

## II. ANDREW WILSON TESTIMONY.

A.      Procedural History of the Andrew Wilson Cases.

Andrew Wilson testified five times to acts of torture and abuse by Burge and other officers.

1.      The Criminal Case.

Andrew Wilson and his brother Jackie were arrested on Feb. 14, 1982 for killing Chicago police officers William Fahey and Richard O'Brien.  Andrew Wilson moved to suppress his confession, and testified at the suppression hearing that he had been tortured. William Kunkle, now a Cook County circuit judge, and then a supervisor in the State's Attorney's Office, was one of the prosecutors on the case.  The motion to suppress was denied.

Andrew, the shooter, was convicted and sentenced to death.  The Illinois Supreme Court reversed his conviction and held that the statement provided to Chicago detectives admitting to the murder should have been suppressed based upon the state's inability to explain Wilson's injuries, which were suffered while he was in police custody.  *People v. Wilson*, 116 Ill. 2d 29, 506 N.E.2d 571 (1987).  Wilson was retried, convicted, and sentenced to life in prison.  That conviction was affirmed.  *People v. Wilson*,  254 Ill. App. 3d 1020, 626 N.E.2d 1282 (1st Dist. 1993).[3]

2.      The Federal Civil Trials.

Andrew Wilson sued the City of Chicago, Burge, and detectives John Yucaitis and Patrick O'Hara (both now deceased) for compensatory and punitive damages based upon the injuries and

---

[3]      Jackie also alleged that he was beaten at Area 2.  He was convicted with Andrew.  Jackie's conviction was reversed, but his statement was not suppressed.  *People v. Wilson*, 161 Ill. App. 3d 995, 515 N.E.2d 812 (1st Dist. 1987).  After a retrial, Jackie was re-convicted and sentenced to life. *People v. Wilson*, 257 Ill. App. 3d 670, 628 N.E.2d 472 (1st Dist. 1993).

abuse he sustained while in custody.  (No. 86 C 2360.)  Wilson specifically charged Burge with tor-

turing and abusing him while in custody.  Burge denied that any torture or physical abuse occurred.[4]

There were a pair of civil trials before Judge Duff.  William Kunkle, the Assistant State's

Attorney who had prosecuted Andrew and Jackie Wilson before going into private practice, repre-

sented Burge in both trials.  The first ended in a hung jury; the second ended with a verdict for the

defendants. The Seventh Circuit reversed in part as to Burge and the other individual defendants.

*Wilson v. City of Chicago*, 6 F.3d 1233 (7th Cir. 1993).

3. The Police Board Proceedings.

After the verdict in the second civil trial, CPD's Office of Professional Standards "reopened"

the investigation into the conduct of Burge, and Burge was charged with, *inter alia*, injuring and

abusing Andrew Wilson while he was in custody, and being aware of his abuse by others.  In Febru-

ary-March 1992, the Police Board, acting via a hearing officer as an administrative agency in a

judicial capacity, held hearings on violations of CPD rules. At those hearings, Burge was again

represented by Kunkle, who presented evidence and cross-examined witnesses, including Wilson.

In February 1993, the Board found Burge guilty of violating eight CPD rules, including the

abuse of Wilson, knowledge that others abused Wilson, and failing to take action to stop the abuse.[5]

Burge was fired.  The Board's firing of Burge was affirmed on administrative review.  *See O'Hara

v. Police Bd.*, 276 Ill. App. 3d 1117, 697 N.E.2d 13 (1st Dist. 1995)(unpublished order).[6]

---

[4]     Copies of the First Amended Complaint and the Amended Answer in the *Wilson* civil case are
attached as Exhibits A and B hereto.

[5]     *See Wilson v. City of Chicago*, 900 F. Supp. 1015, 1019-20 (N.D. Ill. 1995).

[6]     Copies of the Police Board charges, the findings of the Police Board, the opinion of the Circuit Court
affirming the Police Board, and the Appellate Court's order are attached as Exhibits C, D, E, and F hereto.

