## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **No. 08 CR 846** |
| vs. | ) | **Judge Lefkow** |
| | ) | |
| JON BURGE, | ) | |

### DEFENDANT BURGE'S RESPONSE TO GOVERNMENT'S
### MOTION IN LIMINE TO ADMIT TESTIMONY OF
### <u>DECEASED WINTESS UNDER RULE 804(b)(1)</u>

WILLIAM GAMBONEY, JR.
216 S. Marion St.
Oak Park, IL 60302
(708) 445-1994

RICHARD BEUKE
53 W. Jackson Blvd., Suite 1410
Chicago, IL 60604
(312) 427-3050

MARC W. MARTIN
MARC MARTIN, LTD.
53 W. Jackson Blvd., Suite 1420
Chicago, IL 60604
(312) 408-1111
*Attorneys for Defendant Jon Burge*                    February 13, 2009

## TABLE OF CONTENTS

BACKGROUND ................................................................................................1

ARGUMENT ....................................................................................................8

I.       LEGAL BACKDROP................................................................................8

II.      THE GOVERNMENT HAS NOT ESTABLISHED THAT BURGE
         HAD AN OPPORTUNITY AND SIMILAR MOTIVE TO DEVELOP
         WILSON'S TESTIMONY IN THE PRIOR PROCEEDINGS ................10

III.     WILSON'S PRIOR TESTIMONY IS NOT ADMISSIBLE DUE
         TO HIS REPEATED REFUSALS TO ANSWER QUESTIONS
         ON CROSS-EXAMINATION ................................................................15

A.       Legal Responses To Witnesses Who Invoke The Fifth
         Amendment Privilege Against Self-Incrimination On
         Cross-Examination ......................................................................15

B.       Burge Was Denied "The Opportunity … To Develop"
         Wilson's Testimony As A Result Of Wilson's Repeated
         Refusal To Answer Questions On Cross-Examination ................17

IV.      INTRODUCTION OF WILSON'S PRIOR TESTIMONY WOULD
         VIOLATE THE CONFRONTATION CLAUSE ....................................21

V.       RULE 403 CONSIDERATIONS WEIGH IN FAVOR OF NOT
         ADMITTING WILSON'S PRIOR TESTIMONY....................................21

## TABLE OF CASES

*American Automotive Accessories v. Fishman*, 175 F.3d 535 (7th Cir. 1999)....................fn. 3

*Angelo v. Armstrong World Industries, Inc.,* 11 F.3d 957 (10th Cir. 1993)........................fn. 3

*Brown v. United States*, 356 U.S. 148 (1948).................................................................15

*California v. Green*, 399 U.S. 149 (1970)......................................................................22

*Coy v. Iowa*, 487 U.S. 1012 (1988)..............................................................................22

*Crawford v. Washington*, 541 U.S. 36 (2004).................................................................21

*Davis v. Alaska*, 415 U.S. 308 (1974)......................................................................16, 17

*Lawson v. Murray*, 837 F.2d 653 (4th Cir. 1988)...........................................................15

*Maryland v. Craig*, 497 U.S. 836 (1990).......................................................................22

*Ohio v. Roberts*, 448 U.S. 56 (1980)...........................................................................14

*People v. Hobley*, 159 Ill.2d 272, 637 N.E.2d 992 (1994)...................................................7

*People v. Hobley*, 182 Ill.2d 404, 696 N.E.2d 313 (1998)...................................................7

*People v. Hope*, 137 Ill.2d 430, 560 N.E.2d 849 (1990)......................................................1

*People v. Logan*, 224 Ill.App.3d 735, 586 N.E.2d 679 (1991)..............................................2

*People v. Wilson,* 116 Ill.2d 29, 37-38, 506 N.E.2d 571 (1987)...........................................3, 4

*People v. Wilson*, 254 Ill.App.3d 1020, 626 N.E.2d 1282 (1993)......................................1, 2, 4

*United States v. Bartelho,* 129 F.3d 663 (1st Cir. 1997)...............................................12, 13

*United States v. Caputo,* 313 F. Supp.2d 764 (N.D. Ill. 2004)...........................................fn. 2

*United States v. Cardillo*, 316 F.2d 606 (2nd Cir. 1963)..................................................16

*United States v. Carson,* 455 F.3d 336 (D.C. Cir. 2006).....................................................9

*United States v. Castello*, 830 F.2d 99 (7th Cir. 1987)....................................................16

*United States v. Demchak*, 545 F.2d 1029 (5th Cir. 1977)................................................16

iii

*United States v. DiNapoli*, 8 F.3d 909 (2nd Cir. 1993)......................................................9

*United States v. Doddington,* 822 F.2d 818 (8th Cir. 1987).............................................15

*United States v. Feldman*, 761 F.2d 380 (7th Cir. 1985)....................................9, 10, 11, 12, 14

*United States v. Frankenthal,* 582 F.2d 1102 (7th Cir. 1978)...........................................17

*United States v. Henderson*, 337 F.3d 914 (7th Cir. 2003)...............................................17

*United States v. Kaufmann*, 985 F.2d 884 (7th Cir. 1993)...............................................16

*United States v. Lindemann*, 85 F.3d 1232 (7th Cir. 1996)..............................................17

*United States v. Lyons*, 703 F.2d 815 (5th Cir. 1983)......................................................15

*United States v. McClellan*, 868 F.2d 210 (7th Cir. 1989)...............................................14

*United States v. Peterson,* 100 F.3d 7 (2nd Cir. 1996).......................................................9

*United States v. Powell*, 894 F.3d 895 (7th Cir. 1990)......................................................11

*United States v. Salerno*, 505 U.S. 317 (1992)............................................................8, 16

*United States v. Scott*, 267 F.3d 729 (7th Cir. 2001)........................................................17

