**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **Case No. 08 CR 846** |
| vs. | ) | |
| | ) | **Judge Joan H. Lefkow** |
| **JON BURGE.** | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant, Jon Burge, was a commander in the Chicago Police Department ("CPD"). He supervised detectives at the Area Two and Area Three commands, as well as the Bomb & Arson Squad during the 1980s and early 1990s. Many suspects who were detained and interrogated under Burge's command later reported that they had been abused and tortured. Several brought civil rights cases in this court against Burge, among them Madison Hobley and Andrew Wilson. In *Hobley* v. *Jon Burge, et al.*, No. 03 C 3678, Burge responded to interrogatories denying ever having physically coerced, abused or tortured suspects who were in detention or being interrogated and denied knowledge of such actions by other Chicago police officers. These denials are the basis of the pending indictment charging Burge with two counts of making false statements and one count of obstructing justice in violation of title 18, United States Code, section 1512(c)(2). The government has moved *in limine* under Federal Rule of Evidence 804(b)(1) to admit the testimony of Wilson, now deceased, who testified in two testimonial proceedings that Burge had physically coerced, abused and tortured him and knew that other Chicago police officers had done the same. Burge contends the responses are inadmissible under Rule 804(b)(1) and their admission would violate his right of confrontation under the Fifth Amendment. For the reasons stated below, the government's motion [#21] will be granted.

1

# BACKGROUND

## I.    Hobley's Civil Rights Case

On May 30, 2003, Hobley filed suit in this court against the City of Chicago, Burge and several other Chicago police detectives under 42 U.S.C. §1983 for violations of his civil rights. The complaint alleged that in January 1987 while investigating the act of arson which killed Hobley's wife and infant son, the detectives of the Area Two Violent Crimes Division, which Burge commanded, attempted to coerce a confession from Hobley by beating him, suffocating him with a plastic typewriter cover, using racially offensive language and repeatedly threatening him. *See Hobley* Compl. ¶¶ 2, 9, 15, 17. Unable to coerce him into making a confession, Hobley alleged that the defendant officers manufactured a false oral confession and thereafter planted incriminating evidence, withheld exculpatory evidence and bribed witnesses to falsely implicate him at trial. *Id*. ¶¶ 15-28. Hobley was ultimately convicted and served sixteen years in prison before being pardoned in January 2003.

Hobley contended that the conduct he described was part of "a pattern and practice of torture of subjects by Area Two Violent Crimes detectives" and noted that the CPD's own Office of Professional Standards ("OPS") had concluded that police command members, including Burge, were aware of systematic and methodical physical abuse and had perpetuated it, either by actively participating or failing to stop it. *Id*. ¶ 33 (citing OPS Burge Report, 11/2/90, pp. 2-3). To prove his pattern and practice theory, Hobley propounded two sets of interrogatories regarding Burge's participation in and knowledge of the pattern and practice of torture at Area Two. The first set of interrogatories and Burge's November 12, 2003 responses thereto are as follows:

QUESTION #13:    State whether you have *ever* used methods, procedures or techniques involving any form of verbal or physical coercion of suspects while in detention or during interrogation, such as deprivation of sleep, quiet, food, drink, bathroom facilities, or contact with legal counsel and/or family members; the use of verbal and/or physical threats or intimidation, physical beatings, or hangings; the use of racial slurs or profanity; the use of physical restraints, such as handcuffs; the use of photographs or polygraph testing; and the use of physical objects to inflict pain, suffering or fear, such as firearms, telephone books, typewriter covers, radiators, or machines that deliver an electric shock.  For each such use of verbal or physical coercion identify the detainee(s) and/or suspect(s), any other officers or individuals involved, the date of the incident, the specific conduct in which you or any officer engaged, and whether you or any other officer was the subject of any complaint or discipline as a result of said conduct.

ANSWER:    Defendant objects to Interrogatory no. 13 because said question is overly broad, unduly vague, ambiguous and calls for a legal conclusion.  Subject to and without waiving said objection, *I have never used any techniques set forth above as a means of improper coercion of suspects while in detention or during interrogation.*

QUESTION #14:    State whether you were aware of any Chicago Police Officer, including but not limited to officers under your command, ever using methods, procedures or techniques involving any form of verbal or physical coercion of suspects whole in detention or during interrogation, such as deprivation of sleep, quiet, food, drink, bathroom facilities, or contact with legal counsel and/or family members; the use of verbal and/or physical threats or intimidation, physical beatings, or hanging; the use of racial slurs or profanity; the use of physical restraints, such as handcuffs; the use of photographs or polygraph testing; and the use of physical objects to inflict pain, suffering or fear, such as firearms, telephone books, typewriter covers, radiators, or machines that deliver an electric shock.  For each such use of verbal or physical coercion identify the detainee(s) and/or suspect(s), any other officers or individuals involved, the date of the incident, the specific conduct in which you or any officer engaged, and whether you or any other officer was the subject of any complaint or discipline as a result of said conduct.

ANSWER:    Defendant objects to Interrogatory no. 14 because said question is overly broad, unduly vague, ambiguous and call for a legal conclusion.  Subject to and without waiving said objection, *I am not aware of any.*

Count I of the Oct. 16, 2008 Indictment [ Docket No. 1] ¶ 7 (citing First Set of Interrogatories

and Burge's responses thereto).  On November 25, 2003, in response to Hobley's second set of

interrogatories, Burge submitted the following response:

> QUESTION #3: Is the manner in which Madison Hobley claims he was physically abused and/or tortured as described in Plaintiff's Complaint (including, for example, the allegation of "bagging" with a typewriter cover) consistent with any other examples of physical abuse and/or torture on the part of Chicago Police officers at Area Two which you observed or have knowledge of ? Please explain your answer and identify any other instances or examples of the same or similar physical abuse and/or torture.

