# Exhibit 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE JOAN H. LEFKOW

MAGISTRATE JUDGE ASHMAN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | 08 CR 846 |
| | ) | |
| v. | ) | |
| | ) | Violations: Title 18, United States Code, Sections 1512(c)(2) and 1621(1) |
| JON BURGE | ) | UNDER SEAL |

FILED
OCT 1 6 2008 TC
10-16-08
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## COUNT ONE

The SPECIAL FEBRUARY 2008-2 GRAND JURY charges:

1. At times material to this indictment:

a. During the period from approximately 1970 to approximately 1993, defendant JON BURGE was a Chicago Police Officer.

b. The Chicago Police Department assigned its detectives to different geographical divisions known as "Areas," which were based at different police stations.

c. Area Two was located on the south side of Chicago. Until approximately 1983, it was located at 9059 S. Cottage Grove Ave. in Chicago. Since 1983, it has been located at 727 E. 111th Street in Chicago.

d. From approximately 1972 to 1974, defendant JON BURGE worked as a detective assigned to Area Two. From approximately 1977 to 1980, JON BURGE held the rank of sergeant and was assigned to Area Two. From approximately 1981 to 1986, JON BURGE held the rank of Police Lieutenant, and was assigned as the supervisor of detectives assigned to the Violent Crimes Unit in Area Two.

2. At all times material to the indictment, federal law (including the United States Constitution as well as various federal statutes), Illinois law (including the Illinois constitution), and

Chicago police regulations prohibited torture, physical abuse, and other use of excessive force by police officers.

3. During the time that defendant JON BURGE was assigned to Area Two, JON BURGE was present for, and at times participated in, the torture and physical abuse of a person being questioned on one or more occasions. In addition, during the time he worked as the lieutenant supervising Area Two Violent Crimes detectives, JON BURGE was aware that detectives he was supervising engaged in torture and physical abuse of a person being questioned on one or more occasions.

4. After 1991, a series of civil lawsuits were filed in Chicago alleging that defendant JON BURGE and other police officers who were or had been under his command participated in acts of torture and physical abuse of people in custody.

5. One of those lawsuits, filed in 2003, in the United States District Court in Chicago, was entitled *Hobley v. Jon Burge, et al.*, No. 03 C 3678. The lawsuit included allegations that Madison Hobley had been tortured and abused by police officers at Area Two in January 1987 in order to coerce a confession, including an allegation that police officers had placed a plastic bag over Hobley's head until Hobley lost consciousness. The lawsuit claimed that defendant JON BURGE was aware of a pattern of torture and abuse at Area Two.

6. As part of civil discovery in the *Hobley* case, written interrogatories were served upon defendant JON BURGE. It was material to the outcome of the civil lawsuit whether in fact JON BURGE knew of or participated in torture and physical abuse of persons in Chicago Police Department custody. JON BURGE provided written answers to the interrogatories.

7. On or about November 12, 2003, defendant JON BURGE submitted "Defendant Jon Burge's Answers to Plaintiffs' [sic] First Set of Interrogatories," which included certain answers, to wit:

> QUESTION #13: State whether you have ever used methods, procedures or techniques involving any form of verbal or physical coercion of suspects while in detention or during interrogation, such as deprivation of sleep, quiet, food, drink, bathroom facilities, or contact with legal counsel and/or family members; the use of verbal and/or physical threats or intimidation, physical beatings, or hangings; the use of racial slurs or profanity; the use of physical restraints, such as handcuffs; the use of photographs or polygraph testing; and the use of physical objects to inflict pain, suffering or fear, such as firearms, telephone books, typewriter covers, radiators, or machines that deliver an electric shock. For each such use of verbal or physical coercion identify the detainee(s) and/or suspects(s), any other officers or individuals involved, the date of the incident, the specific conduct in which you or any other officer engaged, and whether you or any other officer was the subject of any complaint or discipline as a result of said conduct.
>
> ANSWER: Defendant objects to Interrogatory no. 13 because said question is overly broad, unduly vague, ambiguous and calls for a legal conclusion. Subject to and without waiving said objection, *I have never used any techniques set forth above as a means of improper coercion of suspects while in detention or during interrogation.*
>
> QUESTION # 14: State whether you were aware of any Chicago Police Officer, including but not limited to officers under your command, ever using methods, procedures or techniques involving any form of verbal or physical coercion of suspects while in detention or during interrogation, such as deprivation of sleep, quiet, food, drink, bathroom facilities, or contact with legal counsel and/or family members; the use of verbal and/or physical threats or intimidation, physical beatings, or hanging; the use of racial slurs or profanity; the use of physical restraints, such as handcuffs, the use of photographs or polygraph testing; and the use of physical objects to inflict pain, suffering or fear, such as firearms, telephone books, typewriter covers, radiators, or machines that deliver an electric shock. For each such use of verbal or physical coercion of which you were aware identify the detainees(s) and/or suspect(s), any other officers or individuals involved, the date of the incident, the specific conduct in which you or any other officer engaged, and whether you or any other officer was the subject of any complaint.

<u>ANSWER:</u> Defendant objects to Interrogatory no. 14 because said question is overly broad, unduly vague, ambiguous and calls for a legal conclusion. Subject to and without waiving said objection, *I am not aware of any*.

8. The italicized portion of these answers were false, for in truth and fact, as defendant JON BURGE then and there well knew, he had participated in one or more incidents of physical coercion of suspects while the suspects were in detention and/or were being interrogated, and was aware of one or more other such events involving the abuse or torture of people in custody.

