UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 08 CR 846 |
| | ) | |
| JON BURGE | ) | Judge Lefkow |

## NOTICE OF RESPONSE

TO:   Richard M. Beuke          William G. Gamboney, Jr     Marc W. Martin
      53 W. Jackson, Ste. 1410   216 South Marion Street     53 W. Jackson, Suite 1420
      Chicago, IL  60604         Oak Park, IL 60302          Chicago, IL 60604

   **PLEASE TAKE NOTICE** that on Tuesday**,** June 30, 2009, the undersigned filed with the
Clerk, U.S. District Court, 219 S. Dearborn, Chicago, the "Government's Response to Defendant's
Motion *In Limine* to Admit Prior Testimony."  A copy is served upon you herewith.

                         Respectfully submitted,

                         PATRICK J. FITZGERALD
                         United States Attorney

              By:     /s Jeffrey H. Cramer
                         Jeffrey H. Cramer
                         Barry A. Miller
                         Assistant United States Attorneys

                         BETSY BIFFL
                         Trial Attorney, Criminal Section,
                         Civil Rights Division

                         219 South Dearborn Street, 5th Floor
                         Chicago, Illinois  60604
                         (312) 353-5300

## Certificate of Service

   The undersigned Assistant U.S. Attorney hereby certifies that the aforesaid document was
served on June 30, 2009, in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR 5.5, and the
General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF
filers.

                         /s Jeffrey H. Cramer

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No.  08 CR 846 |
| | ) | |
| JON BURGE | ) | Judge Lefkow |

GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION *IN LIMINE* TO ADMIT PRIOR TESTIMONY

Burge has moved *in limine* to admit the prior testimony of deceased former Chicago police

detective John Yucaitis and Patrick O'Hara (Dkt ## 79-80).  Yucaitis and O'Hara claimed -- when

they were charged, along with Burge, with torture -- that they neither abused Andrew Wilson nor

knew who abused him.

Defendant acknowledges that the testimony of Yucaitis and O'Hara is hearsay, and that it is

not admissible as former testimony of a deceased witness under Rule 804(b)(1), since the United

States was not a party to the prior proceedings.  Defendant nevertheless argues the testimony should

be admitted under Rule 807, the residual hearsay exception.

Burge's argument is based on a misplaced sense of rough equity.  Burge argues that since the

Court has ruled that Wilson's testimony should be admitted under Rule 804(b)(1), the testimony of

Yucaitis and O'Hara should be admitted, too.

Burge's motion should be denied, however, because it ignores a key fact:  unlike Wilson's

testimony, the testimony of Yucaitis and O'Hara has been found to be false by the Police Board, in

a finding that was upheld by the Illinois courts, and given collateral estoppel effect by Judge

Gettleman and the Seventh Circuit.  Since the hearsay statements of Yucaitis and O'Hara were found

to be false, they are not trustworthy, and they cannot meet the requirements of Rule 807.

## I. FACTUAL BACKGROUND.

A.    The Criminal Case.

The procedural history of the Wilson cases is discussed in this Court's opinion of April 23, reported at *United States v. Burge*, 2009 WL 1108488, at**1-5 (N.D. Ill. April 23, 2009).   In summary, Andrew Wilson and his brother Jackie were arrested on Feb. 14, 1982 for killing Chicago police officers William Fahey and Richard O'Brien. Andrew Wilson moved to suppress his confession, and testified at the suppression hearing that he had been tortured. The motion to suppress was denied. Yucaitis, O'Hara, and Burge testified at the suppression hearing.

Andrew, the shooter, was convicted and sentenced to death. O'Hara testified at the first criminal trial. The Illinois Supreme Court reversed his conviction and held that the statement provided to Chicago detectives admitting to the murder should have been suppressed based upon the state's inability to explain Wilson's injuries, which were suffered while he was in police custody. *People v. Wilson*, 116 Ill. 2d 29, 506 N.E.2d 571 (1987).   Wilson was retried, convicted, and sentenced to life in prison. O'Hara and Burge testified in the second criminal trial. That conviction was affirmed. *People v. Wilson*, 254 Ill. App. 3d 1020, 626 N.E.2d 1282 (1st Dist. 1993).

