UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No.  08 CR 846 |
| | ) | |
| JON BURGE | ) | Judge Joan Humphrey Lefkow |

**GOVERNMENT'S SUR-REPLY TO DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS PURSUANT TO GARRITY V. NEW JERSEY**

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, U.S. Attorney for the Northern District of Illinois, submits this sur-reply in response to Defendant Jon Burge's reply brief in support of his Motion to Dismiss Pursuant to *Garrity v. New Jersey*, 385 U.S. 493 (1967).  The Government addressed defendant's motion in its initial response brief, pointing out that defendant's statements were not protected by *Garrity*, and that the trial team did not use those statements in preparing its case.  The Government incorporates those arguments herein, and with this sur-reply, addresses several additional issues pertaining to defendant's motion and reply brief.

**I.     The Government is Permitted to use Defendant's OPS and Police Board Statements in This Prosecution for Perjury**

Even accepting that, for some purposes, defendant made immunized statements, the Supreme Court's decision in *United States v. Apfelbaum* renders moot all of defendant's arguments in the circumstances of this case.[1]  In *Apfelbaum*, a majority of the Supreme Court held that the Fifth Amendment does not preclude the use of immunized testimony at a prosecution for perjury committed contemporaneously with or subsequent to the immunized

---

[1] As discussed in our response brief, the Government contends that, except in limited circumstances, the statements were not entitled to any sort of *Garrity* protection.

testimony. 445 U.S. 115, 131 (1980). The Court explained why there should be – and is – an exception to the bar against using immunized testimony in a prosecution for contemporaneous or subsequent perjury. The reasons for this exception, the Court explained, are rooted in the constitutional principle that the scope of immunity is "coextensive with the scope of the privilege." *Id.*; *Kastigar v. United States*, 406 U.S. 441, 449 (1972). As such, immunity does not extend to a situation where the Fifth Amendment protections would not apply. *See Apfelbaum*, 445 U.S. at 130-32. Thus, to determine whether immunity applies, this Court must determine the scope of the defendant's Fifth Amendment's privilege. This inquiry, the Supreme Court teaches, asks "whether [at the time he/she spoke] the claimant [was] confronted by substantial and real, and not merely trifling or imaginary, hazards of incrimination." *Apfelbaum*, 445 U.S. at 128 (internal quotations omitted). Applying this analysis, the *Apfelbaum* Court held that "a future intention to commit perjury or to make false statements ... if granted immunity because of a claim of compulsory self-incrimination is not by itself sufficient to create a substantial and real hazard that permits invocation of the Fifth Amendment." *Id.* at 131 (quotations and citations omitted). Accordingly, the *Apfelbaum* Court held that "the Fifth Amendment does not prevent the use of [defendant's] immunized testimony at his trial for false swearing because, at the time he was granted immunity, the privilege would not have protected him against false testimony that he later might decide to give." *Id.* at 130.

The Second Circuit's decision in *United States v. DeSalvo* applies *Apfelbaum* to circumstances that control Burge's situation. 26 F.3d 1216 (2d Cir. 1994), *cert. denied*, 513 U.S. 870 (1994). In *DeSalvo*, the defendant claimed that the government improperly used his immunized 1987 state grand jury testimony in a prosecution for lying to a federal grand jury and

at a criminal trial in1989.[2] *Id.* at 1221. Relying on *Apfelbaum*, the Second Circuit rejected defendant's argument, holding that:

> The Fifth Amendment would not have protected DeSalvo against the use of his state grand jury testimony in this future perjury prosecution: The risk that DeSalvo might be prosecuted for lying to a federal jury in 1989 would have been far too speculative to permit him to invoke the privilege in 1987. Accordingly, the Fifth Amendment does not prevent the use of DeSalvo's 1987 state grand jury testimony in this subsequent perjury prosecution because, at the time he was granted immunity, the privilege would not have protected him against false testimony that he later might decide to give.

*DeSalvo*, 26 F.3d at 1222 (internal quotations and citations omitted).

