**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 08 CR 846 |
| vs. | ) | |
| | ) | Judge Joan H. Lefkow |
| JON BURGE, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On October 16, 2008, Jon Burge ("Burge"), a commander in the Chicago Police Department ("CPD") during the 1980s and early 1990s,[1] was indicted based on allegedly false interrogatory answers he submitted in *Hobley* v. *Jon Burge*, *et al.*, No. 03 C 3678, a civil rights case filed in this court. The two sets of interrogatories at issue concerned Burge's participation in and knowledge of an alleged pattern and practice of physical abuse and torture of Area Two detainees. Counts I and III charge Burge with obstructing justice in violation of 18 U.S.C. § 1512(c)(2) by signing false answers to the first and second sets of interrogatories propounded in *Hobley*. Count II charges Burge with perjury in violation of 15 U.S.C. § 1621(1). Burge now moves to dismiss the indictment pursuant to *Garrity* v. *New Jersey*, 385 U.S. 493, 87 S. Ct. 616, 17 L. Ed. 2d 562 (1967) (hereinafter, "*Garrity*"), which protects statements made under the threat of discharge from public office from use in subsequent criminal proceedings. For the reasons discussed below, Burge's motion [# 59, 64] is denied.

---

[1] Burge supervised detectives at the Area Two and Area Three commands, as well as the Bomb & Arson Squad.

1

## BACKGROUND[2]

The allegations of systematic physical abuse and torture during Burge's tenure with the CPD have spanned the last three decades and spawned an array of judicial and administrative proceedings.[3] Throughout these proceedings, Burge has consistently denied his participation in and knowledge of such conduct, offering testimony and making statements to this end. Burge now contends that certain of the statements given by him in the course of these proceedings are protected under *Garrity*, and have impermissibly been used against him by the government in its investigation of the crimes with which he is now charged, requiring the dismissal of the indictment. Because Burge's *Garrity* argument arises from the statement he gave to the Chicago Police Department's Office of Professional Standards ("OPS") in 1991, the court begins there.

### I. The OPS Investigation

In 1990, the OPS reopened its investigation into the conduct of Burge and two other officers under his command, detectives Patrick O'Hara and John Yucaitis, during a February 14, 1982 interrogation of Andrew Wilson ("Wilson"), who was later convicted of the murder of two Chicago police officers.[4] Francine Sanders, an OPS investigator, was assigned to the case. On October 26, 1990, Sanders submitted a report to Superintendent of Police, Leroy Martin, indicating that Wilson sustained injuries while he was held under Burge's command. *See* Def.'s

---

[2] The facts in this section are taken from the briefs and exhibits submitted by the parties, as well as the court's previous opinions.

[3] The background of this case has been more fully set forth in this court's July 29, 2009 and April 23, 2009 opinions (Docket Nos. 31, 121).

[4] Burge states that Wilson filed a complaint against Burge and John Yucaitis with the OPS in August 1983 but that the allegations were found "Not sustained." Def.'s Mem. in Supp. of Mot. to Dismiss at 6 n. 2 (citing the Special State's Attorney's Report at 95, 109-10).

Mot. to Dismiss, Ex. 10 at 146-47 (hereinafter, "Def.'s Mot."); Def.'s Mem. in Supp. of Def.'s Mot. at 6 (hereinafter, "Def.'s Mem.").[5] On May 8, 1991, the CPD served Burge with a document entitled "Notification of Charges/Allegations," which listed Wilson and Sanders as the complainants. Def's Mem., Ex.3. Wilson alleged that he had been physically abused and tortured at Area Two, and that Burge knew of and participated in this conduct. *Id.* Sanders further alleged that Burge had failed to provide Wilson with prompt medical attention for his injuries. When he received notification of the charges, Burge was also given notice of his administrative proceeding rights:

> The law provides that you are to be advised of the following:
> 1. Any admission or statement made by you in the course of this hearing, interrogation or examination may be used as the basis for your suspension or as the basis for charges seeking your removal or discharge or suspension in excess of 30 days.
> 2. You have the right to counsel of your choosing to be present with you to advise you at this hearing, interrogation or examination and you may consult with him as you desire.
> 3. You have a right to be given a reasonable time to obtain counsel of your own choosing.
> 4. You have no right to remain silent. You have an obligation to truthfully answer questions put to you. You are advised that your statements or responses constitute an official police report.
> 5. If you refuse to answer questions put to you, you will be ordered by a superior or officer to answer the question.
> 6. If you persist in your refusal after the order has been given to you, you are advised that such refusal constitutes a violation of the Rules and Regulations of the Chicago Police Department and will serve as a basis for which your discharge will be sought.
> 7. You are further advised that by law any admission or statement made by you during the course of this hearing, interrogation or examination and the fruits thereof cannot be used against you in a subsequent criminal proceeding.

