**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 08 CR 846** |
| vs. | ) | |
| | ) | **Judge Joan H. Lefkow** |
| **JON BURGE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

John Burge, once a Commander within the Chicago Police Department, has been charged with one count of perjury in violation of 15 U.S.C. § 1621(1) and two counts of obstruction of justice in violation of 18 U.S.C.§ 1512(c)(2), arising from submitting allegedly false answers to interrogatories propounded in a civil rights case tried in this court, *Hobley* v. *Jon Burge*, *et al.*, No. 03 C 3678. In *Hobley*, the plaintiff alleged that Burge and others physically coerced, abused and tortured him to extract a confession from him in a criminal case. Burge submitted interrogatories denying torture and the knowledge of torture by others under his command at Area Two. This Opinion assumes familiarity with the facts surrounding the case, as set out in this court's Memorandum Opinion and Order dated April 23, 2009 (Dkt. No. 31).

In the April 23 ruling, the court granted the government's motion to admit the testimony of Andrew Wilson, now deceased, who had testified in prior proceedings that Burge had physically coerced, abused and tortured him and knew that other Chicago police officers had done the same.[1] The ruling was based on Federal Rule of Evidence 804(b)(1), which permits the

---

[1] Wilson testified in his own civil rights case, *Wilson* v. *City of Chicago, et al.*, No. 86 C 2360 (N.D. Ill.), in a retrial of the case, and in an administrative hearing before the Chicago Police Board.

admission of qualifying sworn testimony of an unavailable witness.  Seeking what he perceives as fair reciprocity, Burge has moved to admit the testimony of two now deceased police detectives, John Yucaitis and Patrick O'Hara, who testified in prior proceedings involving Wilson at which they denied knowledge of torture inflicted on Wilson and at which Yucaitis denied engaging in such conduct (O'Hara was not charged with engaging in torture of Wilson). Burge relies on the residual exception to the hearsay rule, Federal Rule of Evidence 807.  The government opposes the motion on the basis that the proffered evidence does not meet the threshold qualifications of admissibility under the rule.  For the reasons stated below, Burge's motion [79] will be denied.

## ANALYSIS

Rule 807, as pertinent here, provides as follows:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Fed. R. Evid. 807.  The threshold requirement of Rule 807 is a determination that the statement is not specifically covered by Rules 803 or 804.  This testimony is specifically within the ambit of Rule 804(a)(4) as both witnesses are "[u]nable to be present or to testify at the hearing because of death."  Burge cannot argue, however, that the testimony is admissible under 804(b)(1) because the testimony does not meet the requirement that the party against whom it is now offered (the government) "had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."  Fed. R. Evid. 804(b)(1).  Although this missing link is

2

intended to protect the right of confrontation, a right the government does not have, the government argues it is entitled to the protections of the hearsay rules in order to ensure a fair trial, and admission of this testimony would cause an unfair trial. *See United States* v. *Doerr*, 886 F.2d 944, 957 ("Although the hearsay rules and the confrontation clause stem from the same root, the two are not equivalent." (citations omitted) (internal quotation marks omitted)); *United States* v. *Bradley*, 145 F.3d 889, 896 (7th Cir. 1998) (reasoning that the trial court's admission of hearsay under the residual exception of Rule 804(b)(5), now Rule 807, was not an abuse of discretion; admission served the general purposes of the Rules of Evidence and the interests of justice because it "help[ed] to assure the integrity of the fact-finding process and secure the public's interest in the disclosure of reliable, probative evidence . . . ."); *United States* v. *Hooks*, 848 F.2d 785, 796 (7th Cir. 1988) ("Out-of-court statements are generally inadmissible because they are presumed to be unreliable."); *Akrabawi* v. *Carnes, Co.*, 152 F.3d 688, 697 (7th Cir. 1998) (District courts are to "narrowly constru[e] the residual provision to prevent it from becoming the exception that swallows the hearsay rule." (citations omitted)).

