UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 08 CR 846 |
| vs. | ) | Judge Joan H. Lefkow |
| | ) | |
| JON BURGE | ) | |

## GOVERNMENT'S CONSOLIDATED MOTIONS *IN LIMINE*

The UNITED STATES of AMERICA, through its attorney, PATRICK J. FITZGERALD, respectfully submits the following consolidated motions *in limine*:

## 1.   Evidence or Argument Regarding Potential Penalties

The government respectfully moves this Court to preclude defendant from introducing evidence, making argument, or otherwise mentioning the potential penalties defendant faces if convicted. This includes evidence or argument regarding judicial penalties (such as imprisonment), as well as extrajudicial penalties (such as the potential loss of defendant's state pension).[1]

The Seventh Circuit has held unequivocally that "arguing punishment to a jury is taboo." *See, e.g., United States v. Richardson*, 130 F.3d 765, 778 (7th Cir. 1997); *United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997); *see also United States v. McKenzie*, 922 F.2d 1323, 1327 (7th Cir. 1991) (holding that "the sixth amendment requires that a jury determine questions of guilt or innocence; punishment is the province of the Court"). Under well-settled law, such argument or evidence is improper because the potential penalties faced

---

[1] These matters may of course be relevant cross-examination as to bias if the defendant chooses to testify at trial.

by a defendant are irrelevant to the jury's determination of guilt or innocence. *See, e.g., Shannon v. United States*, 512 U.S. 573, 579 (1994) ("It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed'") (quoting *United States v. Rogers*, 422 U.S. 35, 40 (1975)); *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1991) ("It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict"); *United States v. McCracken,* 488 F.2d 406, 423 (5th Cir. 1974) ("Except where a special statutory provision mandates a jury role in assessment or determination of penalty, the punishment provided by law for offenses charged is a matter exclusively for the court and should not be considered by the jury in arriving at a verdict as to guilt or innocence"). Mention of the potential penalties faced by the defendant would serve only the improper purpose of jury nullification. *See, e.g., United States v. Reagan*, 694 F.2d 1075, 1080 (7th Cir. 1982) ("The authorities are unequivocal in holding that presenting information to the jury about possible sentencing is prejudicial."); *United States v. Patterson*, 1996 WL 54237, at *1 (N.D.Ill. Feb. 8, 1996) (prohibiting discussion of potential penalties in order to avoid possible jury nullification).

## 2.      Evidence or Argument Designed to Elicit Jury Nullification

The government respectfully moves this Court to preclude defendant from arguing, or otherwise presenting evidence or pursuing lines of inquiry designed to elicit, jury nullification.

The law is plain that it is improper for a defendant to suggest in any way that the jury

should acquit the defendant even if it finds that the government has met its burden of proof. *See, e.g., United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996) ("An unreasonable jury verdict, although unreviewable if it is an acquittal, is lawless, and the defendant has no right to invite the jury to act lawlessly.  Jury nullification is a fact, because the government cannot appeal an acquittal; it is not a right, either of the jury or of the defendant.") (citing *United States v. Kerley*, 838 F.2d 932, 938 (7th Cir. 1988) and *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993)); *see also United States v. Bruce*, 109 F.3d 323, 327 (7th Cir. 1997) ("Jury nullification 'is not to be positively sanctioned by instructions,' but is to be viewed as an 'aberration under our system.'") (quoting *United States v. Anderson*, 716 F.2d 446, 450 (7th Cir. 1983)); *see generally Scarpa v. Dubois*, 38 F.3d 1, 11 (1st Cir. 1994) (noting that "defense counsel may not press arguments for jury nullification in criminal cases"); *United States v. Sepulveda*, 15 F.3d 1161, 1190 (2nd Cir. 1993) ("Neither court nor counsel should encourage jurors to exercise [nullification] power. . . .  A trial judge, therefore, may block defense attorneys' attempts to serenade a jury with the siren song of nullification."); *United States v. Trujillo*, 714 F.2d 102, 105 (11th Cir. 1983) ("Appellant's jury nullification argument would have encouraged the jurors to ignore the court's instruction and apply the law at their caprice.  While we recognize that a jury may render a verdict at odds with the evidence or the law, neither the court nor counsel should encourage jurors to violate their oath").

