**Marc W. Martin**
*Attorney at Law*
Suite 1420
53 West Jackson Boulevard
Chicago, Illinois 60604

MARC MARTIN, LTD.

Phone (312) 408-1111
Fax (312) 663-4252

March 10, 2010

AUSA April Perry
AUSA David Weisman
United States Attorneys Office
219 S. Dearborn – 5th Floor
Chicago, IL 60604

Re: *United States v. Jon Burge*, 08 CR 846

Dear Counsel,

## OPINION TESTIMONY

Pursuant to Rule 16(b)(1)(C) of the Federal Rules of Criminal Procedure, Defendant Jon Burge hereby discloses that he may offer "scientific, technical, or other specialized knowledge" during the trial of this cause, Fed.R.Evid. 702, 703 & 705, through the following witnesses:

1. Daniel Locallo;
2. Thomas O'Brien; and
3. Dr. Michael Baden.

Summaries of these witnesses' testimony, the bases for their opinions and their qualifications are stated below and in the enclosures with this letter.

### Daniel Locallo

At present, we expect Daniel Locallo to testify about the following subjects:

1. Procedures in criminal cases. Mr. Locallo would testify that, other than satisfying pleading requirements, there is no screening process for the filing of a pretrial motion to suppress statement. The filing of a motion to suppress statement based on alleged physical coercion does not mean that abuse occurred.

2. If a defendant has made a statement that he claims is the product of physical coercion or otherwise illegal interrogation techniques, a

reasonable defense attorney cognizant of his obligations as defense counsel would pursue a strategy to suppress the statement. A competent defense lawyer representing a defendant who claims to have given a confession as a result of being beaten would not ignore the claim. Rather, the lawyer would file a motion detailing the allegations. There is a legal requirement for a motion to suppress to be specific requirement when involuntariness is alleged.

3. William Murphy (attorney for Leonard Hinton) is a competent and experienced criminal defense trial lawyer, who would file a motion to suppress statement if his client claimed to have been beaten by police officers.

4. Procedures in civil cases. Mr. Locallo would testify that, other than satisfying pleading requirements, there is no screening process for the filing of a civil lawsuit alleging physical abuse by police officers. The filing of a civil suit alleging that the police physically abused or illegally interrogated an individual does not mean that physical abuse or illegal interrogation occurred.

5. The submission of an answer to interrogatories during discovery in a civil case is not a submission in an official proceeding. The submission of an answer to interrogatories during discovery in a civil case does not have the indicia of formality associated with an official proceeding.

6. The proponent of an interrogatory has an obligation to state the interrogatory question clearly. The interrogatories in this case were objectionable and defective because they were overbroad, unclear and asked compound questions, including references to both legitimate (*e.g.*, handcuffing and use of polygraphs and photographs) and illegitimate interrogation techniques.

7. In a federal civil case, Hobley would have the burden of first proving the elements of his claims. He would have to prove that he made an incriminating statement because he was tortured, physically abused or unlawfully coerced by police officers, and that the physical abuse, torture or unlawful coercion was the proximate cause of an injury, *e.g.*, his conviction and sentence. If Hobley did not prove the elements of his case in the first instance, then Burge's answers to interrogatories could not be material.

8. Jon Burge's answers to the interrogatories had no effect in Madison Hobley's federal civil rights case. The answers were not ever filed in an official proceeding, or used in any proceeding by any party in the case.

9. If Jon Burge hypothetically made an admission in an answer to an interrogatory that he knew about unlawful interrogation techniques *etc.* used by other police officers or himself in other cases, then, absent Hobley first proving the elements of his case, Burge's answer would not be material in Hobley's case.

10. He has not seen any evidence of Burge's participation or personal involvement in Hobley's interrogation.

11. Possible rebuttal of Professor Michael's trial testimony.

Mr. Locallo will base his opinions on the following:

1. His experience, training, employment and education as detailed in the attached resume. As a former Cook County State's Attorney, Mr. Locallo tried over 40 cases to jury verdict. As a former Cook County Circuit Court Judge in the Criminal Division, he presided over 100 criminal jury trials. As a former Circuit Court Judge in the Law Division, he presided over 100 civil cases to verdict, including trials of complex cases. Mr. Locallo is also an expert in the death penalty area. In 1990, he published summaries of death penalty decisions from 1978 to 1990. He has supplemented that publication each year (until 2009). He is also a co-author of Illinois Objections that was published in 2004 and has been annually supplemented.

