# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 CR 846 | **DATE** | 4/14/2010 |
| **CASE TITLE** |  | USA vs. Jon Burge | |

**DOCKET ENTRY TEXT**

Defendant's motion for reconsideration of the court's order of March 9, 2010 denying his motion in limine to admit prior testimony [158] is denied. *(See statement below.)*

■[ For further details see text below.]　　　　　　　　　　　　　　　　　Docketing to mail notices.

## STATEMENT

　　　A motion for reconsideration, although not authorized by civil or criminal rules, is a creature of pragmatism. Typically arising in civil cases (and treated as a motion to alter or amend, or for relief from, a judgment[1]), a motion to reconsider serves the limited function of correcting manifest errors of law or fact or presenting newly discovered evidence. *Caisse Nationale de Credit Agricole* v. *CBI Indus., Inc.*, 90 F.3d 1264, 1269-70 (7th Cir. 1996). The problems warranting a grant of such a motion are rare. *Bank of Waunakee* v. *Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (citation omitted). That said, the motion does serve a valuable function where the court "has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Id.* (citation omitted) (internal quotation marks omitted). Such a motion "is not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment." *County of McHenry* v. *Ins. Co. of the W.*, 438 F.3d 813, 819 (7th Cir. 2006) (citation omitted) (internal quotation marks omitted).

Defendant makes the following arguments:

**1.　The testimony of unavailable witnesses O'Hara and Yucaitis is more probative on the point for which it is offered (that Burge knew of torture inflicted on Andrew Wilson) than any other evidence.** Defendant points out that five of the seven witnesses the court identified as having been present at the station house when Andrew Wilson was questioned were not actually present with Wilson as were Yucaitis and O'Hara. Further, he argues that at least two of the witnesses, including Hyman and McKenna, are not going to be helpful to defendant in that they have advised his counsel that if called as witnesses they intend to invoke their right to remain silent.

　　　Defendant made the argument about actual presence with Wilson on the original motion in limine. The court's ruling was based on defendant's failure to carry his burden to rebut the presumption of

**STATEMENT**

unreliability of the evidence. Mar. 29, 2010 Op. & Order at 8 (Dkt. No. 156). The additional information that Hyman and McKenna intend to assert their right to remain silent, in light of the history of the Police Board hearing and decision, suggests only that Yucaitis and O'Hara, were they alive, would probably do the same. The court adheres to its ruling for the reasons stated in the Opinion and Order.

**2. The court overlooked evidence of O'Hara's and Yucaitis's character for truthfulness**. This relates to "the character of the declarant for truthfulness and honesty and the availability of evidence on the issue." *Id.* at 4 (quoting *United States* v. *Hall*, 165 F.2d 1095, 1110 (7th Cir. 1992)). In his original memorandum, concerning the witnesses' character for truthfulness defendant stated,

> Here, both Yucaitis and O'Hara were long-time Chicago police officers. Unlike Wilson, they had never been convicted of a crime. Following their testimony at the first civil trial, the jury found in their favor. At the police board hearing, Yucaitis and O'Hara each called character witnesses on their behalf.

Dkt No. 80 at 12. Defendant states neither who the character witnesses were nor why they should be credited. He fails to do so now. This court is not required to comb the hearing record to identify who testified as character witnesses and then guess at their credibility. *See United States* v. *Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. Especially not when then brief presents a passel of other arguments . . . . Judges are not like pigs hunting for truffles." (citation omitted)). The court acknowledged that the witnesses were veteran officers and that the jury returned a verdict in their favor in Wilson's (second) civil rights trial but concluded that these factors did not outweigh the officers' strong incentive to lie.[2]

**3. The court improperly weighed the credibility of Wilson, Yucaitis and O'Hara "and sided with the government.**" Defendant faults in particular the court for failure to discuss *United States* v. *Singleton*, 125 F.3d 1097 (7th Cir. 1997), and *United States* v. *York*, 852 F.2d 221, 225 (7th Cir. 1988), cases he had cited in the original motion.

