UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 08 CR 846 |
| ) | |
| JON BURGE, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Before the court are post-trial motions by defendant Jon Burge seeking judgment of acquittal and arrest of judgment under Federal Rules of Criminal Procedure 29 and 34 [#300] and a new trial under Federal Rule of Criminal Procedure 33 [#302]. Defendant was convicted of three counts: (1) obstructing justice in violation of 18 U.S.C. § 1512(c)(2) by signing false answers to the first set of interrogatories propounded in *Hobley* v. *Jon Burge, et al.*, No. 03 C 3678, a civil rights case filed in this court (referred to herein as "*Hobley*"); (2) perjury in violation of 18 U.S.C. § 1621(1) by providing false answers to the second set of interrogatories propounded in *Hobley*; and (3) obstructing justice in violation of 18 U.S.C. § 1512(c)(2) by signing false answers to the second set of interrogatories propounded in *Hobley*.[1] For the following reasons, the motions are denied.

---

[1] The two sets of interrogatories at issue concerned defendant's participating in and knowledge of an alleged pattern and practice of physical abuse and torture of the Chicago Police Department's Area Two detainees. The facts of this case are set forth in the opinions and orders issued by this court on October 27, 2009 (Docket No. 138), September 11, 2009 (Docket No. 130), July 29, 2009 (Docket No. 121), and April 23, 2009 (Docket No. 31).

## LEGAL STANDARDS

Federal Rule of Criminal Procedure 29 provides, in pertinent part, that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). When requesting a judgment of acquittal under Rule 29, a defendant "faces a nearly insurmountable hurdle [because] . . . [the court] consider[s] the evidence in the light most favorable to the Government, defer[s] to the credibility determination of the jury, and overturn[s] a verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States* v. *Blassingame*, 197 F.3d 271, 284 (7th Cir. 1999) (quoting *United States* v. *Moore*, 115 F.3d 1348, 1363 (7th Cir. 1997)); *see also United States* v. *Benjamin*, 116 F.3d 1204, 1206 (7th Cir. 1997) (in ruling on a motion for judgment of acquittal pursuant to Rule 29, district court must consider "whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt").

Federal Rule of Criminal Procedure 34 governs defendant's motion for an arrest of judgment, which provides, in relevant part, that the court "must arrest judgment if . . . the indictment or information does not charge an offense." Fed. R. Crim. P. 34(a)(1).

Under Federal Rule of Criminal Procedure 33, a court may grant a new trial "if the interest of justice so requires." "The decision to grant or deny a motion for new trial rests within the sound discretion of the trial court." *United States* v. *Reed*, 875 F.2d 107, 113 (7th Cir. 1989). The court may grant a new trial "in a variety of situations in which trial errors or omissions have jeopardized the defendant's substantial rights." *United States* v. *Reed*, 986 F.2d 191, 192 (7th

Cir. 1993) (citation omitted). Such motions are disfavored and are granted only in extreme cases. *See, e.g.*, *United States* v. *Linwood*, 142 F.3d 418, 422 (7th Cir. 1998). To justify a new trial, an evidentiary ruling must be not only error but harmful error. *United States* v. *Owens*, 424 F.3d 649, 653 (7th Cir. 2005) ("[W]hen reviewing evidentiary errors, we will only reverse and order a new trial provided that the improper admission was not harmless, which is to say 'only if the error had a substantial influence over the jury, and the result reached was inconsistent with substantial justice.'" (quoting *United States* v. *Hernandez*, 330 F.3d 964, 969 (7th Cir. 2003))). In deciding whether a new trial should be granted under Rule 33, the court "may properly consider the credibility of witnesses, and may grant a new trial if the verdict is so contrary to the weight of the evidence that a new trial is required in the interest of justice." *United States* v. *Washington*, 184 F.3d 653, 657 (7th Cir. 1999).

## ANALYSIS

I.  **Motion for Judgment of Acquittal and Arrest of Judgment**

    A.  **Counts I and III - Obstruction of Justice**

Defendant first argues that the submission of false answers to an interrogatory does not constitute obstruction of an "official proceeding" under 18 U.S.C. § 1512(c)(2). Section 1512(c)(2) provides that "[w]hoever corruptly . . . obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined . . . or imprisoned not more than 20 years, or both." In support of his contention that his conduct could not have amounted to obstruction of an "official proceeding," defendant cites *Dunn* v. *United States*, 442 U.S. 100, 99 S. Ct. 2190, 60 L. Ed. 2d 743 (1979), wherein the Supreme Court held that providing a sworn statement to a private attorney did not constitute a "proceeding" within the meaning of a federal perjury statute.

