UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 08 CR 846 |
| v. | ) | |
| | ) | Judge Lefkow |
| JON BURGE | ) | |

**PETITION TO INTERVENE TO RELEASE GRAND JURY
TRANSCRIPTS OF MICHAEL MCDERMOTT**

NOW Comes Petitioner, KEITH MITCHELL, by and through his attorneys, LOEVY & LOEVY, and petitions to intervene to release the grand jury transcripts and attendant proffers of Michael McDermott. In support thereof, Petitioner states as follows:

**Introduction**

Petitioner, Keith Mitchell, seeks to intervene under Fed. R. Civ. P. ("Rule") 24 to obtain a copy of the grand jury testimony of Michael McDermott in the above-captioned case. Mitchell intends to use that testimony in support of his pending post-conviction proceedings in the Circuit Court of Illinois.

For the past 20 years, Keith Mitchell has consistently alleged that he is innocent of the murder for which he was arrested, prosecuted and convicted. The only evidence implicating Mitchell in this crime was the purported oral confession that the then-15 year old gave to then-Detective Michael McDermott. At his motion to suppress, at trial and now in his post-conviction petition, Mitchell has alleged that that confession was absolutely false: McDermott unlawfully threatened Mitchell and then perjured himself when McDermott denied any coercion and testified that Mitchell asked to confess to the shooting outside the presence of his mother and then proceeded to voluntarily do so.

The First District Court of Appeals in Illinois granted Mitchell a post-conviction evidentiary hearing on whether Mitchell's confession should have been suppressed because the primary evidence of the confession came from McDermott, "a police officer who committed perjury in similar cases." *People v. Mitchell*, 2012 IL App (1st) 100907 at ¶ 2. Following a motion for discovery, the Circuit Court granted Mitchell permission to subpoena the United States Attorney's Office for the Northern District of Illinois ("U.S. Attorney") for documents relating to McDermott's statements or testimony in *United States v. Burge*, No. 08 CR 846. Although the U.S. Attorney agreed to produce grand jury material from the Burge prosecution to four civil litigants, the U.S. Attorney has refused to produce the same documents to Mitchell asserting that disclosure would violate 28 C.F.R. § 16.26(b) and Fed. R. Crim. P. ("Criminal Rule") 6(e). Those arguments, however, are arbitrary, capricious, and not in accordance with the law. As a result, Petitioner respectfully requests that this Court order the U.S. Attorney to release McDermott's statements and testimony to Mitchell's attorneys subject to an appropriate protective order.

**Procedural History**

On April 13, 2013, the Circuit Court of Cook County granted Petitioner Keith Mitchell permission to subpoena the U.S. Attorney for the grand jury testimony of Michael McDermott and related materials in *United States v. Burge*, 08 CR 846. On July 15, 2013, Petitioner Keith Mitchell sent a subpoena to the U.S. Attorney seeking "[c]opies of any statements made by Michael McDermott to federal prosecutors or investigators in the course of the investigation of Jon Burge in U.S. v. Burge, Case No. 08 CR 846," including any grand jury testimony. Group Exhibit A. To satisfy Petitioner's *Touhy* obligations, Mitchell also sent a relevancy letter. *See* Group Exhibit A.

The U.S. Attorney responded to Mitchell's request on July 15, 2013, explaining that it had determined that "the requested documents are relevant to your proceeding," but that it was refusing to produce documents responsive to Plaintiff's request pursuant to 28 C.F.R. § 16.26(b)(1) and

2

Criminal Rule 6(e). *See* Exhibit B, Letter from Kuhn to Thompson dated 7/15/13. As a result, Plaintiff filed the instant petition to intervene to secure the materials responsive to Plaintiff's subpoena.