4.     Application of Collateral Estoppel in the Federal Civil Case.

Based on the Police Board's decision, Judge Gettleman applied collateral estoppel and entered judgment for Wilson in the civil case, which had been remanded by the Seventh Circuit following the second trial. *Wilson*, 900 F. Supp. at 1028-29. Judge Gettleman found that Burge had an adequate opportunity to litigate the issues. *Id*. at 1025. The Seventh Circuit affirmed the decision. 120 F.3d 681 (7th Cir. 1997).[7]

B.     Wilson's Testimony.

Wilson testified and was cross-examined at the motion to suppress, at a deposition in the civil case, twice before juries at his civil trials, and once at the Police Board hearing. Wilson's testimony was generally consistent each time he testified about the abuse and torture he endured. We will summarize here testimony that the government believes is relevant to the current criminal charges. The government is willing to work with defense counsel to identify and stipulate to the portions of transcript from all of Wilson's prior testimony that should be admitted (or stipulations in lieu of testimony), including any proper impeachment.[8]

1.     Summary of Andrew Wilson's Testimony at

---

[7]     A Special Prosecutor, the late Illinois Appellate Court Judge Edward Egan, was appointed by the Presiding Judge of the Cook County Circuit Court in 2001 to investigate the allegations of torture and abuse by police officers under the command of Burge and Burge himself at Areas 2 and 3. The Special Prosecutor summarized his findings in a 300 page report. (The Report is not attached, but it can be provided to the Court, on request.) The Special Prosecutor concluded that Wilson's testimony was credible, despite minor inconsistencies. The report noted the additional evidence which corroborated Wilson's testimony. No prosecution resulted because Justice Egan decided the matter was outside the state statute of limitations.

[8]     We have not attached the transcripts, which are extensive. We have cited to Wilson's testimony at the second federal trial (designated "Tr.") and the Police Board hearing ("Hrg."). Also, Wilson's Police Board testimony is summarized in the Board's Findings and Decision, attached as Ex. D, at pp. 18-21. If requested, the Government can provide the transcripts to the court. (Burge's counsel has received copies.)

the Second Civil Trial and Police Board Hearing.

When Wilson was arrested in a residence on Feb. 14, 1982, the arresting officers included then-Lieutenant Burge. During the arrest, Wilson was thrown to the floor. While he was on the floor, Burge walked on Wilson's neck. Burge told other officers not to do anything at the residence because they would get Wilson at the station. Tr. 2927; Hrg. 71-72 and 407-09.

Wilson was taken to an interview room in the Detective Division at CPD's Area 2. Wilson was beaten by several detectives who began kicking, slapping, and punching him. The detectives put a plastic bag over his head and burned his arm with a cigarette. Yucaitis was present, but Burge and O'Hara were not. Wilson's right eye was injured during this beating. Tr. 2931-35; Hrg. 78-90.

Wilson testified that Burge later came into the room and told the officers that "if it had been him, he would not have messed up [Wilson's] face." Burge ordered the officers to take Wilson out of the room. They took him to a different room on the same floor where his right hand was handcuffed to a ring on the wall, near a hot radiator. Burge came into the room and told Wilson to confess because Burge's reputation was at stake. Burge then left. Tr. 2936-47 and 2968; Hrg. 90-93 and 100.

Yucaitis then came into the room with an unnamed officer. Yucaitis took out a black box from a brown bag. The box had a crank on the outside and two wires with alligator clips attached. Yucaitis attached one of the clips to Wilson's ear and one to his left nostril. He received a shock when Yucaitis cranked the box. In response to the shock, Wilson kneed Yucaitis. Yucaitis then punched Wilson in the mouth. Yucaitis cranked the box again and Wilson shouted. Yucaitis left when someone knocked at the door. Wilson testified that O'Hara took him out of the room to see an Assistant State's Attorney (ASA). The detectives later returned Wilson to the room from which they had taken him. Tr. 2947-59; Hrg. 101-114.

Wilson said Burge came into the room some time later with Detective Fred Hill. Burge said to Wilson that it was "fun time." Burge then took out the black box from the brown bag, attached clamps to Wilson's ears, and began cranking. This caused Wilson to grind his teeth, scream, and rub the clamps off. Burge and Hill secured Wilson's hands on either side of the radiator in the room so that the radiator was under his chin. Burge placed the clamps on his fingers and began cranking again, causing Wilson to scream. When Wilson was being shocked, he was on his knees stretched across the radiator, and Hill kicked him in the back. As a result of Burge and Hill forcing Wilson over the radiator, Wilson suffered visible burn marks over his torso. Tr.2961-66 and 2968-69; Hrg.117-33 and 142-43.

Next, Burge took out a device that looked like a curling iron. The device had a cord with wires sticking out. Burge rubbed the device between Wilson's legs, and Wilson felt a tingling sensation. Burge stuck the device into Wilson's back. The resulting shock was stronger than from the crank device and forced Wilson into a window. Burge took the devices out of the room. Wilson was left alone until he was taken to a lineup at CPD's Area 1. Tr. 2966-69; Hrg. 133-146.