*United States v. Silverstein*, 732 F.2d 1338 (7th Cir. 1984).........................................15, 16

*United States v. Smith-Baltiher*, 424 F.3d 913 (9th Cir. 2005)........................................15

*United States v. St. Pierre*, 132 F.2d 837 (2nd Cir. 1942)...............................................15

*United States v. Vartanian*, 245 F.3d 609 (6th Cir. 2001)...............................................14

*United States v. Wang*, 964 F.2d 811 (8th Cir. 1992)...................................................11, 21

*United States v. Wilmore*, 381 F.3d 868 (9th Cir. 2004)..........................................17, 18, 21

*United States v. Zapata*, 871 F.2d 616 (7th Cir. 1989)....................................................16

*Varhol v. Nat'l R.R. Passenger Corp*., 909 F.2d 1557 (7th Cir. 1990)...............................20

*Wilson v. City of Chicago*, 6 F.3d 1233 (7th Cir. 1993)..............................................4, 13

iv

*Wilson v. City of Chicago*, 900 F.Supp. 1015 (N.D. Ill. 1995)..............................................4, 7

*Wilson v. City of Chicago*, 120 F.3d 681 (7th Cir. 1997)..........................................................7

*Wisconsin v. Gagnon*, 497 F.2d 1126 (7th Cir. 1974).........................................................15, 16

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **No. 08 CR 846** |
| vs. | ) | **Judge Lefkow** |
| | ) | |
| **JON BURGE,** | ) | |

**DEFENDANT BURGE'S RESPONSE TO GOVERNMENT'S**
**MOTION *IN LIMINE* TO ADMIT TESTIMONY OF**
**<u>DECEASED WINTESS UNDER RULE 804(b)(1)</u>**

**<u>BACKGROUND</u>**

In January 1982, Andrew Wilson ("Wilson"), accompanied by Edgar Hope, murdered a McDonalds security guard with a shotgun. Hope and another man, Alton Logan, were charged and convicted of the murder. Logan was sentenced to life-imprisonment. Logan, however, was innocent of the murder and Wilson knew it. But Wilson did not come forward. A "gleeful" Wilson confessed this murder to his lawyers, who kept the matter secret until after Wilson died. Meanwhile, Logan spent over 26 years in the penitentiary for a crime he did not commit. *60 Minutes* synopsis, Exhibit 1; *Chicago Tribune* article, Exhibit 2.

In early February 1982, Hope was arrested for murdering a Chicago police officer. See *People v. Hope*, 137 Ill.2d 430, 560 N.E.2d 849 (1990). On February 9, 1982, Wilson and others hatched a plan to liberate Hope from the Cook County Jail. *People v. Wilson*, 254 Ill.App.3d 1020, 1027-28, 626 N.E.2d 1282 (1993), Ex. 3. Wilson, armed with a stolen gun and on bond and parole for armed robbery offenses, left the meeting in a vehicle driven by his brother, Jackie. Police Board Findings and Decision ("PBFD") 7, Govt's Motion, Ex. D.

Chicago Police Officers William Fahey and Richard O'Brien stopped the Wilson vehicle. After struggling with Officer Fahey, Wilson obtained Fahey's gun, put it to the back of his head and fired. *Id*. Wilson then fired four shots at Officer O'Brien. Wilson lost his prescription eyeglasses at the scene. The Wilsons stole the officers' service revolvers. Both officers died. *Wilson*, 254 Ill.App.3d at 1024-25.

Defendant, Lieutenant Jon Burge, then the Commanding Officer of the Chicago Police Department's Area 2 Violent Crimes Unit, took charge of the investigation, which was the only case he worked between February 9 and 14, 1982. "This was the most important case Burge had worked on in his career. Burge worked night and day during this time, never went home and had little or no sleep." PBFD 4.

After receiving a tip implicating the Wilson brothers on February 13, 1982, police went to a beauty shop and recovered the slain officers' service revolvers, as well as a sawed-off shotgun. *Wilson*, 254 Ill.App.3d. at 1026. It turned out that the shotgun had been used in the McDonalds slaying. See *People v. Logan*, 224 Ill.App.3d 735, 736-37, 586 N.E.2d 679 (1991).

Around 5:00 a.m. on February 14, 1982, a team of police officers, including Lt. Burge, went to an apartment on Chicago's west-side. The officers encountered Wilson, who admitted he possessed a gun. Officers retrieved a loaded, snub-nosed Colt. 38, with Wilson's fingerprints on it, from a duffel bag near Wilson. *Wilson*, 254 Ill.App.3d at 1026. Deputy Superintendent McCarthy and Sergeant Brannigan grabbed Wilson and threw him to the floor. Lt. Burge placed his knees on Wilson's back and head while Sgt. Brannigan and Deputy Superintendent McCarthy handcuffed him. PBFD 7.

Wilson was transported to Area 2. PBFD 8-9. Around 12:30 p.m., Lt. Burge left Area 2 to attend a press conference at police headquarters. Around 3:15 – 3:30 p.m., Lt. Burge arrived at Area 1 for a lineup involving the Wilsons. *Id*. at 10-11.

Following the lineup, Wilson was returned to Area 2. During the early evening hours of February 14, 1982, Wilson gave a court-reported statement to an Assistant State's Attorney. The court-reporter photographed Wilson. According to State prosecutors, the confession and lineup photographs only depict an injury on Wilson's forehead. *People v. Wilson,* 116 Ill.2d 29, 37-38, 506 N.E.2d 571 (1987), Ex. 4.