> ANSWER: *I have not observed nor do I have knowledge of any other examples of physical abuse and/or torture on the part of Chicago Police officers at Area Two.*

*See Id*. at Count II ¶ 2 (citing Second Set of Interrogatories and Burge's responses thereto).

The italicized portions of Burge's responses form the basis of the government's indictment in this case. The government charges that at the time Burge submitted theses answers, he "knew he had participated in one or more incidents of physical coercion of suspects while the suspects were in detention and/or were being interrogated, and was aware of one or more other such events involving the abuse or torture of people in custody." Indictment, Count I ¶ 8. The government also charges that Burge knew he had "observed, participated in, and had knowledge of one or more other examples of physical abuse and torture on the part of Chicago police officers at Area Two, including, but not limited to, abuse of a person by "'bagging.'" *Id*. at Count II ¶ 3.

## II.    Wilson's Testimony

William Fahey and Richard O'Brien, both Chicago police officers, were shot and killed on February 9, 1982. Wilson became a suspect. Around 5:00 am on February 14, 1982 he was arrested and brought to the Area Two police station. Wilson maintained that while he was at Area Two, he was beaten, kicked, smothered with a plastic bag, burned with a cigarette, given a

succession of electronic shocks on his ears, genitals, and back, stretched across a hot radiator, and had a loaded gun placed in his mouth and cocked. Government's Memorandum in Support of its Motion in Limine ("Mem.") at 7-9; *see also Wilson* v. *City of Chicago*, 6 F.3d 1233, 1236 (7th Cir. 1993). He further maintained that Burge actively participated in, knew of and sanctioned this conduct. *Id.*

### A.  Wilson's Criminal Case

During his criminal trial, Wilson moved to suppress the statement he made during his detention at Area Two, arguing that it was involuntary. At the hearing on the motion, Wilson testified that "he was punched, kicked, smothered with a plastic bag, electrically shocked, and forced against a hot radiator throughout the day on February 14, until he gave his confession." *People* v. *Wilson*, 506 N.E.2d 571, 573, 116 Ill. 2d 29, 106 Ill. Dec. 771 (Ill. 1987). The motion to suppress was denied and Wilson was convicted and sentenced to death. *Id.* at 572. The Supreme Court of Illinois reversed Wilson's conviction, ruling that the state had failed to prove that the confession was not the product of coercion.[1] *Id.* at 576. Wilson was then retried. On June 20, 1988, he was convicted of both murders and armed robbery and thereafter sentenced to a term of natural life imprisonment. *See People* v. *Wilson*, 626 N.E.2d 1282, 1286, 254 Ill. App. 3d 1020, 193 Ill. Dec. 731 (Ill. App. Ct. 1st Dist. 1993).[2]

---

[1] In arguing for the admission of the confession, the state did not dispute that the 15 separate injuries documented on Wilson were suffered while in police custody. *Id.* at 574. Rather, it contended that the injuries were not incurred until after he gave his confession, rendering it admissible. *Id.* The Court rejected this argument, finding that the state failed to satisfy its burden of showing by clear and convincing evidence that the injuries were not inflicted as a means of producing the confession. *Id.* at 575 (internal citations omitted).

[2] Wilson appealed his second conviction on the ground that the evidence that he had committed an armed robbery was insufficient. *People* v. *Wilson*, 626 N.E.2d at 1287. The judgment was affirmed on September 30, 1993. *Id.* at 1311.

**B.  Wilson's Civil Rights Case**

While his criminal cases were on appeal, Wilson filed a civil rights suit against the City of Chicago, Burge and other Chicago police officers[3] based on the injuries he sustained while in police custody.  Burge denied that any physical coercion, abuse or torture had occurred.  Answer in *Wilson* v. *City of Chicago, et al.*, No. 86 C 2360, attached as Ex. B to Mem.  Wilson's civil rights case was tried twice because the first trial ended in a hung jury.  *See Wilson*, 6 F.3d at 1236.  The second trial resulted in a special verdict that found Wilson's constitutional rights violated but exonerated all the officers.[4]  *Id.*  The Seventh Circuit reversed the judgment as to Burge and the other individual defendants, ruling that the district judge erred in (1) allowing the defendants to introduce "evidence of the ugly details of [Wilson's] crimes because they were not relevant to the injuries Wilson's suffered while in police custody, *id.* at 1236-38, and (2) refusing to allow Wilson to introduce two witnesses who would have testified that they also were tortured by Burge and the other defendant officers.  *Id.* at 1238.

Wilson gave a deposition and testified at both trials.  William Kunkle,[5] the State's Attorney who represented Burge and several other of the defendant officers[6] cross-examined Wilson.  Kunkle's cross-examination of Wilson at the first civil trial constituted more than 225

---

[3] In addition to Burge, the complaint named Richard Brzeczek, the Superintendent of Police, and detectives Michael McKenna, Patrick O'Hara,, John Yucaitis, Mulvaney and Ferro.  Defendants Ferro and the estate of Mulvaney were dismissed for want of service.  *See Wilson*, 6 F.3d at 1241.

[4] Specifically, "the jury found that while the City of Chicago had a de facto policy authorizing its police officers physically to abuse persons suspected of having killed or injured a police officer . . . . the policy had not been a direct and proximate cause of the physical abuse visited on Wilson."  *Wilson*, 6 F.3d at 1236.

[5] Kunkle had been the prosecutor in Wilson's criminal trial.