9. On or about November 12, 2003, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

JON BURGE,

defendant herein, did corruptly obstruct, influence, and impede an official proceeding, and attempt to do so, in that the defendant signed answers containing false statements in response to interrogatories in the case of *Hobley v. Jon Burge, et. al.*, case no. 03 C 3678, and caused them to be served upon counsel for the plaintiff;

In violation of Title 18, United States Code, Section 1512(c)(2).

**COUNT TWO**

The SPECIAL FEBRUARY 2008-2 GRAND JURY further charges:

1. The allegations of Paragraphs 1 through 6 of Count One of this indictment are hereby realleged and incorporated herein as if fully set forth herein.

2. On or about November 25, 2003, defendant JON BURGE submitted "Defendant Jon Burge's Answers to Plaintiff's Second Set of Interrogatories," which included certain answers, to wit:

> QUESTION # 3: Is the manner in which Madison Hobley claims he was physically abused and/or tortured as described in Plaintiff's Complaint (including, for example, the allegation of "bagging" with a typewriter cover) consistent with any other examples of physical abuse and/or torture on the part of Chicago Police officers at Area 2 which you observed or have knowledge of? Please explain your answer and identify any other instances or examples of the same or similar physical abuse and/or torture.
>
> ANSWER *I have not observed nor do I have knowledge of any other examples of physical abuse and/or torture on the part of Chicago Police officers at Area 2.*

3. The italicized portion of this answer was false, for in truth and fact, as defendant JON BURGE then and there well knew, he had observed, participated in, and had knowledge of one or more other examples of physical abuse and torture on the part of Chicago police officers at Area Two, including, but not limited to, abuse of a person by "bagging."

4. On or about November 25, 2003, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

JON BURGE,

defendant herein, having taken an oath to testify truthfully before a competent officer, or person, in a case in which a law of the United States authorizes an oath to be administered, subscribed to sworn

answers to Plaintiff's Second Set of Interrogatories in *Hobley v. Jon Burge, et. al.*, case no. 03 C 3678, and willfully and contrary to such oath stated and subscribed to the material matter set forth above in his answer to Question 3 which he did not believe to be true, when in truth and fact, as defendant JON BURGE then and there well knew, he had observed, participated in, and had knowledge of one or more other examples of physical abuse and torture on the part of Chicago police officers at Area Two, including, but not limited to, abuse of a person by "bagging";

In violation of Title 18, United States Code, Section 1621(1).

**COUNT THREE**

The SPECIAL FEBRUARY 2008-2 GRAND JURY further charges:

1. The allegations of Paragraphs 1 through 3 of Count Two of this indictment are hereby realleged and incorporated herein as if fully set forth herein.

2. On or about November 25, 2003, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

JON BURGE,

defendant herein, did corruptly obstruct, influence, and impede an official proceeding, and attempt to do so, in that the defendant signed answers containing false statements in response to interrogatories in the case of *Hobley v. Jon Burge, et. al.*, case no. 03 C 3678, and caused them to be served upon counsel for the plaintiff;

In violation of Title 18, United States Code, Section 1512(c)(2).

A TRUE BILL:

____________________________
FOREPERSON

____________________________
UNITED STATES ATTORNEY

# Exhibit 2

**H**
Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern Division.
UNITED STATES of America, Plaintiff,
v.
BENEVOLENCE INTERNATIONAL FOUNDATION, INC., and Enaam M. Arnaout a/k/a ABU Mahmoud a/k/a Abdel Samia, Defendant.
**No. 02 CR 414.**

Sept. 13, 2002.

MEMORANDUM OPINION AND ORDER

GOTTSCHALL, District J.

*1 Defendants Benevolence International Foundation, Inc. ("BIF") and Enaam Arnaout, BIF's Chief Executive Officer, are charged with making and using false declarations signed by Arnaout under penalty of perjury, in violation of 18 U.S.C. § 1623. Defendants have moved to dismiss the indictment. For the reasons set forth below, the motion is granted.

*Background*

Defendant BIF is an Illinois not-for-profit charitable organization incorporated in 1992. Defendant Arnaout has been employed with BIF since 1993. He has been the CEO since 1998. On December 14, 2001, pursuant to the emergency search provisions of the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1801*et seq* ., the FBI seized financial and business records from BIF's Palos Hills, Illinois office. The FBI also searched Arnaout's home and seized certain of his and his family's personal effects. On the same date, acting pursuant to the International Emergency Economic Powers Act, 50 U.S.C. § 1701*et seq.*, the Treasury Department issued an order blocking BIF's assets and records pending further investigation.

On January 30, 2002, BIF filed suit against federal government officials, charging that their actions violated the United States Constitution and other federal laws. *See Benevolence Int'l Found., Inc. v. Ashcroft,* No. 02 C 763 (N.D. Ill. filed Jan. 30, 2002). On March 26, 2002, BIF filed a motion for preliminary injunction seeking the return of its seized assets and a lifting of the blocking order. This motion included a supporting memorandum and several exhibits, one of which was an unsworn declaration signed by Arnaout "under penalty of perjury." On April 5, 2002, BIF filed a corrected memorandum, which included a slightly revised declaration signed by Arnaout again "under penalty of perjury."

On April 29, 2002, the government filed a criminal complaint against BIF and Arnaout, alleging that they made and used false material declarations in violation of § 1623. On May 29, 2002, a grand jury returned a two-count indictment-each count charging both defendants with violations of § 1623, based on the original and the corrected declarations.

*Analysis*

Defendants argue that the indictment is deficient based on the Supreme Court's decision in *Dunn v. United States,* 442 U.S. 100 (1979), which construed § 1623. 18 U.S.C. § 1623, captioned "False declarations before grand jury or court," provides:

(a) Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information ... knowing the same to contain any false material declaration, shall be fined under this title or imprisoned not more than five years, or both.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

28 U.S.C. § 1746, in turn, provides:

***2** Wherever ... any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration ... in writing of the person making the same (other than a deposition ...), such matter may, ... be supported, evidenced, established, or proved by the unsworn declaration ... in writing of such person which is subscribed by him, as true under penalty of perjury ....