B.    The Civil Cases.

Andrew Wilson sued the City of Chicago, Burge, Yucaitis and O'Hara for damages based upon the injuries and abuse he sustained while in custody. (No. 86 C 2360.) Wilson, Burge, and Yucaitis denied participating in or knowing that any torture or physical abuse occurred.

There were a pair of civil trials before Judge Duff. The first ended in a hung jury; the second ended with a verdict for the defendants. Burge, Yucaitis, and O'Hara each gave depositions, then

testified at each trial.  After the second trial, the Seventh Circuit reversed in part as to Burge, Yucaitis, and O'Hara.  *Wilson v. City of Chicago*, 6 F.3d 1233 (7th Cir. 1993).

C.      The Police Board Findings Against O'Hara and Yucaitis.

        1.      O'Hara's and Yucaitis' Testimony Was Found to Be False.

        After the verdict in the second civil trial, CPD's Office of Professional Standards "reopened" the investigation into the conduct of Burge, Yucaitis, and O'Hara, and they were charged with misconduct in the Andrew Wilson matter.  Between February and March of 1992, the Police Board, acting via a hearing officer as an administrative agency in a judicial capacity, held hearings. Defendant neglects to mention that, after hearing the testimony from O'Hara and Yucatitis, as well as from their character witnesses, the Police Board found their testimony false and suspended both.[1]

        The Police Board specifically found that O'Hara "[knew] or had a reasonable basis to believe that Jon Burge and/or other police officers at Area 2 were physically abusing or maltreating Andrew Wilson" and had "knowledge or reasonable belief that Andrew Wilson . . . had been physically injured . . . ."  Findings at 49-52.  The Board found that O'Hara violated five Department rules, including failing to perform his duty and failure to report violations of rules and regulations.  *Id.*

        Similarly, the Police Board found Yucaitis had (a) "knowledge or reasonable belief to believe that Police Lieutenant Jon Burge, and/or other police officers at Area 2 were physically abusing or maltreating Andrew Wilson;" (b) "knowledge or reasonable belief that Andrew Wilson...had been physically injured;" and (c) "either alone or in concert with others engaged in an unjustified verbal

---

[1]      The Police Board Findings (hereinafter "Findings") are attached as Exhibit D to Dkt # 21.

and/or physical altercation with Andrew Wilson." *Id.* at 53-57.  As a result, the Board found he also

violated five Department rules.  *Id.*[2]

      2.     <u>The Police Board's Findings Were Upheld on Judicial Review</u>.

      The Police Board suspended both O'Hara and Yucaitis for fifteen months (and fired Burge)

after hearing the testimony now offered by defendant.  The Board's action against Burge, Yucaitis,

and O'Hara was affirmed on judicial review.  *See O'Hara v. Police Bd.*, 276 Ill. App. 3d 1117, 697

N.E.2d 13 (1st Dist. 1995)(unpublished order).

D.     <u>The Police Board's Findings Were Given Collateral Estoppel Effect in Federal Court</u>.

      Based on the Police Board's decision, Judge Gettleman applied collateral estoppel and enter-

ed judgment for Wilson in the civil case, which had been remanded by the Seventh Circuit following

the second trial. *Wilson v. City of Chicago*, 900 F. Supp. 1015, 1028-29 (N.D. Ill. 1995).  Judge

Gettleman found that Burge, Yucaitis, and O'Hara had an adequate opportunity to litigate the issues.

*Id*. at 1025.  The Seventh Circuit affirmed the decision.  120 F.3d 681 (7th Cir. 1997).[3]

E.     <u>The Witnesses Are Deceased</u>.

      Yucaitis and O'Hara both died in 2001.[4]

---

[2]     The government will not attempt here to respond to the inaccuracies in each of the details of Yucaitis' and O'Hara's testimony cited in Burge's Memorandum.  Suffice it to say that the government disagrees with the defendant's recitation of the supposed events of Wilson's interrogation.

[3]     Copies of the Police Board charges, the opinion of the Circuit Court affirming the Police Board, and the Appellate Court's order are attached as Exhibits C, E, and F to Dkt# 21.