The Sixth Circuit's decision in *United States v. Seltzer* also forecloses defendant's arguments. 794 F.2d 1114 (6th Cir. 1986), *cert. denied*, 479 U.S. 1054 (1987). In *Seltzer*, the defendant gave immunized testimony before a grand jury in 1981 and was later charged with committing perjury for statements he made in 1983. *Id.* at 1120. Following *Apfelbaum*, the Sixth Circuit held that:

> [I]n 1981, before his first appearance before the grand jury, [defendant] faced only speculative and insubstantial risks of incrimination. Accordingly, we hold that neither the fifth amendment nor the immunity statute prevent use of [defendant's] 1981 immunized testimony at his trial for perjury before the grand jury in 1983 because, at the time [defendant] was granted immunity in 1981, the privilege would not have protected him against false testimony he might later decide to give in either 1981 or 1983.

*Seltzer*, 794 F.2d at 1120 (internal quotations and citations omitted). *See also State v. Adams*, 153 Ohio App. 3d 134, 141 (Ohio Ct. App., 2003); *United States v. Veal*, 153 F.3d 1233 (11th Cir. 1998) ("*Garrity* does not prevent the admission of false statements in a trial for perjury or

---

[2] As Burge has done here, the defendant in *DeSalvo* moved to dismiss the indictment alleging that the government "improperly used" his immunized testimony to develop leads - including two witnesses who testified in the indicting grand jury and who were to be witnesses against him at trial. He also requested a hearing to determine whether one of the grand jury witnesses had been "exposed" to and "tainted by" defendant's immunized testimony. *United States v. DeSalvo*, 797 F.Supp. 159, 164-65 (E.D. N.Y. 1992), *aff'd*, 26 F.3d 1216 (2d Cir. 1994). The district judge (properly) rejected the defendant's motions. *Id.* at 165.

obstruction of justice, crimes that occurred at the time that the false statements were given.").

To the extent Jon Burge gave immunized statements in the 1980s and 1990s, the Fifth Amendment privilege – and thus any co-extensive immunity – would not have protected him against false testimony he later decided to give in November 2003. Burge argues that he made immunized statements in 1986, 1991, and 1992 in response to allegations related to Andrew Wilson, Shadeed Mu'min, Melvin Jones, Terry Harris, and the People's Law Office. In November 2003, in a civil proceeding brought by Madison Hobley, Burge made statements which the government intends to prove were perjured. When Burge made the statements in the 1980s and 1990s, the Fifth Amendment would not have protected him from the then imaginary, trifling, speculative, and insubstantial hazard that he might, more than a decade later, commit perjury and then be prosecuted for it. In other words, when Burge made statements after the City of Chicago offered *Garrity* protection for his Fifth Amendment rights, he was not then "confronted by a substantial and real hazard" that he would incriminate himself in the event he decided to lie under oath more than a decade later. Indeed, Burge's risk of incrimination was far more speculative than those of the defendants deemed by the Second and Sixth Circuits to be outside the scope of the Fifth Amendment. Burge's perjured testimony came more than a decade later, as opposed to within two years in *Seltzer* and *Desalvo*. Moreover, Burge's perjury charge stems from a civil proceeding, not a later criminal investigation as in those cases.

As *Apfelbaum*, *DeSalvo*, and *Seltzer* make clear, from 1986 through 1991, when Burge provided statements in connection with OPS investigations, no Fifth Amendment protection attached to false statements he was to make 10 years or more later (and which are the charges in this case). Thus, as these cases teach, no immunity extends to Burge's statements and no

Constitutional prohibition exists as to any use the government might choose to make of them. Therefore, Burge's arguments concerning "use," "taint," or "exposure" have no application and his demands for hearings and the dismissal of the indictment for "improper use" are without any legal merit and should be rejected.

## II. Defendant's Reply Brief

Four other points in Defendant's reply brief warrant brief comment.

### A. The Government May Use the Other Officers' OPS Statement Against Burge

In a footnote, Defendant expresses confusion about the Government's argument that use of Officers Yucaitis' and O'Hara's OPS statements (the Wilson OPS Statement) against Burge would not violate *Garrity*. To clarify, because those officers made the exact same statement Burge made to OPS, the Government could use those officers' statement to investigate Burge. Because the Fifth Amendment right against self-incrimination (and the commensurate immunity) are personal rights, *see, e.g.*, *Rakas v. Illinois*, 439 U.S. 128, 140 (1978), prosecutors are free to use one person's immunized statement against another person. Even assuming that the particular statement to OPS that Burge signed was immunized, he cites no authority or even logic for the proposition that the statements of Officers Yucaitis and O'Hara, which, although identical to his own, were unquestionably their own statements, may not be used against him. Of course, as explained in the Miller Affidavit attached to the Government's response brief, the Trial Team has not seen Burge's statement to OPS, did not use the statement in its investigation, and does not plan to use the statement in any manner (without express permission from the Court).