---

[5] Burge does not attach a copy of Sanders's October 26, 1990 report.

*Id.* In lieu of offering oral testimony before the OPS, on July 12, 1991 Burge, O'Hara and Yucaitis submitted a joint 113-page written response to the Notification of Charges/Allegations ("the OPS Statement").[6] Def.'s Mot., Ex. 4. The OPS Statement was prepared with the assistance of counsel and submitted jointly by the three officers. The majority of the OPS Statement consisted of a chronology of the testimony and evidence presented at Wilson's criminal and civil trials. Because Burge had testified at Wilson's suppression hearing and both of his criminal and civil trials, the OPS Statement also included summaries of his testimony. Pages 1 to 10 of the OPS Statement contained background information; pages 10 to 37 concerned the evidence received during the hearing on Wilson's motion to suppress his confession and his first criminal trial; pages 38 to 44 concerned Wilson's subsequent criminal proceedings, including his appeal to the Illinois Supreme Court, its reversal of his conviction and his subsequent retrial and conviction; pages 44 to 103 concerned Wilson's civil rights case, including his first civil rights trial which ended in a hung jury and his second civil rights trials which resulted in a special verdict exonerating the individual officers.[7] *Id.* The last section of the officers' OPS Statement consisted of a ten-page "Analysis and Commentary" section that attacked Wilson's credibility, attempted to point out inconsistencies in his testimony and

---

[6] A letter dated July 23, 1991 from Sanders to William Kunkle, Burge's attorney, indicated that he understood the OPS Statement was to be considered the officers' statement in response to the Notification of Charges/Allegations. Def.'s Reply, Ex. 2. Sanders asked the officers to sign a statement at the bottom of the letter that read, "The undersigned hereby acknowledges that the document submitted by Attorneys for Respondents on 12 July 1991 is to be considered my statement in response to the allegations presented for C.R. #123543 on 8 and 9 May 1991." *Id.* The letter was signed by the officers on August 5th and 6th. *Id.*

[7] At the time the OPS Statement was filed, Wilson's appeal of the special verdict entered in the second civil rights trial was pending before the Seventh Circuit.

asserted that Wilson's injuries were either self-inflicted or caused by other officers at the time of his arrest. *Id*. at 103-113.

On September 23, 1991, Sanders issued a "Supplemental Summary Report" to the Chief Administrator of the OPS that responded to the officers' OPS Statement. *See* Def.'s Mot., Ex. 5. Sanders found that the statement failed to provide any reasonable, substantiated and consistent explanation for Wilson's injuries, and that Wilson had consistently told the same basic story that was consistent with the preponderance of the evidence. *Id*. at 27. Accordingly, she recommended that the findings presented in her original report remain unchanged. *Id*. at 228.

## II. The Police Board Hearings

On November 12, 1991, Superintendent Martin filed charges with the Chicago Police Board[8] ("the Police Board") alleging that Burge violated several of the CPD's rules and regulations by, *inter alia,* participating in and sanctioning the physical abuse and mistreatment of Wilson on February 14, 1982.[9] Burge was suspended from the CPD pending their resolution. In February and March of 1992, an administrative law judge presided over hearings on the charges. Burge testified at the Police Board hearings and submitted to cross-examination.[10] He was questioned about his and other officers' participation in the arrest and interrogation of Wilson and other individuals who had been interrogated at Area Two.

---

[8] The Police Board is an entity independent of the CPD. Govt's Resp. at 7.

[9] The report of the special state's attorney, *see infra* at 6, indicates that the findings of Sanders's report influenced Superintendent Martin's decision to file charges with the Police Board. Def.'s Mem., Ex. 10 at 146-47.

[10] Burge does not contend that he was compelled to testify at the Police Board under a threat of discharge from office.

5

On February 11, 1993, the Police Board issued findings setting forth its factual and legal conclusions and its final decision. The Police Board found that Burge, O'Hara and Yucaitis had engaged in misconduct. Burge was found to have violated CPD rules based on his physical abuse of Wilson, failing to take action to stop the other officers from abusing Wilson despite his knowledge that they were doing so, and failing to provide proper medical care to Wilson. O'Hara and Yucaitis were suspended from the police force for fifteen months. Burge was ordered separated from his position.