The criterion primarily in dispute is trustworthiness, that is, "whether the proffered hearsay possesses indicia of reliability 'equivalent' to the indicia of reliability supporting the traditional exceptions. . . ." *Doe* v. *United States*, 976 F.2d 1071, 1075 (7th Cir. 1992). Burge relies on *United States* v. *Hall*, 165 F.3d 1095 (7th Cir. 1999), to identify relevant criteria in evaluating trustworthiness. There, the court stated the proponent of the hearsay evidence must rebut the presumption of unreliability by appropriate proof of trustworthiness, *id.* at 1110, and enumerated some non-exclusive factors a district court should take into account when evaluating the trustworthiness of a hearsay statement:

> In determining whether a statement is sufficiently reliable for purposes of [the residual exception], a court should examine, among other factors: (1) the probable motivation of the declarant in making the statement; (2) the circumstances under which it was made; and (3) the knowledge and qualifications of the declarant. [Other relevant factors may include] (1) the character of the declarant for truthfulness and honesty and the availability of evidence on the issue; (2) whether the testimony was given voluntarily, under oath, subject to cross examination and a penalty for perjury; (3) the extent to which the witness' testimony reflects his personal knowledge; (4) whether the witness ever recanted his testimony; and (5) whether the declarant's statement was insufficiently corroborated.

*Id*. at 1110-11 (citations omitted) (internal quotation marks omitted). It goes without saying that the witnesses had personal knowledge and, if available, would be qualified to testify on Burge's behalf. There is no evidence in the record as to the witnesses' respective character for truthfulness or the availability of evidence to establish such character, so this factor is disregarded here.

Concerning their motivation and the circumstances surrounding the testimony, Burge concedes that O'Hara and Yucaitis knew they would lose their jobs if they admitted the wrongdoing alleged but argues that the oath and cross-examination counterbalance this negative factor. He points out that the witnesses were consistent in their testimony throughout five separate examinations and were robustly cross-examined each time by individuals who had the same motive to test the veracity of the testimony as does the prosecutor here. Moreover, two juries returned a defense verdict in favor of O'Hara and Yucaitis in the *Wilson* trials, which Burge contends indicate that they were credible witnesses. He adds that the witnesses were career police officers without criminal records.

The government cites *United States* v. *Wright*, 363 F.3d 237, 246 (3d Cir. 2004), as an illustration that courts should be skeptical of exculpatory statements made by alleged co-schemers. There the defendant sought admission under Rule 807 of a co-schemer's statement to his attorney that tended to exonerate the defendant. The court of appeals upheld the district

4

court's determination that although an unavailable witness's confidential statements to his attorney indicated reliability, other circumstances were contrary, including that the statements were not under oath, there was no penalty for his lying to his attorney, and the witness's self-serving statements were made at a time when he knew he was under investigation and had a motive not to tell the truth. *Id.* at 245-46. The district court had further stated, "Human nature is to deny committing crimes, especially for a public figure who is held in high esteem by the community and knows he is under investigation." *Id.* at 246. *See also United States* v. *Hunt*, 521 F.3d 636, 643-44 (6th Cir. 2008) (upholding determination that statement of a co-worker was untrustworthy, stating, "It would not be bizarre for an individual to lie in order to protect another individual with whom he has a business relationship.").

O'Hara and Yucaitis each testified under circumstances such that they were strongly motivated to deny they or Burge had tortured and abused Wilson or other arrestees or knew of such occurrences. At the hearing on the motion to suppress evidence in Wilson's criminal case, such an admission would have undermined the prosecution of Wilson, who was charged with the murders of two police officers. In the civil rights cases, it cannot be said that they testified voluntarily because their refusal to testify would have permitted an adverse inference and increased their risk of being disciplined or prosecuted. Moreover, it could have subjected them to substantial damages, including punitive damages for which they would not have been indemnified. At the Police Board hearing, their jobs and ranks were at stake. Yucaitis and O'Hara were under Burge's command in Area 2,[2] further motivating them not to implicate Burge.