Evidence or arguments designed to elicit jury nullification in this case include, but are not limited to,  arguments regarding other individuals' or agencies' use of torture (including

allegations that the federal government uses torture), and arguments that the torture victims in this case were bad individuals who deserved to be punished.  Because none of these arguments make it more or less probable that the defendant is guilty, but instead serve only to distract the jury from the relevant issues in the case, they are improper and should be excluded.

**3.      Evidence of Defendant's Lawful Behavior**

The government respectfully moves the Court to exclude all evidence of defendant's lawfulness and/or good conduct except reputation or opinion evidence offered by character witnesses strictly in accord with the limitations of Federal Rule of Evidence 405(a).[2]  Other than testimony from character witnesses fitting within the narrow confines of Rule 405(a), no such evidence is admissible.  The evidence the government seeks to preclude includes the following:

      1.      Evidence regarding awards or commendations defendant may have received as a police officer.

      2.      Evidence regarding interrogations, arrests, or other police functions where defendant did *not* torture or abuse suspects.

---

[2] Even evidence offered under Rule 405(a), of course, cannot include specific instances of good conduct:  it is limited to a description of the subject's reputation or to a brief statement of opinion, without support from specific instances of conduct.  *See* Advisory Committee Notes to Rule 405 (The rule "contemplates that testimony of specific instances is not generally permissible on direct examination of an ordinary opinion witness to character . . . . [O]pinion testimony on direct in these situations ought in general to correspond to reputation testimony as now given i.e. be confined to the nature and extent of observation and acquaintance upon which the opinion is based").

In this regard, the law is clear: "A defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on [other] specific occasions." *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) (excluding taped proof that defendants met regularly and did not discuss criminal activity).  Evidence of other lawful behavior is irrelevant because acts of honesty do not prove an absence of dishonest acts.  *See, e.g., United States v. Scaroa*, 897 F.2d 63, 70 (2d Cir. 1990); *United States v. Beno*,  324 F.2d 582, 589 (2d Cir. 1963) ("Evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant."); *United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978) (upholding exclusion of evidence that used car dealer paid for some cars instead of stealing them).

To hold otherwise would be to eviscerate the carefully drafted limitations of Rule 405, which forbids proof of good character through evidence of specific acts where character is not an element of the charge or defense.  *See Beno*, 324 F.2d at 584 and 587.  Like Rule 403, Rule 405 is intended to prevent the series of wasteful "mini-trials" which would inevitably ensue if the defendant were allowed to pursue this irrelevant line of inquiry.  The Advisory Committee Notes for Rule 405 conclude that proof of character by means of specific acts "possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time."  *See e.g., Grimm*, 568 F.2d at 1136 (evidence of lawful transactions "could have complicated the case and confused the jury").

To the extent the defendant intends to offer evidence regarding his character, he should be permitted to do so only in accordance with the limitations of Federal Rule of

Evidence 405(a).

**4.** **Evidence or Argument Regarding Prosecutorial Decisions**

The government respectfully moves this Court to preclude defendant from arguing, or otherwise presenting evidence regarding the prosecutorial decision to investigate or prosecute this defendant.  This includes the following:

1.  Evidence or argument regarding the return of the indictment shortly before the expiration of the statute of limitations.

2.  Evidence or argument regarding the fact that the state never charged the defendant with a crime, or that the defendant was never criminally charged with battery, abuse, torture, or other "substantive" offenses.

3.  Evidence or argument regarding the lack of prosecution of other equally culpable individuals.

Evidence bearing on the government's decision to prosecute is "extraneous and collateral" and thus excluded from trial.  *See United States v. Johnson*, 605 F.2d 1025, 1030 (7th Cir. 1979) (affirming the exclusion of evidence offered to show that the "indictment was a political instrument");  *United States v. Berrigan*, 482 F.2d 171, 174-76 (3d Cir. 1973) (affirming exclusion of evidence relating to "discriminatory prosecution").  It is settled law that inquiries regarding the subjective intentions or motivations of a government agent are irrelevant to determining the factual guilt or innocence of a defendant.  *See, e.g., United States v. Goulding*, 26 F.3d 656, 667 (7th Cir. 1994) (noting, even in the context of an entrapment defense, it was proper for the trial court not to "allow the defense to mount an

inquiry into the mental states of the investigating officers since such an inquiry was irrelevant"); *Katz*, 1992 WL 137174, at *7 (granting government's motion *in limine* to preclude inquiry regarding "[t]he subjective intentions or motivations of the agents involved in this case."); *Shields*, 1991 WL 236492 at *3 (precluding evidence concerning discussions between supervising agent and cooperating witness and noting, "evidence of conversations between the government and its cooperating witness are immaterial; rather what matters is what the witness said to the defendants."). For these reasons, the government seeks to exclude evidence regarding the prosecutorial motives for prosecuting the defendant.