2. His review of the various pleadings, orders and opinions in *Hobley v. Burge*, 03 CR 3678.

4. His review of various judicial opinions in Hobley's State criminal case.

5. His review of relevant case law, including, but not limited to, *United States v. Dunn*, 442 U.S. 100 (1979).

### Thomas O'Brien

At present, we expect Thomas O'Brien to testify about the following subjects:

1. Chicago street gang members employ various techniques to attempt to derail criminal prosecutions, and avoid or upset convictions. Chicago street gang members also employ various techniques to attempt to gain money through civil lawsuits. The techniques include fabrication of allegations and spreading of false rumors about police officers and even prosecutors. For example, gangs whose members have confessed or made a statement to the police or prosecution, direct the gang member to claim falsely that the statement was the product of physical abuse/coercion.

2. During the mid 1980s, it was well known among gang members that claims of physical abuse by Chicago police officers should be made when a gang member made a statement to the police. This modus operandi took on the names "D.C." "the D.C. thing" or "D.C. effect," named after its originator, Darryl Cannon.

3. Street gang memberships of various government witnesses, places and dates of their incarceration, and identity of fellow inmates.

Mr. O'Brien will base his opinions on the following:

1. Mr. O'Brien served as an ATF Special Agent for over 30 years. Prior to his service with the ATF, Mr. O'Brien was employed by the IRS as an agent in the Criminal Investigation Division. Mr. O'Brien helped supervise wiretaps regarding the El Rukn street gang in the 1980s, and participated in arrests, investigations and debriefings of gang members. Mr. O'Brien has previously testified in United States District Court. Copies of transcripts of his testimony are enclosed with this letter.

2. His review of various discovery materials provided to him in this case.

3. His knowledge of discussion of the "D.C. effect" by gang members.

4. Debriefings of gang members and government witnesses.

5. Investigations of gangs as a federal law enforcement officer.

6. Review of jail and prison records.

7. The transcript of the Senate Judiciary Committee Hearing to Investigate the Justice Department's Witness Security Program dated June 18, 1996 (enclosed).

### Dr. Michael Baden

At present, we expect Dr. Michael Baden to testify about the following subjects regarding Andrew Wilson:

1. There is no evidence of any cigarette burns on Andrew Wilson's body.

2. The marks on Andrew Wilson's chest are not suggestive of an electrical burn, or a burn caused by a radiator or heat. There is no blistering on Andrew Wilson's chest.

3. The marks on Andrew Wilson's cheek and chest appear to be scratches and old scars.

4. The marking on Andrew Wilson's ear is not an injury caused by an electrical burn or heat. The mark could have been produced by an abrasive surface, for example, rolling around on the floor or contact with a rough surface. The markings appear to be a few days old from the time the photograph was taken.

5. The injuries on Andrew Wilson's head and forehead are non-specific injuries. The precise time of the origin of these injuries cannot be determined.

6. The mark on Andrew Wilson's (right) thigh is compatible with a second-degree burn due to the apparent presence of blistering. The mark appears to be a few days old, but it cannot be said, within a reasonable degree of medical certainty, when it was caused, or whether it was caused while Andrew Wilson was in police custody.

7. Possible rebuttal of any medical opinion testimony offered by the government at trial.

Dr. Baden will base his opinions on the following:

1. His experience, training, employment and education as detailed in the attached C.V. and short biography.

2. His review of various photographs, medical reports and prior testimony of witnesses (occurrence and expert) in *Superintendent v. Burge* and *Wilson v. City of Chicago*.

---

As noted, the opinions of these witnesses are preliminary and subject to revision and supplement as they continue to study materials, and are provided with additional materials. We will notify of you of any additional opinion testimony or modifications when we learn of it.

## JURY QUESTIONNAIRE

Also enclosed is a draft of the jury questionnaire. Please review it to determine any objectionable questions or modifications. We have not numbered the questions as yet, but have segregated subject areas under Roman numeral headings beginning on separate pages to facilitate review.

If it would be helpful to have a digital copy of this document, please let Marc Martin know. Please be advised that such a copy would in WORD or PDF format.

Sincerely,

Marc W. Martin