Neither case is particularly relevant here. In *Singleton*, the court of appeals found no abuse of discretion in admitting under the residual exception, and as admissions, incriminating tape-recorded conversations between an unavailable cooperating witness and the defendants. The defendants argued, as pertinent here, that because the cooperator was not under oath, his "testimony" was inadmissible. The court ruled there was no abuse of discretion in the trial court's finding sufficient indicia of reliability where, although not under oath, the witness's conversations were "clearly corroborated" by the tapes, the police officers had closely monitored the tapes as they were being made, and the officers were familiar with the voices of the defendants. *Id.* at 1106. In *York*, by contrast, the court ruled that admission of an unavailable witness's incriminating statements through the testimony of a probation officer who had interviewed the witness five years earlier was reversible error because the witness had a motive to misrepresent the truth, no transcript of the conversation was available, and the defendant's right to cross-examine was seriously undermined. *York*, 852 F.2d at 225-26. *Singleton* and *York* do not stand for the proposition that if testimony is under oath it is trustworthy. Accuracy of the out-of-court statements is merely a factor that may be relevant to trustworthiness. In this case, that element of the trustworthiness is satisfied.

Here, the most crucial element of the trustworthiness analysis – whether the witness had a motive to lie that calls into question the trustworthiness of his prior statement, *see United States* v. *Guinan*, 836 F.2d 350, 355 (7th Cir. 1988) – is not satisfied because this court has previously determined that O'Hara and Yucaitis had a strong motive to deny they or Burge had tortured or abused Wilson. Mar. 9, 2010 Op. & Order at 5. The court adheres to its view that under Rule 807 it was obligated to consider the circumstances

**STATEMENT**

under which the unavailable witness's statements were made, including their motives, when assessing the trustworthiness of the proffered evidence. Defendant has cited no authority to the contrary and, in fact, the case law in this circuit supports this court's approach. *See United States* v. *Hooks*, 848 F.2d 785 (7th Cir. 1988) (affirming district court's exclusion of exculpatory evidence that defendant sought to admit under Rule 804(b)(5) as untrustworthy where the proposed transcribed statements were made by unindicted coconspirators and were suspiciously self-serving); *accord United States* v. *Marcy,* No. 90 CR 1045, 1992 U.S. Dist. LEXIS 2912, at *7-8 (N.D. Ill. Feb. 6, 1992) (excluding exculpatory evidence that defendant sought to admit under Rule 804(b)(5) as untrustworthy where the proposed statement, although made under oath and subject to the penalties of perjury, was made by an unindicted coconspirator who had a strong incentive to deny involvement in the criminal activity charged).

    4. **"Lady Justice" in this case is not blind and her scales are not balanced**. The court acknowledges some asymmetry in admitting Wilson's testimony and excluding that of Yucaitis and O'Hara. Symmetry, however, is not the measure of this dispute. Even though the evidence is not admissible, defendant is not without any tools to attack the credibility of Wilson, such as through the extensive cross-examinations of him in the prior proceedings or potentially Rule 609(a)(1). Were the circumstances of the officers' testimony other than what they were, the court may have reached a different result. Nonetheless, the testimony of these witnesses is simply not admissible under governing Rule 807 and the testimony of Wilson is admissible under governing Rule 804(b)(1).

    In short, all of the arguments made in the instant motion have been previously considered. The court is not persuaded that it has patently misunderstood a party, made a decision outside the adversarial issues presented, or made an error not of reasoning but of apprehension.

---

1. *See Stanley* v. *Posner,* No. 09-223-DRH, 2009 WL 3230320, at *1 (S.D. Ill. Oct. 5, 2009) ("Technically, a 'motion to reconsider' does not exist under the Federal Rules of Civil Procedure. The Seventh Circuit has held, however, that a motion challenging the merits of a district court order will automatically be considered as having been filed pursuant to Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure.").

2. As stated in the Memorandum Opinion and Order of April 23, 2009 at 6 (Dkt No. 31) admitting the testimony of Wilson, the first of Wilson's civil rights trials ended in a hung jury. The second trial resulted in a special verdict that found Wilson's constitutional rights violated but exonerated all the officers. That special verdict was a finding that "the City of Chicago had a de facto policy authorizing its police officers physically to abuse persons suspected of having killed or injured a police officer [but] the policy had not been a direct and proximate cause of the physical abuse visited on Wilson." *Id.* at 6, quoting, *Wilson* v. *City of Chicago*, 6 F.3d 1233, 1241 (7th Cir. 1993). The jury in this case will decide anew whether abuse occurred or a policy of abuse existed. The point here is that the officers' testimony to the contrary viewed in light of the special verdict does not enhance their character for truthfulness.