3

The perjury statute at issue in *Dunn*, however, differs from the obstruction of justice statute at issue here. Significantly, 18 U.S.C. § 1623, which the Court examined in *Dunn*, prohibits false declarations made under oath "*in any proceeding* before or ancillary to any court or grand jury of the United States." 18 U.S.C. § 1623(a) (emphasis added). It is clear from the language of the statute that section 1623 is concerned with false statements made "in" a court proceeding. Thus, in deciding that providing a false affidavit to a private attorney did not constitute conduct prohibited under section 1623, the Supreme Court focused on the fact that section 1623 had been enacted "to facilitate perjury prosecutions and thereby enhance the reliability of testimony *before federal courts and grand juries*." 442 U.S. at 107 (emphasis added). The Court's reasoning in *Dunn* does not assist defendant because the actions prohibited under section 1512, unlike section 1623, are not limited to those that might occur inside the courtroom. Indeed, under section 1512 the false testimony or document need not be admissible as evidence before the court. *See* 18 U.S.C. § 1512(f)(2). Furthermore, the "proceeding" at issue need not be pending or even about to be instituted at the time when the offense occurs; it is enough that a defendant's actions would be likely to affect a foreseeable proceeding. *See* 18 U.S.C. § 1512(f)(1); *United States* v. *Matthews*, 505 F.3d 698, 708 (7th Cir. 2007). Here, defendant's false answers to the interrogatories would have "obstruct[ed]" or "influence[d]" the ongoing proceedings in *Hobley*, *see* 18 U.S.C. § 1512(c)(2), because they related to facts that went to the crux of Hobley's civil rights claims. For these reasons, the court rejects defendant's argument that he did not obstruct an "official proceeding" under section 1512.[2]

---

[2] Defendant also argues that the court erred in instructing the jury that the *Hobley* civil rights case was an "official proceeding" because the instruction precluded the jury from determining an essential element of the crime. Section 1512, however, does not require that the prosecution prove that defendant

(continued...)

4

Defendant next argues that the court improperly instructed the jury that defendant could be found guilty for either a completed offense or an attempt. Defendant contends that the government did not introduce evidence that his answers to the interrogatories were filed or otherwise used in the *Hobley* proceeding and that therefore the jury should only have been permitted to consider an attempt. Defendant's characterization of the evidence is not persuasive. The evidence at trial established that *Hobley* involved a *Monell* claim that the City of Chicago had a policy of failure to properly supervise its officers. Undoubtedly, if defendant had admitted to engaging in torture or supervising others who engaged in torture, then the plaintiff's *Monell* claim would have been helped by the admissions. Once defendant denied having engaged in torture, however, the plaintiff in *Hobley* could hardly be expected to file documents indicating the *absence* of material evidence that would have supported his claims against the City. Defendant's argument that there is no proof that he obstructed the *Hobley* proceeding misconstrues the nature of the crime for which he was convicted. The jury was properly instructed regarding both the completed and attempted offense.

B.    **Count II - Perjury**

Defendant argues that his conviction for perjury fails as a matter of law because the government did not establish that he took an "oath" when he answered the interrogatories propounded in *Hobley*. Pursuant to 18 U.S.C. § 1621(1), an individual is guilty of perjury if he has "taken an oath before a competent tribunal, officer, or person" and "willfully and contrary to

---

²(...continued)
knew that the proceeding was before a judge or court of the United States. *See* 18 U.S.C. § 1512(g); *see also United States* v. *Phillips*, 583 F.3d 1261, 1263 (10th Cir. 2009) (district court properly instructed the jury that, under section 1512(c)(2), "'[a]n official proceeding' means a proceeding before a federal judge or federal court of the United States").

such oath states or subscribes any material matter which he does not believe to be true." The evidence presented at trial showed that defendant went to a notary public who showed him the document that had an oath on it, directed his attention to the oath, and asked him to confirm that it was correct. The written oath states: "I, Jon Burge, after first being duly sworn, state on oath that I have read the foregoing . . . and that the answers therein are true and correct to the best of my knowledge and belief." Defendant then signed his name below the oath.