**Standard**

To obtain grand jury transcripts under Criminal Rule 6(e), a party "must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that the request is structured to cover only material so needed . . . ." *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 443 (1983). The burden of demonstrating that this balance favors disclosure rests upon the private party seeking disclosure. *State of Illinois v. Borg, Inc.*, 564 F. Supp. 96, 98 (N.D. Ill. 1983). "[A]s the considerations justifying secrecy become less relevant," however, "a party asserting a need for grand jury transcripts will have a lesser burden in showing justification." *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 223 (1979). "In sum . . . the court's duty in a case of this kind is to weigh carefully the competing interests in light of the relevant circumstances and the standards announced by [the Supreme Court]. *Id.* at 222-23; *id.* at 219-20 ("[I]n some situations justice may demand that discrete portions of transcripts be made available for use in subsequent proceedings.")

**Relevant Background**

Keith Mitchell spent 15 years in prison for a murder and two aggravated batteries that he did not commit. Although he has been released from prison and is currently on parole, he continues to fight to correct this injustice and clear his name.

The evidence of Mitchell's innocence is overwhelming. There was only one eyewitness to the murder who saw the perpetrators – Joseph Tribett. Tribett informed the investigating police officers at the time of the murder that he could identify the offenders and provided descriptions for each of them. Moreover, Tribett knew Mitchell, and has emphatically stated that Mitchell was not

one of the offenders. Tragically, the jury that convicted Mitchell never heard from Tribett: He was not called by the State or the defense.

Tribett's testimony carries even more weight because there was absolutely no physical evidence tying Mitchell to the crime. Indeed, the only evidence linking Mitchell to the shooting in any way was a fabricated oral confession manufactured by Area 2 Detective Michael McDermott.

At the time of his arrest, Mitchell was only 15 years old. He had never before been arrested, let alone convicted of any crime. According to Mitchell, his mother Audrey Mitchell, and his former attorney and current Circuit Court Judge Fredrenna Lyle, McDermott isolated Mitchell from his mother and family, physically threatened him and psychologically coerced him in an attempt to get him to confess. The trial court credited the testimony of McDermott and disbelieved Mitchell's allegations; it, therefore, denied Mitchell's motion to suppress the alleged oral confession.

In so ruling, however, the trial court did not have before it McDermott's history of strikingly similar misconduct of coercing suspects and perjuring himself in court. As a result, in a strongly worded opinion, the Illinois appellate court recently granted Mitchell an evidentiary hearing in his state court post-conviction proceedings, including on his claim that Mitchell's confession should have been suppressed because the primary evidence of the confession "came from a police officer who committed perjury in similar cases." See Exhibit C, *Mitchell*, 2012 IL App (1st) 100907 at ¶ 2.[1]).

Following the appellate court's opinion, Mitchell sought leave to serve discovery, including discovery relating to former detective Michael McDermott. In his post-conviction petition, in support of his allegations against McDermott, Mitchell appended to his petition the Special Prosecutor's Report, which concluded that McDermott's conduct toward another suspect at Area 2

---

[1] The appellate court also granted Mitchell a hearing on his claim that his "trial and appellate counsel provided ineffective assistance of counsel" when they failed to speak with Joseph Tribett, an eyewitness to the crime who told the police that he could identify the shooters and who has averred that Keith Mitchell was not one of them. See Exhibit C, *Mitchell*, 2012 IL App (1st) 100907 at ¶ 2.

4

– Alphonso Pinex – and his lying about it in court was criminal and that he should have been prosecuted for both mistreatment of a criminal suspect and perjury but for the expiration of the statute of limitations. On appeal, Mitchell also supplemented the record with McDermott's testimony at Jon Burge's trial in which McDermott admitted to threatening suspects and perjuring himself during investigations into his misconduct. *See* Exhibit C, *Mitchell*, 2012 IL App (1st) 100907 at ¶ 62 (finding the Special Prosecutor's Report and McDermott's testimony at Burge's trial to be a powerful marker of McDermott's (lack of) credibility).