At Area 1, Burge placed a gun in Wilson's mouth and repeatedly cocked it. Wilson agreed to make a statement in order to keep from being shocked again. Detectives O'Hara and Thomas McKenna drove Wilson back to Area 2 after the lineup. O'Hara and McKenna returned Wilson to the same interview room at Area 2 in which he had originally been placed. Burge told Wilson to confess to the murders or Burge was going to do what he did earlier. Tr. 2972. The ASA who had previously met Wilson came into the room about 6:00 p.m. with O'Hara and a court reporter, and Wilson confessed. Tr. 2969-73; Hrg. 148-151 and 157-62.

Wilson was taken from Area 2 to the lockup at 11th and State by two uniformed officers. The lockup personnel refused to accept Wilson because of his physical condition. The two officers then

-8-

took Wilson to a hospital where he was examined and treated. Wilson was later examined by several medical professionals at the Cook County Jail. Tr. 2980-82 and 2992-93; Hrg. 180-88.

2. <u>Prior Cross-examination of Wilson by Burge's Counsel</u>.

As noted above, Burge's lawyer in the two civil trials and the Police Board hearing was William Kunkle, who had prosecuted the Wilsons. Kunkle cross-examined Wilson on four separate occasions on precisely the same facts and issues Burge will face at his criminal trial.

Kunkle's cross-examination of Wilson extended over 370 transcript pages at a civil deposition, over 225 pages at the first civil trial, over 200 pages at the second trial, and over 200 pages at the Police Board hearing. The extensive cross-examinations included certain inconsistencies in Wilson's story and matters concerning his character. Wilson was generally consistent on the nature of his injuries and the fact that Burge (with others) had inflicted them.[9]

3. <u>Unavailability of Andrew Wilson</u>.

Andrew Wilson died while in prison in 2007.

4. <u>Corroboration of Andrew Wilson's testimony</u>.

The government has obtained copies of the lineup and post-arrest photos of Andrew Wilson. These photos show, *inter alia*, parallel burn marks on his chest consistent with radiator burns, marks consistent with burns on his ears, and wounds to his face and head consistent with a severe beating.

Several medical witnesses have testified in prior proceedings that they saw Wilson's injuries shortly after his release from police custody, and that the injuries were consistent with Wilson's claims and inconsistent with other explanations. Indeed, the supervising doctor at the Cermak

---

[9] Wilson took the Fifth Amendment as to certain questions about the Fahey and O'Brien murders. Kunkle elicited from Wilson that Wilson was mistaken when he testified as to the room in Area 1 where Burge placed a gun in his mouth. Tr. at 3275-766; Hrg 456-58. Kunkle also elicited a contradiction as to whether it was Burge or Yucaitis who told Wilson that Wilson was going to give a statement. Tr. 3243-44.

Hospital at Cook County Jail, Dr. John Raba, promptly wrote the Chicago Superintendent of Police after examining Wilson, to request an investigation of the apparent abuse of Wilson while in police custody.[10]/  Dr. Raba and other witnesses who participated in the examination and/or treatment of Wilson have been located and are available to testify at trial.[11]/

In his pleadings in the federal civil case, before the Police Board and in prior testimony, defendant Burge has acknowledged participating in the arrest and interrogation of Wilson, but he has consistently denied that any torture or abuse occurred.  *See* Ex. B; Ex. D at 4-11; Ind't ¶7 (*quoting* interrogatories from *Hobley* case);   The government anticipates that Burge's position at the trial in this matter will be identical to his position in all prior proceedings.

### III.  WILSON'S PRIOR TESTIMONY SHOULD BE ADMITTED BECAUSE IT FALLS WITHIN AN EXCEPTION TO THE HEARSAY RULE.

Under Federal Rule of Evidence 804(b)(1), prior testimony of an unavailable witness is not excluded by the hearsay rule under certain circumstances.

A.    The Rule.

Under the language of Rule 804, Wilson's prior testimony is admissible.

(1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, *if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by* direct, *cross*, or redirect examination.

Fed. R. Evid. 804(b)(1) (emphasis added).  The advisory committee note explains that "[i]f the party against whom the testimony is now offered is the one against whom the testimony was offered

---

[10]/      No contemporaneous investigation occurred.