Later that evening, two Chicago Police Department wagon-men, Officers Ferro and Mulvaney, transported Wilson to police headquarters. *Id.* at 36. (Wilson has testified that the wagon-men physically abused him. 2/10/92 Police Board Transcript ("PB Tr.") 175-85, Ex. 6.) Wilson was not accepted because of his physical condition. PBFD 12. The officers thereafter took Wilson to a hospital where he refused treatment against medical advice. A doctor at the hospital observed injuries on Wilson's body. *Wilson*, 116 Ill.2d at 36.

Dr. Raba, then the medical director of the Cook County Jail health facility, examined Wilson on the evening of February 15, 1982. Dr. Raba observed injuries on Wilson's right eye, bruises and lacerations on his forehead, and blistering wounds on his face, chest and right leg. *Id*. A public defender caused photographs to be taken of Wilson. PBFD 15.

Charged with capital murder, Andrew Wilson moved to suppress his statement. Wilson testified that Lt. Burge, Detective Yucaitis and other officers physically abused him. *Id*. at 15. The trial court denied the motion. Wilson went to trial, but did not

testify. The jury found Wilson guilty and imposed the death penalty. The Illinois

Supreme Court reversed, finding that the State had failed to prove by clear and

convincing evidence that Wilson's injuries had not produced the confession. *Wilson*, 116

Ill.2d 29, 506 N.E.2d 571.

The State retried Andrew Wilson without offering his court-reported statement.

Again, Wilson did not testify at trial. The jury convicted Wilson, who was sentenced to

natural life imprisonment. The Illinois Appellate Court affirmed the conviction and

sentence. *Wilson*, 254 Ill.App.3d 1020, 626 N.E.2d 1282.

In 1987, Wilson filed a first amended civil complaint in the Northern District of

Illinois, naming the City of Chicago, Lt. Burge, Superintendent Brzeczek, Detectives

McKenna, O'Hara and Yucaitis, and Officers Mulvaney and Ferro as defendants. The

complaint alleged that the defendants violated Wilson's right to due process and

conspired to do so in violation of 42 U.S.C. § 1983, and that the City had perpetrated

unconstitutional practices against murder arrestees. Govt's Motion, Ex. A. The district

court rejected the plaintiff's effort to apply the doctrine of collateral estoppel against the

officers based on the Illinois Supreme Court's *Wilson* decision. See *Wilson v. City of

Chicago*, 900 F.Supp. 1015, 1028 (N.D. Ill. 1995).

In February 1989, an eight-week trial commenced before Judge Duff. See *Wilson

v. City of Chicago*, 6 F.3d 1233 (7th Cir. 1993). Wilson assumed the witness stand. The

jury found in favor of the defendants, "except that the jury could not reach a verdict as to

whether there was a conspiracy to deprive Andrew Wilson of his civil rights and also on a

substantive count against Burge." PBFD 16-17.

4

The civil case was tried a second time before Judge Duff. Wilson again took the witness stand. The government has identified this testimony as potentially relevant here. Govt's Motion 6-9.

At the time of the second civil trial, Wilson's criminal case was still on appeal. Wilson's criminal lawyer stood by Wilson's side during the testimony. *E.g.*, District Court Transcript ("DC Tr.") 3310, Ex. 5.[1] On cross-examination by now-Judge William Kunkle, who also represented Detectives McKenna, O'Hara and Yucaitis, Wilson repeatedly invoked the Fifth Amendment privilege against self-incrimination. See Ex. 5; *infra* § III(b).

The jury exonerated the defendants from personal liability for Wilson's injuries, but found that the police department had a policy of abusing persons charged with shooting police officers and that Wilson's civil rights had been violated. PBFD 17. The jury refused to award Wilson damages. *Id*.

Wilson appealed. The Seventh Circuit reversed on grounds that the details of the Fahey/O'Brien murders not directly affecting credibility should not have been admitted, and that similar acts evidence should have been admitted against the defendants. *Wilson*, 6 F.3d 1233.

Wilson originally refused to cooperate with the Chicago Police Department's Office of Professional Standards ("OPS"). In 1989, the OPS reopened cases against Lt. Burge and Detectives O'Hara and Yucaitis. PBFD 17. Lt. Burge was charged with violating Rules 2, 3, 5, 6, 8, 9, 10 and 22 of Article V of the Rules and Regulations of the

---

[1] The district court transcript contains multiple numbers on each page. Herein we cite to the stamped bates number.

Chicago Police Department.  Ex. 7.  Kunkle again represented all three officers at a consolidated hearing.

In February 1992, a police board hearing commenced before a hearing officer. Prior to the hearing, the hearing officer refused to apply collateral estoppel in the officers' favor based on the civil case verdict.  The hearing officer reasoned that the purposes of a civil lawsuit and a police board action were substantially different and would involve different evidence.  PB Tr. 15-22, Ex. 8.

Wilson testified at the police board hearing.  The government believes this testimony to be relevant.  Govt's Motion 6.  Wilson's criminal lawyer again accompanied Wilson at the hearing, as Wilson's criminal case was still on appeal.  PB Tr. 16, 163-66, 217-19, 223.  On cross-examination, Wilson again invoked the privilege against self-incrimination in response to a multitude of questions.  See Ex. 6; *infra* § III(b).  The hearing officer determined that he lacked the power to compel Wilson to answer.  PB Tr. 236-39, 387-88.  The officers' motions for mistrial based on the denial of confrontation were denied.  PB Tr. 239, 253-54.

In 1993, the police board found Burge guilty of the rules violations and ordered him separated from the Chicago Police Department.  Burge unsuccessfully pursued administrative relief from this decision.  Govt's Motion, Exs. E, F.