[6] According to Burge's Response, Kunkle represented Burge, McKenna, O'Hara and Yucaitis at the second civil trial.  *See Burge's Response to Government's Motion* ("Resp.") at 5.

pages of transcript and more than 200 pages at the second trial. Mem. at 9. Because his criminal case was on appeal at the time of his second civil rights trial, Wilson, with the help of his attorney, invoked his privilege against self-incrimination ("the Fifth Amendment") in response to certain questions. *Id*. at 1237; *see also* Resp. at 5.

### C.    The Police Board Proceedings

After the second trial in Wilson's civil case, OPS reopened its investigation into the conduct of Burge, O'Hara and Yucaitis. On November 12, 1991, the Superintendent of Police filed charges with the police board alleging that Burge violated several of the CPD's rules and regulations by, *inter alia,* participating in and sanctioning the physical abuse and mistreatment of Wilson on February 14, 1982. *See* Ex. C to Mem. The police board, acting as an administrative agency in a judicial capacity, held a hearing in February and March of 2002. *See Wilson* v. *City of Chicago*, 900 F. Supp 1015, 1019, 1025 (N. D. Ill. 1995) (finding that the police board hearing "constituted a full and fair hearing"). Burge, O'Hara and Yucaitis were again represented by Kunkle who presented evidence and cross-examined opposing witnesses on their behalf. *See* Resp. at 6; *Wilson*, 900 F. Supp. at 1019, 1025. Wilson again testified. As with his cross-examination during the civil trials, Wilson, on the advice of his criminal counsel, invoked the Fifth Amendment in response to certain questions involving the details of the crimes for which he had been convicted.[7] *See* Resp. at 6 and the Transcript of the police board hearing, attached

---

[7] For instance, Wilson invoked the Fifth Amendment in response to questions involving his actions from February 9th, the day the police officers were shot, to February 14th, the day Wilson was arrested. The following are examples of such questions:

(1)    Did anybody other than Larry Hyman when he was in the room with you with Detective O'Hara and a court reporter, did anyone else that day, February 14, 1982, ask you who was in the car with you [on the day of the shootings]? Hrg. Trans. at 235.

(2)    Why were you staying at that apartment [on the night before your arrest]? Hrg. Trans. at

as Ex. 6 thereto ("Hrg. Trans.").  Kunkle's cross-examination of Wilson at the police board hearing constitutes more than 200 transcript pages.  Mem. at 9.

On February 11, 1993, the police board issued findings setting forth its factual and legal conclusions and its final decision.  *See In the matter of the charges filed against Commander Jon Burge, Star No. 338, Department of Police, City of Chicago*, Findings & Decision, attached as Ex. D to Mem.  The police board found that Burge, O'Hara and Yucaitis had engaged in misconduct.  *See* Ex. D to Mem. at 41, 43-48; *Wilson*, 900 F. Supp. at 1019.  Burge was found to have violated CPD rules based on his physical abuse of Wilson, failing to take action to stop the other officers from abusing Wilson despite his knowledge that they were doing so, and failing to provide proper medical care to Wilson.  *Id.*  O'Hara and Yucaitis were suspended from the police force for fifteen months.  *See* Ex. D to Mem. at 58; *Wilson*, 900 F. Supp. at 1020.  Burge was "separated from his position as Commander with the Department of Police and from the services of the City of Chicago."  *Id*.  The police board's decision was upheld on administrative review by the Circuit Court of Cook County, Chancery Division, Case Nos. 93 CH 2215 and 93 CH 2265 (Feb. 10, 1994), attached as Ex. E to Mem., and the circuit court's judgment was affirmed without opinion by the Illinois Appellate Court, Case Nos. 94-0999, 94-2462, 94-2475 (1st Dist. Dec. 15. 1995), attached as Ex. F to Mem.

## ANALYSIS

---

253.
(3)    Mr. Wilson, were you worried about anything [the night before your arrest]?  Hrg. Trans. at 253.
(4)    Mr. Wilson, on the night you were staying at that apartment, you knew the police were looking for you, didn't you.  Hrg. Trans. at 254
(5)    When did you first come to that apartment that week, Mr. Wilson.  Hrg. Trans. at 254
(6)    Where did you sleep on the night of February 9, 1982? Hrg. Trans. at 254

The issues are whether Wilson's testimony is admissible as an exception to the hearsay rule because it constitutes former testimony of an unavailable witness and meets the requirements of Federal Rule of Evidence 804(b)(1); whether admitting the testimony would violate the Confrontation Clause even if admissible under Rule 804(b)(1); and whether the testimony should be excluded under Rule 403 considerations.

## I.    Rule 804(b)(1)

Rule 804(b)(1) is an exception to the hearsay rule where the declarant is unavailable as a witness.  The rule excepts

> [t]estimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross or redirect examination.

The rationale behind Rule 804(b)(1) is that "[i]f the party against whom the previous statement is now offered is the party against whom that testimony was given, it is usually compatible with fair practice to make that party bear the consequences of any deficiencies in the cross-examination or of the decision not to cross-examine."  5 J. Weinstein & M. Berger, WEINSTEIN'S FEDERAL EVIDENCE § 804.04[3][b] (Matthew Bender 2d ed. 2009); *accord* Adv. Comm. Note to Fed. R. Evid. 804 (1972 Prop. Rules) ("If the party against whom [the testimony is] now offered is the one against whom the testimony was offered previously, no unfairness is apparent in requiring him to accept his own prior conduct of cross-examination or decision not to cross-examine.").

As the proponent of the evidence which is sought to be admitted, the government bears the burden of showing that Wilson's testimony meets those requirements.  *See United States* v.