Defendants are being prosecuted under § 1623 for allegedly false statements in Arnaout's unsworn declarations filed on March 26 and April 5, 2002. They argue that the Supreme Court's decision in *Dunn* mandates dismissal of the indictment, because, under the Supreme Court's interpretation of § 1623, Arnaout's declarations were not made or used "in any proceeding before or ancillary to any court or grand jury" as that statute requires. The government responds with two arguments. First, it argues that because the language of the indictment mirrors the relevant language of § 1623, the indictment must necessarily survive a motion to dismiss, and any questions of the statute's application to the defendants' conduct are for the trial jury. Second, the government argues that *Dunn* and its progeny do not apply to this case.

I. Mirroring the Statute

The court can dispose of the government's first argument relatively quickly. Count One of the indictment alleges that on or about March 26, 2002, each defendant:

Under oath, in declarations and statements under penalty of perjury as permitted under Section 1746 of Title 28, United States Code, in a proceeding before a court of the United States, knowingly made false material declarations and made and used false material declarations, to wit:

BIF is required to maintain the donations of *zakat* in a non-interest bearing account and to use those funds only to assist the poor and needy. BIF abides strictly by those requirements.

...

*BIF has never provided aid or support to people or organizations known to be engaged in violence, terrorist activities, or military operations of any nature.* BIF abhors terrorism and all forms of violence against human beings.

...

I have no idea or understanding as to why the government has taken these actions [blocking of assets] against BIF.

(Indictment, Count One ¶ 2 (emphasis in original).) [FN1] Count Two differs only in that it refers to the corrected declaration filed "[o]n or about April 5, 2002."(*Id.,* Count Two ¶ 2.) The charged statements in the corrected declaration are identical to those in the original.

FN1. Although the indictment does not specifically state it, the government has since clarified that the underlined portion of the quotation is "alleged to be false in its entirety."(Gov. Resp. Defs.' Mot. Dismiss Lack Specificity at 10.) However, the government also adds that "there is no way that the underlined sentence can be false and the remaining portions true, other than the first sentence which provides context."(*Id.* at 10-11.)

Because the indictment tracks the essential language of § 1623, the government argues, it is sufficient. In general, this is true. *See United States v. Agostino,* 132 F.3d 1183, 1189 (7th Cir.1997) ("Generally, an indictment is sufficient when it sets forth the offense in the words of the statute itself, as long as those words expressly set forth all the elements necessary to constitute the offense intended to be punished.") (internal quotation marks omitted). The government appears to argue that because the indictment tracks the words of § 1623, the court should ignore, at the pretrial stage of the case, the

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

circumstances under which the subject declarations were made, circumstances specifically described in Count One, ¶ 1(i), and Count Two, ¶ 2. The court declines to read the indictment in such a "hypertechnical manner." *See United States v. Palumbo Bros., Inc.,* 145 F.3d 850, 860 (7th Cir.1998)."[A]n indictment must be read to include facts which are necessarily implied and construed according to common sense."*Id.* (internal quotation marks omitted).*A fortiori,* it should be read to include facts clearly set forth within it. At no time in these proceedings has the government ever suggested that the subject statements were made in circumstances other than those the indictment specifically describes. The indictment sets forth the precise language alleged to violate § 1623, which is quoted verbatim from Arnaout's declarations. The indictment cites the dates of defendants' violations as March 26 and April 5, 2002, the dates on which BIF filed the original and corrected declarations, respectively. The government does not contend, and the docket sheet for the civil case does not reflect, that any court hearings with sworn testimony were held on those days. The indictment's legal conclusion-that defendants made or used false declarations "[u]nder oath, ... in a proceeding before a court"-plainly refers to the declarations filed in the civil case. This being clear and undisputed, the court cannot reasonably postpone consideration of defendants' argument that the Supreme Court's holding in *Dunn* mandates dismissal of the indictment.

II. *Dunn v. United States*

*3 In *Dunn,* the defendant Robert Dunn provided testimony to a grand jury implicating a third party who was ultimately indicted. Several months later, the third party's attorney asked Dunn to meet with him in his office. Dunn agreed, and while at the attorney's office, gave an oral statement under oath exonerating the third party. The attorney then filed a motion to dismiss the indictment against the third party, attaching a transcript of Dunn's statement as an exhibit. The government subsequently indicted Dunn for perjury in violation of § 1623 on the theory that the sworn statement was inconsistent with his prior grand jury testimony. *Dunn,* 442 U.S. at 102-04.[FN2]

FN2. Dunn was prosecuted using the method of proof contained in § 1623(c)."Under that subsection, the Government must establish the materiality and inconsistency of declarations made in proceedings before or ancillary to a court or grand jury, but need not prove which of the declarations is false." *Dunn,* 442 U.S. at 104. The government in the case at bar, in contrast, appears to be proceeding solely under § 1623(a).

Section 1623(a) differs from § 1623(c) in that subsection (a) includes a parenthetical qualifying the phrase "under oath," while subsection (c) does not. *Compare*18 U.S.C. § 1623(a) ("Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding ...."), *with id.*§ 1623(c) ("In any prosecution under this section, the falsity of a declaration ... shall be established ... by proof that the defendant while under oath made irreconcilably contradictory declarations material to the point in question in any proceeding before or ancillary to any court or grand jury."). The language in the parenthetical portion of paragraph (a) was added as part of a 1976 amendment, Public Law 94-550, passed by Congress in order to make it more convenient to verify the truth of affidavits and other routine documents. *See*H.R.Rep. No. 94-1616 (1976).