[4]     A Special Prosecutor, the late Illinois Appellate Court Judge Edward Egan, was appointed by the Presiding Judge of the Cook County Circuit Court in 2002 to investigate the allegations of torture and abuse by police officers under the command of Burge and Burge himself at Areas 2 and 3.  The Special Prosecutor summarized his findings in a 300 page report.  (The Report is not attached, but it can be provided to the Court, on request.)  The Special Prosecutor concluded that Wilson's testimony was credible, despite minor inconsistencies, and that "Burge actively participated in the 'mistreatment' of Wilson, burned Wilson with a radiator, repeatedly shocked him and 'engaged [him] in several unjustified physical altercations during

-4-

## II.  LEGAL STANDARD FOR ADMISSION OF HEARSAY UNDER RULE 807.

A.   Yucaitis' and O'Hara's Statements Are Inadmissible under Rules 802 and 804(b)(1).

Hearsay is inadmissible in a criminal trial unless it falls within a specific exception to the hearsay rule.  Rule 802, Fed. R. Evid.  Former testimony of an unavailable witness is covered by Rule 804(b)(1), which permits the admission of former testimony "if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by . . . cross . . . examination."

In this case, defendant seeks to admit the former testimony of Yucaitis and O'Hara, who were charged with Burge with conspiring to torture Wilson in the trials in Wilson's civil case and the Police Board hearing.  Since the United States was not a party to those proceedings, Burge correctly concedes (Dkt #80 at 10) that Rule 804(b)(1) does not apply.[5]  Accordingly, Burge has moved to admit the testimony under Rule 807, Fed. R. Evid.[6]

---

which Wilson was handcuffed and incapable of providing any resistence.'" *See Patterson*, 735 N.E.2d at 643.  No prosecution resulted because Justice Egan decided the matter was outside the state statute of limitations.  Yucaitis and O'Hara were already deceased at the time of the report.  The Special Prosecutor's Report concluded that there was not proof beyond a reasonable doubt that O'Hara mistreated Wilson or was present, but did not suggest that the Police Board's finding that he had knowledge was incorrect.  Report at 64-65.  As to Yucaitis, the Special Prosecutor repeated Wilson's identification of Yucaitis as having been involved in beating and electrically shocking Wilson, Report at 46, and made a general statement that he believed Andrew Wilson's statements that he had been tortured, Report at 63.

[5]   The fact that Yucaitis and O'Hara were cross-examined by others is not the same as their cross-examination at a criminal perjury and obstruction trial by prosecutors.  *See, e.g., United States v. Jackson-Randolph* 282 F.3d 369 (6th Cir. Cir. 2002)(former testimony cannot be admitted by criminal defendant against government since United States was not a party to prior proceeding); *United States v. DiNapoli,* 8 F.3d 915 (2nd Cir. 1993)(grand jury testimony cannot be admitted against government in criminal proceeding if prosecutor did not have same motive to question witness).  That is even more true because the United States has gained additional evidence not available to the lawyers who cross-examined them in the 1980's and early 1990's.

[6]   Cases construing the Confrontation Clause, such as *Crawford v. Washington,* 541 U.S. 36 (2004), are not applicable to defendant's motion.  While the defendant has a constitutional right to confront witnesses against him, the government does not have a right under the Clause.  *See Giles v. California,* 128 S.Ct. 2678,

B.      The Standard for Admission under the Residual Rule.

1.      The Rule.

Rule 807, commonly referred to as the "residual rule," provides:

> A statement not specifically covered by Rule 803 or 804 but having *equivalent circumstantial guarantees of trustworthiness,* is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.  However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.  [Emphasis added.]