### B. The "Analysis and Commentary" Section of the OPS Statement

Defendant's reply brief concedes that the Wilson OPS Statement consists almost entirely

of information available from independent sources.[3] (Reply at 3.) The one exception to this, defendant claims, is the ten-page "Analysis and Commentary" section of the Wilson OPS Statement, which defendant asserts contains "point-by-point positions on when and how Wilson was injured." (*Id*.) Burge contends that the Government will somehow use this "first-hand insight into Burge's thought process" against him. As the Government has made clear, however, the trial team has not viewed the Wilson OPS Statement and will not use the Wilson OPS Statement at trial.[4] Nor did the Trial Team use the "Analysis and Commentary" section indirectly, as an investigative tool. First, as explained in the Miller Affidavit, the trial team has never seen it. (Miller Aff. at ¶ 20) ("No member of the investigative team read any statement or submission made by Jon Burge to OPS.") Second, it is hard to image to what investigative use the Analysis and Commentary section could be put, considering that it consists of speculative arguments, not first hand factual assertions by Burge. (*See* D. Ex. 4, at 103-113.) Third, Burge (and his previous lawyer) made many of the same arguments in closing arguments or testimony in various public proceedings. *See* Appendix B. Fourth, all of the underlying factual assertions in the Analysis and Commentary section are otherwise available from independent sources. *Id.*

### C. The Police Board Testimony is Not *Garrity*-Protected

Defendant argues that the word "hearing" in the administrative warning he was given by OPS[5] refers to the Police Board hearing. This argument overlooks the facts. As defendant

---

[3] Burge appears to concede that there is no *Garrity* issue with respect to the unquestionably "re-hashed" portion of the Wilson OPS Statement (which consists of 103 pages of the 113-page document).

[4] Unless, of course, the Court grants it permission to do so.

[5] The warning states, *inter alia*, that "any admission or statement made by you during the course of this hearing, interrogation or examination . . . cannot be used against you in a subsequent criminal proceeding."

readily admits, OPS and the Police Board are separate and distinct entities.[6] The OPS warning, dated May 8, 1991, makes this distinction clear at the outset, stating that "Any admission or statement made by you in the course of ***this*** hearing, interrogation, or examination may be used as the basis for your suspension ***or as the basis for charges seeking your removal or discharge . . .***" (D. Ex. 3.) The OPS warning applied only to "this" – *i.e.* "the OPS" – investigation; by no logic does the word "hearing" refer to the Police Board hearing, because a Police Board hearing, by definition, occurs, if at all, only ***after*** charges seeking removal or discharge have been filed by the Police Superintendent. Defendant's interpretation of the warning – that it extends to the Police Board hearing – does not square with the language of the warning itself.[7] Neither is it consistent with the nature and rules of the Police Board proceedings or the rules of the Chicago Police Department.

The gravamen of *Garrity* is the coercive requirement that obliges a public employee to speak or face serious discipline for not speaking. *Garrity*, 385 U.S. at 500 ("[T]he protection of the individual under [the Constitution] against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office.") The Police Board rules do not compel an accused to give testimony at a hearing. And they most certainly do not create a "speak or be disciplined for not speaking" coercion. Indeed, when the Police Board

---

[6] The OPS investigation ended when the Police Superintendent suspended Burge. (Ex. 1. 11/12/1991 Suspension Notification.) Thereafter, the Police Board served Burge with notice that he was being charged with violating certain rules of police conduct. (Ex. 2, 11/12/1991 Police Board Charges.)

[7] That the word "hearing" in the OPS warnings does not refer to the Police Board hearing is further clarified on the last page of the warnings, wherein Burge "agree[d] to proceed with ***said hearing***, examination or interrogation at 1000 hours, on May 17, 1991 in room OPS." (D. Ex. 3.) There can be no mistake: the word "hearing" refers to the OPS hearing scheduled for May 17; not the Police Board hearing which was eventually held in February and March 1992.

notified Burge of the hearing date, the Board told him that you "may appear and be heard in your defense, *if you see fit*." (Ex. 2.) He was not even compelled to attend the hearing.