### III. The Special State's Attorney's Investigation

In April 2002, Cook County Circuit Court Judge Paul Beibel appointed a special state's attorney, Edward J. Egan, to conduct a state grand jury investigation into the allegations against Burge and those working under his command, and to determine whether criminal charges should be brought against them.[11] During the lengthy investigation, the office of the special state's attorney collected an extensive amount of information from various sources, including the OPS and the Police Board. The special state's attorney's report ("SSA Report") was released in July 2006. The SSA Report relied on the OPS Statement and materials associated with the Police Board hearings in drawing conclusions about the credibility of Wilson's allegations, including whether Burge had caused certain of Wilson's injuries.[12] *See* Def.'s Mot., Ex. 10 at 43, 136-38.

---

[11] The court and the parties have at times referred to Egan as a "special prosecutor."

[12] The SSA Report was not limited to Wilson's allegations but also investigated those made by several other individuals who had been interrogated by Burge and those officers under his command. It ultimately concluded that while certain individuals' claims of physical abuse and torture were credible, the statute of limitations barred any criminal prosecution for such conduct.

6

**LEGAL STANDARD**

The parties agree that it is the defendant's initial burden to show that the statements at issue are entitled to protection under *Garrity*, and that once that showing has been made, the burden shifts to the government to show by a preponderance of the evidence that information from the protected statements was not used, or that a legitimate, independent source for the information exists. *See* Govt.'s Resp. in Opp. to Def.'s Mot. at 9 (hereinafter, "Govt.'s Resp."); Def.'s Reply in Further Supp. of his Mot. at 4 (hereinafter, "Def.'s Reply").

**ANALYSIS**

Burge insists the indictment charging him with perjury and obstruction of justice must be dismissed because the government has failed to demonstrate that it has not used the OPS Statement in its investigation of this case.[13] The motion thus proceeds on the factual assumption that the government used the OPS Statement in the course of its investigation of this case, and the legal premise that *Garrity* prohibits it from doing so. In addition to arguing that the OPS Statement was not used in its investigation[14] and that, in any case, it has legitimate, independent

---

[13] Burge also takes issue with the government's potential exposure to two additional statements he made to the OPS that he contends are protected under *Garrity*. In 1986, Burge was questioned by OPS Investigator Andrew Palahniuk about his knowledge and participation in an interrogation that had taken place at Area Two on October 29, 1984. Def.'s Mem. at 12. He had received a similar notice of his administrative proceeding rights prior to questioning. Def.'s Mot., Ex. 8. In 1992, Burge received a Notification of Charges/Allegations and notice of his administrative proceeding rights in connection with a threat he allegedly made to the People's Law Office. *Id*. at Ex. 9. Burge waived counsel and submitted a brief letter denying the allegations. *Id*. To the extent Burge complains that information from these OPS investigations may have been used by the government in its investigation of this case (the government contends it has not used these statements and has made clear it will not be presenting information related to either of these investigations at trial), this argument is foreclosed for the same reasons set forth in this opinion.

[14] The government has submitted an affidavit from Assistant United States Attorney Barry A. Miller with its response describing the procedures his office implemented to avoid exposing members of the team responsible for investigating and prosecuting this case from being exposed to statements made
(continued...)

7

sources for all of the information contained in that statement, the government contends that, as a matter of law, *Garrity* does not protect the OPS Statement from use in this proceeding for perjury and obstruction of justice.[15] Because the court agrees that Burge cannot show that *Garrity* prohibits the use of the OPS Statement, he has failed to shift the burden of proof to the government, and the court need not address the government's other arguments.

**II.     The Protection Afforded by *Garrity***

The appellants in *Garrity* were New Jersey police officers who had made statements to the Attorney General while under investigation for fixing traffic tickets. Before being questioned, the police officers were warned not only that their statements could be used against them in a criminal proceeding but that, if they asserted their Fifth Amendment privilege against self-incrimination and refused to answer, they would be subject to removal from office. The officers answered the questions without being granted immunity and were subsequently prosecuted for conspiracy to obstruct the administration of traffic laws. Certain of the answers given by the officers in the initial investigation were later used, over their objections, at trial. The officers sought to overturn their convictions, arguing that their statements were coerced because if they refused to answer, they could lose their positions with the police department. The United States Supreme Court granted certiorari to decide whether the government may "use

---

[14](...continued)
by Burge and other police officers to the OPS. Miller further states that no one on that team has read the OPS statement at issue in this case.