---

[2] Chi. Police Bd. Findings & Decision at 5 (1993), attached as Ex. D to Dkt. No. 21 ("Police Bd. Findings").

5

In this scenario, that they corroborated one another adds no measurable weight to the testimony. Where so much was at stake for the officers, this motivation to lie is not outweighed by the gravity of violating a testimonial oath.[3]

Burge argues that the fact that the witnesses were cross-examined is sufficient to override the negative factors of the balancing test, citing in his reply brief *Crawford* v. *Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). *See* Def.'s Reply at 2 ("[T]he Court found the availability of the *tool* for testing the reliability of out-of-court statements – cross-examination – dispositive[.] (emphasis in original)) (Dkt. No. 104). *Crawford*, however, presents a dilemma not present here. There the out-of-court statement of the unavailable witness was being offered against the defendant. Because the defendant could not confront the witness on cross-examination, the Court held the Confrontation Clause violated. Burge, however, is not in such jeopardy here, and the government has no right of confrontation. Cross-examination in this instance is relevant, if at all, only to whether it lends credence to the argument that the testimony is trustworthy. Where the evidence is inherently self-serving, the fact of cross-examination does little to enhance its trustworthiness.

---

[3] In a footnote Burge suggests that Wilson was more than equally motivated to lie, to avoid being put to death for killing two police officers. Wilson's confession was admitted into evidence at the first trial and he was sentenced to death, but the Illinois Supreme Court ordered a new trial on the basis that the evidence should have been suppressed. *People of the State of Ill.* v. *Wilson*, 506 N.E.2d 571, 576, 116 Ill. 2d 29, 106 Ill. Dec. 771 (1987). Wilson was convicted on retrial on June 20, 1988, before his first civil rights trial in February 1989, but his appeal was not decided until after the second civil rights trial in July 1989. *See People of the State of Ill.* v. *Wilson*, 626 N.E. 2d 1282. 254 Ill. App. 3d 1020, 193 Ill. Dec. 731 (Ill. App. Ct. 1993), leave to appeal denied, 631 N.E.2d 717 (Table), 154 Ill. 2d 568, 197 Ill. Dec. 495 (1994). The Police Board hearing was held in 1992 and the case was decided in 1993. The operative date for Wilson's motive to lie to avoid the death penalty, then, was the date the Illinois Supreme Court ruled in Wilson's first criminal trial, April 2, 1987. Since the jury in Wilson's second criminal trial did not hear evidence about the confession or the circumstances surrounding it, the jury would not have been affected by the allegations in determining the penalty. By contrast, the threat of civil penalties against the officers continued through all of the testimonial proceedings at issue.

The government also supports its position that the testimony is untrustworthy based on the Police Board's having adopted all findings of the hearing officer who presided at the hearing, including credibility findings unfavorable to O'Hara and Yucaitis.[4] The hearing officer determined that both O'Hara's and Yucaitis's testimony was unreliable in that "it is substantially more likely than not that each knew that Wilson was being abused." Chi. Police Bd. Findings & Decision at 38, attached as Ex. D to Dkt. No. 21 ("Police Bd. Findings"). Specifically, the Board found that the Chicago Police Department had proved by a preponderance of the evidence that both O'Hara and Yucaitis "knew about Wilson being physically abused by police officers at Area 2 and failed to stop it, report it and obtain medical attention for Wilson." *Id.* at 59. The Board's decision was affirmed on judicial review. *See* Unpublished Mem. of Op., Feb. 10, 1994 in *Patrick O'Hara and John Yucaitis* v. *Police Bd. of the City of Chi.*, No. 93 CH 2215, attached as Ex. E to Dkt. No. 21. *See also Wilson* v. *City of Chi.*, 900 F. Supp. 1015, 1028-29 (N.D. Ill. 1995) (applying collateral estoppel to prevent the officers from relitigating the factual issues already decided in the Police Board hearing and granting summary judgment to Wilson). Burge responds that the government fails to mention that the Police Board also determined that the special prosecutor had not proved that Yucaitis had actually engaged in the torture, *see* Police Board's Findings at 36*ff*,[5] suggesting that at least this portion of the testimony should be deemed

---

[4] The Decision of the Police Board recites that the record in the case is the most voluminous in the Police Board's history, consisting of over 3,800 pages of testimony, exhibits and argument. *See* Police Bd. Findings at 3.