5.      **Argument or Evidence of Alibi**

The government respectfully moves *in limine* to preclude defendant from arguing or otherwise presenting evidence predicated on an alibi defense. Defendant has not indicated an intent to raise such a defense, and such defense should thus be precluded at trial.

Federal Rule of Evidence 12.1 requires that defendants comport with various notification and disclosure requirements in the event they intend to pursue an alibi defense at trial. Fed. R. Evid. 12.1. To date, defendant has provided no notice in accordance with Rule 12.1, despite written demand that he do so. Accordingly, theories of defense predicated upon an alibi should be precluded at trial.

6.      **Impropriety of Discovery Requests or Commentary Regarding Discovery in Presence of Jury**

The government moves to preclude counsel from requesting discovery from witnesses or opposing counsel, moving the Court for such discovery, or otherwise commenting on

discovery matters, in the presence of the jury.  Such requests from counsel in front of the jury are inappropriate and may create the impression that one side has suppressed information as a means of seeking an unfair advantage.  In fact, as often happens, counsel's requests are ill-founded because the discovery has already been tendered or is not subject to disclosure.  In any event, these requests, if appropriate, can easily be made to the Court or opposing counsel outside the presence of the jury with no prejudice resulting to either side.  Accordingly, the government moves that requests for discovery or comments relating to discovery be made outside the presence of the jury.  This system has been used in other cases--*e.g., United States v. Phillip Ishola, et al.*, 95 CR 523 (Leinenweber, J.) – and has worked well.  *See also United States v. Quinones*, 2003 WL 22697503 at *3 (N.D. Ill. 2003) (ordering that "all requests for additional discovery are to be made outside the presence of the jury); *Sarmiento v. Armour*, 2006 WL 2266252 at *3 (S.D.Tex. 2006) (granting plaintiff's motion *in limine* to preclude defendant from commenting on burdensome nature of discovery in the presence of the jury); *Thompson v. Glanmede Trust Co.*, 1996 WL 529693 at *2 (E.D.Pa. 1996) (precluding both parties from referring to discovery in the presence of the jury).  The government believes it is a fair and sensible one to employ here.

7.     **Cross-Examination Based on Convictions More than 10 Years Old**

Many of the government's witnesses have convictions that occurred more than ten years ago.  Pursuant to Fed. R. Evid. 609(b), evidence of a conviction "is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction . . . unless the court

determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect."  The Seventh Circuit has described Rule 609(b) as creating a "rebuttable presumption that convictions over ten years old are more prejudicial than helpful and should be excluded."  *See Lenard v. Argento*, 699 F.2d 874, 895 (7th Cir. 1983).  Moreover, use of a conviction more than ten years old is never allowed without advance written notice by the party seeking to elicit such conviction.  *See* Fed. R. Evid. 609(b).

To date, the government has received no written notice that the defense intends to question witnesses regarding any convictions outside of the ten-year period.  So that this Court may make the appropriate ruling, the government requests that the defendant be ordered to identify at least two weeks prior to trial any convictions more than ten years old that it seeks to inquire about or admit evidence of.[3]

## 8.    <u>Inquiry Into Underlying Details of Convictions</u>

Although the fact of a conviction may be admissible, provided the requirements of Rule 609 are met, the underlying details of the conviction are not.  *United States v. Zarattini*, 552 F.2d 753 (7th Cir. 1977).  In *Zarattini*, the Seventh Circuit upheld the trial court's restrictions on any inquiry into the details of alleged 608(b) offenses.  In that case, the government witness testified on direct examination that he had been involved in other

---

[3] With respect to Andrew Wilson, whose prior testimony will be read to the jury, the government acknowledges that the appropriate time frame is ten years prior to when Wilson actually gave the testimony.

interstate thefts.  *Id.* at 758.  On cross-examination, the trial court prohibited defense counsel

from going into the details of the other offenses.  On appeal, the Seventh Circuit upheld the

restriction:

> The jury was aware of Briggs' involvement in other interstate thefts as a result of the
> government's direct examination.  It was not error for the district court to exclude the
> details of these other incidents it felt irrelevant to the present case.