Defendant asserts that these actions could not constitute the taking of an "oath" because the notary public testified that she did not "administer an oath" but rather notarized defendant's signature. Defendant has not cited any cases that support his position. To the contrary, the case law supports the common sense conclusion that defendant took an oath when he verified the contents of the document and then signed below the written oath. *See United States* v. *Yoshida*, 727 F.2d 822, 823 (9th Cir. 1983) ("No particular formalities are required for there to be a valid oath [under 18 U.S.C. § 1621]. It is sufficient that, in the presence of a person authorized to administer an oath, as was the notary herein, the affiant by an unequivocal act consciously takes on himself the obligation of an oath . . . ."); *see also United States* v. *Dickerson*, No. 09-16137, 2010 WL 4409382, at *2 (11th Cir. Nov. 8, 2010) (oath requirement under 18 U.S.C. § 1623(a)[3] was met where the evidence showed that the defendant signed an affidavit that stated that he had been "sworn on [his] oath"); *Holy* v. *United States*, 278 F. 521, 522 (7th Cir. 1921) ("A conviction of perjury may be based upon the testimony of a single witness supported by documentary evidence; and, if the defendant was sworn, the oath need not be in any particular

---

[3] Section 1623(a), which criminalizes the making of false declarations before a grand jury or court, provides that "[w]hoever under oath . . . in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information . . . shall be fined . . . or imprisoned not more than five years, or both."

form."). For these reasons, defendant's request for a judgment of acquittal and arrest of judgment with respect to Count II will be denied.

C.  **The Government's Alleged Failure to "Prove Up" the *Hobley* Case**

Finally, defendant argues that he is entitled to a judgment of acquittal because the government did not prove the veracity of the plaintiff's allegations against him and the other defendants in *Hobley*. Defendant has cited no cases that support his theory that the government must prove the merits of the underlying proceeding in order to justify a conviction under either section 1621 or section 1512. The court agrees with the government that defendant's proposed requirement would undermine the purpose of both the obstruction of justice and perjury statutes. Accordingly, defendant's motion for a judgment of acquittal will be denied.

**II. Motion for a New Trial**

In his motion for a new trial, defendant raises many issues that have been ruled on previously and the court's reasons have been stated on the record. Insofar as any of those issues are not addressed in this ruling, the court stands on its previous statements of reasons for its rulings, either on the record in open court or its written opinions.

A.  **Effect of Publicity on the Jury**

Defendant argues that the court erred in selecting a jury that was not completely ignorant of pretrial publicity and in failing to "regularly" question the jury regarding possible exposure to publicity.[4] These contentions are without merit. The court instructed the jury at the outset of trial that if they were exposed to any publicity or other contacts about the case, they were to

---

[4] To the extent that defendant argues that it was *impossible* for him to receive a fair trial in this case because of prejudicial pretrial publicity, the court denies his motion for the reasons set forth on the record and in its opinion and order denying defendant's motions for a change of venue. *See* Docket Nos. 121, 186 at 5, 242.

report it immediately. Inquiry regarding additional publicity was made from time to time, particularly where prominent media coverage had occurred. Based on less than a handful of such reports, the jury appears to have been meticulous in following the instruction. Moreover, the contemporaneous trial in *United States* v. *Blagojevich* served to eclipse the media focus on this case, diminishing the problem.[5]

Concerning defendant's argument regarding publicity during trial, namely that the court should have admonished the jury daily, the court knows of no requirement that the jury be treated as if they could not hear or follow directions, necessitating daily repetition, rather than periodic reminders, of the same instruction. On at least two occasions, when a juror said that he had seen press coverage, the juror was questioned outside the presence of the other jurors to determine the effect of the publicity on his impartiality. The juror stated that he could be fair and defendant did not make a motion to excuse him from the jury.