Given the importance of the confession to Mitchell's post-conviction petition (and the attendant importance of proving that McDermott is not a credible witness), Mitchell sought additional evidence to corroborate McDermott's misconduct. On that score, Mitchell requested and was granted leave to subpoena the United States Attorney for the Northern District of Illinois for any documents reflecting statements that McDermott made relating to the Jon Burge prosecution. In particular, Mitchell sought the grand jury transcripts and any proffer statements that McDermott made during Burge's federal proceedings. Based on information and belief, McDermott testified twice before the grand jury that indicted Jon Burge for perjury and obstruction of justice, and at trial on behalf of the United States. *See* Exhibit D, McDermott Testimony, *United States v. Burge*, No. 08 CR 846, June 14, 2010, at 37 ("Q. And you have testified before the grand jury twice, is that right? A. Yes."). In exchange for his testimony at the grand jury and at trial, McDermott was granted immunity. *See* Exhibit E, Petition for Order Granting Immunity Pursuant to Section 6002, Title 18, United States Code, to Compel Testimony at trial; Order dated May 12, 2010; Exhibit A, McDermott Test., at 86 (granted immunity prior to testifying at the grand jury).

In his grand jury testimony, McDermott made admissions regarding his misconduct that he apparently sought to retract during trial. *See* Exhibit D, McDermott Test., *United States v. Burge*, No. 08 CR 846 [hereinafter "McDermott Test."], at 18-21, 24, 30-33, 111-112, 118, 134-137, 149-151.

5

Nonetheless, even at trial, McDermott admitted to misconduct similar to that alleged by Mitchell; namely, that he has lied during investigations of police misconduct and that he has threatened suspects. Exhibit D, McDermott Test. at 112; *see also id.* at 38-40 (admitting to lying to OPS about Burge's abuse of a suspect); *id.* at 132 (admitting that he was not entirely truthful with OPS when questioned about his abuse of a suspect); *id.* at 17-29; 107-08, 110, 112 (pointing a gun at a suspect, suffocating a suspect and hitting a suspect is not abuse).

## ARGUMENT

### I. Neither 28 C.R.F. § 16.26(b) or Criminal Rule 6(e) Preclude Disclosure

Although the U.S. Attorney denied Mitchell access to McDermott's grand jury testimony and any proffer statements based on 28 C.F.R. § 16.26(b)(1) and Criminal Rule 6(e), neither warrants secreting that information. To the contrary, given Mitchell's compelling reasons for needing both, equities favor disclosure subject to an appropriate protective order.

28 C.F.R. § 16.26(b)(1) precludes disclosure of materials where doing so "would violate a statute . . . or a rule of procedure, such as the grand jury secrecy rule, F.R.Cr.P. Rule 6(e)." Although Criminal Rule 6(e) directs that grand jury proceedings are generally secret, it also provides exceptions to that presumption. In particular, Criminal Rule 6(e)(3)(E)(i) states that "[t]he court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter preliminarily to or in connection with a judicial proceeding." That exception applies to the instant case because Mitchell satisfies each of the *Douglas Oil* criteria: disclosure is necessary to avoid an injustice in Mitchell's state post-conviction proceedings, the need for disclosure is greater than the need for secrecy and Mitchell's request is narrowly-tailored to those materials relating to McDermott critical for Mitchell's presentation of his post-conviction claim. *See Douglas Oil*, 441 U.S. at 222-23.

### A. Disclosure of McDermott's Grand Jury Testimony is Necessary to Avoid an Injustice

Mitchell needs McDermott's grand jury testimony and related statements to avoid an injustice in his state post-conviction proceedings. In particular, because McDermott is likely to either invoke his Fifth Amendment or deny any misconduct at Mitchell's evidentiary hearing, McDermott's grand jury testimony is necessary to corroborate Mitchell's allegations of wrongdoing.