[11]/      The government may also seek to introduce other witnesses who will have testimony relevant to whether Wilson was tortured and abused while at Area Two.

previously, no unfairness is apparent in requiring him to accept his own prior conduct of

cross-examination . . . ." Fed. R. Evid. 804 Adv. Comm. Note (1972 Prop. Rules).

Rule 804(a)(4) states that a deceased witness is unavailable for purposes of the rule.[12]

**B.      Wilson's Prior Testimony Meets the Requirements of the Rule, Since Burge's
          Lawyer Had the Same Motive to Cross-Examine Wilson, and the Issues Were the Same.**

Andrew Wilson's testimony should be admitted under Fed. R. Evid. 804(b)(1) because Jon

Burge and his experienced lawyer had a similar, if not identical, motive in the prior proceedings to

develop, contradict, and impeach Wilson's testimony through cross-examination.

**1.      The Rule Focuses on whether a "Similar Motive" Exists.**

Only when a party has a "similar motive to develop the testimony by direct, cross, or redirect

examination as it did when the testimony was originally given" will a witness' former testimony be

admitted under Rule 804(b)(1). *United States v. Reed,* 227 F.3d 763, 768 (7th Cir. 2000). *See also

United States v. Feldman,* 761 F.2d 380, 387 (7th Cir. 1985)(a party has to perceive a real need or

incentive to thoroughly cross-examine at the time of the former testimony). Thus, a court focuses

on the motives underlying the cross-examination in the former testimony in determining its admis-

---

[12]      There are no constitutional concerns with admitting Wilson's testimony. In *Crawford v. Washington,*
541 U.S. 36, 68 (2004), the Supreme Court explained that the Confrontation Clause can bar the admission
of a witness' out-of-court "testimonial statement." *Crawford* itself, however, said that an out-of-court testimo-
nial statement is admissible if the witness is unavailable at trial and the defendant had a prior opportunity to
cross-examine the witness. 541 U.S. at 57. Thus, since *Crawford,* courts have permitted the use of prior
testimony of an unavailable declarant under Rule 804(b)(1). *See, e.g., United States v. Avants,* 367 F.3d 433,
445 (5th Cir. 2004)(introduction of testimony from 1966 state preliminary hearing properly admitted in 2003
federal trial, since motive to cross-examine and discredit witness was similar); *United States v. Hargrove,*
2006 WL 2522524, at *5 (D. Kan. April 10, 2006)(introduction of unavailable witness' testimony from
preliminary hearing does not violate Clause because defendant had opportunity and motive to cross-examine).

Thus, while *Crawford* changed the law by prohibiting the introduction of prior, out-of-court testimo-
nial statements that were not subject to cross-examination, it did not change the law for testimony, like
Wilson's, that had been subject to cross-examination. *See, e.g., Avants,* 367 F.3d at 445. *See also Lowery
v. Anderson,* 225 F.3d 833, 839-41 (7th Cir. 2000)(Confrontation Clause satisfied when defendant had a full
and fair opportunity to cross-examine unavailable witness at an earlier proceeding).

sibility under Rule 804(b)(1). *See United States v. McClellan,* 868 F.2d 210, 215 (7th Cir. 1989)(up-holding admission at criminal trial of ex-wife's prior testimony at bankruptcy proceeding). *See generally United States v. Salerno*, 505 U.S. 317 (1992)(discussing similar motive requirement).[13]

In conducting its analysis, the Court should keep in mind that "similar motive does not mean identical motive." *United States v. Miles,* 290 F.3d 1341, 1353 (11th Cir. 2002)(affirming conviction where defense counsel had the same interest in attacking unavailable witness' credibility in each trial). Where the operative facts and legal issues are generally the same, a similar motive exists. *See, e.g., United States v Koon*, 34 F.3d 1416, 1427-28 (9th Cir. 1994)(affirming introduction of prior testimony from state criminal trial), *aff'd in part and rev'd on other grounds*, 518 U.S. 81 (1996).

2.     A Similar Motive Exists Here.

Burge necessarily will pursue a similar strategy in this criminal proceeding as he did in the prior proceedings. In all prior litigation, just as in this case, Burge's defense was that he was not

---

[13]     In *Feldman,* the criminal defendants were parties in a civil case, but had not attended a deposition. The government agency that took the deposition knew the deponent was a cooperating witness, but didn't tell the defendants. Under those unique circumstances, the court held that the difference in the types of proceeding and the government's conduct denied a "meaningful opportunity" for cross-examination. 761 F.2d at 383-84. In analyzing whether the deposition could be admitted against a defendant who had an opportunity for cross-examination but hadn't exercised it, the court used a four-factor analysis, looking to: "(1) the type of proceeding in which the testimony [was] given, (2) trial strategy, (3) the potential penalties or financial stakes, and (4) the number of issues and parties." *See Reed,* 227 F.3d at 768; *Feldman*, 761 F.2d at 385.