Following the police board hearing, Wilson's civil case was assigned to Judge Gettleman.  In granting summary judgment for the plaintiff, Judge Gettleman sustained Wilson's offensive collateral estoppel claim based on the police board's findings that Burge struck, kicked or otherwise caused or aggravated injuries to Wilson and did not take actions to stop other officers from maltreating Wilson.  Judge Gettleman also held

6

that the City would be responsible for any liability of the officers. *Wilson*, 900 F.Supp. 1015. The Seventh Circuit's decision affirming this ruling did not address the offensive collateral estoppel issue. *Wilson v. City of Chicago*, 120 F.3d 681 (7th Cir. 1997).

Wilson was not the only capital murder defendant to sue Burge. In 2003, Madison Hobley – who had been convicted of an arson that resulted in the deaths of seven people, see *People v. Hobley*, 159 Ill.2d 272, 637 N.E.2d 992 (1994) (affirming conviction and sentence); *People v. Hobley*, 182 Ill.2d 404, 696 N.E.2d 313 (1998) (remanding for a hearing on post-conviction issue relating to outside influence on the jury) – sued Burge and others for alleged civil rights violations. In November 2003, interrogatories were filed on Burge's behalf.

In 2007, Wilson died in the Illinois Penitentiary. Govt's Motion 9. Wilson's lawyers thereafter revealed that Wilson had confessed to murdering the McDonalds security guard. Exs. 1-2.

On October 16, 2008 – close to five years after the filing of *Hobley* interrogatories and over 26 years after the murders of Officers Fahey and O'Brien – the government sought and obtained a grand jury indictment charging Burge with perjury and obstruction of justice based on the *Hobley* interrogatories. The indictment in this case does not mention the Andrew Wilson case by name.

## ARGUMENT

## I.    LEGAL BACKDROP

The government has moved to introduce Andrew Wilson's testimony at the second civil trial and the police board hearing pursuant to Rule 804(b)(1) of the Federal Rules of Evidence,[2] which provides:

> The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> > (1) Former testimony.  Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

The Supreme Court considered this rule in *United States v. Salerno*, 505 U.S. 317 (1992).  The issue there was whether Rule 804(b)(1) permitted a criminal defendant to introduce grand jury testimony of witnesses who were unavailable at trial (because they had invoked the Fifth Amendment).  The Court declared that the rule's words could not be relaxed and must be enforced as enacted, including the "similar motive" requirement. The Court remanded for further consideration on the "similar motive" issue.

On remand, the Second Circuit refused to accept a test that simply looked to whether the questioner was on the same side of the same issue in the two proceedings.

---

[2]    The government says that it would work with defense counsel to identify and stipulate to portions of other testimony given by Wilson, *i.e.*, the motion to suppress, his deposition and the first civil trial.  For the reasons argued herein, no prior testimony of Wilson is admissible.  We also question the wisdom of considering this motion outside the pulse of trial.  See *United States v. Caputo*, 313 F. Supp.2d 764, 767-68 (N.D. Ill. 2004).  Defense counsel, who did not represent Burge in the prior proceedings, has had access to a working database containing over 350,000 documents for about a week at the time of the filing of this motion.  We respectfully reserve the right to supplement this motion after further review of discovery.

*United States v. DiNapoli*, 8 F.3d 909, 912 (2nd Cir. 1993). The court set forth the

following standard:

> The proper approach, therefore, in assessing similarity of motive under
> Rule 804(b)(1) must consider whether the party resisting the offered
> testimony at a pending proceeding had at a prior proceeding an interest of
> substantially similar intensity to prove (or disprove) the same side of a
> substantially similar issue. The nature of the two proceedings – both what
> is at stake and the applicable burden of proof – and, to a lesser extent, the
> cross-examination at the prior proceeding – both what was undertaken and
> what was available but forgone – will be relevant though not conclusive
> on the ultimate issue of similarity of motive.

*Id*. at 914-15.

Although *DiNapoli* did not hold that prior grand jury testimony is *per se*

inadmissible under Rule 804(b)(1), the circumstances of the case led the court to dispel

similarity of motive. The court reached this conclusion even though the prosecutor had

undertaken limited cross-examinations in the grand jury. See also *United States v.*

*Carson,* 455 F.3d 336, 376-81 (D.C. Cir. 2006) (grand jury testimony of an unavailable

defense witness inadmissible at a criminal trial; "similar motive" requirement, *inter alia*,

not satisfied); *United States v. Peterson,* 100 F.3d 7, 13 (2nd Cir. 1996) (same).

In *United States v. Feldman*, 761 F.2d 380, 381 (7th Cir. 1985), the Seventh

Circuit addressed "whether a deposition taken in an earlier civil proceeding is admissible

in a later criminal prosecution." In *Feldman*, the CFTC brought a disgorgement action

and provided notice of Sanburg's deposition to two individuals, Feldman and Martenson,

who were later prosecuted for mail/wire fraud and engaging in fraudulent bullion

transactions. Feldman and Martenson did not attend Sanburg's deposition. Sanburg

died. During the criminal trial of Feldman and Martenson, the district court permitted the

government to introduce Sanburg's deposition transcript on grounds that the defendants had had an opportunity to cross-examine Sanburg.

*Feldman* acknowledged cases holding that the opportunity for cross-examination is sufficient to allow introduction of prior testimony, regardless of whether the party actually made use of the opportunity. The court nevertheless reversed, finding that the defendants did not have a meaningful opportunity for cross-examination. The court pointed out that the defendants were unaware of Sanburg's immunity agreement or the grand jury investigation at the time of Sanburg's deposition, and thus could not have framed cross-examination accordingly.

Addressing Rule 804(b)(1), *Feldman* observed that the "similar motive" requirement requires evaluation of "not only the similarity of the issues, but also the purpose for which the testimony is given." *Id*. at 385. The court cited the following factors as influencing motive to develop testimony: 1) the type of proceeding in which the testimony was given; 2) trial strategy; 3) the potential penalties or financial stakes; and 4) the number of issues and parties.