*Dent*, 984 F.2d 1453, 1466 (7th Cir. 1993). Each element of Rule 804(b)(1) must be satisfied. *See United States* v. *Salerno*, 505 U.S. 317, 321, 112 S. Ct. 317, 120 L. Ed 2d 255 (1992). The parties agree that Wilson, now deceased, is "unavailable." Rule 804(a)(4). They dispute, however, the remaining requirements, namely, whether Burge had an "opportunity and similar motive to develop" Wilson's testimony in his civil rights case and at the police board hearing.

### A.    Whether Burge Had an Opportunity to Develop Wilson's Testimony

The government contends that Burge had ample opportunity to cross examine Wilson on the issues relevant to this case, as evidenced by the extensive cross-examination actually conducted by Kunkle, who, the government notes, represented Burge in Wilson's civil rights trials and at the police board hearing. Burge contends that he did not have a meaningful opportunity to develop Wilson's testimony during the prior proceedings (a) because Kunkle was not able to craft his cross-examination with the current criminal charges in mind, *see* Resp. at 11, and (b) because Wilson took the Fifth Amendment in regard to several lines of inquiry pursued by Kunkle during Wilson's cross-examination. Resp. at 17.

### 1.    Legal Standard

Rule 804(b)(1) requires that a defendant have an opportunity for cross-examination. "Mere 'naked opportunity' to cross-examine is not enough; there must also be a perceived 'real need or incentive to thoroughly cross-examine' at the time [the former testimony was given]." *United States* v. *Feldman*, 761 F.2d 380, 385 (7th Cir. 1985) (citing *United States* v. *Franklin*, 235 F. Supp. 338, 341 (D.D.C. 1964)).

In *Feldman*, the Seventh Circuit reversed the convictions of the defendants for wire fraud on the basis that the deposition testimony given in a prior civil case was inadmissible under Rule

804(b)(1) and its admission violated the Confrontation Clause. *Id*. at 381, 389-90. The witness at issue in *Feldman* was Sanburg, the defendants' former business associate who had worked with the defendants selling futures contracts in precious metals. *Id*. at 381-82. After the company filed for bankruptcy, the Commodity Futures Trading Commission ("CFTC") filed a disgorgement action against Sanburg and the defendants. *Id*. at 382. Neither defendant attended or was represented at Sanburg's deposition. *Id*. At the time of Sanburg's deposition, no indictment had been returned against the defendants in the disgorgement case. *Id*. Unknown to the defendants, however, Sanburg had agreed with the government, a day before his deposition, to testify against them in exchange for a promise that he would not be the target of any later legal proceedings. *Id*. The Seventh Circuit ruled that the defendants did not have an "opportunity" within the meaning of Rule 804(b)(1) to cross-examine Sanburg because they were not adverse parties and had no reason to believe that Sanburg would testify against them on criminal charges. *Id*. at 385.

### 2. Burge's Need and Incentive to Cross-Examine Wilson at the Time of the Prior Testimony

Burge argues that, like the *Feldman* defendants, at the time of the earlier testimony he was not the subject of any criminal charges and could not craft his cross-examination of Wilson with a potential criminal case in mind. *See* Resp. at 11. Burge's reliance on *Feldman* is unpersuasive because the court's decision did not rest on the potentiality of criminal charges. Rather, *Feldman* requires an inquiry into need and incentive. Unlike the defendants in Feldman, Burge had real need and incentive to develop Wilson's testimony. In Wilson's civil rights case, Burge was potentially liable for substantial damages. Wilson's testimony was also adverse to Burge's interests at the police board hearing, through which Burge ultimately lost his position

11

with the CPD. Furthermore, Burge knew or reasonably should have anticipated that Wilson's testimony in his civil rights case could (and indeed would) encourage other potential plaintiffs to file similar suits, spark an internal police board investigation into his conduct, and form the basis of a later criminal prosecution. Thus, Burge had a real need and heightened incentive to thoroughly cross-examine Wilson as to Burge's alleged role in his torture and physical coercion. Lastly, as the government points out, the fact that Kunkle actually undertook vigorous and lengthy cross-examinations of Wilson during the proceedings at issue shows that Burge realized his need and incentive to develop Wilson's testimony and that he exercised his opportunity to do so.

### 3. Wilson's Invocation of His Right to Remain Silent

Ordinarily, that Burge actually undertook an extensive cross-examination of Wilson would foreclose any need for the court to continue the opportunity inquiry. *See* 1 J. Weinstein & M. Berger, WEINSTEIN'S EVIDENCE MANUAL §17.02[3] (Matthew Bender 2009) ("[I]n virtually every case of actual cross-examination, direct examination or redirect cross-examination, the former testimony exception will be satisfied."); *United States* v. *Garcia*, 117 Fed. Appx. 162, 164 (2d Cir. 2004) ("[T]he opportunity for cross-examination is generally satisfied when the defense is given a full and fair opportunity to probe and expose the infirmities of testimony through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." (internal citations and quotations omitted)). In this case, however, Burge contends that Wilson's repeated invocation of the Fifth Amendment denied him a full and fair opportunity to develop Wilson's testimony during the prior proceedings. Resp. at 17. The government contends that the lines of inquiry in which Wilson

12

asserted his Fifth Amendment privilege were principally about commission of the murders of

Officers Fahey and O'Brien and Wilson's actions prior to his arrest on February 14th, which

have no bearing on this case. To the extent any unanswered question might be relevant to

Wilson's motive to fabricate, the government argues those lines of inquiry are collateral to the

direct testimony. Thus, it contends, invocation of the Fifth Amendment privilege does not

foreclose admission of the evidence. Government's Reply in Support of its Motion in Limine

("Reply") at 11-13.