The court finds the distinction between the subsections insignificant for present purposes because, as the Supreme Court pointed out in *Dunn,*§ 1623(c) is direc-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

ted at a particular "method of proof." 442 U.S. at 104."[N]othing in the [*Dunn* ] opinion or in the statute itself suggests that § 1623(a) and § 1623(c) are directed at different categories of false statements." *United States v. Savoy,* 38 F.Supp.2d 406, 411 (D.Md.1998). The operative statutory language ("before or ancillary to any court") is found in both paragraphs. *Id.* Most importantly, the Supreme Court's holding explicitly applies to the statute as a whole. *See Dunn,* 442 U.S. at 113 ("We cannot conclude here that Congress in fact intended or clearly expressed an intent that § 1623 should encompass statements made in contexts less formal than a deposition."). This court discusses the amendment at length in the appendix to this decision.

The Supreme Court began by describing the issue before it as "the scope of the term ancillary proceeding in § 1623, a phrase not defined in that provision or anywhere else in the Criminal Code."*Id.* at 101-02.The court stated that its specific task was to determine "whether an interview in a private attorney's office at which a sworn statement is given constitutes a proceeding ancillary to a court or grand jury within the meaning of the statute."*Id.* at 102.In answering the question in the negative, the Court explicitly rejected the government's argument that, because "a false swearing in an affidavit poses the same threat to the fact-finding process as false testimony in open court[,] ... any statements made under oath for submission to a court" should fall within the scope of § 1623. *Id.* at 107."In our judgment," the Court stated, "the term 'proceeding,' which carries a somewhat more formal connotation, suggests that Congress had a narrower view when enacting § 1623."*Id.*

In support of its interpretation, the Court engaged in an extended analysis of the legislative history of § 1623, finding that Congress enacted § 1623 to alleviate the difficult evidentiary burden required to prove perjury under the existing general perjury statute, 18 U.S.C. § 1621, which contained "strict common-law requirements for establishing falsity."*Id.* at 108.However, the Court noted, § 1621 lacks the limiting phrase "in any proceeding before or ancillary to any court or grand jury."[FN3]Had Congress intended § 1623 to be as broad as § 1621, the Court reasoned, it would have used similar language. The Court noted that the term "ancillary proceeding" was intended to cover some pretrial depositions, but expressly rejected the government's argument that the term should "subsume affidavits and certifications as well."*Id.* at 110."We cannot conclude," the Court stated, "that Congress in fact intended or clearly expressed an intent that § 1623 should encompass statements made in contexts less formal than a deposition."*Id.* at 113.

FN3.18 U.S.C. § 1621 provides:

Whoever-

(1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true;

is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both. This sec-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

tion is applicable whether the statement or subscription is made within or without the United States.

The Supreme Court concluded that Dunn's "interview lack[ed] the degree of formality required by § 1623,"*id.* at 111 (internal quotation marks omitted):

[The third party's] counsel made no attempt to comply with the procedural safeguards for depositions set forth in [Fed.R.Crim.P. 15] and 18 U.S.C. § 3503. A court order authorizing the deposition was never obtained. Nor did [Dunn] receive formal notice of the proceeding or of his right to have counsel present. Indeed, [Dunn] did not even certify the transcript of the interview as accurate.

***4** *Id.* at 112.The Court concluded: "Accordingly, we hold that [Dunn's] declarations were not given in a proceeding ancillary to a court or grand jury within the meaning of the statute."*Id.* at 113.

Arguably, this court could distinguish *Dunn* on its facts and read it to stand only for the proposition that an unrepresented witness who gives a sworn statement in a third party's attorney's office without notice that the statement can be used against him and that he is entitled to an attorney cannot be prosecuted on the basis of that statement under § 1623. In these respects, the facts in the instant case may differ from the facts in *Dunn.*However, this court does not understand *Dunn*'s reading of § 1623 to be limited to the precise facts before it. The Supreme Court's holding reaches more broadly, such that courts are bound by its conclusion that § 1623 does not apply to "statements made in contexts less formal than a deposition."*Id.*[FN4]

FN4. There can be no serious argument that this language from *Dunn* is merely dicta. The Seventh Circuit has defined dictum as "a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding-that, being peripheral, may not have received the full and careful consideration of the court that uttered it." *United States v. Crawley,* 837 F.2d 291, 292-93 (7th Cir.1988) (quoting *Sarnoff v. Am. Home Prods. Corp.,* 798 F.2d 1075, 1084 (7th Cir.1986)). In *Dunn,* the Supreme Court's conclusion that § 1623 excludes declarations given in contexts less formal than a deposition, *id.* at 111-12, is at the core of its analysis and its clearly expressed reason for reversing the judgment before it.

In essence, the government makes two arguments in support of its contention that *Dunn* does not control this case. First, the government relies on a few cases that suggest that even if this court applies *Dunn*'s "as formal as a deposition" requirement, the facts in this case would demonstrate the requisite formality. Second, the government argues that *Dunn* considered only whether a declaration could be an "ancillary proceeding," whereas the indictment in this case alleges that defendants made and used false declarations "in a proceeding before a court." *Dunn* 's analysis, the government argues, therefore does not apply in the circumstances at issue here. The court disagrees with the government on both points.

In support of its first argument, the government relies on *United States v. Moriel,* 201 F.Supp.2d 952 (S.D.Iowa 2002), for the proposition that Arnaout's declaration, when it was filed in support of BIF's motion for a preliminary injunction in the civil case, was made and used in a context as formal as a deposition. In *Moriel,* the defendant was indicted for making false declarations under oath in violation of § 1623(c). Specifically, it was alleged that the defendant, in a petition for bankruptcy, made statements inconsistent with her sworn testimony before a grand jury. "The bankruptcy petition included two declarations under penalty of perjury, both signed by defendant, by which defendant indicated that the entire petition was true and correct."*Id.* at 953.The defendant argued that pursuant

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

to *Dunn,* the bankruptcy filing could not subject her to criminal liability under § 1623(c).