2.      The Seventh Circuit Narrowly Construes the Residual Exception.

The Seventh Circuit has repeatedly directed the district courts to narrowly construe the residual exception to the hearsay rule.  In construing the rule, the court has applied a five-part test.  As the court stated in *Keri v. Board of Trustees of Purdue University*, 458 F.3d 620 (7th Cir. 2006).[7]

> The Seventh Circuit has directed the courts to narrowly construe the residual exception to the hearsay rule. *See Akrabawi v. Carnes Co.*, 152 F.3d 688, 697 (7th Cir.1998) ("We begin by noting this circuit's emphasis on narrowly construing the residual provision to prevent it from becoming the exception that swallows the hearsay rule.").  Five elements must be satisfied before hearsay is admitted in evidence: "(1) circumstantial guarantees of trustworthiness; (2) materiality; (3) probative

---

2692 n.7 (2008).  The government is, however, entitled to the protections of the hearsay rules in order to ensure a fair trial, and courts have viewed the Confrontation Clause and the hearsay rules as protecting similar values.  *See United States v. Driscoll*, 2006 WL 1462489 at *4 (E.D. Tenn. May 23, 2006)(rejecting admission of exculpatory statement by deceased former co-defendant due, *inter alia*, to self-serving nature and lack of opportunity for cross-examination); *Fryar v. Bissonette*, 185 F. Supp. 2d 87, 93-94 (D. Mass. 2002)(Confrontation Clause cases indicate reasons for narrow scope of Rule 804 (b)(3), even though Clause was not applicable to defense attempt to introduce hearsay statement).

[7]      The quoted language is from the district court opinion in *Keri*, which was affirmed, adopted, and quoted in full by the Seventh Circuit, 458 F.3d at 627.

-6-

value; (4) the interests of justice; and (5) notice." *United States v. Hall*, 165 F.3d 1095, 1110 (7th Cir.1999). "Critical to the admission of a hearsay statement under 803(24) [now 807] is a finding by the district court that the statement is trustworthy."

*Keri*, 458 F.3d at 631 (emphasis added). *Accord, e.g., United States v. Hughes*, 535 F.3d 880, 882 (8th Cir. 2008)(Congress intended the residual exception "to be used very rarely, and only in exceptional circumstances"); *United States v. Walker*, 410 F.3d 754, 757 (5th Cir. 2005)(same); *United States v. Lawrence*, 349 F.3d 109, 117 (3d Cir. 2003)(use of residual exception is rare, and requires exceptional circumstances, exceptional degree of trustworthiness, and high degree of probativeness and necessity); *United States v. Libby*, 475 F. Supp. 2d 73, 79 (D.D.C. 2007)(discussing D.C. Circuit law favoring narrow use of residual exception).[8]

Here, materiality and notice are not at issue.  The government disputes, however, that the statements are trustworthy, and contends that the interests of justice would not be served by their admission.  As noted above, the statements are clearly not trustworthy, since they have already been found to be false.  In addition, while the statements are probative, they are not "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts." Fed. R. 807.

---

[8]    *See also, e.g., United States v. Sinclair*, 74 F.3d 753, 759 (7th Cir. 1996)("Congressional commentary on the exception indicates that courts should define these conditions narrowly so that they do not use the exception as a way of dramatically revising the hearsay rule."); *Stolarczyk v. Senator Intern. Freight*, 376 F. Supp. 2d 834, 840 (N.D. Ill. 2005)(Filip, J.)(rejecting admission of statements under oath of deceased witness)*; Messer v. Indiana State Police*, 586 F. Supp. 2d 1044,  1057 (N.D. Ind. 2008)(quoting *Keri*).

### III.  THE YUCAITIS AND O'HARA STATEMENTS SHOULD NOT BE ADMITTED BECAUSE THEY ARE NOT TRUSTWORTHY.

A.      To Be Admitted Under Rule 807, a Statement Must Be Trustworthy.

1.      The Rule Requires Guarantees of Trustworthiness.

Rule 807 permits evidence to be admitted if it has sufficient "circumstantial guarantees of trustworthiness." *See, e.g., United States v. Dumeisi*, 424 F.3d 566, 576-77 (7th Cir. 2005); *Cody v. Harris*, 409 F.3d 853, 860-61 (7th Cir. 2005); *United States v. Wesela*, 223 F.3d 656, 664 (7th Cir. 2000).[9] Because Rule 807 is not a firmly rooted exception to the hearsay rule, there is a requirement for "particularized guaranties of trustworthiness:"

> If evidence is not covered by a firmly rooted exception to the hearsay rule, it must possess particularized guarantees of trustworthiness at least as reliable as evidence admitted under a firmly rooted hearsay exception.  *See Idaho v. Wright*, 497 U.S. 805, 821 (1990).