As for the Chicago Police Department, its rules actually contemplate the invocation of the Fifth Amendment privilege against self incrimination at the Police Board hearing and if the privilege is invoked, the employee is obliged to give evidence only if specifically "immunized." *See* Chicago Police Rule 51(b):

> Failure to cooperate when called to give evidence or statements by any investigative branch or superior officer of the Chicago Police Department or the Police Board when the evidence or statements sought relate specifically, directly and narrowly to the performance of his official duties. *If* the member properly asserts a constitutional privilege, he will be required to cooperate *if* advised that by law any evidence or statements given by him cannot be used against him in a subsequent criminal prosecution.") (emphasis added);[8]

s*ee*, *e.g.*, *Thanos v. Martin*, 1990 U.S. Dist. LEXIS 1215, at *4 (N.D. Ill. Feb. 2, 1990) (police officers invoked Fifth Amendment privilege before the Police Board); and *Kelly v. Police Bd. of Chicago*, 25 Ill. App. 3d 559, 565 (Ill. App. Ct. 1st Dist. 1975) ("[Police officer] could and did properly exercise his Fifth Amendment right to refuse to answer the questions asked of him . . . by doing so he limited the evidence available to the [Chicago Police] Board, and he may not now complain[] that a decision based on these unexplained incriminating circumstances is unjust or unwarranted.") (internal citations omitted).

Burge appeared at the Police Board hearing voluntarily and chose not to invoke his Fifth

---

[8] Because OPS and the Police Board are distinct entities, Rule 51(a) of the Chicago Police Rules does not apply. The Rules of the Chicago Police Department are available on the internet, at http://www.cityofchicago.org/city/webportal/portalContentItemAction.do?contentOID=536932034&contenTypeName=COC_EDITORIAL&topChannelName=SubAgency&entityName=Chicago+Police+Board&deptMainCategoryOID=-536895093&blockName=City+of+Chicago/Chicago+Police+Board/Content&context=dept; *see also United States v. Castro*, NO. O1 CR 78, 2001 U.S. Dist. LEXIS 19455, at *18 (N.D. Ill. Nov. 26, 2001) (explaining Rule 51).

Amendment right to silence (he was not called as a witness by the prosecutor), but chose instead to present a defense. There was no compulsion, thus there was no *Garrity* immunity. Without citing any authority, and with the burden to establish that his testimony was compelled on his shoulders, Defendant Burge proclaims that the "police board hearing rules ... cannot bear the weight ascribed [by the Government] to them." As explained above, they can, and they do.

### D. Exposure is Not Enough

Finally, Burge's reply brief goes too far in suggesting that mere exposure by members of the Trial Team to *Garrity* protected statements, by itself, violates *Garrity*. Although the Court should not reach this issue – because, for purposes of this perjury and false statement prosecution, *Garrity* does not protect any of Burge's statements and because, even if it did, the Trial Team was never exposed to *Garrity* protected statements – the proper analysis is whether the prosecutors **used** the statements. Exposure is not enough. *See* Gov. Resp. at 17-21 (citing *United States v. Velasco*, 953 F.2d 1467, 1474 (7th Cir. 1992) and *United States v. Bolton*, 977 F.2d 1196, 1199 (7th Cir. 1992)); *see also United States v. Daniels*, 281 F.3d 168, 181 (5th Cir. 2002) (rejecting defendant's argument that the fact that the prosecution team was eventually exposed to immunized statements required dismissal of the entire team from the case); *United States v. Serrano*, 870 F.2d 1, 17 (1st Cir. 1989) (rejecting argument that purpose of immunity is "automatically frustrated by the government's mere exposure to immunized testimony"); *United States v. Mariani*, 851 F.2d 595, 600 (2d Cir. 1988) (rejecting argument that prosecution is foreclosed because immunized testimony might have tangentially influenced the prosecutor's thought processes in preparing the indictment and preparing for trial).

**CONCLUSION**

The Government respectfully requests that this Court deny Defendant's Motion to Dismiss Pursuant to *Garrity v. New Jersey*.

        Respectfully submitted,

        PATRICK J. FITZGERALD
        United States Attorney


By:    */s/ Christopher P. Hotaling*
        CHRISTOPHER P. HOTALING
        DANIEL W. GILLOGLY
        STEVEN GRIMES
        Assistant United States Attorneys
        United States Attorney's Office
        219 South Dearborn Street
        Chicago, Illinois  60604
        (312) 353-5300


        Karla Dobinski
        Civil Rights Division
        Department of Justice
        Washington, D.C.