[15] The government raised this argument in its sur-reply, to which Burge had the opportunity but chose not to respond. *See* Govt.'s Mot. for Leave to File a Sur-Reply, ¶ 5 (Docket No. 122) ("The government would not object if defendant seeks permission for leave to file a sur-reply."); Minute Order of Aug. 5, 2005 (Docket No. 126) (granting defendant leave to file a response to sur-reply). Accordingly, the court considers Burge to have waived any objection to its consideration here.

the threat of discharge to secure incriminatory evidence against an employee." *Garrity*, 385 U.S. at 499. The Court overturned the officers' convictions, holding that "the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under the threat of removal from office." *Id.* at 500.

The Seventh Circuit has explained that "*Garrity* provides the witness with adequate protection against the government's use, in subsequent criminal proceedings, of information obtained as a result of his testimony, where his refusal to testify would form the basis for disciplinary action against him." *United States* v. *Devitt*, 499 F.2d 135, 142 (7th Cir. 1974). The protection *Garrity* affords has been interpreted by the circuit courts to be a self-executing use immunity. *See United States* v. *Veal*, 153 F.3d 1233, 1239 n.4, 1241 n.7 (11th Cir. 1998) (the Fifth Amendment protection afforded by *Garrity* is self-executing and tantamount to use immunity); *see also Chan* v. *Wodnicki*, 123 F.3d 1005, 1009 (7th Cir. 1997) (citing, *inter alia*, *Garrity* for the proposition that "the threat of job loss for a public employee is a sufficient threat to require that the employee be granted immunity from prosecution . . . ."); *Patrick* v. *United States*, 524 F.2d 1109, 1120 (7th Cir. 1975) (citing *Garrity* for the proposition that "testimony which [the defendant] has been compelled to give against himself . . . will be entitled to an implied immunity against the use of such testimony in any federal criminal proceeding."); *Wiley* v. *Mayor & City Council of Baltimore*, 48 F.3d 773, 778 (4th Cir. 1995) ("[I]f the state had attempted to make direct or derivative use of the officers' statements against them, *Garrity*'s self-executing immunity would have immediately attached."). Because the OPS Statement was made under the threat of his discharge, Burge contends that it is protected under *Garrity* and

9

cannot be used or derivatively used against him in any subsequent criminal proceeding. But even if it is assumed that Burge's OPS statement would be entitled to *Garrity*-protection,[16] the immunization of that statement from use in subsequent criminal proceedings does not extend to subsequent prosecutions for perjury and obstruction of justice.

## II.     The Limits of *Garrity*-Protection

The Seventh Circuit has ruled that "*Garrity* . . . do[es] not proscribe the use, in a criminal prosecution under 18 U.S.C. § 1621 or § 1623, of a defendant's allegedly perjurious statements," *Devitt*, 499 F.2d at 142, even where it was obtained under "a clear threat of discharge or suspension if [the defendant] refused to testify." *Id.* at 141. This is because "while a public employee may not be put to the Hobson's choice of self-incrimination or unemployment, he is not privileged to resort to the third alternative, i.e., lying." *Id.* (quoting *United States ex rel. Annunziato* v. *Deegan*, 440 F.2d 304, 306 (2d Cir. 1971) (denying habeas relief from defendant's conviction for perjury where defendant was made to testify under the threat of dismissal from public employment)). Thus, a defendant may "not be prosecuted for *past* criminal activity based on what he was forced to reveal about himself," but he may be "prosecuted for the *commission of a crime while testifying*." *Id*. (emphasis in original). Relying on *Annunziato* and *Devitt*, the

---

[16] Relying on *United States* v. *Lipkis*, 770 F.2d 1447, 1451 (9th Cir. 1985), the government argues that the OPS Statement is not entitled to protection under *Garrity* because it was drafted by counsel and constituted "nothing more than a compendium of previously available statements," such as those given by Burge during Wilson's criminal and civil proceedings. Govt.'s Resp. at 10. In reply, Burge argues that the Analysis & Commentary section of the OPS Statement contained detailed information concerning Burge's position on how Wilson's injuries were caused which was not contained in his prior testimony. Def.'s Reply at 3-4. Because the OPS Statement is not immunized from use in this proceeding even if it is entitled to protection under *Garrity*, the court need not decide this issue. It should be noted, however, that the government has provided a chart listing independent sources for the information contained in the Analysis & Commentary section regarding how Wilson's injuries were caused. *See* Govt.'s Sur-Reply, App. B.

10

Eleventh Circuit has similarly concluded that "*Garrity*-insulated statements regarding *past* events under investigation must be truthful to avoid *future* prosecution for such crimes as perjury and obstruction of justice." *See Veal*, 153 F.3d at 1243 (emphasis in original).