[5] The board's finding does not rest on a finding that Wilson was not credible or that Yucaitis was more credible than Wilson: "Given Wilson's tentative identification of Yucaitis and the fact that Wilson did not even name Yucaitis as a defendant in his initial civil lawsuit in 1986, we find that Wilson's identification of Yucaitis is too tentative to support a finding that he participated in the physical abuse of Wilson." Police Bd. Findings at 38.

7

trustworthy.[6]

Burge is correct that the Police Board and the civil trial judge are not the arbiters of what gets admitted into evidence in this case. Had the Police Board exonerated the officers on all disciplinary charges, it would enhance Burge's position, but it would not necessarily carry the day. Where O'Hara and Yucaitis were under Burge's command, where the Police Board found in the face of their denials that Burge himself had physically abused or mistreated Wilson and had knowledge that other officers had done so, Police Bd. Findings at 35*ff*, this court is not inclined to infer that Yucaitis's testimony that he himself did not abuse Wilson has indicia of trustworthiness concerning whether Wilson was, in fact, abused or whether Burge was aware of it.

Turning to the remaining criteria briefly, the court is not persuaded by Burge's assertion that the evidence is more probative of the point for which it is offered than other available evidence. Burge argues that because Yucaitis and O'Hara were the persons who spent the most time with Wilson the day of the alleged torture, no one else can provide information that can rebut Wilson. The government disputes this, pointing out that many other people have been identified, including police officers, who were present at Area Two during the interrogation of Andrew Wilson. These witnesses could be called without forcing Burge to choose between testifying and allowing Wilson's testimony to stand unrebutted. Burge has the burden to rebut the presumption of unreliability of the proffered testimony. The Police Board decision refers to numerous other individuals, including prosecutors and officers, who were present that day, such as Paul Nealis,

---

[6] Burge also accuses the government of bordering on requesting defensive use of collateral estoppel in a criminal case. *See, e.g.*, *United States* v. *Arnett*, 353 F.3d 765 (9th Cir. 2003) (reversing convictions where government confessed error by informing the court that it may not to use collateral estoppel to establish, as a matter of law, an element of an offense on which the government bears the burden of proof beyond a reasonable doubt). He is entitled to relitigate the issue of whether he used or knew of the use of torture occurring on his watch. The government does not suggest otherwise.

Larry Hyman, Kathleen Warnick, Tim McKeough, Thomas McKenna, Michael Hartnett, Karl and David Diguandi and others.  Police Bd. Findings at 11-14.  Burge has not demonstrated that their testimony would not be sufficiently probative of the issues.

Finally, the interest of justice must be examined.  The Rules of Evidence have been crafted "to the end that the truth may be ascertained and proceedings justly determined."  Fed. R. Evid. 102.  Juries may not weigh evidence that is below the threshold set by the Rules because such evidence does not promote finding truth and just determinations.  The court lacks confidence that the admission of the testimony of these unavailable witnesses has circumstantial guarantees of trustworthiness equivalent to the exceptions enumerated in Rules 803 and 804, meaning that it would not be useful in ascertaining the truth.  As such, it would not serve the interest of justice to admit the testimony.

## CONCLUSION AND ORDER

For the foregoing reasons, Burge's motion in limine to admit prior testimony [79] is denied.

Dated: March 9, 2010        Enter: _____
                                    JOAN HUMPHREY LEFKOW
                                    United States District Judge