552 F.2d at 759.

Similarly, the Seventh Circuit held in a case related to this one, *Wilson v. City of*

*Chicago*, 6 F.3d 1233, 1236 (7th Cir. 1993), that the district court in the Andrew Wilson civil

trial erred in allowing the defense to "immerse the jury in the sordid details of Wilson's

crimes."  Specifically, the Court found that the details of Wilson's murder of two police

officers had "little or no relevance" to the issues in his civil suit alleging torture at the hands

of Jon Burge and other Area 2 detectives.  *Id.*  The Court rejected the defendant's arguments

that this information was relevant to show other ways that Wilson could have received the

injuries he claimed or that he was so desperate that the injuries were self-inflicted by stating

that "neither ground was remotely plausible."  *Id.* at 1237.  The Court further held that "even

a murderer has a right to be free from torture and the correlative right to present his claim of

torture to a jury that has not been whipped into a frenzy of hatred."  *Id.* at 1236.  Based upon

this reasoning, the Court determined that it was error for the defense to be able to elicit

details of the crimes underlying Wilson's conviction.

Accordingly, defendant should be precluded from inquiring into the details underlying

a witness's convictions, and the previously improperly admitted cross-examination regarding

the details of Wilson's crimes should be excluded from Wilson's testimony.  To the extent that the defense wants to cross-examine any witness on details of a conviction apart from the date of the conviction, the type of crime committed, and the length of sentence imposed, the defendant should make a motion prior to the witness's testimony so the Court can resolve the matter outside of the presence of the jury.

## 9.   Cross-Examination Based on Arrests

Some of the government's witnesses have been arrested on prior occasions.  Evidence of a prior arrest should be precluded under Fed. R. Evid. 609 and 608.

Fed. R. Evid. 609 allows for the admission of a witness's conviction for impeachment purposes under certain circumstances.  For example, a felony conviction generally is admissible for purposes of impeachment.  *See* Fed. R. Evid. 609(a).  In addition, any conviction for a crime involving "dishonesty or false statement" (*i.e., "crimen falsi*") is admissible for impeachment purposes, regardless of whether the conviction is for a misdemeanor or felony.  *Id.*[4]  However, arrests are not admissible under Rule 609, and defendant should be precluded from inquiring into arrests of witnesses.

Similarly, arrests are not admissible under Federal Rule of  Evidence 608(b).  Rule 608(b) provides that specific instances of past conduct may be inquired into on cross-examination if and only if they concern the witness's character for truthfulness.  Courts have

---

[4] If a conviction (or the period of confinement resulting from that conviction) occurred more than ten years ago, however, evidence of the conviction is not admissible unless the Court determines that the probative value of the conviction "substantially outweighs" its prejudicial effect.  *See* Fed. R. Evid. 609(b).

not construed Rule 608(b) to permit cross-examination on prior <u>arrests</u> absent special facts bearing on the witness's character for the specific trait of truthfulness.  Thus, in *United States v. Dennis*, 625 F.2d 782, 798 (8th Cir. 1980), the Eighth Circuit held that a witness may not be cross-examined about an arrest except where Rule 608(b) would permit inquiry into specific acts leading up to the arrest that related to crimes of falsity--*e.g.*, perjury, subornation of perjury, or false pretenses.  *See also United States v. Sellers*, 906 F.2d 597, 603 (11th Cir. 1990).  Unless defendant can demonstrate that the conduct underlying the arrest implicates a witness's character for truthfulness, defendant should be precluded from inquiring into the conduct.