The circumstances in these proceedings differ from *United States* v. *Accardo*, 298 F.2d 133 (7th Cir. 1962), which defendant cites to support his position that the court failed to cure the prejudicial effects of pretrial and trial publicity. In that case, the trial judge ordered the jury to avoid reading press coverage only once, during *voir dire*, despite the fact that prejudicial publicity continued throughout the trial. The trial judge also failed to question the prospective jurors individually regarding their exposure to publicity. The Seventh Circuit held:

> The judge's general admonitions at the beginning of the jury selection, his assumption of their effectiveness, and his instructions, were inadequate

---

[5] Defendant also argues that the jury was prejudiced by the fact that members of the audience audibly reacted to some of the testimony presented. Members of the public who might be assumed to be partisan were indeed allowed to observe throughout. These included police officers, family members of the defendant, prosecutors, defenders, civil rights lawyers, and others who were interested in the case. The Marshals Service was continuously present to address inappropriate behavior.

> protection [against prejudicial publicity]. His general inquiry during the *voir dire* examination did not supply the deficiency. There is no certainty that all jurors would volunteer information about violating the admonitions or admit that they were influenced by the publicity. . . . He should have, by the careful examination of each juror, out of the presence of the others, determined the effect of the articles on those who had read them and whether they had discussed the articles with others.

298 F.2d at 136 (citing *Coppedge* v. *United States*, 272 F.2d 504, 507–08 (D.C. Cir. 1959)).

Here, the court acted in conformity with the Seventh Circuit's instructions in *Accardo* by submitting a questionnaire to each juror, which asked about exposure to pretrial publicity, and conducting the *voir dire* individually. In addition, as noted above, the court continued to follow up with jurors regarding publicity at periodic intervals during trial. These measures sufficiently ensured defendant's right to a fair trial, *cf. Accardo*, 298 F.3d at 136, and defendant's motion for a new trial on these grounds will be denied.

### B. Evidentiary Objections

Defendant challenges numerous evidentiary rulings made by the court throughout the course of trial. Defendant's legal argument is at times difficult to discern; however it appears that the majority of defendant's arguments were raised at trial and addressed by the court's prior written or oral rulings. The court will address defendant's contentions to the best of its ability, and to the extent that any of defendant's arguments are not addressed herein it adheres to its prior evidentiary rulings.

Defendant first objects to the admission of Andrew Wilson's testimony on grounds that were briefed before trial. *See* Docket Nos. 21, 25, 27. The court stands on its previous ruling on this issue. *See* Docket No. 31. Defendant also argues that the court erred by excluding evidence regarding the fact that Wilson had committed a murder for which another man, Alton Logan, had

been convicted and that Wilson did not prevent Logan from going to prison. Wilson's attorney disclosed this information only after Wilson's death, however, and it would have been a violation of the attorney-client privilege to disclose the information while Wilson was still alive.[6] The court excluded the evidence relating to Logan in part because this line of questioning would have been precluded in the prior proceedings, where Wilson testified, as well as in the trial, had Wilson been alive to testify. Federal Rule of Evidence 608(b) does not allow specific instances of conduct of a witness, other than a conviction as provided in Rule 609, to be proved by extrinsic evidence for the purpose of attacking the witness's character for truthfulness. Defendant argues that Rule 608(b) would have permitted cross-examination regarding the murder because the murder is probative of Wilson's "character for truthfulness or untruthfulness."[7] Wilson, however, would have had the right to invoke his Fifth Amendment privilege regarding the murder. *See United States* v. *McClurge*, 311 F.3d 866, 874 (7th Cir. 2002) (defendant's Sixth Amendment right to confrontation not violated where witness invoked Fifth Amendment right not to answer questions that relate to "collateral" issues such as credibility). Therefore questioning Wilson about the murder would have been unlikely to yield the information defendant anticipates in his motion. Moreover, prior acts of dishonesty are collateral matters and subject to Rule 403's requirement "that probative value not be outweighed by danger of unfair prejudice, confusion of issues, or misleading the jury." Adv. Comm. Note to

---

[6] After Wilson's attorney disclosed the information, Logan was released from prison.

[7] Rule 608(b) provides that "[s]pecific instances of conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness . . . may . . . in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness . . . concerning the witness' character for truthfulness or untruthfulness."

Fed. R. Evid. 608(b) (1972 Prop. Rules). For these reasons, the exclusion of evidence relating to Logan's conviction for murder was proper.