The courts have found that a petitioner demonstrated the requisite necessity where grand jury testimony was "necessary to assure the reliability of [a witness'] testimony at trial." *Lucas v. Turner*, 725 F.2d 1095, 1104-05 (7th Cir. 1984) ("Plaintiffs further argue that disclosure is warranted because the grand jury testimony of the defendants is necessary to assure the reliability of their testimony at trial . . . . This has been recognized as a proper use for grand jury testimony and has provided the basis for a showing of a particularized need in other cases."). That can be for a number of reasons. For example, grand jury transcripts may be disclosed where they provide "the only record of [a witness'] account of the events at issue" due to the unavailability or hostility of the witness. *See Williams v. O'Meara*, No. 82 C 278, 1987 WL 10305, at *2 (N.D. Ill. April 30, 1987); *see also id.* at *2 ("Brown's obstructionist tactics demonstrate his hostility toward the plaintiff and her lawsuit, and his testimony is therefore properly discoverable."). Likewise, grand jury transcripts can be disclosed to "refresh the recollection of a witness." *See Lucas*, 725 F.2d at 1105-06 (quoting *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 233 (1940)); *see also Pontarelli Limousine, Inc. v. City of Chicago*, 652 F. Supp. 1428, 1431 (N.D. Ill. 1987) ("In this case, there is substantial evidence that an injustice would result if the requested materials are not released. As O'Shield stated many times in his deposition, he needs the tapes to refresh his memory . . . .").

Mitchell's request for McDermott's grand jury transcripts and attendant proffers satisfies *Lucas*' "reliability" criteria. Indeed, McDermott's grand jury testimony is necessary because (1) McDermott may invoke his Fifth Amendment right instead of testifying; (2) should McDermott

7

testify, he is likely to back away from the admissions of misconduct he made during Burge's grand jury proceedings – just as McDermott did at Burge's federal trial; and (3) because McDermott's grand jury testimony will be used to refresh his recollection as to misconduct he committed over 20 years ago.

 First, absent the State providing him with immunity, McDermott will likely invoke his Fifth Amendment right against incrimination rather than testify at Mitchell's evidentiary hearing. That invocation will make McDermott "unavailable." Ill. R. Evid. 804(a)(1); *see also People v. Lawson*, 193 Ill.App.3d 396, 398 (1st Dist. 1990) ("As a general rule, testimony given at a prior proceeding, by a witness who is unavailable to testify at the subsequent proceeding, is admissible as an exception to the hearsay rule . . . ."). As a result, to demonstrate McDermott's *modus operandi* and pattern of strikingly similar misconduct, Mitchell will need to introduce McDermott's grand jury testimony. *See People v. Cannon*, 293 Ill.App.3d 634, 640 (1st Dist. 2007) ("Second, evidence of other similar acts could be used to impeach the credibility of the Area 2 police officers who will testify at the hearing."); *People v. Banks*, 192 Ill.App.3d 986, 994 (1st Dist. 1989) ("We believe evidence that the same police officers, Byrne and Dignan, beat another suspect with a flashlight and put a bag over his head while being interrogated after being arrested is relevant in the present case. Plainly, such conduct is an aberration from the conduct of other police officers. Thus, such evidence tends to show the conduct that these two police officers employ in interrogating suspects who are in custody, and such evidence is therefore probative as to the conduct they employed in the present case to obtain defendant's confession. Since the evidence of the prior conduct of the police officers tends to prove an issue at trial it was relevant and should have been admissible.").[2]

---

[2]  In post-conviction proceedings, grand jury testimony is admissible; indeed, the Illinois Rules of Evidence do not even apply to Mitchell's hearing and hearsay is expressly admissible under the Post-Conviction Hearing Act. *See* Ill. R. Evid. 1101 (exempting post-conviction proceedings from

8

That is particularly true because McDermott's grand jury testimony is the only time in which McDermott has been forthcoming about his history of abusing suspects. In particular, although McDermott was granted immunity, during Burge's trial, McDermott tried to recant the admissions of misconduct he made before the grand jury. For example, with regard to Alfonso Pinex – a case that the Special Prosecutor investigated and that the appellate court found pivotal for Mitchell[3] – McDermott "acknowledge[d] in front of the federal grand jury that he had in fact lied and perjured himself . . . during the course of giving testimony" at Pinex's motion to suppress. McDermott also "incriminated himself by admitting that he had abused Mr. Pinex without provocation" during his grand jury testimony. Exhibit D, McDermott Test., at 92-93, 96. At Burge's trial, however, McDermott tried to retract those admissions, testifying instead that Pinex claimed that "there was abuse done during the interrogation, and I answered honestly that there was not." *Id.* at 104; *see also id.* at 104-05 (denying that he ever struck Pinex during his interrogation); *id.* at 14 ("[McDermott's] testimony is different than what he has said at grand jury . . . .").