The government does not believe that analysis applies to this case, where Burge's counsel extensively cross-examined Wilson, and had a similar motive to do so. Even if the *Feldman* analysis were required, the government believes it is met. The first two factors are discussed in the text. As to the third, Burge had incentive for his lawyer to vigorously defend the civil lawsuit and the Police Board hearing as his job and money were at risk. *See, e.g., Scott v. City of Chicago*, 550 F. Supp. 2d 839, 840 (N.D. Ill. 2008)(Shadur, J.)(City could indemnify for compensatory damages, but not for punitive damages). As to the fourth factor, Burge was the lead individual defendant in both the civil trials and the Police Board hearing, and his counsel took an active role. The main issue in each matter was whether Burge participated in (and knew of) the torture of Andrew Wilson (and others). *Cf. Reed,* 227 F.3d at 768-69 (noting similarity of parties and issues, even when the trials did not involve identical parties). Accordingly, each factor is met.

involved in the torture or physical abuse of suspects, and that he was unaware of the torture or abuse of any suspect by a Chicago police officer. The position of Burge in each proceeding is identical; the trial strategy -- to deny the abuse and discredit Wilson -- is the same.

   3. <u>Burge's Counsel Thoroughly Cross-Examined Wilson</u>.

   Though, only an "opportunity" for cross-examination is required by the Rule, Burge's lawyer cross-examined Wilson four separate times. The cross-examinations extend over 1,000 pages of transcript. Burge had the motive, opportunity, and – through Kunkle – had unusually extensive knowledge and experience in this matter to thoroughly question Wilson at the earlier proceedings.

C. The Fact That Prior Testimony Occurred in Civil and
  <u>Administrative Proceedings Does Not Prevent its Admission Here</u>.

   The fact that the prior testimony was in civil proceedings does not prevent its admission. Courts have permitted the admission in a criminal trial of testimony at prior civil trials where there was a similarity of issues and motives and the opportunity for full cross-examination. For example, in *United States v. Vartanian,* 245 F.3d 609, 613-14 (6th Cir. 2001), a real-estate agent's testimony from an earlier civil trial was admitted in a later criminal trial against the same defendant. The agent died in the interim between the trials. *Id.* at 614. The court noted that the agent's testimony in the civil litigation addressed allegations directly involved in the criminal proceeding. *Id.* The defense argued that the motive of the cross-examination in the civil trial differed from the motive in the criminal trial, but the court viewed the disputed information as a synonymous subject in the trials, and, therefore, held the testimony admissible. *Id. See also, e.g., McClellan,* 868 F.2d at 215 (upholding the admissibility of former testimony at defendant's bankruptcy proceeding bankruptcy fraud prosecution).[14]

---

[14] The defense in *McClellan* argued that the motive of the cross-examination in the civil trial differed from the motive in the criminal trial, but the court viewed the disputed information as similar. *Id.*

Similarly, the Police Board hearing was conducted as a civil trial-type proceeding. Each of these provided Burge with full trial rights, including a complete opportunity to cross-examine Wilson. In fact, Judge Gettleman found that Burge and the other defendants in the proceedings before the Board were represented by counsel of their choice, presented evidence, and called and cross-examined witnesses. *Wilson*, 900 F. Supp at 1025. Judge Gettlemen specifically found that Burge had an "adequate opportunity to litigate" the issues at the Police Board hearing. *Id.*

## IV. CONCLUSION

Just as in prior proceedings in which Wilson testified, this case presents the question of whether Jon Burge knew of and/or participated in the torture of Andrew Wilson. For the foregoing reasons, the Government respectfully requests that the Court allow the testimony of Andrew Wilson to be admitted at trial under Fed. R. Evid. 804(b)(1).

Respectfully submitted,
PATRICK J. FITZGERALD
United States Attorney

By:   /s Jeffrey Cramer
JEFFREY H.CRAMER
BARRY A. MILLER
Assistant United States Attorneys

BETSY BIFFL
Trial Attorney, Criminal Section,
Civil Rights Division

219 S. Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-5300