## II. THE GOVERNMENT HAS NOT ESTABLISHED THAT BURGE HAD AN OPPORTUNITY AND SIMILAR MOTIVE TO DEVELOP WILSON'S TESTIMONY IN THE PRIOR PROCEEDINGS

A. The government has not established that Burge had "an opportunity and similar motive to develop" Wilson's testimony in the prior civil and administrative proceedings.[3] The nature of Wilson's civil case is different from this criminal case. The purpose of the civil case was to determine whether Wilson should be compensated for

---

[3]     As proponent of the evidence, the government bears the burden of proof. *E.g*., *American Automotive Accessories v. Fishman*, 175 F.3d 535, 540 (7th Cir. 1999); *Angelo v. Armstrong World Industries, Inc*., 11 F.3d 957, 963 (10th Cir. 1993).

alleged constitutional injuries. All that could be awarded was money. Likewise, the purposes of a police board disciplinary hearing and federal criminal prosecution are different. The purpose of the police board hearing was to determine whether the Department proved that Burge and the other officers had violated internal police department rules. The most the police board could do was order separation from the police department. The police board lacked authority to impose a monetary judgment.

The purpose of this case is clearly different than the prior proceedings. Here, the question is whether the government can prove beyond a reasonable doubt that Burge committed perjury or obstructed justice in relation to the *Hobley* interrogatories. The essential statutory elements of the charged offenses in this case are much different than what was at issue in the civil and police board cases.

Furthermore, at the time of the civil and disciplinary proceedings, no criminal charges had been returned against Burge, and Kunkle did not possess the criminal discovery. Accordingly, Kunkle obviously did not craft his cross-examination with a potential criminal case in mind. *Feldman*, 761 F.2d at 384 ("Because no criminal indictment had been entered... the co-defendants would not have had the issues framed with sufficient[] clarity to allow for an intelligent cross-examination even if the defendants had been present during Sanburg's deposition."); see also *United States v. Wang*, 964 F.2d 811, 814 (8th Cir. 1992) (introduction of pretrial videotaped deposition violated the Confrontation Clause since the defendant had not yet been charged with the substantive offense at issue at trial); *United States v. Powell*, 894 F.3d 895 (7th Cir. 1990) (refusal to admit guilty plea prior testimony affirmed; the prosecution does not have the same motive at a guilty plea hearing as in other proceedings).

The stakes in this case are far different than the prior proceedings. No matter the outcome of the prior civil and administrative cases, Burge's *liberty* could not be impeded by any judgment. Here, Burge's liberty is at stake. As the Seventh Circuit stressed in *Feldman*, liberty transcends value and is qualitatively and quantitatively different than the stakes in a civil proceeding. 761 F.2d at 385.

The burden of proof in the prior proceedings and the burden in this case are also demonstrably different. In neither the prior civil case nor the administrative hearing did the plaintiff shoulder a reasonable doubt burden. Furthermore, the formal rules of evidence did not apply at the police board hearing. PB Tr. 277; Chi. Muni. Code § 2-84-030.

Consideration of the number of issues and parties also weighs in Burge's favor. Here, Burge is the sole defendant. In contrast, the City of Chicago, Lt. Burge, Superintendent Brzeczek, Detectives McKenna, O'Hara and Yucaitis went to trial in the civil case. Detectives McKenna, O'Hara and Yucaitis and Lt. Burge were each represented by the same lawyer, Kunkle, who thus was charged with defending the interests of not just Burge, but also the other officers. By necessity, none of the officers could explore or pursue anything but a common defense. The same was true at the police board hearing in which Kunkle represented Detectives O'Hara and Yucaitis, and Lt. Burge.

Notwithstanding the differences between the civil and administrative proceedings, the government takes the position that Burge's "position" and "motive" in the prior proceeding are identical, *i.e.*, to discredit Wilson. Govt's Motion 11, 13. In *United States v. Bartelho,* 129 F.3d 663, 671 (1st Cir. 1997), however, the court found "that the

12

similarity of a broad and general interest in testing the witness's credibility in each proceeding is not enough to establish 'similar motive.'" *Bartelho* held that the district court did not err in precluding the admission of prior testimony even though the witness' "credibility was generally at issue in each proceeding, and the government was interested in his credibility each time." *Id.* at 672.

The government also slights the record. The lawyer representing Burge and the other defendants did not advance the same position at each hearing. As noted in the Special State's Attorney's Report, "[I]n four separate hearings Judge Kunkle took four separate positions – no explanation; no burns; self-inflicted burns; and last, self-inflicted burns or, alternatively, burns caused by the wagon men." SSA Report 137, Ex. 9.

What's more, under the unique circumstances of this case, Burge's present criminal attorneys face a legal impediment in operating from the same motive in developing Wilson's testimony as Kunkle did. As Kunkle admitted in the *Wilson* Seventh Circuit argument, his motive was to try "to make the jury hate Wilson." *Wilson*, 6 F.3d at 1236. The Seventh Circuit determined that this motive resulted in the erroneous admission of evidence: "The cross-examiner should not … have been permitted to elicit the details of the crimes underlying Wilson's conviction unless the details bore directly on his credibility." *Id.* at 1237.[4] Thus, if Wilson were alive and agreed to answer all questions on cross-examination, a different motive would have to shape the development of his testimony.

Another cross-examination motive that was not pursued in the prior proceedings was Wilson's conduct in respect to Alton Logan. Stated simply, Wilson allowed an

---

[4] The Seventh Circuit had not yet issued its decision in *Wilson* when Wilson testified at the police board.

innocent man to languish in a penitentiary for a murder he (Wilson) had committed. If Wilson was willing to allow an innocent man to be framed for a murder, would he not be willing to frame an innocent policeman who arrested him for murder? Obviously, Burge did not pursue this line of cross-examination in any prior proceedings since Wilson's conduct was not disclosed until after his death.