Acknowledging that the Confrontation Clause does not prohibit the admission of former

testimony if the lack of opportunity to cross-examine concerned collateral matters,[8] Burge argues

that the matters are not collateral and, even if they are, Rule 804(b)(1) does not permit it, "given

*Salerno*'s command that Rule 804(b)(1) be applied as written." Resp. at 16. [9] In addition to

---

[8] Although a trial court may strike a witness's testimony when he refuses to answer questions based on the Fifth Amendment, "striking the witness's entire testimony is an extreme sanction." *United States* v. *Kaufmann*, 985 F.2d 884, 898 (7th Cir.1993) (quoting *United States* v. *Lord*, 711 F.2d 887, 892 (9th Cir. 1983)). "[W]here the witness' refusal to answer relates only to collateral matters, such as credibility, there is little danger to the defendant." *Id.* (citing *United States* v. *Zapata*, 871 F.2d 616, 624 (7th Cir. 1989)); *United States* v. *McClurge*, 311 F.3d 866, 873-74 (7th Cir. 2002) ("When determining the constitutional implications of a witness's refusal to answer questions, courts have properly drawn a distinction between cross-examination questions that are related to the witness's direct testimony and cross-examination questions that are merely collateral to the witness's direct testimony.") (citing *Zapata*, 871 F.2d at 624)); *United States* v. *Castello*, 830 F.2d 99, 101 (7th Cir. 1987) ("[A] district court should not strike relevant and competent direct examination testimony where a witness on cross-examination invokes the privilege against self-incrimination with respect to collateral questions which relate only to his credibility and do not concern the subject matter of his direct examination."). Accordingly, the Confrontation Clause does not prohibit the admission of the testimony of an unavailable witness who, in a prior proceeding, took the Fifth Amendment as to matters collateral to the witness's direct testimony.

[9] In *Salerno*, the Supreme Court reversed the Second Circuit's determination that testimony given before a grand jury was admissible under Rule 804(b)(1) because it failed to consider whether the government had a similar motive in developing the testimony during the grand jury proceedings. *Salerno*, 505 U.S. at 320. Presumably, Burge is referring to the Court's observation that "[w]hen Congress enacted the prohibition against admission of hearsay in Rule 802, it placed 24 exceptions in Rule 803 and 5 additional exceptions in Rule 804. Congress thus presumably made a careful judgment as to what

generally objecting to Wilson's testimony based on his repeated invocation of the Fifth Amendment, Burge identifies eight specific lines of inquiry which he was unable to pursue, arguing that they are relevant to Wilson's motive to fabricate:

(1)     Wilson's "guilty state of mind *after* the murders and while he was in police custody." Resp. at 17.

(2)     Wilson's "arrest and custodial interrogation on February 14, 1982." *Id*. at 18. For example, "whether he had admitted having a stolen, fully loaded gun in his possession when he was arrested." *Id*.

(3)     Wilson's "court-reported statement." *Id*. at 19. For example, " whether he had lied to the police while in custody on February 14, 1982." *Id*.

(4)     The scar on Wilson's forehead. *Id*. at 19. For example, when and how he got the scar and whether the police had caused it. *Id*.

(5)     Whether Wilson "sustained any injuries as a result of a physical struggle with Officer Fahey or from stealing Officer Fahey's sharp-edged weapon." *Id*.

(6)     Whether Wilson had seen alligator clips in prison to facilitate smoking marijuana.[10] *Id*.

---

hearsay may come into evidence and what may not. To respect its determination, we must enforce the words that it enacted." *Id*. at 322.

[10] The government argues that whether Wilson had observed prisoners smoking marijuana with alligator clips is irrelevant to the issue of whether Burge or other Chicago police officers used alligator clips to administer electronic shocks to Wilson while in custody at Area Two. Furthermore, the government notes that Wilson did answer several of Kunkle's follow-up questions regarding alligator clips. *See* Reply at 12 n.23. Burge has not explained how responses to the unanswered questions might make any fact in controversy more or less likely.

(7)     William Coleman's testimony "that he was incarcerated with Wilson and

        discussed a plan to escape from jail with Wilson, " *id.* at 19, and that

        Wilson told him that he "had actually draped himself on the radiator to

        inflict the burns on himself as a means of getting out of the confession." [11]

        *Id.* at 20.

(8)     Wilson's other "acts and crimes of dishonesty." *Id.* For example, whether

        Wilson had stolen a gun when arrested, committed an armed robbery, or

        falsely portrayed himself as a postal worker in order to conduct a burglary.

        *Id.*

*See* Resp. at 17-20.

The government contends these matters are collateral to the relevant portions of Wilson's

direct testimony, namely whether Burge participated in and was complicit in Wilson's physical

coercion, abuse or torture while he was a suspect at Area Two. Reply at 11. Furthermore, the

government points out, Kunkle repeatedly induced Wilson to invoke his privilege against self-

incrimination in order to discredit Wilson. *See id.* at 11-12.

Burge's argument suggests that Rule 804(b)(1) analysis should be divorced from the

Confrontation Clause analysis, such that any inability to cross-examine, even on collateral

matters, runs afoul of the Rule even though it is consistent with the Constitution. Neither the

---

[11] Burge acknowledges that both the police board and the Special State's Attorney [at the police board hearing] rejected Coleman's testimony as not credible. Resp. at 20 n.6. Furthermore, the government points out that, in regard to Wilson's civil rights case, the Seventh Circuit also found Coleman's testimony incredible. Reply at 12 n.24. (Actually, the court only ruled that the district judge had improperly excluded evidence of Coleman's reputation for untruthfulness. 6 F.3d at 1239). Burge, in any event, fails to make a rational connection between a plan to escape from prison with Coleman and the events occurring at the interrogation that would suggest relevance of this line of questioning.

parties nor the court has found case authority addressing, apart from a Confrontation Clause analysis, the effect under Rule 804(b)(1) of a witness's invocation of the Fifth Amendment on the admissibility of that testimony in a later proceeding. Burge's argument is unpersuasive.