The court considered whether the bankruptcy filing met *Dunn* 's formality requirements:

By submitting the petition to the Court, Moriel was seeking a remedy which that court could provide directly to her. This is not a situation where Moriel could have reasonably believed her bankruptcy filing constituted a statement beyond the reach of a perjury prosecution, and this Court does not believe that the filing would have been any more solemn had an oath been administered prior to its making. It was a sufficiently formal statement that was made to a court by Moriel herself with the assistance of her own attorney-and this Court finds that, at a minimum, this filing was equivalent to a statement made in a deposition.

***5** 201 F.Supp.2d at 955-56. Essentially, the court held that where an unsworn declaration, signed under penalty of perjury, is officially filed with a court by a party (or her agent) seeking a direct remedy as a result of that filing, the declaration is made or used in a context as formal as a deposition and can be prosecuted under § 1623. The government urges this court to follow *Moriel.*In this court's view, while *Moriel* reaches a result that may be justifiable as a matter of public policy, its reasoning finds no support in the law.[FN5]

FN5.*Moriel* can be distinguished from *Dunn* more satisfactorily than can the instant case, although how satisfactorily is an issue on which this court declines to opine. Rule 1008 of the Federal Rules of Bankruptcy Procedure requires that all petitions and accompanying papers be verified or signed under penalty of perjury. The petition is a formal prerequisite to the initiation of the bankruptcy action. It is, in this sense, a sort of juridical act, rather than, as in the case at bar or in *Dunn,* an unsolicited evidentiary submission.

The language of § 1623 lends no support to *Moriel*'s reasoning. In order to distinguish *Dunn, Moriel* relied, *inter alia,* on the fact that in the case before it, the allegedly perjurious statement had been filed by a party in order to obtain a judicial remedy. But the fact that Moriel sought a remedy from the court is clearly immaterial. The terms of § 1623 do not distinguish between parties and non-parties and such a distinction is untenable. To be sure, filings in a judicial proceeding are much more often made by parties than non-parties, but when non-parties make statements under oath or penalty of perjury in covered proceedings (*e.g.,* all witnesses in grand jury proceedings) they do so at risk of a § 1623 prosecution.

Furthermore, *Moriel* relied on caselaw that has been substantially undermined by the Supreme Court's opinion in *Dunn,* such as *United States v. Tibbs,* 600 F.2d 19, 21-22 (6th Cir.1979), and *United States v. Stassi,* 443 F.Supp. 661, 665 (D.N.J.1977), *aff'd,* 583 F.2d 122 (3d Cir.1978). In order to distinguish *Dunn, Moriel* adopted and relied on dicta in *Tibbs* that "[p]ursuant to [18 U.S.C. § 1623(c) ], a sworn affidavit that is submitted to a federal court by an individual or his authorized agent may properly subject that individual to a perjury prosecution." *Moriel,* 201 F.Supp.2d at 955 (quoting *Tibbs,* 600 F.2d at 21-22). The *Tibbs* court derived this proposition from the district court's decision in *Stassi,* as the *Moriel* court observed.[FN6]

FN6. The *outcome* in *Tibbs* is consistent with *Dunn.See Tibbs,* 600 F.2d at 22 ("[T]he affidavit in the present case was not submitted to a federal court either by defendant or by his authorized agent....Section 1623 cannot be expanded to reach every defendant who, at any time and in any place, swears to inconsistent statements that are later presented in federal court without the defendant's express authorization."). The Sixth Circuit obviously inserted the dicta on which *Moriel* relied in an attempt to distinguish *Stassi.*

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

*Dunn* was published June 4, 1979, while *Tibbs* was published June 19, 1979. Curiously, the *Tibbs* opinion explicitly pointed out that it was sent to the printer *before* the Supreme Court's decision in *Dunn* was announced. 600 F.2d at 21 n. 3. Both the majority and the concurring judge, however, apparently made last-minute revisions to address *Dunn.See id.* at 22;*id.*(Merritt, J. concurring). That dicta inconsistent with *Dunn* survived in such circumstances is hardly surprising.

In *Stassi,* the defendant had pled guilty to one charge in a previous case in return for dismissal of other charges pending against him. At a hearing held pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the defendant testified that there were no promises made to him regarding his sentence. Later, in a sworn affidavit filed in support of a motion to vacate his sentence pursuant to 28 U.S.C. § 2255, the defendant averred that he had been promised a two-year maximum sentence by the prosecuting attorney. In considering whether the affidavit was within the reach of § 1623, the court reviewed the legislative history of the phrase "proceedings before or ancillary to any court or grand jury" (the same phrase and same legislative history that would be reviewed by the *Dunn* Court two years later) and found no indication of "an intent on the part of Congress to limit the statute's scope." *Stassi,* 443 F.Supp. at 665. In fact, the court found support for a broad interpretation of that phrase. *Id.* (citations omitted). The court also noted that "the October 1976 amendment to § 1623, placing unsworn declarations within the purview of the statute, [does not] indicate that sworn affidavits had been excluded prior to that date."*Id.* (citations omitted).[FN7] The Court of Appeals affirmed. *Stassi,* 583 F.2d at 127.[FN8]

FN7. This court discusses the 1976 amendment in detail in the appendix to this opinion.