*Dumeisi*, at 576.[10] *See Walker*, 410 F.3d at 758 (trustworthiness is "lodestar" for analysis of residual hearsay exception); *Hall*, 165 F.3d at 1110 (trustworthiness is "critical" to the admission of testimony under residual exception)(affirming rejection of hearsay statements proffered by defendant); *Libby*, 475 F. Supp. 2d at 79 (evidence must be very reliable to be introduced under residual exception).

---

[9]      *Wright* cited *Ohio v. Roberts,* 448 U.S. 56, 66 (1980), which held that hearsay was inadmissible except under circumstances when the evidence is so trustworthy that the rationale for the hearsay rule is not offended.  *Roberts* was abrogated in part by *Crawford v. Washington*, 541 U.S. 36 (2004), regarding testimonial evidence given in response to government interrogation, but still sets a floor as to the requirements for the admission of hearsay evidence.  *See United States v. Hendricks*, 395 F.3d 173,179 (3d Cir. 2005).  As stated in note 6, defendant's proposed hearsay does not violate the Confrontation Clause. As such, this Court does not need consider whether that potion of *Roberts* is still valid.  *See United States v. Tolliver*, 454 F.3d 660, 665 n.2 (questioning whether *Davis v. Washington,* 547 U.S. 813 (2006), overruled *Roberts*).

[10]      *Wright* construed a predecessor section to Rule 807, but cases construing the prior rule are still generally valid.  *See Hall*, 165 F.3d at 1111 n.8 (noting that the contents of Rule 803(24) and Rule 804(b)(5) were combined and transferred to the new Rule 807).

2.    <u>Self-Serving Statements by Co-schemers and Co-workers Are Not Trustworthy</u>.

Courts have looked to a wide variety of factors in determining trustworthiness under Rule

807 and its predecessors.[11/]  The Seventh Circuit has focused, *inter alia*, on "(1) 'the probable moti-

vation of the declarant in making the statement;' [and] (2) 'the circumstances under which it was

made . . . .'"  *Hall*, 165 F.3d at 1110 (citations omitted).  Any list of factors is not determinative; the

decision turns on the facts of each case.  *See id.*  at 1111; *United States v. York,* 852 F.2d 221, 225

(7th Cir.1988); *United States v. Hooks,* 848 F.2d 785, 797 (7th Cir.1988).[12/]

Courts have looked with skepticism at exculpatory statements by co-schemers.  In *United*

*States v. Wright*, 363 F.3d 237, 246 (3d Cir. 2004), the court affirmed the exclusion of a hearsay

denial of wrongdoing by a deceased co-schemer who was a public official.  The *Wright* court noted

that the fact that a public official had denied wrongdoing did not make the statement trustworthy,

---

[11/]    *Aamco Transmissions, Inc. v. Baker*, 591 F. Supp. 2d 788, 799 (E.D. Pa. 2008), summarized the factors courts have used:

> Factors relevant to trustworthiness include: (1) whether the statement was made under oath; (2) whether the statement was voluntarily made; (3) whether the statement was based on personal knowledge; (4) whether the declarant made a prior inconsistent statement; (5) whether the statement was videotaped; (6) whether the declarant was subject to cross examination; (7) the proximity of time between the events described and the statement; (8) whether the statement is corroborated; (9) the declarant's motivation to fabricate; (10) whether the statement is prepared in anticipation of litigation; (11) the spontaneity of the statement; and (12) whether the declarant's memory was faulty.

[12/]    Defendant acknowledges that corroboration is not a proper factor under the Confrontation Clause (Dkt#80 at 11), and courts have questioned whether corroboration should be considered for purposes of the residual exception.  *Compare United States v. Gomez-Lemos*, 939 F.2d 326, 332 (6th Cir. 1991)(noting that corroboration not relevant after *Idaho v. Wright*) *with United States v. Tellechin*, 1998 WL 476760 at * 2 (unreported post-*Idaho v. Wright* which held corroboration is proper to consider under the residual exception); *United States v. Hunt*, 521 F.3d 636, 643 (6th Cir. 2008) (corroboration should be considered under Fed. R. 807).  *Gomez-Lemos* suggests that *United States v. Guinan,* 836 F.2d 350, 354-58 (7th Cir. 1988), relied on by defendant at Dkt#80 at 7-8, was overruled by *Wright* on this point. Here, defendant's Motion fails even if this Court considers corroboration since there is little, if anything, to corroborate Yucaitis and O'Hara.