The reasoning of *Annunziato*, *Devitt*, and *Veal* is also consistent with that of the Supreme Court in *United States* v. *Apfelbaum*, 445 U.S. 115, 127-28, 100 S. Ct. 948, 63 L. Ed. 2d 250 (1980). In *Apfelbaum*, the Court upheld the respondent's conviction for making false statements while under a statutory grant of immunity.[17] In reaching this conclusion, the Court examined the rationale underlying the principle that the privilege against self-incrimination provides no protection for the commission of perjury. The Court explained that the privilege against self-incrimination may only be asserted when the defendant is "confronted by substantial and real, and not merely trifling or imaginary, hazards of incrimination." *Apfelbaum*, 445 U.S. at 128 (citations omitted) (internal quotation marks omitted). Because "at the time [the respondent] was granted immunity, the privilege would not have protected him against false testimony that he *later* might decide to give," the Court concluded that neither the Fifth Amendment nor the immunity statute prevented the use of respondent's immunized testimony at his subsequent trial for false swearing.[18] *Id.* at 130. In other words, "a future intention to commit perjury or to

---

[17] The Third Circuit had reversed the defendant's conviction because the immunized testimony admitted at trial was not limited to "the *corpus delicti* or core of a defendant's false swearing indictment it could not be introduced." *Apfelbaum*, 445 U.S. at 120 (citations and quotation marks omitted). The Supreme Court ruled that neither the Fifth Amendment nor the federal use immunity statute prohibited the admission of all aspects of the respondent's immunized testimony in a subsequent prosecution for making false statements. *Id.* at 128.

[18] The fact that *Apfelbaum* involves testimony made under a federal use immunity statute,18 U.S.C. § 6002, is immaterial because a *Garrity*-protected statement is tantamount to use immunity. *See Veal*, 153 F.3d at 1241 n.7.

make false statements . . . is not by itself sufficient to create a substantial and real hazard that permits invocation of the Fifth Amendment." *Id.* at 131.

The above cases compel the conclusion that *Garrity* does not prohibit the government's use of Burge's OPS Statement in this criminal prosecution for perjury and obstruction of justice. Any protection against use of the OPS Statement when Burge submitted it in 1991 would only have applied to subsequent criminal prosecution based on the conduct for which he was then being investigated: his actions during the interrogation of Andrew Wilson. *See Veal*, 153 F.3d at 1243 ("Giving a false statement is an *independent* criminal act that occurs *when* the individual makes the false statement; it is *separate* from the events to which the statement relates, the matter being investigated." (emphasis in original) (citing *Fraternal Order of Police, Lodge No. 5* v. *City of Philadelphia*, 859 F.2d 276, 281 (3d Cir. 1988))). The protection afforded by *Garrity* would not have extended to prosecution from the crimes with which Burge is now charged – perjury and obstruction of justice in connection with interrogatories submitted in *Hobley* – because they are not related to the matter that was investigated by the OPS. In 1991, Hobley had not yet filed his civil rights suit and Burge does not contend he was at that time under investigation for making false statements in connection with any other civil rights case. The risk that Burge would have been prosecuted for submitting false statements in 2003 was far too speculative to permit him to invoke the Fifth Amendment in 1991. *See, e.g.*, *United States* v. *DeSalvo*, 26 F.3d 1216, 1221-22 (2d Cir. 1994) ("[T]he Fifth Amendment does not prevent the use of DeSalvo's 1987 state grand jury testimony in this subsequent prosecution [for lying to a federal jury in 1989] 'because, at the time he was granted immunity, the privilege would not have protected him against false testimony that he later might decide to give.' (quoting

*Apfelbaum*, 445 U.S. at 130))); *United States* v. *Seltzer*, 794 F.2d 1114, 1120 (6th Cir. 1986) ("[W]e hold that neither the fifth amendment nor the immunity statute prevent use of appellant's 1981 immunized testimony at his trial for perjury before the grand jury in 1983 because, at the time appellant was granted immunity in 1981, the privilege would not have protected him against false testimony he might later decide to give in either 1981 or 1983."). Because *Garrity* does not protect the use of the OPS Statement in this case, it also cannot be used to protect what he contends were its derivative uses at the Police Board hearings and in the SSA Report. Accordingly, the motion to dismiss the indictment must be denied.

## CONCLUSION AND ORDER

For the reasons discussed above, Burge's motion to dismiss the indictment pursuant to *Garrity* [# 59, 64] is denied.

Dated: September 11, 2009  Enter: _____
JOAN HUMPHREY LEFKOW
United States District Judge