**10.**     **Cross-Examination Based on Other "Bad Acts" of Witnesses**

Under Rules 611 and 608(b), a defendant is permitted to inquire into specific bad acts of the witness only if these acts are probative of truthfulness.  *See, e.g., United States v. Van Dorn*, 925 F.2d 1331, 1336-37 (11th Cir. 1991) (threats made by witness to judicial officers in a prior drug prosecution not relevant to a witness's truthfulness); *United States v. McNeill*, 887 F.2d 448, 453 (3d Cir. 1989) (solicitation to commit a crime of violence is not probative of truthfulness); *United States v. Bentley*, 706 F.2d 1498, 1509-10 (8th Cir. 1983) (evidence of witness's involvement in drug operation not proper impeachment under Rule 608(b)); *United States v. Fortes*, 619 F.2d 108, 117-18 (1st Cir. 1980) (affirming trial court's refusal to allow cross-examination concerning witness's involvement in sale of cocaine on ground that selling cocaine is not probative of truthfulness or untruthfulness under Rule 608(b)); *United States v. Young*, 567 F.2d 799, 803 (8th Cir. 1977) (disallowing cross-examination

of government witness concerning her alleged offer to pay $10,000 to have her husband killed, because "the proposed question was not relevant to veracity and honesty and would have been highly prejudicial").  Accordingly, defendant should be precluded from inquiring into specific bad acts of a witness without first demonstrating how those acts are probative of truthfulness.

So that this Court may make the appropriate ruling, defendant should identify prior to each witness's examination any prior "bad act" about which they intend to cross-examine a witness and demonstrate how that conduct is probative of truthfulness.  Among other things, the government considers gang membership and tattoos to be "bad acts" that are not proper subjects of cross-examination absent some other relevance.

## 11.  Cross-Examination Based Upon Unsustained Allegations of Misconduct, or Those that do not Involve Untruthfulness

The government intends to call witnesses at trial who are or were members of the Chicago Police Department ("CPD"). CPD has provided the government with files for some of those witnesses that list complaints that were made to CPD which were subsequently investigated.  The government has summarized each of the complaints and CPD's findings, and made this information available to the defense via letters sent on March 30, 2010. Because all of the complaints either were not sustained or did not involve untruthfulness, it is the government's position that none of these are the proper subject of cross-examination.

First, the complaints that were not sustained do not provide a good faith basis for cross-examination because they contain no indicia of reliability.  CPD is charged with

investigating every allegation made against a police officer – no matter how frivolous.  If the bare fact of an accusation provided a good faith basis for cross-examination, defendants could "manufacture" impeachment evidence by simply making complaints.  An important consideration in the determination of whether particular information constitutes *Giglio* material is the nature or reliability of the information itself.  In *Giles v. Maryland*, 386 U.S. 66, 98 (1967), Justice Fortas (concurring) wrote that there was no obligation to disclose "preliminary, challenged or speculative information."  This principal was cited by Justice Stevens in the 7-2 majority opinion in *United States v. Agurs*, 427 U.S. 97, 109 n.16 (1976).  Moreover, because the allegations were unfounded or not sustained, they cannot have any material bearing on the officers' truthfulness or bias, one way or the other.  Just as arrests of defendants and witnesses are inadmissible and should not be presented to the jury, allegations of misconduct which are inconclusive should not be injected into a trial where the officer is not the party facing charges.

Second, complaints that do not involve untruthfulness also are not the proper subject of cross-examination.  As is discussed further above, courts have not construed Rule 608(b) to permit cross-examination on prior <u>arrests</u> absent special facts bearing on the witness's character for the specific trait of truthfulness.  Thus, in *United States v. Dennis*, 625 F.2d 782 (8th Cir. 1980), the Eighth Circuit held that a witness may not be cross-examined about an arrest except where Rule 608(b) would permit inquiry into specific acts leading up to the arrest that related to crimes of falsity--*e.g.*, perjury, subornation of perjury, or false pretenses.  *See also United States v. Sellers*, 906 F.2d 597, 603 (11th Cir. 1990).  Here, the CPD

employees at issue were not even arrested, just investigated.   Unless defendant can demonstrate that the conduct underlying the allegations implicates any of the officers' character for truthfulness, defendant should be precluded from inquiring into the conduct.

For these reasons, the government seeks to exclude evidence regarding unsustained allegations of misconduct or those that do not involve untruthfulness.   To the extent the defendant believes that any of the complaints made against government witnesses fit into these categories, the government requests that the defense identify these prior to the witness's direct examination so that the Court can rule on the issue outside of the jury's presence.

### Conclusion

For the reasons set forth above, the government requests that the Court grant the government's consolidated Motions *in Limine* on these issues.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By:     s/ *April M. Perry*
APRIL M. PERRY
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-5966