Third, defendant argues that the court improperly excluded the testimony of detectives O'Hara and Yucaitis (both deceased) because, in doing so, the court made factual findings regarding the detectives' motive to fabricate testimony at the *Wilson* civil trials. O'Hara and Yucaitis's testimony would have been admitted pursuant to Federal Rule of Evidence 807. The Seventh Circuit, however, has explained that "[c]ritical to the admission of a hearsay statement under [the residual exception] is a finding by the district court that the statement is trustworthy." *United States* v. *Hall*, 165 F.3d 1095, 1110 (7th Cir. 1999); *see also United States* v. *Ochoa*, 229 F.3d 631, 638 (7th Cir. 2000) ("[O]nly hearsay testimony containing particularized guarantees of trustworthiness as shown by the circumstances in which the statements were made may constitutionally be admitted under [Rule 807].").[8] The court properly excluded O'Hara and Yucaitis's testimony from the *Wilson* trials because both detectives had a motivation to lie about the facts relating to Wilson's allegations in his civil trials.[9] *See* Docket Nos. 155, 156. Defendant's contention that the court improperly excluded the prior testimony of Fred Hill, which relies on the same argument regarding allegedly improper factual findings, is likewise rejected. *See* Docket No. 273.

---

[8] *Hall* examined former Rule 803(24), which has been recodified as Rule 807. The court properly applies the same requirements for admitting evidence under former Rule 803(24) to Rule 807. *See Ochoa*, 229 F.3d at 638.

[9] Defendant's contention that O'Hara and Yucaitis had no motivation to lie in the *Wilson* trials is without merit. As thoroughly discussed in the previous ruling, they risked possible prosecution, a penalty of damages, and loss of employment if Wilson's claims were adjudicated in his favor at the second trial.

11

Fourth, defendant asserts that the court erred in allowing several defense witnesses to invoke their Fifth Amendment rights. The court conducted *in camera* hearings to determine whether these witnesses had a valid Fifth Amendment claim, and it adheres to its prior orders on this issue. *See* Docket Nos. 251, 252, 261, 271.

Fifth, defendant challenges the court's exclusion of the details of various witnesses' alleged confessions to defendant and other detectives. After considering defendant's arguments, the court stands by its prior rulings, even apart from defendant's own agreement not to inquire into the subject. *See* Docket No. 186 at 2 ("The parties agree that defendant will not unnecessarily inquire into the underlying details of the crimes with which the governments' witnesses were charged or convicted."); *Wilson* v. *City of Chicago*, 6 F.3d 1233, 1236 (7th Cir. 1993) (trial judge erred in allowing defense counsel to "immerse the jury in the sordid details of Wilson's crimes").[10] Indeed, any relevant information would have been outweighed by the danger of unfair prejudice and confusion of the jury. *See* Fed. R. Evid. 401, 403, 609(a)(1) (evidence of prior crimes shall be admitted subject to Rule 403 balancing); *see also United*

---

[10] The Seventh Circuit's ruling in *Wilson* is "on all fours." There, the Court of Appeals explained:
> A mass of inflammatory evidence having little or no relevance to the issues in this trial (as distinct from Wilson's murder trial) was admitted, and the defendants' counsel was permitted to harp on it to the jury and thus turn the trial of the defendants into a trial of the plaintiff. Of course, when the plaintiff in a case happens to be a murderer this turning of the tables has undoubted forensic appeal. But even a murderer has a right to be free from torture and the correlative right to present his claim of torture to a jury that has not been whipped into a frenzy of hatred. . . . We are not suggesting that the murder convictions should have been concealed from the jury. . . . The cross-examiner should not however have been permitted to elicit the details of the crimes underlying Wilson's conviction unless the details bore directly on his credibility, *Gora* v. *Costa*, 971 F.2d 1325, 1330 (7th Cir.1992); *Geitz* v. *Lindsey*, 893 F.2d 148, 151 (7th Cir.1990); *Campbell* v. *Greer*, 831 F.2d 700, 707 (7th Cir.1987), and they did not.