Second, and for many of the same reasons cited above, Mitchell has met the *Douglas Oil* "necessity" requirement because should McDermott choose to testify, Mitchell needs McDermott's grand jury testimony to properly impeach McDermott. As explained more fully above, although McDermott admitted to misconduct during his grand jury testimony – including regarding Pinex – he recanted those admissions at Burge's trial. Exhibit D, McDermott Test., at 14. Because

---

its application); 725 ILCS 5/122-6 (allowing for the admission of affidavits, depositions or other matters at an evidentiary hearing).

[3] In particular, the appellate court in Mitchell's case found that "[t]he special prosecutors specifically reported that they found convincing evidence, sufficient to prove guilt beyond a reasonable doubt, that McDermott battered suspects and committed perjury about the suspects' alleged confessions," including in Alfonso Pinex's case. Exhibit C, *Mitchell*, 2012 IL App (1st) 100907, at ¶ 60. As a result, the court found that "[t]he [Special Prosecutor's] report strongly corroborates Keith's and Audrey's testimony that Keith did not make any statement about the shooting voluntarily." *Id.* at ¶ 62.

McDermott's "grand jury testimony may be admissible under certain rules and relevant as admissions or for assuring the credibility of [McDermott's] testimony at trial," Mitchell has established "particularized need" under *Douglas Oil*. *See Lucas*, 725 F.2d at 1104-05; *see also State of Wisconsin v. Schaffer*, 565 F.2d 961, 966 (7th Cir. 1977); *State of Illinois v. Sarbaugh*, 552 F.2d 768, 776 (7th Cir. 1977).

Mitchell's need is especially acute where, as here, he has no other avenue to secure this information. *See Lucas*, 725 F.2d at 1102; *see also United States v. Rogan*, No. 02 C 3310, 2005 WL 2861033, at *4 (N.D. Ill. Oct. 27, 2005) ("[I]n weighing the need for disclosure, the court could take into account any alternative discovery tools available . . . ."). Indeed, apart from the grand jury in Burge's case, McDermott has refused to testify about his abuse of suspects at Area 2, including to the Special Prosecutor investigating Pinex's allegations of abuse against McDermott. *See* Exhibit F, Special Prosecutor's Report, at 286 ("Maslanka and McDermott both testified at the motion to suppress, but they have refused to give any statement to this office."); Exhibit D, McDermott Test., at 74 (McDermott invoked his Fifth Amendment right against incriminating himself at the grand jury convened by the Special Prosecutor). Worse yet, McDermott has admitted that has **lied** in prior investigations of misconduct and in his prior testimony at a defendant's motion to suppress. *See* Exhibit D, McDermott Test., at 39, 112. As a result, without McDermott's grand jury testimony, Mitchell will have no way to ensure that McDermott's testimony at Mitchell's evidentiary hearing – testimony that will include questions about prior abuse – is properly tested and reliable. Rather, the Circuit Court presiding over Mitchell's case could be left with the misimpression that McDermott is an honest cop who has truthfully testified that he does not abuse criminal suspects. Such an injustice should not be sanctioned.

Third, and finally, Mitchell has met *Douglas Oil*'s requirement of "particularized need" because the events at issue in his post-conviction proceedings are two decades old. As a result,

McDermott's testimony will be important to refresh McDermott's recollection as to his conduct. *See*, *e.g.*, *Lucas*, 725 F.2d at 1105-06 (finding it appropriate to release grand jury testimony to refresh recollection); *Pontarelli Limousine, Inc.*, 652 F. Supp. at 1431 (same).

### B. The Need for Disclosure is Greater than Need for Secrecy

Balanced against Mitchell's extraordinary need for grand jury materials is a very limited interest in maintaining grand jury secrecy. In particular, because the criminal case against Burge has terminated, because portions of McDermott's grand jury testimony were made public during the criminal trial, and because the grand jury proceedings have already been disclosed to other private parties, the equities fall in Mitchell's favor.