B.     The government attempts to distinguish *Feldman* on grounds that the defendants had not attended the deposition, and, alternatively, argues that it has met its four-part test. Govt's Motion 12 n.13. *Feldman*'s analysis, however, did not depend on the defendants' failure to attend the deposition. Further, as argued, the government has not met *Feldman's* four-part test.

The non-Seventh Circuit case relied on by the government, *United States v. Vartanian,* 245 F.3d 609 (6th Cir. 2001), is inapposite for a number of reasons. First, to the extent there is a conflict between *Vartanian* and *Feldman*, *Feldman* controls. Second, the defendant's main argument in *Vartanian* appeared to be grounded in the Confrontation Clause. Third, unlike Wilson, the deceased witness in *Vartanian* did not impede the opportunity for cross-examination by refusing to answer questions on Fifth Amendment grounds. See *infra* § III. Finally, the deceased witness' testimony in *Vartanian* was brief and contained information helpful to the defense.

Similarly, *United States v. McClellan*, 868 F.2d 210 (7th Cir. 1989), also cited by the government, is distinguishable. Again, the *McClellan* defendant's principal argument was based in the Confrontation Clause, which, in turn, required application of the now-repudiated *Ohio v. Roberts*, 448 U.S. 56 (1980), test. Moreover, the unavailable witness in *McClellan* did not refuse to testify in certain areas based on the Fifth Amendment.

14

Finally, Judge Gettleman's collateral estoppel ruling does not require granting the government's motion. Offensive collateral estoppel against a criminal defendant is not permitted. *E.g.*, *United States v. Smith-Baltiher*, 424 F.3d 913, 921 (9th Cir. 2005). Furthermore, Judge Gettleman did not address the evidentiary issues presented here. Nor did he consider the legal effect of Wilson's invocation of the Fifth Amendment. Finally, it bears mentioning that Judge Duff refused to apply collateral estoppel for the plaintiff in *Wilson*, and the police board rejected the officers' collateral estoppel argument based on the *Wilson* jury's verdict exonerating the officers from personal liability.

## III. WILSON'S PRIOR TESTIMONY IS NOT ADMISSIBLE DUE TO HIS REPEATED REFUSALS TO ANSWER QUESTIONS ON CROSS-EXAMINATION

### A. Legal Responses To Witnesses Who Invoke The Fifth Amendment Privilege Against Self-Incrimination On Cross-Examination

In *Brown v. United States*, 356 U.S. 148, 155 (1948), the Supreme Court observed that a witness has no right to advance facts in his favor without "laying himself open to a cross-examination upon those facts." The Fifth Amendment does not provide a witness with "immunity from cross-examination," as such a regime "would make of the Fifth Amendment not only a humane safeguard against judicially coerced self-disclosure but a positive invitation to mutilate the truth a party offers to tell." *Id.* at 156; see also *United States v. Silverstein*, 732 F.2d 1338, 1344 (7th Cir. 1984) ("if a witness confesses on the stand to wrongdoing he cannot refuse to give the details"); *United States v. St. Pierre*, 132 F.2d 837, 840 (2nd Cir. 1942) ("the privilege [against self-incrimination] is to suppress the truth, but that does not mean that it is a privilege to garble it").

When a witness invokes the Fifth Amendment on cross-examination, the general rule is that witness' testimony should be stricken. *E.g.*, *Wisconsin v. Gagnon*, 497 F.2d

1126, 1128 n.3 (7th Cir. 1974); see also *Lawson v. Murray*, 837 F.2d 653 (4th Cir. 1988); *United States v. Doddington*, 822 F.2d 818 (8th Cir. 1987); *United States v. Lyons*, 703 F.2d 815 (5th Cir. 1983); *Silverstein*, 732 F.2d at 1344; *United States v. Demchak*, 545 F.2d 1029 (5th Cir. 1977). Because stricken testimony is an extreme sanction, *United States v. Zapata*, 871 F.2d 616, 623 (7th Cir. 1989), an exception to this rule has been developed when the witness refuses to be cross-examined on immaterial or collateral matters relating solely to the witness' credibility. *Gagnon*, 497 F.2d at 1128 n.3; see also *United States v. Castello*, 830 F.2d 99, 101 (7th Cir. 1987); *United States v. Cardillo*, 316 F.2d 606, 611 (2nd Cir. 1963). In such a situation, the district court must balance the witness' anti-self-incrimination privilege against the defendant's confrontation right and "watch vigilantly to ensure that the invocation did not effectively … emasculate the right to cross-examination itself." *Zapata*, 871 F.2d at 623; see also *United States v. Kaufmann*, 985 F.2d 884, 897 (7th Cir. 1993). The relevant inquiry is whether the jury has sufficient information to evaluate the witness' motive and bias. *Id*. When the witness is important, the need for full cross-examination is palpable. See *Davis v. Alaska*, 415 U.S. 308, 317-18 (1974).

The *Gagnon* exception is inapplicable as an evidentiary matter under the circumstances of this case. The above-cited cases generally addressed Confrontation Clause arguments and did not involve prior testimony or application of Rule 804(b)(1). We know of no authority applying the *Gagnon* exception to Rule 804(b)(1). Given *Salerno's* command that Rule 804(b)(1) must be applied as written, the analysis must depend on whether the opponent of the evidence was provided with an "opportunity … to develop" testimony – including testimony relating to credibility.