The question under Rule 804(b)(1) is whether Burge had the opportunity to fully develop Wilson's testimony on *relevant* issues. *See, e.g.*, *Clay* v. *Buzas*, 208 F.R.D. 636, 638 (D. Utah 2002) ("[I]n this case, the question as to the admissibility of the deposition, is whether the defendants have had adequate motive and opportunity in the [prior] case to develop the witness's testimony relevant to this case." (internal citations omitted)); *Qatar Nat'l Navigation & Transp. Co.* v. *Citibank*, No. 89 C 464, 1996 U.S. Dist. LEXIS 15306, at *5 (S.D.N.Y. Oct. 16, 1996) ("If for any reason . . . . the defendant in this federal action was denied the opportunity fully to develop [the witness's] testimony on relevant issues, the deposition fails to pass muster under Rule 804(b)(1), and would not be admissible at trial." (internal citations omitted). "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Collateral matters are, by definition, not relevant evidence. *See* 4 WEINSTEIN'S FEDERAL EVIDENCE § 607.06[3][a] ("The general test of whether evidence is collateral is whether the contradictory fact could have been shown for any purpose independently of the contradiction."). Rule 804(b)(1) addresses relevant evidence, not collateral matters. Therefore, Burge's reliance on *Salerno* to argue that the Rule must be strictly construed is without merit.

Where Wilson took the Fifth Amendment in response to questions regarding the details of the murders or his activities prior to his arrest on February 14th, the lines of questioning are

irrelevant to whether Burge and others tortured Wilson, as the court of appeals announced in *Wilson*. *See Wilson*, 6. F.3d at 1237 (finding that "evidence of the ugly details of [Wilson's] crimes" were not directly relevant to "whether Wilson had in fact been tortured").

To the extent that Burge wants to impeach Wilson by demonstrating motive to fabricate, the questions Wilson refused to answer concern matters well within the court's discretion to exclude as irrelevant and cumulative. For example, Wilson refused to answer questions regarding any injuries he may have sustained before being taken into police custody, but Burge has never contended that Wilson was seriously injured before being interrogated at Area Two and does not argue that he intends to take such a position in this case.[12]

Insofar as answers to other questions might have borne on Wilson's motive and bias, the evidence is cumulative in light of the government's willingness to admit that Wilson was convicted of the O'Brien and Fahey murders.[13] The jury will have undisputed information that will allow them to make a discriminating appraisal of Wilson's motives and bias. *See Kaufmann*, 985 F.2d at 898 (upholding trial court's decision not to strike testimony of a witness who invoked the Fifth Amendment as to questions regarding his criminal activity because the jury was aware that he was the subject of a criminal investigation); *United States* v. *Salah*, 462 F. Supp. 2d 915, 922 (N.D. Ill. 2006) (St. Eve, J.) (finding that defendant's Sixth Amendment rights were not violated by the use of substitutions for classified information at trial, rather than the

---

[12] The Illinois Supreme Court reversed Wilson's conviction in his criminal case based on its finding that the government essentially conceded that Wilson's injuries were incurred while in police custody. *See supra* at 5.

[13] The government also notes that it is willing to consider the admissibility of Burge's claim that Wilson concealed his involvement in another murder, causing Alton Logan to be falsely convicted. *See* Reply at 10.

actual classified information underlying the substitutions, because the defendant would have an

opportunity to cross-examine witnesses and the impeaching facts would be before the jury in the

form of admissions).  In addition, Burge may introduce Wilson's invocation of the Fifth

Amendment if it was in response to questions regarding whether Burge tortured or physically

coerced him or knew that other Chicago police officers were doing so.  *See United States* v.

*Kaplan*, 832 F.2d 676, 684 (1st Cir. 1987) (invocation of the Fifth Amendment during cross-

examination may be considered by the jury as a form of impeachment), *cited* in *United States* v.

*Hartmann*, 958 F.2d 774, 789 (7th Cir. 1992)).

Burge also argues that he will be foreclosed from attacking Wilson's character for

truthfulness based on prior acts and crimes of dishonesty as permitted by Rule 608(b) and

precluded from offering evidence under Rule 609(b) of convictions of crimes now more than 10

years past.  Prior acts of dishonesty are collateral matters and subject to Rule 403's requirement

"that probative value not be outweighed by danger of unfair prejudice, confusion of issues, or

misleading the jury . . . ."  Adv. Comm. Note to Fed. R. Evid. 608 (1972 Prop. Rules).  Plainly,

refusing the admission of Wilson's former testimony for lack of ability to attack Wilson's

character for truthfulness would give undue weight to the value of such evidence.  Were Wilson

alive and available to testify, he would be able still to assert a Fifth Amendment privilege as to

any prosecutable crime.  As to convictions otherwise admissible under Rule 609, Burge has not

demonstrated that the 10-year limit would date from the admission of the testimony into

evidence in this case rather than the date Wilson's testimony was given, and the court will not so

assume.

For all of these reasons, the court concludes that Wilson's invocation of his privilege

against self-incrimination did not deny Burge a meaningful opportunity to develop the relevant portions of Wilson's former testimony.