FN8.*Stassi* is analogous to the case at bar in that it also involved an affidavit filed in support of a motion for specific relief, that is, to vacate a sentence. Both *Stassi* and *Moriel* are distinguishable, however, because Arnaout's declaration in the instant case was filed by BIF's attorney in support of a request for relief in a case in which only BIF (not Arnaout) was a party. As noted above, the court finds nothing in the text of § 1623 that would make the declarant's status as a party seeking a remedy material, even though it was one of the bases on which the *Moriel* court distinguished *Dunn* and followed *Stassi.*

***6** The Supreme Court in *Dunn* expressly disapproved of the Third Circuit's holding in *Stassi:*"Without adverting to any legislative history, the Court of Appeals affirmed on the theory that a false affidavit 'offends the administration of criminal justice as much as [other] false material declaration[s].' Insofar as *Stassi*'s analysis is inconsistent with our decision here, we decline to follow it." *Dunn,* 442 U.S. at 111 n. 10 (internal citations omitted). The Supreme Court further reached a conclusion directly opposite to that of the district court in *Stassi* regarding Congress's intent in utilizing the term "ancillary proceeding." Whereas *Stassi* opined that "the legislative history does not indicate an intent on the part of Congress to limit the statute's scope," 443 F.Supp. at 665, the Supreme Court rejected the government's argument that § 1623 should cover "any statements made under oath for submission to a court," concluding that "Congress had a narrower end in view when enacting § 1623," *Dunn,* 442 U.S. at 107. Thus, *Stassi* and the *Tibbs* dicta have been largely if not entirely discredited by *Dunn,* yet they provide the support with which the district court in *Moriel* distinguished *Dunn* and reached its own holding.

A careful reading of § 1623 further undermines the government's argument (and the *Moriel* court's holding) that the act of *filing* an affidavit or declaration can be prosecuted under § 1623 and demon-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

strates that reading § 1623 other than as the Supreme Court did creates a number of other difficult textual problems. Section 1623 clearly states that the violating act must be done while "under oath" or "under penalty of perjury." 18 U.S.C. § 1623. One does not file a declaration under oath or under penalty of perjury.[FN9] One testifies under oath, at which time one could make or use a false declaration. Or, one signs a declaration under penalty of perjury. *Cf. United States v. Reed,* 773 F.2d 477, 482-83 & n. 4 (2d Cir.1985) (holding that false statement uttered in a deposition in California and later filed with a court in New York was made in California for purposes of venue under § 1623, and stating that "perjury is complete when the oath is taken"); *United States ex rel. Starr v. Mulligan,* 59 F.2d 200, 202 (2d Cir.1932) (holding that allegedly false declaration that was signed in New York but filed in Washington, D.C. was made in New York, and rejecting government's argument that defendant had committed perjury when he filed the false statements). For all these reasons, the court declines the government's invitation to follow *Moriel.*

FN9. In this case, Arnaout is the only defendant who signed the declaration under penalty of perjury, but, unlike BIF, he is not a party in the civil case. BIF, not Arnaout, filed the declaration. Manifestly, BIF was "using" Arnaout's declaration when it attached the statement to its memoranda in support of its motion for a preliminary injunction. However, BIF did not verify its filings, either under oath or under penalty of perjury.

With respect to its second argument, the government correctly points out that *Dunn* initially focused on the definition of the term "ancillary proceeding." *See Dunn,* 442 U.S. at 102 ("[W]e must determine whether an interview in a private attorney's office at which a sworn statement is given constitutes a proceeding ancillary to a court or grand jury within the meaning of the statute ."). The Supreme Court did not specifically invoke the "in any proceeding before ... any court" language-only the "in any proceeding ... ancillary to any court" language. However, it is clear that the *Dunn* Court expressly rejected *Stassi,* a case involving a declaration in circumstances analogous to those in the case at bar. One could perhaps make an argument that *Dunn* disagreed with *Stassi* only insofar as it held that the *Stassi* defendant's affidavit was not made in an "ancillary proceeding" and failed to consider whether it was made in a "proceeding before a court." It is this court's view such a distinction would be unsupportable.[FN10]

FN10. The courts in *Stassi* decided the issue in broad terms. The district court described its task as interpreting the entire phrase "proceedings before or ancillary to any court or grand jury," and held that the affidavit filed by the defendant fell within the scope of that phrase. *Stassi,* 443 F.Supp. at 665. The Third Circuit was even less specific, limiting its analysis on this subject to one sentence: "A false material declaration, knowingly made, in a § 2255 affidavit or hearing offends the administration of criminal justice as much as a false material declaration made in any other 'proceeding before or ancillary to any court." ' *Stassi,* 583 F.2d at 127.

*7 The Supreme Court in *Dunn* discussed the circumstances under which the subject declaration was made and set aside the defendant's conviction. Its reasoning, which often focuses on the word "proceeding" without the modifier "ancillary," indicates that out-of-court affidavits and declarations are not made *either* in a court proceeding *or* in an ancillary proceeding:

[T]he government contends that any statements made under oath for submission to a court, whether given in an attorney's office or in a local bar and grill, fall within the ambit of § 1623.... In our judgment, the term "proceeding," which carries a somewhat more formal connotation, suggests that Congress had a narrower end in view when enacting §

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

1623.

...

We cannot conclude here that Congress in fact intended or clearly expressed an intent that § 1623 should encompass statements made in contexts less formal than a deposition.

*Id.* at 107, 113.