for "a public official whose career is dependent on maintaining a reputation for integrity may find it particularly difficult to admit criminal wrongdoing . . . ." *Id.*  The court affirmed the district court's observation that the statements in question were

> self-serving statements made at a time when he knew he was under investigation and had a motive to not tell the truth. Human nature is to deny committing crimes, especially for a public figure who is held in high esteem by the community and knows he is under investigation. In light of these considerations, the court concludes that the hearsay statements at issue are not sufficiently reliable to merit admission under the residual hearsay exception.

*Id*.

Similarly, courts are suspicious of exculpatory statements by co-workers.  In *Hunt*, the court affirmed the district court's rejection of a hearsay statement of a coworker that had been offered by the defendant. 521 F.3d at 643.  The court observed that it was reasonable to be concerned that an individual would lie in order to protect another individual with whom he has a business relationship. Courts also look with skepticism of statements made in anticipation of litigation, setting out a litigation position.  *See, e.g., Stolarczyk*, 376 F. Supp. 2d at 841-42.

B.   O'Hara and Yucaitis' Testimony is Not Trustworthy.

Defendant's Memorandum at 8-13 parses language in order to declare the testimony of Yucaitis and O'Hara reliable even though it has been discredited by every reviewing body since 1987.  Defendant argues that the testimony is trustworthy because "following their testimony in the first civil trial, the jury found in their favor." (Dkt #80)  But of course, after that, the Seventh Circuit reversed the jury verdicts in the trials before Judge Duff, the Police Board found Yucaits' and O'Hara's testimony unreliable, and that finding was affirmed by the state courts and applied as collateral estoppel by the federal courts. *See* pages 2-4 above.

By itself, the fact that Yucaitis' and O'Hara's testimony has been found to be false in prior judicial proceedings compels a finding that it is not trustworthy. *See generally Wilson*, 900 F. Supp. at 1015 (applying collateral estoppel based on Police Board findings). Burge cites no case to the contrary. But even without the prior administrative and judicial findings, there would be ample reason for rejecting the testimony.

Yucaitis and O'Hara were not disinterested bystanders.[13] Both Yucaitis and O'Hara were interested parties in the civil suit and Police Board hearing. The former could have subjected them to financial damages, while the latter subjected them to work-related damages. Even at the time of the motion to suppress and the criminal trials of Wilson, Burge, Yucaitis, and O'Hara were already accused of torture -- criminal acts -- and had a motive to falsify.[14] Their motive to falsify and status as interested parties also make their statements untrustworthy. *See Hunt, supra; Stolarczyk, supra.*

C.    O'Hara and Yucaitis are Not Corroborated.

The defendant's argument as to corroboration is both circular and inaccurate. Burge asserts that the testimony of both Detectives is trustworthy because O'Hara corroborates Yucaitis and Yucaitis corroborates O'Hara. Motion at 11, n.4. Hence, the defendant argues that this Court should

---

[13]    *See e,g., United States v. Doerr*, 886 F.2d 944,957 (7th Cir. 1989), which approved the admission of grand jury testimony, prior to *Crawford* (under the *Roberts* Confrontation Clause analysis), where a disinterested witness had no incentive to lie. The court's reasoning was instructive on the point of trustworthiness:

> [T]he appellants have not identified any incentive to manufacture false testimony that Barbaro may have had. . . . ("Another indicium of reliability is the declarant's disinterest; the testimony of a 'mere bystander with no axe to grind' tends to be more trustworthy.") . . . *United States v. Howard*, 774 F.2d 838, 845 (7th Cir.1985) (statements made by a "seemingly disinterested witness under circumstances that created no apparent motive to lie"). [886 F.2d at 956 (citations omitted).]

[14]    In addition, accurate testimony about the torture of Wilson could have jeopardized his conviction, allowing a man who murdered fellow police officers to go free.

rely on the testimony of two individuals who were both not only accused of torturing suspects but suspended by the Police Board which found they both knew or had reason to know Jon Burge and/or other had physically injured Andrew Wilson. *See* above.  Defendant's circular reasoning reveals the weakness of his motion.