6 F.3d at 1236–37.

*States* v. *White*, 222 F.3d 363, 370 (7th Cir. 2000) (when admitting evidence regarding prior convictions under Rule 609, "[o]rdinarily, 'the details of the prior conviction should not [be] exposed to the jury'" (quoting *United States* v. *Robinson*, 8 F.3d 398, 409 (7th Cir. 1993)); *Campbell* v. *Greer*, 831 F.2d 700, 707 (7th Cir. 1987) ("[T]his is not to say the opposing party may harp on the witness's crime, parade it lovingly before the jury in all its gruesome details, and thereby shift the focus of attention from the events at issue in the present case to the witness's conviction in a previous case. . . . Essentially all the information that the cross-examiner is permitted to elicit is the crime charged, the date, and the disposition." (internal citation omitted)).[11]

Sixth, defendant asserts that the court improperly excluded evidence relating to an alleged gang conspiracy against him and sustained various hearsay and relevancy objections during the testimony of Shadeed Mu'min, Anthony Holmes, and Conventry. Defendant cites no cases or rules of evidence and the legal basis for his argument is difficult to discern. The court finds no merit in defendant's contention that these rulings were erroneous or that they necessitate a new trial.

## C. Validity of the *Hobley* Suit

Defendant reiterates his assertion that *Hobley* was a "bogus" lawsuit and that the court therefore erred in preventing him from calling Darryl Simms to testify and should have granted defendant's motion for a mistrial because the government failed to turn over a report of

---

[11] *Campbell* examined a prior version of Federal Rule of Evidence 609 that did not include the element of Rule 403 balancing. Even under the amended version of Rule 609, the principles articulated in *Campbell* continue to guide courts regarding the admission of evidence relating to prior felony convictions. *See United States* v. *Smith*, 454 F.3d 707, 716–17 (7th Cir. 2006) (citing *Campbell* for the proposition that the government may identify the felony charged, the date, and the disposition of the prior conviction but may not "harp on the witness's crime").

an interview with Simms. *See* Docket Nos. 253, 272. Simms was in prison with Madison Hobley, and at trial defense counsel argued that Simms should have been able to testify that Hobley fabricated his allegations of police torture. The underlying merits of Hobley's claims against defendant in the prior civil proceeding were not, however, relevant to defendant's prosecution for perjury and obstruction of justice. Defendant has not cited any case to the contrary. The court properly denied defendant's request to call Simms as a witness because the testimony was irrelevant. The court also stands by its denial of defendant's motion for a mistrial based on an alleged *Brady/Giglio* violation because he has not shown that the withheld information was exculpatory.

### D. Alleged Judicial Bias

Defendant also asserts that several of the court's rulings were "lopsided" and were biased in favor of the prosecution. Defendant argues that the court should have declared a mistrial because of a question that was asked during the government's cross examination of Michael McDermott.[12] The court sustained defense counsel's objection at trial, however, and the witness did not answer the question. Defendant has not explained how the question resulted in prejudice to his defense, and indeed the jurors were instructed that lawyers' questions should be disregarded when objections were sustained.

---

[12] The court allowed the government to treat McDermott as a hostile witness. During cross examination, McDermott accused the government of misconduct and undue delay in the prosecution of defendant. A heated exchange followed, and the prosecution asked McDermott: "Sir, isn't it true that the reason these cases were not brought earlier is because people like yourself did not come forward earlier?" [6/14/10 Tr. at 142–43]. Defense counsel objected to this question and the objection was sustained.

In addition, defendant contends that the court exhibited bias in favor of the government during jury selection because the court sustained a *Batson* challenge made against defendant. The court explained its reasoning on the record and adheres to the soundness of its decision.

Defendant also asserts, with little explanation, that the court's bias was demonstrated through the following decisions: (1) limiting Ricky Shaw's testimony regarding the "D.C. effect,"[13] (2) allowing the government to cross examine Shaw regarding the results of prison disciplinary investigations, (3) allowing Dr. Raba to testify regarding a letter that he wrote to then-Superintendent Brzeczek about Andrew Wilson's injuries and a related conversation with Cook County Board President George Dunn, (4) allowing Darlene Lopez to testify about statements Burge made to her regarding specific incidents which took place at Area Two, (5) allowing the government to cross examine defendant's expert, Dr. Baden, regarding the payment he received for his work as an expert in court cases, (6) prohibiting Dr. Baden from testifying regarding the opinions of another expert, Dr. Werner Spitz, who did not testify at trial, and (7) allowing the government to cross examine defendant regarding his safe handling of handguns and the name of his boat (*The Vigilante*). In essence, defendant appears to argue that the court misapplied the Federal Rules of Evidence.

These issues were briefed before trial and/or argued before the court.[14] Defendant has not cited specific rules of evidence or cases in support of his assertion that the court's rulings were incorrect and biased in favor of the government. Rather than revisiting unspecified allegations of

---

[13] "D.C." refers to Darryl Cannon, an individual who asserts that he was tortured by Area Two detectives. The government did not call Cannon as a witness at trial.