It is axiomatic that the burden on "the party seeking disclosure lessens 'as the considerations justifying secrecy become less relevant.'" *State of Illinois v. Borg, Inc.*, 564 F. Supp. 96, 98 (N.D. Ill. 1983) (quoting *Sarbaugh*, 552 F.2d at 774). Courts have identified three circumstances in which the need for secrecy winnows: where the criminal case has concluded, where the grand jury transcripts were used at trial, and where the materials at issue have been disclosed to other parties. *See Sarbaugh*, 552 F.2d at 775 ("Once a grand jury has completed its work, indictments have been brought, the reasons for secrecy become less compelling."); *id.* (noting that disclosure to defendant's employer or to co-defendants substantially diminishes the need for secrecy); *In re Continental Illinois Sec. Litig.*, 732 F.2d 1302, 1308-16 (7th Cir. 1984) (information that is used at trial becomes part of the public record); *Matter of Krynicki*, 983 F.2d 74, 75-76 (7th Cir. 1992) ("Doctrines that initially seem to support secrecy thus turn out to be about the timing of disclosure."); *Petition of Moore*, No. 80 C 450, 1985 WL 2357, at*3 (N.D. Ill. Aug. 20, 1985) ("[T]he court agrees that after the completion of a grand jury investigation and the completion or dismissal of any case growing out of it, the ends of justice requirements for disclosure are more easily satisfied."). Those circumstances are present here.

To start, there is no dispute that both the grand jury proceedings that indicted Burge and his subsequent trial (and appeal) have concluded. On that score, McDermott testified at the grand jury in July and September 2009. Burge's criminal trial concluded in January 2011, after he was convicted and sentenced to four and a half years in prison. *See* Dckt No. 362, *United States v. Burge*, No. 08 CR 846 (N.D. Ill.). Likewise, Burge's direct appeal was denied by the Seventh Circuit on April 1, 2013, and his petition for a writ of certiorari was denied by the United States Supreme Court on October 7, 2013. *See* Dckt Nos. 57 & 60, *United States v. Burge*, No. 11-1277 (7th Cir.) As such, neither the grand jury that indicted him nor the criminal case that arose out of those grand jury proceedings are still pending.

In addition, it is also undisputed that matters relating to McDermott's grand jury testimony were introduced at Burge's trial. Although McDermott's grand jury testimony was not introduced in its entirety, portions of it were used for impeachment. *See* Exhibit D, McDermott Test., at 18-21, 24, 30-33, 111-112, 118, 134-137, 149-151. Indeed, it is no secret that McDermott testified adverse to Burge and admitted to misconduct during McDermott's grand jury proceedings.

Finally, the grand jury proceedings in Burge's case have already been released to a significant number of private parties outside of the criminal proceedings. In particular, the United States Attorney petitioned this Court for the release of grand jury transcripts to at least four groups litigating civil matters involving allegations of Area 2 misconduct. *See* Dckt Nos. 376, 382, 409 & 413 (releasing grand jury material to attorneys for defendants and plaintiffs in four cases where the plaintiffs are alleging torture). As such, any concerns regarding secrecy are heavily diluted in this case – particularly when weighed against Mitchell's compelling and particularized need.[4]

---

[4] In addition, because post-conviction proceedings are in front of a judge and not a jury, appropriate measures can be taken to ensure the secrecy of McDermott's testimony from the general public. *See Howard v. City of Chicago*, No. 03 C 8481, 2007 WL 2848858, at *4-*5 (N.D. Ill. Sept. 24, 2007) (granting motion for protective order for grand jury transcripts and nothing that "[w]hether

12

### C. Disclosure in this Case Would Be Discrete and Limited

The last criteria under *Douglas Oil* is that Mitchell's request be narrowly tailored to seek only those materials that directly – and unequivocally – relate to the case. *See Douglas Oil*, 441 U.S. at 221-22. Mitchell's request here clearly meets that mandate.