In addition, the government maintains that credibility is *the* issue with respect to Wilson's testimony.  See Govt's Motion 11, 13.  Thus, Wilson's credibility cannot be deemed "collateral," although, as we shall see, Wilson's refusal to provide answers related to a variety of topics.  *United States v. Wilmore*, 381 F.3d 868, 874 (9th Cir. 2004) (potential cross-examination as to veracity and motivations for prior grand jury testimony of a witness who had invoked the Fifth Amendment was not collateral; witness' testimony should have been stricken).

**B.**     **Burge Was Denied "The Opportunity … To Develop" Wilson's Testimony As A Result Of Wilson's Repeated Refusal To Answer Questions On Cross-Examination**

In a footnote, the government says that "Wilson took the Fifth Amendment as to certain questions about the Fahey and O'Brien murders."  Govt's Motion 9 n.9.  This is an understatement.  Wilson's refusal to answer questions was far more pervasive than refusing to answer a few passing questions about the murders of Officers Fahey and O'Brien.   Indeed, it would unduly prolong this response to quote each time Wilson refused to answer a question on cross-examination.[5]  For purposes of this response, we note that Wilson refused to testify in response to the following lines of inquiry:

1.     Wilson refused to answer questions about his guilty state of mind *after* the murders and while he was in police custody.  See, *e.g.*, DC Tr. 3170-87, 3252, 3305, 3312-15, 3354-55; PB Tr. 252-54, 342-45, 348-50, 358-59, 373-78, 380-85, 384-85, 391-92, 394-97, 465, 492-93.   After asking Wilson a series of questions regarding his conduct and guilty mental state after the murders and until his bond court appearance – without

---

[5]     We have appended the transcripts of Wilson's testimony at the second civil trial and before the police board as exhibits to this response.  See Exs. 5-6.

getting answers – Kunkle asked Wilson (at the second civil trial) if he was in a deep, deep

hole on February 14, 1982.  DC Tr. 3362.  This line of questions was designed to probe

Wilson's bias and motive for testifying, *i.e.*, whether Wilson was willing to fabricate

allegations against the man who had pinned him to the ground as he was being arrested

for the capital murders of two police officers.  See *Davis v. Alaska*, 415 U.S. at 316-17

("the exposure of a witness' motivation in testifying is a proper and important function of

the constitutionally protected right of cross-examination"); *United States v. Frankenthal,*

582 F.2d 1102, 1106 (7th Cir. 1978) ("Because of the importance of evidence of bias or

interest, inquiry into the area is never collateral."); see also *United States v. Henderson*,

337 F.3d 914, 918 (7th Cir. 2003); *United States v. Scott*, 267 F.3d 729, 735 (7th Cir.

2001); *United States v. Lindemann*, 85 F.3d 1232, 1243 (7th Cir. 1996).   Wilson,

however, refused to answer the questions, just as he refused to answer whether he was

willing to lie to extract himself from the hole.  *Cf. Wilmore*, 381 F.3d at 873

(confrontation violation shown where witness who implicated the defendant took the

Fifth at trial and the defendant was precluded from showing the witness' mental state in

testifying).

       2.       Wilson took the Fifth Amendment on questions relating to his arrest and

custodial interrogation on February 14, 1982.  Wilson would not say whether he had

admitted having a stolen, fully-loaded gun in his possession when he was arrested.  DC

Tr. 3170-73; PB Tr. 301-02, 308, 335.  That an accused cop-killer is armed with a deadly

weapon would give police just cause to use reasonable force in the arrest – force that

could explain certain injuries.

3.      Wilson repeatedly refused to respond to anything in his court-reported statement. PB Tr. 480-87. In fact, Wilson refused to testify about whether he had lied to the police while in custody on February 14, 1982. DC Tr. 3356. If Burge's supposedly false interrogatory answer is that he did not employ or know about improper coercion methods to obtain confessions, then questions regarding a confession are directly relevant. Yet, by Wilson's refusal to answer questions about his confession, Burge was denied an opportunity to develop Wilson's testimony.

4.      Wilson displayed a scar on his forehead. Wilson, however, refused to testify when and how got the scar. PB Tr. 497. While the proponent of Wilson's testimony was allowed to argue that the police had caused the scar, Burge was denied the opportunity to show otherwise by Wilson's refusal to testify.

5.      Wilson refused to testify as to whether he sustained any injuries as a result of a physical struggle with Officer Fahey or from stealing Officer Fahey's sharp-edged weapon. DC Tr. 3353; PB Tr. 528-29. Wilson also would not answer whether he bounced up against a tree during the struggle with Officer Fahey – as he had said in his court-reported statement. PB Tr. 528-29.

6.      Wilson claimed that he was shocked with an alligator clip device while in police custody. Yet, when Kunkle asked Wilson whether he had seen alligator clips in prison (to facilitate marijuana smoking) Wilson refused to answer. DC Tr. 3350; PB Tr. 504.

7.      William Coleman testified that he was incarcerated with Wilson and discussed a plan to escape from jail with Wilson. At the police board, Coleman testified that Wilson "told him in August 1987 that although the police beat him on the way to

19

Area 2, Wilson had actually draped himself on the radiator to inflict the burns on himself as a means of getting out of the confession." SSA Report 52, Ex. 10. Before the police board, Wilson repeatedly refused to answer any questions about Coleman or the escape plan. PB Tr. 518-19, 526.[6]

8. A cross-examiner may develop testimony about acts and crimes of dishonesty. *E.g.*, Fed.R.Evid 608(b), 609(b); see also *Varhol v. Nat'l R.R. Passenger Corp.*, 909 F.2d 1557 (7th Cir. 1990) (*en banc*). Wilson, however, frustrated Kunkle's cross-examination on these topics. Wilson refused to say whether he possessed a stolen gun when he was arrested, DC Tr. 3170-74; whether he had committed an armed robbery while on parole; DC Tr. 3174, PB Tr. 350; whether he obtained a postal uniform and then falsely portrayed himself as a postal worker to conduct a home invasion/burglary, DC Tr. 3252, whether he had ever lied to the police or in court, DC Tr. 3356; and whether he was willing to lie to divert from the fact that he had killed two policemen, DC Tr. 3382.