## B.  Whether Burge Had a Similar Motive to Develop Wilson's Testimony

In addition to determining that Burge had a meaningful opportunity to develop Wilson's testimony at the prior proceedings, Rule 804(b)(1) requires that the court determine whether Burge had a similar motive in developing the testimony.  "In determining whether a party had such a motive, a court must evaluate not only the similarity of the issues, but also the purpose for which the testimony was given."  *Feldman*, 761 F.2d at 385 (citing *Zenith Corp.* v. *Matsushita Electric Indus.* Co., 505 F. Supp. 1190, 1251 (E.D. Pa. 1980)); *accord United States* v. *Reed*, 227 F.3d 763, 768 (7th Cir. 2000).  In *Feldman*, the Seventh Circuit announced four factors for the court to consider in determining whether the party opposing the admission of testimony under Rule 804(b)(1) had a similar motive: (1) the type of proceeding in which the testimony [was] given, (2) trial strategy, (3) the potential penalties or financial stakes, and (4) the number of issues and parties.[14]  *Id.* (internal citations and quotations omitted).

---

[14]Although the government contends that the *Feldman* factors are satisfied in this case, it urges that the *Feldman* analysis is unique to cases where the criminal defendant did not cross-examine the witness at the prior proceeding. Mem. at 12 n.3.  The government contends that here the court should employ a more generalized inquiry, keeping in mind that a "similar motive does not mean identical motive," citing *United States* v. *Miles*, 290 F.3d 1341, 1353 (11th Cir. 2002), and that where the operative facts and legal issues are the same, a similar motive exists, citing *United States* v. *Koon*, 34 F.3d 1416 (9th Cir. 1994).

It is true that, unlike Burge, the criminal defendants in *Feldman* did not attend the prior proceeding (a civil deposition) in which the testimony was given and consequently did not cross-examine the witness.  *See Feldman*, 761 F.2d at 381, 385.  The court is not persuaded by the government's argument, however, because the Seventh Circuit employed the same analysis to determine whether Rule 804(b)(1)'s similar motive requirement was met in *Reed*, a case in which the criminal defendant was present when the former testimony was given (during his first criminal trial) and did cross-examine the witness.  *See Reed*, 227 F.3d at 768.  Thus, the *Feldman* analysis appears to apply regardless of whether the party opposing the admission exercised his opportunity to cross-examine the witness.  Accordingly, the court will undertake the four-factor *Feldman* analysis.

**1.      The Type of Proceedings in which Wilson's Testimony was Given**

Burge contends that he did not have a similar motive to develop Wilson's testimony in the prior proceedings because they were civil, not criminal, in nature.  Resp. at 19-11.  Rule 804(b)(1) does not prohibit the admission of testimony from a prior civil proceeding in a later-filed criminal case where the motive underlying the cross-examination is similar.  *E.g., United States* v. *McClellan*, 868 F.2d 210 (7th Cir. 1989); *accord United States* v. *Vartanian*, 245 F.3d 609, 614 (6th Cir. 2001) (testimony given during a civil suit and admitted into evidence during a subsequent criminal trial was admissible under Rule 804(b)(1) because defendant had a similar motive in cross-examining the witness regarding the conduct at issue in the criminal trial). *McClellan* involved an appeal from the defendant's criminal case for fraud on the basis that the trial court erred in admitting incriminating hearsay testimony given by an unavailable witness in a prior adversary proceeding in a bankruptcy court.  *Id.* at 214.  The prior adversary proceeding was filed by the defendant's creditors in an effort to have his debts declared nondischargeable on the basis of alleged fraudulent transfers.  *Id.* at 212.  The defendant's ex-wife had testified in the adversary proceeding that the defendant told her she should not be concerned about his risky investments because he was using "legal loopholes" and that if the investments failed he would liquidate their assets, "stash them, and declare bankruptcy and let the courts take the rest."  *Id.* at 214.  The Seventh Circuit ruled that the testimony fell within the Rule 804(b)(1) exception, finding that "[t]he circumstances of [the] adversary proceeding provided ample motive to impeach [the witness]; several million dollars of debt were at issue and [the witness's] testimony undermined [the defendant's] credibility, clearly damaging his case."  *Id*.  This case is

indistinguishable from *McClellan*.[15]

Like McClellan, Burge had every reason to be motivated to cross-examine at the prior civil proceedings. Millions of dollars in compensatory and punitive damages were at issue in Wilson's civil rights case[16] and Burge's position with the Chicago Police Department was at stake in the police board hearing. Thus, Burge faced significant personal and financial penalties in both proceedings. Furthermore, Wilson's testimony undermined Burge's credibility in both of those proceedings and clearly damaged his case because it constituted evidence that Burge physically coerced, abused or tortured Wilson and knew that other officers were doing the same. Moreover, Burge had reason to know that allegations of torture, if proved, potentially subjected him to criminal prosecution. Therefore, the fact that Wilson's former testimony was given at civil proceedings is immaterial to its admissibility under Rule 804(b)(1).[17]

### 2. Burge's Trial Strategy at the Prior Proceedings

The government contends that Burge's trial strategy in the prior civil rights case and at the police board hearing is identical to that in this case: to deny that Burge physically coerced or

---

[15] Burge attempts to distinguish *McClellan*, arguing that the defendant's principal argument against admission of the testimony was based on the Confrontation Clause, rather than Rule 804(b)(1) and because the witness there did not refuse to answer questions based on the Fifth Amendment. Resp. at 14. The court has already determined that Wilson's invocation of his privilege against self-incrimination did not violate Rule 804(b)(1) and this case is therefore not distinguishable from *McClellan* on that basis. *See supra* at 13-19. Furthermore, the opinion in *McClellan* makes clear that the defendant argued that the testimony was inadmissible on the basis of *both* the Confrontation Clause and Rule 804(b)(1) and that the Seventh Circuit analyzed the admissibility of the evidence according to Rule 804(b)(1)'s requirements. *McClellan*, 868 F. 2d at 215. Thus, the court is unpersuaded by Burge's argument.

[16] *See* Ex. 1 to Mem., Compl. at Counts I and II.