With the exception of *Moriel,* the court decisions interpreting *Dunn* agree. *See, e.g., United States v. Savoy,* 38 F.Supp.2d 406, 411 (D.Md.1998) (holding that § 1623 prosecution may not be predicated on an affidavit of a witness submitted in opposition to a motion for a protective order and injunctive relief); *United States v. Lamplugh,* 17 F.Supp.2d 354, 357 (M.D.Pa.1998) (stating, in the course of dismissing § 1623 indictment based on submitting a false declaration in support of a motion for return of property, that "the United States Supreme Court has unequivocally stated that an individual may not be prosecuted under § 1623 for submission of a false affidavit to a federal district court").[FN11]*See generally United States v. McAfee,* 8 F.3d 1010, 1013-14 (5th Cir.1993); *United States v. Scott,* 682 F.2d 695, 698 (8th Cir.1982).[FN12] The Department of Justice's Criminal Resource Manual reads *Dunn* just this way, stating that the Supreme Court in *Dunn*"held that a false affidavit submitted to a Federal court in support of a motion to dismiss could not be prosecuted under Section 1623 because the affidavit lacked the formality required of court proceedings or depositions."DOJ Criminal Resource Manual § 1749 (Oct.1997). Legal commentators agree. *See* Kathryn K. Baran & Rebecca I. Ruby, *Perjury,* 35 Am.Crim. L.Rev. 1035, 1045 (1998) (reading *Dunn* as limiting § 1623"to testimony actually submitted in the presence of the court or grand jury or in the course of a deposition pursuant to valid rules of procedure"); *see also* George W. Aycock, III, Note, *Nothing But the Truth: A Solution to the Current Inadequacies of the Federal Perjury Statutes,* 28 Val. U.L.Rev. 247, 276 (1993) (citing *Dunn* for the proposition that "the threshold standard for application of section 1623 is that it applies only to statements made in proceedings at least as formal as a deposition").

FN11. Generally, an affidavit is at least as formal as a declaration, and probably more so. *See Black's Law Dictionary, Special Deluxe Fifth Edition* 54 (1984) (defining affidavit as "[a] written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it, taken before a person having authority to administer such oath or affirmation"); *id.* at 367 (defining declaration as "an unsworn statement or narration of facts made by party to the transaction, or by one who has an interest in the existence of the facts recounted").

FN12. In *United States v. Gomez-Vigil,* 929 F.2d 254 (6th Cir.1991), the court, without citing or discussing *Dunn,* ruled that an unsworn declaration signed under penalty of perjury and submitted by a *pro se* litigant in support of a motion for a new trial supported a § 1623 conviction. This court is in agreement with the district court in *Lamplugh,* 17 F.Supp.2d at 356, which stated, "Although *Gomez-Vigil* allowed prosecution of a defendant under § 1623 for false declarations in an unsworn declaration, the court's failure to consider *Dunn,* coupled with *Dunn* itself, ... make reliance upon *Gomez-Vigil* inappropriate."*Accord Savoy,* 38 F.Supp.2d at 412 (agreeing with *Lamplugh* and declining to rely on *Gomez-Vigil* ).

Would this court, on a clean slate, construe § 1623 as the Supreme Court did in *Dunn?*Perhaps it would not. The plain language of § 1623's parenthetical, "in any declaration, certificate, verification, or statement under penalty of perjury," viewed in isolation, suggests that the statute was intended to cover those specified types of statements, and the Supreme Court's approach, relying to a great extent on

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

legislative history, is not a favored method of statutory interpretation at the present time.FN13 However, even if this court were to disagree with the Supreme Court's decision in *Dunn* based on a plain language reading of § 1623, or even if it were to predict that the Supreme Court would reach a different result today, *Dunn* is binding precedent. As the Supreme Court itself has said, "Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality." *Hohn v. United States,* 524 U.S. 236, 252-53 (1998); *see also Rodriguez de Quijas v. Shearson/Am. Express, Inc.,* 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."). And as the Seventh Circuit has put it, "we have no authority to overrule a Supreme Court decision no matter how dubious its reasoning strikes us, or even how out of touch with the Supreme Court's current thinking the decision seems." *Scheiber v. Dolby Labs.,* 293 F.3d 1014, 1018 (7th Cir.2002). Moreover, even if this court were empowered and inclined to depart from *Dunn,* it would have to come to terms with the fact that 23 years have passed since the decision in *Dunn,* during which time Congress has left the language of the statute unchanged. *See Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs,* 398 U.S. 281, 287 (1970) (holding that, since a Supreme Court opinion construing a statute 15 years earlier, "Congress has not seen fit to amend the statute and we therefore adhere to that position").

FN13. On the other hand, application of standard principles of statutory construction might well lead to the same conclusion that the Supreme Court reached in *Dunn.* For more discussion on this subject, see the appendix to this opinion.

***8** In this case, defendants are being prosecuted for out-of-court declarations made by Arnaout, signed under penalty of perjury, and attached to memoranda filed by BIF in support of a motion for a preliminary injunction in a civil case. *Dunn* makes clear that this was not a context as formal as a deposition. *See Savoy,* 38 F.Supp.2d at 411. Accordingly, the indictment is dismissed.

*Conclusion*

For the foregoing reasons, defendants' motion to dismiss the indictment is granted.

*Appendix*

The foregoing analysis suggests an issue not raised by either the government or defendants and mentioned remarkably rarely by the courts that have discussed and followed *Dunn:* How *can Dunn*'s holding be reconciled with the language of § 1623? Although § 1623(a) explicitly includes within its purview "any declaration, certificate, verification, or statement under penalty of perjury," the Supreme Court's opinion in *Dunn,* fairly read, suggests that false statements made in unsworn declarations can *never* be prosecuted under § 1623.

The above-quoted parenthetical language was absent from the original version of § 1623 passed by Congress in 1970. In 1976, Congress passed Public Law 94-550, which amended all federal perjury laws, including § 1623, to include unsworn declarations.FN14 If Congress had no intention of including affidavits and unsworn declarations within the scope of § 1623, as *Dunn* implies, then why would it have amended the statute to include this language? The Supreme Court made no mention of this apparent tension. However, while a focus on the parenthetical language out of context suggests that the Supreme Court ignored the plain language of the statute, the *Dunn* holding is in fact consistent with a close reading of the statutory text and traditional canons of statutory construction.