Defendant also relies upon the version of events from Lawrence  Hyman to demonstrate that O'Hara and Yucaitis are corroborated.  Memorandum at 11.  Defendant neglects to inform this Court that the Special Prosecutor found Hyman to be wholly unreliable.  OSP Report at 54, 62, and 148.  The Special Prosecutor was quite succinct as to Hyman's veracity:  "In our judgment Hyman did not tell the truth when he denied that he had been told by Andrew Wilson that he had been tortured by detectives under the command of Jon Burge.  His false testimony stands as corroboration of Andrew Wilson." *Id*. at 54.  Hyman hardly constitutes corroboration for Yucaitis and O'Hara in order for this Court to find the testimony trustworthy.[15]

IV.  <u>THE EVIDENCE IS NOT MORE PROBATIVE THAN OTHER EVIDENCE</u>.

The evidence is not admissible because it was not trustworthy.  It is also not clear that the testimony of O'Hara and Yucaitis about what happened in Area Two during the Wilson investigation is more probative than any other evidence that could be submitted.

The jury will hear the testimony of Andrew Wilson and, if he chooses, Jon Burge.  In addition, many other people, including police officers and others, were present at Area Two during the interrogation of Andrew Wilson. Many have been so identified in the prior trials related to this

---

[15]    The government will also present additional evidence at trial consistent with the account of Andrew Wilson and inconsistent with the testimony of Yucaitis and O'Hara.

matter.[16/]   Many of these people are alive and available to testify as to what they saw or heard during the interrogation.  The government will likely call some as witnesses; Burge may do so, as well.

## V.  THE INTERESTS OF JUSTICE COUNSEL
## AGAINST ADMISSION OF THE TESTIMONY.

Defendant claims that it would be unfair to allow Wilson's prior testimony but not allow the testimony from O'Hara and Yucaitis, both under Rule 807, and as a constitutional matter, under cases such as *Chambers v. Maroney*, 399 U.S. 42 (1975).  Memorandum at 14-15.  While the "interest of justice" is a consideration, defendant does not offer any cases where testimony was allowed if it is not trustworthy under the "interest of justice."  *See Hall,* 165 F.3d at 1110 (circumstantial guarantees of trustworthiness must be satisfied before hearsay is admitted in evidence under FRE 807).  All of the cases that have ruled on the residual exception to the hearsay rule focused on the reliability or trustworthy nature of the statements.

"Unreliable hearsay excluded by the Court does not violate Defendants' due process or Sixth Amendment rights."  *Driscoll*, 2006 WL 1462489 at *4.  Indeed, the Seventh Circuit has ruled that *Chambers* does not require the introduction of unreliable hearsay submitted by a defendant.  *Hall*, 165 F.3d at 113-14.  *Accord, Walker*, 410 F.3d at 758 (Sixth Amendment does not require introduction of inadmissible hearsay); *Libby*, 475 F. Supp. 2d at 78 (*Chambers* does not require admission of inadmissible hearsay).

Thus, since Yucaitis' and O'Hara's testimony is untrustworthy, the exclusion of their testimony is in the interest of justice, and does not violate Burge's constitutional rights.

---

[16/]     The government will also disclose to defendant any report it has of an interview of any person who claims to have been at Area Two during the interrogation.

<u>CONCLUSION</u>.

Defendant presents for admission under Rule 807 the uncorroborated testimony of two former police Detectives, while ignoring the fact that the two were found to have testified falsely. There is nothing trustworthy about the testimony of O'Hara and Yucaitis.

WHEREFORE, the Government respectfully requests that this Court deny defendant's motion.

Respectfully submitted,
PATRICK J. FITZGERALD
United States Attorney

By:    /s Jeffrey Cramer
JEFFREY H.CRAMER
BARRY A. MILLER
Assistant United States Attorneys

BETSY BIFFL
Trial Attorney, Criminal Section,
Civil Rights Division
219 S. Dearborn Street, 5th Floor
Chicago, Illinois  60604
(312) 353-5300

-14-