[14] For example, the court's Ruling on Pretrial Schedule, Submissions, and Motions deals with defendant's objections to Lopez's testimony. *See* Docket No. 186 at 4.

biased rulings, the court adheres to its prior orders and rulings on the record and readily defers to the judgment of the appellate court on these issues. That said, defendant has cited no basis in the record for the statement that the court's rulings ran "probably over 90% in the government's favor." Even were this true, the correctness of the rulings is what matters, not whether each side prevailed approximately half the time.[15]

    **E.    Jury Contacts**

Defendant argues that the court improperly provided factual answers to the jury's questions and erred when it supplied the jury with a magnifying glass. Defendant points to no matter on which the court communicated with the deliberating jury without giving notice to counsel and the opportunity to be heard other than responding to a request for a magnifying glass. He points to no harm done by delivering a magnifying glass to the jury, an act that surely falls under the category of "housekeeping," *see United States* v. *Pressley*, 100 F.3d 57, 60 (7th Cir. 1996), comparable to delivering pens or blank paper. The court does not believe it is required to summon counsel to court and thereby stall deliberations for such a trivial matter. (Moreover, in *Pressley*, on which defendant relies, the court of appeals held that the error of addressing a juror's concern about deliberations in chambers and returning the juror to deliberate without giving the defendant an opportunity to be heard, was harmless, not reversible, error.) Neither does the court's action comprise further evidence of its alleged bias because it denied the jury's request for an alligator clip that the government used demonstratively during trial while granting the request for a magnifying glass. The alligator clip request related to the evidence and

---

[15] The court will address defendant's contention that there was an improper relationship between the presiding judge and one of the prosecuting attorneys, Assistant United States Attorney M. David Weisman, in its ruling on defendant's motion for recusal. *See* Docket No. 350.

after hearing both parties, the court denied this request. Defendant's position was heard and considered but ultimately rejected for reasons stated on the record.

F. Jury Instructions

Defendant argues that the jury instructions on materiality and unanimity were given in error and that the court further erred in failing to give an instruction on permissible interrogation techniques. With respect to materiality, the instruction stated that an interrogatory answer is "material if a truthful answer might reasonably be calculated to lead to the discovery of evidence admissible at trial of the underlying lawsuit or otherwise affect its outcome. It is not necessary that the answer actually have that effect, so long as it had the potential or capability of doing so." Docket No. 289 at 31. Defendant argues that this instruction impermissibly amended all counts of the indictment, which were predicated on the allegation that "[i]t was material to the outcome of the civil lawsuit whether in fact [defendant] knew of or participated in torture and physical abuse of persons in Chicago Police Department custody." *See* Indictment ¶ 6. The court fails to discern a significant difference between the materiality instruction and the allegation in the indictment. Defendant's false answers to the interrogatories could reasonably have prevented the discovery of admissible evidence and would thereby have affected the outcome of the *Hobley* suit. *See United States* v. *Kross*, 14 F.3d 751, 754 (2d Cir. 1994) (in addressing the issue of materiality under section 1623, applying "the broad standard for materiality of whether a truthful answer might reasonably be calculated to lead to the discovery of evidence admissible at the trial of the underlying suit").

Defendant also argues that the court erred by refusing to give defendant's proposed unanimity instruction and his proposed instructions on interrogation techniques. The court

considered these issues prior to and during the jury instruction conference and adheres to its prior rulings.

G.   **Pre-Indictment Delay**

Finally, defendant argues that his ability to defend was prejudiced by "the passage of time." This issue was fully briefed before trial, *see* Docket Nos. 77, 78, 111, 125, and the defendant has put forward no new arguments or cases regarding his position on this issue. The court therefore stands by its prior ruling. *See* Docket No. 138 at 13–16.

Having considered all of the issues raised in the motion, the court is not persuaded the court's errors, if any, were more than harmless or that defendant's substantial rights were impaired.

**CONCLUSION AND ORDER**

For the foregoing reasons, defendant's motions for a judgment of acquittal and arrest of judgment [#300] and a new trial [#302] are denied.

Dated: January 3, 2011            Enter: _____
                                          JOAN HUMPHREY LEFKOW
                                          United States District Judge