As even the U.S. Attorney conceded in its denial of Mitchell's subpoena, the materials relating to McDermott that Mitchell seeks are "relevant." Ex B, Letter from Kuhn to Thompson dated 7/15/13. To that end, the Illinois appellate court found that McDermott's credibility was the lynchpin of Mitchell's case: "The evidence of McDermott's perjury in similar cases involving alleged confessions significantly shifts the balance of credibility in the contest between McDermott's testimony and Keith [Mitchell's] and Audrey [Mitchell's] testimony about the voluntariness of his statements . . . ." Exhibit C, *Mitchell*, 2012 IL App (1st) 100907, at ¶ 62. Because McDermott's grand jury testimony and related proffers are necessary to show his "perjury in similar cases," Mitchell's request is appropriately limited to the relevant and necessary material.

### II. The U.S. Attorney's Denial of Mitchell's *Touhy* Request and Subpoena Was Arbitrary & Capricious

In addition to moving for disclosure of grand jury testimony under the Federal Rules, Mitchell also brings the instant petition challenging the U.S. Attorney's refusal to produce documents as "arbitrary and capricious" pursuant to the Administrative Procedures Act ("APA"). *See, e.g., Commonwealth of Puerto Rico v. United States*, Nos. 06-1305, 06-1306, 2006 WL 2795576, at *12 (D. Puerto Rico Sept. 26, 2006) (and cases cited therein) ("The APA expressly provides Plaintiff with a meaningful and adequate opportunity for judicial review of defendants' actions); *see also Edwards v. U.S. Dept. of Justice*, 43 F.3d 312, 316 (7th Cir. 1994).

---

any of the grand jury materials will be publicly disclosed if used in a trial of one of these cases is a matter for determination by the judge presiding at the trial.").

13

In analyzing a claim under the APA, "the reviewing court shall 'hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law.'" *Edwards*, 43 F.3d at 316 (quoting 5 U.S.C. § 706(2)(A)). The subpoena issued by Mitchell for grand jury materials "is treated as an administrative demand" and "[t]he Department's response to the subpoenas is subject to judicial review . . . ." *Id.*; *see also* Exhibit B, Letter from Kuhn to Thompson dated 7/15/13 (confirming that its denial was final agency action by stating that Mitchell could seek judicial review under the APA).[5]

As described above, because McDermott's grand jury testimony and attendant proffers are discoverable under Criminal Rule 6(e) – the only basis upon which the United States asserted for its withholding – the refusal to produce the grand jury material was arbitrary, capricious and in contravention of the law. For that reason, and on that independent basis, Mitchell also requests that this Court compel production of the subpoenaed materials.

## Conclusion

Keith Mitchell was just 15 years old when he was interrogated – alone – for a murder that he did not commit. For the past 20 years, Mitchell has consistently alleged that McDermott unlawfully coerced him and then lied about that abuse at Mitchell's motion to suppress and at trial. Mitchell now has the opportunity to prove what he has been protesting for the past two decades. But to do so, he needs the grand jury testimony of McDermott. Because Mitchell's particularized need outweighs any secrecy concerns, and because Mitchell's request is discrete and limited, this Court should compel the United States to produce Mitchell's grand jury testimony and related proffers.

---

[5] *Edwards* identifies three procedural limitations that have to be met prior to judicial review: (1) the action to be reviewed has to be an APA claim directed at the agency, the United States or an employee thereof; (2) the review must be in federal court; and (3) the government must not have waived its sovereign immunity. *Edwards*, 53 F.3d at 316. Each such limitation has been met here. *See also* Exhibit B, Letter from Kuhn to Thompson dated 7/15/13.

RESPECTFULLY SUBMITTED

/s/ Mike Kanovitz
Petitioner-Appellant's Attorney

THE EXONERATION PROJECT
  at the University of Chicago Law School
6020 S. University Ave.
Chicago, Illinois 60637
(773) 702-9611
ID: 44407

**CERTIFICATE OF SERVICE**

    I, Mike Kanovitz, an attorney, certify that on 12/11/2013, I served the attached PETITION TO INTERVENE TO RELEASE GRAND JURY TRANSCRIPTS OF MICHAEL MCDERMOTT on counsel of record via the Court's cm/ecf filing system.

/s/Mike Kanovitz