---

The government does not at all grapple with the consequences of a witness who uses the Fifth Amendment to shield cross-examination. Nor does the government address the effect of Wilson's many refusals to answer questions on the Rule 804(b)(1) "opportunity … to develop" testimony requirement. Wilson's recalcitrance was more than a ship passing quietly in the night. Perhaps Wilson thought he had justification in refusing to answer Kunkle's questions because his case was on appeal at the time. But in following his lawyer's advice and repeatedly refusing to answer questions put to him on

---

[6]     We do not ignore that the police board and Special State's Attorney rejected Coleman's testimony. But that does not detract from the fact that Burge was denied an opportunity to develop Wilson's testimony regarding Coleman at the police board hearing. Moreover, the jury in this case will be the trier of fact.

cross-examination, Wilson deprived Burge of the "opportunity … to develop" testimony.

Accordingly, Wilson's prior testimony constitutes inadmissible hearsay.  Fed.R.Evid.

801-02.

## IV.    INTRODUCTION OF WILSON'S PRIOR TESTIMONY WOULD VIOLATE THE CONFRONTATION CLAUSE

In a footnote, the government argues that admission of Wilson's prior testimony

would not violate the Confrontation Clause as construed in *Crawford v. Washington*, 541

U.S. 36 (2004).  Govt's Motion 11 n.12.  But *Crawford* found that, in the case of an

unavailable witness' prior testimony, the opponent of the evidence must have been

afforded "a prior opportunity for cross-examination."  541 U.S. at 54.

As argued above in respect to Rule 804(b)(1), Burge was denied a prior

opportunity for cross-examination: 1) because the differences between the prior civil

proceedings and this criminal case supply him with different motives in cross-

examination; and 2) because Wilson's repeated refusal to testify in response to cross-

examination frustrated Burge's opportunity for cross-examination.  The confrontation

violation that would surface in the face of admitting Wilson's prior testimony cannot be

disregarded.  See *Wilmore*, 381 F.3d 868; *Wang*, 964 F.2d 811.

## V.    RULE 403 CONSIDERATIONS WEIGH IN FAVOR OF NOT ADMITTING WILSON'S PRIOR TESTIMONY

Wilson was an illiterate, convicted felon.  He testified at length in the civil trial

and before the police board.  Neither appearance was videotaped.  On multiple occasions,

Wilson physically demonstrated his testimony, *e.g.*, PB Tr. 123, 128, 129-30, 135-38,

211-12, 560-61, 571-72, and resorted to street-slang in his oral descriptions.  *E.g.*, PB Tr.

251 (referring to Judge Crowley, the trial judge, as "white-haired stud").

Subject to certain exceptions, see *Maryland v. Craig*, 497 U.S. 836 (1990), "the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988). Personal appearance of the witness "permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility." *California v. Green*, 399 U.S. 149, 158 (1970).

Here, there simply is no way to replicate Wilson's testimony accurately. Reading of the transcripts (by a clean-cut FBI Agent or federal prosecutor) would be unfair. There would by no way for the jury to evaluate Wilson's demeanor and attitude in testifying. It would be impossible to reproduce the tone of Wilson's voice or facial expressions. Wilson's death should not result in a litigation advantage for the government. Therefore, this Court ought to employ its discretion and find the prior testimony inadmissible under Rule 403.

Wilson's prior testimony is also subject to exclusion because it is unduly cumulative. The Special State's Attorney questioned hundreds of witnesses about a host of cases during Burge's tenure. The government has preliminarily identified nine cases it will seek to admit into evidence at trial. While Andrew Wilson is one of those cases, the Wilson case is not named in the indictment. Nor did the offenses alleged in the indictment occur during any *Wilson* litigation. The government's effort to prove the charged offenses should depend on *live* witnesses who Burge's criminal lawyers can confront.

Admission of Wilson's testimony further threatens to turn this trial into a trial by affidavit. Critical witnesses who directly impeached Wilson, including Detectives

Yucaitis and O'Hara and Officer Mulvaney, are deceased.  If Wilson's prior testimony

were admitted, Burge could be in a position of having to impeach Wilson with prior

statements and testimony of deceased individuals.  To prevent the specter of the trial

becoming a paper contest without affording the jury the opportunity to evaluate witness

demeanor first-hand, the Court should exercise its discretion under Rule 403 and deny the

government's motion to admit Wilson's prior testimony.

Respectfully submitted,

***/s/ Marc W. Martin*_____**

WILLIAM GAMBONEY, JR.
216 S. Marion St.
Oak Park, IL 60302
(708) 445-1994

RICHARD BEUKE
53 W. Jackson Blvd., Suite 1410
Chicago, IL 60604
(312) 427-3050

MARC W. MARTIN
MARC MARTIN, LTD.
53 W. Jackson Blvd., Suite 1420
Chicago, IL 60604
(312) 408-1111
*Attorneys for Defendant Jon Burge*

<u>**CERTIFICATE OF SERVICE**</u>

I, MARC W. MARTIN, an attorney for Defendant Jon Burge, hereby certify that

on this, the 13th day of February, 2009, I filed the above-described document on the

CM/ECF system of the United States District Court for the Northern District of Illinois,

which constitutes service of the same.

<u>/s/ Marc W. Martin</u>

MARC W. MARTIN
MARC MARTIN, LTD.
53 W. Jackson Blvd., Suite 1420
Chicago, IL 60604
(312) 408-1111