[17] Burge also appears to argue that the purposes of the prior civil proceedings were different from this criminal case. Resp. at 10-11. The proper inquiry, however, is whether the purpose for which the former testimony was given in the prior proceedings is similar. The court finds that it is, because in both Wilson's civil rights case and at the police board hearing the proponent of his testimony sought to prove that Burge physically coerced and tortured Wilson.

tortured Wilson or knew that other officers were doing the same by impeaching Wilson's credibility. Mem. at 13; Reply at 1. Burge does not deny that this was and is his trial strategy. Burge argues that he is at a disadvantage because Kunkle's "motive" in the prior proceedings was to make the jury hate Wilson, which the Seventh Circuit later determined resulted in the erroneous admission of evidence. Resp. at 13. *See also Wilson*, 6 F.3d at 1236-37. Thus, Burge argues, if Wilson were alive today, Burge's current counsel would undertake a different cross-examination. *Id.*

The hundreds of pages of testimony in the record belie Burge's argument that Kunkle's strategy diverted him from exposing the infirmities of Wilson's testimony in regard to the operative issue--whether he was physically coerced or tortured by Burge and other officers. Moreover, as pointed out in *Feldman*, courts have admitted witness testimony from a prior proceeding "even though the witness was subject to a less searching cross-examination than would have been the case at trial." 761 F.2d at 380 (citing cases). All Rule 804(b)(1) requires is that Burge had a similar motive to discredit Wilson's testimony on this issue. Burge had a similar motive. Thus, consideration of this factor also weighs in favor of admitting Wilson's testimony under Rule 804(b)(1).

### 3.    The Number of Issues and Parties Involved in the Prior Proceedings[18]

The government argues that this factor weighs in favor of admitting Wilson's testimony because the primary issue in the prior proceedings is also the primary, and dispositive, issue in this case: whether Burge physically coerced, abused or tortured Wilson or knew that other

---

[18] The court omits a discussion of the third *Feldman* factor here as the significant penalties and financial stakes faced by Burge are discussed *supra* at 21.

Chicago police officers were doing the same. Burge does not dispute that the issues in this case and the prior proceedings are the same. Rather, he contends that this factor weighs against admission of his testimony because he was represented jointly with other officers alleged to have been involved in the torture in Wilson's civil rights case and at the police board hearing. This is a distinction without a difference, however, because Burge fails to explain how his interests diverged from the other officers in any way. Accordingly, this factor also weighs in favor of admitting Wilson's former testimony under Rule 804(b)(1).

Because the court has determined Burge had a meaningful opportunity and similar motive to develop Wilson's testimony in his civil rights case and at the police board hearing, Wilson's testimony satisfies Rule 804(b)(1)'s requirements and may properly be admitted at trial.[19]

## II. Whether the Admission of Wilson's Testimony would Violate the Confrontation Clause

As indicated above, Burge acknowledges that the Confrontation Clause permits the admission of former testimony of an unavailable witness where the defendant has had a full and fair opportunity to cross-examine. *Crawford* v. *Washington*, 541 U.S. 36, 59, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Because this court has already determined that Burge did have a full and fair opportunity to examine Wilson, under the relevant factors of opportunity and similar motive, the court need not further address Burge's Confrontation Clause argument.

## III. Whether Rule 403 Considerations Weigh in Favor of Excluding Wilson's Testimony

Burge argues that even if admissible under Rule 804(b)(1), Wilson's testimony should be

---

[19] All arguments made and authorities cited by Burge not discussed above have been considered and found unpersuasive.

excluded based on Rule 403 considerations. Rule 403 of the Federal Rules of Evidence provides

> [a]lthough relevant, evidence may be excluded if its probative value is
> substantially outweighed by the danger of unfair prejudice, confusion of the
> issues, or misleading the jury, or by considerations of undue delay, waste of time,
> or needless presentation of cumulative evidence.

Burge describes Wilson as an illiterate convicted felon who resorted to using gestures and street slang while testifying. Resp. at 21-22. Burge contends that he will be unfairly prejudiced by having Wilson's testimony read into evidence by a "clean cut FBI Agent or federal prosecutor" because the jury will not be able to evaluate Wilson's demeanor and attitude while testifying. *Id*. Burge cites no authority to support this position. Moreover, the Advisory Committee Notes to Rule 804 explain that when former testimony satisfies the conditions of that rule "[o]nly demeanor has been lost, and that is inherent in the situation." Adv. Comm. Note to Fed. R. Evid. 804 (1972 Prop. Rules) . In any case, Burge's argument goes to the weight of Wilson's testimony, not its admissibility. To that end, the court has already determined that the jury will have adequate facts with which to evaluate Wilson's credibility. Any prejudice arising from the government's choice of a reader can be addressed via motions in limine concerning the individual reader and jury instructions.

Burge also argues that Wilson's testimony should be excluded because it is cumulative. At this point, neither party has identified any witness who will also testify to the physical coercion and torture of Wilson while he was detained at Area Two. Accordingly, Wilson's testimony is not cumulative. The court defers any further such rulings until closer to trial.

## CONCLUSION AND ORDER

Because the court finds that the elements of Federal Rule of Evidence 804(b)(1) are satisfied with respect to Wilson's former testimony, and that the admission of such testimony

would not violate the Confrontation Clause or Rule 403, the government's motion in limine [#21] is granted. Wilson's testimony shall be admissible to the same extent as if taken in this case, subject to any valid particularized objections, such as relevance, presented in motions in limine. The parties are directed to work together on a joint stipulation regarding the relevant portions of Wilson's testimony to be introduced at trial.

Dated: April 23, 2009          Enter: _____

                                    JOAN HUMPHREY LEFKOW
                                    United States District Judge