FN14. The original version of § 1623(a)

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

provided:

> Whoever under oath in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

> If Public Law No. 94-550 is read to have substantially broadened § 1623, then arguably the version of § 1623 that should have been applied in *Dunn* was the original (pre-amendment) version. Dunn's alleged violation occurred on September 30, 1976, but Public Law No. 94-550 (the 1976 amendment) was not approved until October 18, 1976. Of course, Dunn's in-court testimony adopting his declaration occurred on October 21, 1976, but the Supreme Court expressly limited its holding to whether § 1623 should apply to Dunn's September 30 interview. (Conversely, the Tenth Circuit in *Dunn* cited the pre-amendment version of § 1623 in its opinion, *United States v. Dunn,* 577 F.2d 119, 122 (10th Cir.1978), although it affirmed on the basis of the post-amendment in-court statement.) The Supreme Court in *Dunn* quoted the current, amended version, making clear that that was the version the Court interpreted. 442 U.S. at 101 n. 1.

Two competing canons of statutory interpretation are relevant. One "cardinal principle of statutory construction is to save and not to destroy. It is our duty to give effect, if possible, to every clause and word of a statute, rather than to emasculate an entire section." *United States v. Menasche,* 348 U.S. 528, 538-39 (1955) (internal quotation marks and citations omitted). This suggests that when Congress amended § 1623 to include declarations, certificates, verifications, and statements under penalty of perjury, it must have meant *something* by it. However, the Supreme Court has understood another canon ("the specific governs the general") as "a warning against applying a general provision when doing so would undermine limitations created by a more specific provision." *Varity Corp. v. Howe,* 516 U.S. 489, 511 (1996). The structure, purpose, and legislative history of the 1976 amendment reveal both that the amendment is a "general provision" and that Congress had no intention of broadening the scope of § 1623 when it passed the amendment. *See United States v. Ron Pair Enters.,* 489 U.S. 235, 242 (1989) (recognizing that in "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters," the intention of the drafters controls) (internal quotation marks and citations omitted).

***9** The purpose of Public Law No. 94-550 was "to do away with one of the remaining anachronisms of our law-the requirement that relatively routine documents bear the seal of a notary public."122 Cong. Rec. 34,448 (1976) (statement of Sen. Tunney). As stated by Congressman Hungate before the House of Representatives, "[previous] law require[d] verification of the truthfulness of an affidavit by sworn oath, before it [could] be used in a Federal court or administrative proceeding.... [This] legislation allows a person to subscribe to the truth of the contents of a document by signing it subject to the penalty of perjury."122 Cong. Rec. 32,654 (1976). The Congressman was quick to point out that the bill contained three exceptions where an unsworn declaration may not be substituted for a sworn declaration, most notably depositions. Significantly, the Congressman went on to state: "I should like to point out that the bill does not change any of the elements of the offense of perjury. [Public Law No. 94-550] only seeks to include unsworn declarations made under penalty of perjury within the scope of

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

the general perjury statute (18 U.S.C. § 1621)."*Id.*(parenthetical in original). Immediately following Congressman Hungate's statement, the House passed the bill without debate.

The bill consisted of ten sections. H.R.Rep. No. 94-1616, at 2-4 (1976). Section 1 added § 1746 to the United States Code. The other sections amended already-existing perjury statutes. Section 2 amended § 1621, "the general perjury statute," H.R.Rep. No. 94-1616, at 2, and Section 6 amended § 1623, a "specific perjury statute." *Id.* at 3. Thus, a total of nine federal perjury statutes, apparently the entire universe of such statutes, was amended by inserting the precise words of Public Law No. 94-550.

The 1976 amendment appears to fit the definition of a "general provision" that should not undermine the limitations created by more specific provisions found in federal perjury statutes. *See City of Milwaukee v. Illinois,* 451 U.S. 304, 329 n. 22 (1981) ("The fact that the language of [the saving clause] is repeated *in haec verba* in the citizen-suit provisions of a vast array of environmental legislation ... indicates that it does not reflect any considered judgment about what other remedies were previously available or continue to be available under any particular statute."). If so, the amendment properly might be read not to change the meaning of "proceeding before or ancillary to any court" as found in § 1623 and defined by the Supreme Court. Public Law 94-550 established that in almost all instances signing a declaration "under penalty of perjury" is the equivalent of swearing to the truth of the matters therein before a notary public "in any matter ... required or permitted to be supported by the sworn declaration."Congress's manifest purpose in adding the language of Public Law No. 94-550 to every single perjury statute in existence was to make it more convenient to verify the truthfulness of affidavits by removing any doubt as to whether some affidavits might still require a sworn oath. Thus, as the regime of federal perjury law now stands, no oath is required under federal law for *any* affidavits (with some limited exceptions).

***10** The structure, purpose, and legislative history of the 1976 amendment make clear that the amendment was not intended to "change any of the elements of the offense of perjury," including the scope of § 1623, but rather "only seeks to include unsworn declarations made under penalty of perjury within the scope of the general perjury statute (18 U.S.C. § 1621)."122 Cong. Rec. 32,654. Thus, notwithstanding the language of the 1976 amendment, the Supreme Court's interpretation of the scope of § 1623 in *Dunn* as excluding "statements given in less formal contexts than depositions," 442 U.S. at 111, may well be consistent with Congressional intent. *See Ron Pair Enters.,* 489 U.S. at 242.

N.D.Ill.,2002.
U.S. v. Benevolence Intern. Foundation, Inc.
Not Reported in F.Supp.2d, 2002 WL 31050156 (N.D.Ill.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.