UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 08 CR 846 |
| | ) | |
| JON BURGE | ) | Judge Lefkow |

**RALPH HARRIS'S MOTION TO INTERVENE TO OBTAIN THE GRAND JURY
TRANSCRIPTS OF GOVERNMENT WITNESS MICHAEL MCDERMOTT AND
RELATED DOCUMENTS IN THE POSSESSION OF THE UNITED STATES
ATTORNEY'S OFFICE**

Movant Ralph Harris, by counsel, Joey L. Mogul and Charles W. Hoffman, moves to

intervene in the above-captioned matter for the purpose of obtaining the release, pursuant to

subpoena *duces tecum*, of the federal grand jury transcripts of Government witness Michael

McDermott and related documents in the possession of the United States Attorney's Office.  In

support, he states as follows:

**Introduction**

Ralph Harris moves to intervene in the above-captioned matter pursuant to Fed. R. Civ. P.

24, in order to obtain a copy of the federal grand jury testimony of Government witness Michael

McDermott and related documents in the possession of the United States Attorney's Office.  Harris

seeks to utilize that testimony and those documents in support of his pending post-conviction

proceedings in the Circuit Court of Cook County, Illinois, entitled People v. Harris, Nos. 95 CR

27596, 95 CR 27598.  In those proceedings, Harris alleges, *inter alia*, that his purported confessions

to several murders were the involuntary product of physical and emotional coercion he suffered at

the hands of former Area 2 Chicago Police Detectives Michael McDermott and James Boylan.

On July 23, 2014, Cook County Circuit Court Judge Dennis Porter entered orders denying,

in part, the State's motions to dismiss, and granting evidentiary hearings on Harris's coerced

confession claims in cases 95 CR 27596 and 27598. (Orders attached as Appendix A)  On January

8, 2015, Judge Porter granted Harris leave to subpoena the United States Attorney's Office for documents relating to McDermott's statements to federal agents and his federal grand jury testimony in connection with the case of *United States v. Burge*, No. 08 CR 846. (Order and subpoena attached as Appendix B)

On January 23, 2015, Harris's counsel forwarded that subpoena *duces tecum to* the U.S. Attorney's Office. (Letter of January 23, 2015 attached as Appendix C) By way of responsive letter on January 27, 2015 Assistant United States Attorney James M. Kuhn acknowledged receipt of the subpoena and advised Harris's counsel that before his office could approve the disclosure of any of the materials sought, counsel would be required to submit a "relevancy statement" pursuant to 28 C.F.R. § 16.22(c) and (d). (Letter of January 27, 2015 attached as Appendix D) On February 27, 2015, counsel for Harris provided AUSA Kuhn with the requested "relevancy statement" and materials in support. (Cover letter of February 27, 2015 and Affidavit of Relevancy attached as Appendix E). In response, on March 2, 2015 AUSA Kuhn informed Harris's counsel by letter that although his office determined "that the requested documents are relevant to [Harris's] legal proceeding," those documents "cannot be produced pursuant to 28 C.F.R. § 16.26(b)(1) and Fed. R. Crim. P. 6(e)." (Letter of March 2, 2015 attached as Appendix F)

The refusal of the U.S. Attorney's Office to produce any of the subpoenaed documents or testimony is not in accordance with the applicable law, and is in conflict with this Court's January 17, 2014 order granting, in part, a petition to intervene by similarly situated state post-conviction petitioner Keith Mitchell, who sought production of the identical materials. (Memorandum Opinion and Order of January 17, 2014, attached as Appendix G) For that reason, Movant Ralph Harris respectfully requests that this Court order the U.S. Attorney's Office to release those documents reflecting McDermott's statements to federal agents, and to release, at a minimum, those portions of McDermott's federal grand jury testimony this Court previously ordered released in the intervention proceedings brought previously by Keith Mitchell, subject to an appropriate protective order.

**Procedural History**

On August 29, 1995, Ralph Harris was arrested on criminal sexual assault and armed robbery charges. Following lengthy custodial interrogations at Area 2 Chicago Police Headquarters over the next two days, police and prosecutors purportedly elicited from Harris a number of confessions that were later introduced into evidence over defense objection in various Cook County prosecutions of Harris, including his prosecution for the murders of David Ford (95 CR 27596) and William Patterson (95 CR 27598).

Prior to Harris's separate trials in the Ford and Patterson cases, the defense filed an amended motion to suppress his purported confessions in his pending cases, on the ground that they were the involuntary product of physical and mental coercion at the hands of former Area 2 Detectives Michael McDermott and James Boylan. That motion, which was denied following a pretrial evidentiary hearing, specifically alleged, *inter alia*, that McDermott and Boylan struck Harris with their fists in his stomach, neck, and head; placed a gun to his head and in his mouth; and hit him with a phonebook. (Amended Motion attached as Appendix H)

Harris was subsequently convicted of the murders of Ford and Patterson and sentenced to death. His convictions in both cases were affirmed on direct appeal, although his death sentences were commuted to natural life imprisonment by former Illinois Governor George Ryan.

Harris currently has state post-conviction proceedings pending in the Ford and Patterson cases. In those cases, Harris has alleged, *inter alia*, that newly discovered evidence of the pattern and practice of the abuse of custodial suspects at Area 2 by detectives under the command of Jon Burge — such as former Det. Michael McDermott — entitles him under constitutional principles of due process of law to new trials; or, in the alternative, to a new hearing on his omnibus motion to suppress his purported confessions.

In support of his post-conviction allegations of newly discovered evidence against Det. McDermott, Harris relies, in part, on the 2006 Report of Cook County Special State's Attorney Edward Egan ("Report"), which found that McDermott's conduct toward another custodial suspect

at Area 2 – Alphonso Pinex – and McDermott's lying about that conduct under oath at Pinex's motion to suppress hearing, were criminal acts (aggravated battery, perjury and obstruction of justice), and that but for the expiration of the statute of limitations, McDermott should have been prosecuted for those crimes. (Report at 290) (Online at http://chicagojustice.org /foi/relevant-documents-of-interest/report-of-the-special-states-attorney-critique-of-that-report)

Harris also relies on the transcript of McDermott's immunized testimony at the federal criminal trial of former Area 2 Commander Jon Burge, in which McDermott admitted to threatening suspects and perjuring himself during investigations into his misconduct. More specifically, in that testimony McDermott admitted that he had not been truthful in his sworn testimony at the hearing on Pinex's motion to suppress his confession, by failing to mention that he had struck Pinex in the chest and knocked him down into a chair in an interrogation room at Area 2, before beginning his interrogation. When asked by Burge's defense counsel why he hadn't been truthful, McDermott responded, "Because [Pinex] was a murderer and I didn't want him to get off." *United States v. Burge*, 08 CR 846 (N.D. Ill) (Transcript of June 14, 2010, at 103-12) (Hereinafter "Transcript.")

### Relevance of the Materials Sought by Subpoena *Duces Tecum*

Based on information and belief, McDermott testified twice before the grand jury that indicted Burge for perjury and obstruction of justice. *United States v. Burge*, 08 CR 846 (N.D. Ill) (Transcript at 37) ("Q. And you have testified before the grand jury twice, is that right? A. Yes."). It appears that in his grand jury testimony, McDermott made admissions regarding misconduct he apparently sought to retract during his testimony at Burge's trial. *United States v. Burge*, 08 CR 846 (N.D. Ill) (Transcript at 18-21, 24, 30-33, 111-112, 118, 134-137, 149-151)

Based on the publicly available material regarding McDermott's involvement in the Burge prosecution, undersigned counsel for Harris in good faith believes that in his testimony before the federal grand jury and in statements he made to federal investigators, McDermott may have made admissions of misconduct regarding Alphonso Pinex that would corroborate the Cook County Special State's Attorney findings. For example, it can be deduced that during his grand jury

testimony, McDermott admitted to having lied about his abuse of Pinex. Obtaining McDermott's federal grand jury testimony is especially vital because that testimony may have been the only time McDermott has been forthcoming about his history of abusing suspects.

For example, with regard to Pinex, McDermott "acknowledge[d] in front of the federal grand jury that he had in fact lied and perjured himself . . . during the course of giving testimony" at Pinex's motion to suppress. McDermott also "incriminated himself by admitting that he had abused Mr. Pinex without provocation" during his grand jury testimony. *United States v. Burge*, 08 CR 846 (N.D. Ill) (Transcript at 92-93, 96). At Burge's trial, however, McDermott attempted to retract those admissions, testifying instead that Pinex claimed "there was abuse done during the interrogation, and I answered honestly that there was not." *Id*. at 104; see also *id*. at 104-05 (denying that he ever struck Pinex during his interrogation); *id.,* at 14 ("[McDermott's] testimony is different than what he has said at grand jury. . . .").

In his immunized testimony at Burge's trial, McDermott also admitted that when he gave a statement to OPS Investigator Veronica Tillman regarding allegations of abuse made by Area 2 custodial suspect Shadeed Mu'min, McDermott "wasn't completely truthful." *United States v. Burge*, 08 CR 846 (N.D. Ill) (Transcript at 131). McDermott admitted that he had "lied" to Investigator Tillman "about a couple things." *Id*., at 39. He acknowledged he had witnessed Burge do something "inappropriate" to Mu'min, and as a sworn law enforcement officer, should have done something about it, but did not. *Id*.

Illinois courts have held that a police officer's history of abuse practices is relevant and admissible to establish, *inter alia*, the officer's course of conduct during custodial interrogations, as well as to impeach the officer's credibility should he deny engaging in such abuse. *See, e.g., People v. Patterson*, 192 Ill.2d 93, 145 (2000); *People v. Banks*, 192 Ill. App. 3d 986, 994 (1st Dist. 1989) (Evidence that Area 2 detectives beat another suspect during his interrogation is relevant as it "tends to show the conduct that these two police officers employ in interrogating suspects who are in custody, and such evidence is therefore probative as to the conduct they employed in the present case

to obtain defendant's confession."); *People v. Cannon*, 293 Ill. App. 3d 634, 640 (1997) ("(E)vidence of other similar acts could be used to impeach the credibility of the Area 2 police officers who will testify at the hearing."). See also *People v. Phillips,* 95 Ill. App. 3d 1013, 1019-23 (1st Dist. 1981); *People v. Lenard,* 79 Ill. App. 3d 1046 (1st Dist. 1979).

Because of the importance to Harris's pending post-conviction proceedings of McDermott's admitted perjury in the Pinex case, his admission to lying during the investigation of his misconduct in the Mu'min case, and any other admissions of misconduct McDermott may have made to the federal grand jury or federal investigators in connection with the Burge prosecution, undersigned counsel for Harris in good faith believes that the materials sought by subpoena *duces tecum* to the United States Attorney's Office are relevant and material to those proceedings. Harris seeks those materials so that at the evidentiary hearing ordered in his post-conviction proceedings, he can corroborate his allegations that he was coerced by McDermott, and can impeach McDermott's credibility should McDermott testify at the evidentiary hearing and deny the allegations of coercion.

Undersigned counsel for Harris has a copy of McDermott's publicly available trial testimony in the Burge case, but is unable to obtain transcripts of McDermott's grand jury testimony or any related statements or admissions made by McDermott to federal investigators in connection with the Burge case, without the Government's compliance with the subpoena *duces tecum* issued to the United States Attorney's Office by order of the Circuit Court of Cook County in Harris's pending post conviction cases.

### Applicable Legal Standard

To obtain grand jury transcripts under Criminal Rule 6(e), a party "must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that the request is structured to cover only material so needed. . . ." *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 443 (1983). The burden of demonstrating that this balance favors disclosure rests upon the party seeking

disclosure. *State of Illinois v. Borg, Inc.*, 564 F. Supp. 96, 98 (N.D. Ill. 1983). "[A]s the considerations justifying secrecy become less relevant," however, "a party asserting a need for grand jury transcripts will have a lesser burden in showing justification." *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 223 (1979). "In sum . . . the court's duty in a case of this kind is to weigh carefully the competing interests in light of the relevant circumstances and the standards announced by [the Supreme Court]. *Id.* at 222-23; id. at 219-20 ("[I]n some situations justice may demand that discrete portions of transcripts be made available for use in subsequent proceedings.")

**Legal Argument**

**Neither 28 C.R.F. §16.26(b) Nor Criminal Rule 6(e) Preclude Disclosure under the Specific Facts of this Case.**

Although the U.S. Attorney's Office denied Harris access to McDermott's federal grand jury testimony and any related statements or documents based on 28 C.F.R. § 16.26(b)(1) and Criminal Rule 6(e), neither warrants secreting that information. To the contrary, given Harris's compelling need for those materials, the equities favor disclosure, subject to an appropriate protective order.

28 C.F.R. §16.26(b)(1) precludes disclosure of materials where doing so "would violate a statute . . . or a rule of procedure, such as the grand jury secrecy rule, F.R.Cr.P. Rule 6(e)." Although Criminal Rule 6(e) directs that grand jury proceedings are generally secret, it also provides exceptions to that presumption. In particular, Criminal Rule 6(e)(3)(E)(I) states that "[t]he court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter preliminarily to or in connection with a judicial proceeding." That exception applies to the instant case because Harris satisfies each of the *Douglas Oil* criteria: disclosure is necessary to avoid an injustice in Harris's pending state post-conviction proceedings, the need for disclosure is greater than the need for secrecy, and Harris's request is narrowly-tailored to those materials relating to McDermott that are critical for Harris's presentation of his post-conviction claims. See *Douglas Oil*, 441 U.S. at 222-23.

**Disclosure of McDermott's Grand Jury Testimony Is Necessary to Avoid an Injustice in
Harris's Pending State Post-Conviction Proceedings.**

Movant Harris needs McDermott's grand jury testimony and related statements to avoid an injustice in his state post-conviction proceedings. In particular, because McDermott is likely to either invoke the Fifth Amendment or deny any misconduct at Harris's evidentiary hearing, McDermott's grand jury testimony is necessary to corroborate Harris's allegations.

Courts have found that a petitioner has demonstrated the requisite necessity where grand jury testimony was "necessary to assure the reliability of [a witness's] testimony at trial." *Lucas v. Turner*, 725 F.2d 1095, 1104 (7th Cir. 1984). That necessity may arise for a number of reasons. For example, grand jury transcripts may be disclosed where they provide "the only record of [a witness'] account of the events at issue" due to the unavailability or hostility of the witness. See *Williams v. O'Meara*, No. 82 C 278, 1987 WL 10305, at *2 (N.D. Ill. April 30, 1987); see also *id.* at *2 ("Brown's obstructionist tactics demonstrate his hostility toward the plaintiff and her lawsuit, and his testimony is therefore properly discoverable."). Likewise, grand jury transcripts can be disclosed to "refresh the recollection of a witness." See *Lucas*, 725 F.2d at 1105-06 (quoting *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 233 (1940)); see also *Pontarelli Limousine, Inc. v. City of Chicago*, 652 F. Supp. 1428, 1431 (N.D. Ill. 1987) ("In this case, there is substantial evidence that an injustice would result if the requested materials are not released. As O'Shield stated many times in his deposition, he needs the tapes to refresh his memory . . ."). For reasons more fully explicated below, Harris's request for McDermott's grand jury transcripts and attendant documents and statements satisfies *Lucas's* "reliability" criteria. Indeed, McDermott's grand jury testimony is necessary because: (1) McDermott may invoke his Fifth Amendment right against self-incrimination instead of testifying; or (2) should McDermott testify, he is likely to back away from the admissions of misconduct he made during the federal grand jury proceedings that led to Burge's indictment — just as McDermott did at Burge's federal trial; and (3) McDermott's grand jury testimony may be needed to refresh his recollection as to misconduct he committed more than 20 years ago.

First, in the absence of a grant of immunity, McDermott will likely invoke his Fifth Amendment right against self-incrimination rather than testify at Harris's post-conviction evidentiary hearing. That invocation will make McDermott "unavailable." Ill. R. Evid. 804(a)(1); see also *People v. Lawson*, 193 Ill.App.3d 396, 398 (1st Dist. 1990) ("As a general rule, testimony given at a prior proceeding, by a witness who is unavailable to testify at the subsequent proceeding, is admissible as an exception to the hearsay rule. . . ."). As a result, to demonstrate McDermott's and pattern and practice of strikingly similar misconduct, Harris will need to introduce McDermott's federal grand jury testimony. See *People v. Cannon*, 293 Ill.App.3d 634, 640 (1st Dist. 2007) ("(E)vidence of other similar acts could be used to impeach the credibility of the Area 2 police officers who will testify at the hearing.") This is particularly true because McDermott's federal grand jury testimony is the only time in which he has been forthcoming about his history of abusing suspects.

Second, and for many of the same reasons cited above, Harris has met the *Douglas Oil* "necessity" requirement because should McDermott choose to testify, Mitchell needs McDermott's federal grand jury testimony to properly impeach him. As explained more fully above, although McDermott admitted to misconduct during his grand jury testimony – including regarding Alphonso Pinex – he attempted to recant those admissions at Burge's trial. (Testimony at 14). Because McDermott's grand jury testimony "may be admissible under certain rules and relevant as admissions or for assuring the credibility of [McDermott's] testimony at trial," Harris has established "particularized need" under *Douglas Oil*. See *Lucas*, 725 F.2d at 1104-05; see also *State of Wisconsin v. Schaffer*, 565 F.2d 961, 966 (7th Cir. 1977); *State of Illinois v. Sarbaugh*, 552 F.2d 768, 776 (7th Cir. 1977).

Harris's need is especially acute where, as here, he has no other avenue to secure this information. See *Lucas*, 725 F.2d at 1102; see also *United States v. Rogan*, No. 02 C 3310, 2005 WL 2861033, at *4 (N.D. Ill. Oct. 27, 2005) ("[I]n weighing the need for disclosure, the court could take into account any alternative discovery tools available. . . ."). Apart from his appearance before the

grand jury in Burge's case, McDermott has never acknowledged his abuse of custodial suspects at Area 2. McDermott refused to speak with the Cook County Special State's Attorney investigating Pinex's allegations of abuse against McDermott. (See Report, at 286) ("Maslanka and McDermott both testified at the motion to suppress, but they have refused to give any statement to this office.") And, he invoked his Fifth Amendment right against self- incrimination before the state grand jury convened by the Special Prosecutor. (Transcript of McDermott's appearance before the state grand jury attached as Appendix I) As a result, without McDermott's federal grand jury testimony, Harris will have no way of challenging the truthfulness of McDermott's testimony if he denies engaging in the abuse of custodial suspects at Area 2 at Harris's post-conviction evidentiary hearing. Without McDermott's federal grand jury testimony, the Cook County Circuit Court Judge presiding over Harris's case could be left with the mistaken impression that McDermott is an honest retired police officer who has truthfully testified that he did not abuse custodial suspects. Such an injustice should not be sanctioned.

Third, and finally, Harris has met *Douglas Oil's* requirement of "particularized need" because the events at issue in his post-conviction proceedings are two decades old. As a result, McDermott's federal grand jury testimony will be important to refresh his recollection as to his prior conduct. See, e.g., *Lucas*, 725 F.2d at 1105-06 (finding it appropriate to release grand jury testimony to refresh recollection); *Pontarelli Limousine, Inc*., 652 F. Supp. at 1431 (same).

### The Need for Disclosure is Greater than Need for Secrecy

Balanced against Harris's extraordinary need for the requested grand jury materials is a very limited governmental interest in maintaining grand jury secrecy. In particular, because the criminal case against Jon Burge has terminated, because portions of McDermott's grand jury testimony were made public during Burge's trial, and because the grand jury proceedings have already been disclosed to other private parties — as more fully explained below — the equities fall in Harris's favor.

It is axiomatic that the burden on "the party seeking disclosure lessens 'as the considerations justifying secrecy become less relevant.'" *State of Illinois v. Borg, Inc*., 564 F. Supp. 96, 98 (N.D. Ill. 1983) (quoting *Sarbaugh*, 552 F.2d at 774). Courts have identified three circumstances in which the need for secrecy winnows: where the criminal case has concluded, where the grand jury transcripts were used at trial, and where the materials at issue have been disclosed to other parties. See *Sarbaugh*, 552 F.2d at 775 ("Once a grand jury has completed its work, indictments have been brought, the reasons for secrecy become less compelling."); *id*. (noting that disclosure to defendant's employer or to co-defendants substantially diminishes the need for secrecy); *In re Continental Illinois Sec. Litig*., 732 F.2d 1302, 1308-16 (7th Cir. 1984) (information that is used at trial becomes part of the public record); *Matter of Krynicki*, 983 F.2d 74, 75-76 (7th Cir. 1992) ("Doctrines that initially seem to support secrecy thus turn out to be about the timing of disclosure."); *Petition of Moore*, No. 80 C 450, 1985 WL 2357, at*3 (N.D. Ill. Aug. 20, 1985) ("[T]he court agrees that after the completion of a grand jury investigation and the completion or dismissal of any case growing out of it, the ends of justice requirements for disclosure are more easily satisfied."). All of those circumstances are present here.

There is no dispute that both the federal grand jury that indicted Burge, and his subsequent trial and appeal, have been have concluded. McDermott testified before the grand jury in July and September 2009. Burge's criminal trial concluded in January 2011, after he was convicted and sentenced to four and a half years in prison. See Dckt No. 362, *United States v. Burge*, No. 08 CR 846 (N.D. Ill.). Likewise, Burge's convictions and sentence were affirmed on April 1, 2013, *United States v. Burge*, 711 F.3d 803 (7th Cir. 2013), and his petition for a writ of certiorari was denied on October 7, 2013. *Burge v. United States*, 134 S.Ct. 315 (2013). As such, neither the grand jury that indicted him nor the criminal case that arose out of those grand jury proceedings are still pending.

In addition, it is undisputed that matters relating to McDermott's federal grand jury testimony were introduced at Burge's trial. Although McDermott's grand jury testimony was not introduced

in its entirety, portions of it were used for impeachment. (Testimony at 18-21, 24, 30-33, 111-112, 118, 134-137, 149-151.)

Finally, the grand jury proceedings in Burge's case have already been released to a number of private parties outside of the criminal proceedings. In particular, the United States Attorney petitioned this Court for the release of those grand jury transcripts to at least four groups litigating civil matters involving allegations of Area 2 misconduct. See Dckt Nos. 376, 382, 409 & 413 (releasing grand jury material to attorneys for defendants and plaintiffs in four cases where the plaintiffs are alleging torture). As such, any concerns regarding secrecy are heavily diluted in this case – particularly when weighed against Harris's compelling and particularized need.  In addition, because post-conviction proceedings are litigated before a judge and not a jury, appropriate measures can be taken to ensure the secrecy of McDermott's testimony from the general public. See *Howard v. City of Chicago*, No. 03 C 8481, 2007 WL 2848858, at *4-*5 (N.D. Ill. Sept. 24, 2007) (granting motion for protective order for grand jury transcripts and noting that "[w]ether any of the grand jury materials will be publicly disclosed if used in a trial of one of these cases is a matter for determination by the judge presiding at the trial.").

### Disclosure in this Case Would Be Limited

The last criteria under *Douglas Oil* is that Harris's request be narrowly tailored to seek only those materials that directly – and unequivocally – relate to the case. See *Douglas Oil*, 441 U.S. at 221-22.  Harris's request clearly meets that mandate.  As the U.S. Attorney's Office conceded in its refusal to comply with  Harris's subpoena *duces tecum*, the materials relating to McDermott that Harris seeks are "relevant to [Harris's] legal proceeding." (Letter of March 2, 2015 attached as Appendix F)

### This Court's Order of January 17, 2014, Granting in Part the Identical Request of Similarly Situated State Post-Conviction Petitioner Keith Mitchell Demonstrates the Merits of Harris's Request.

Especially instructive on the merits of  Harris's request for production of  McDermott's

federal grand jury testimony and other statements he made in connection with his involvement in the Burge case is this Court's order of January 17, 2014, granting, in part, the identical request of similarly situated state post-conviction petitioner Keith Mitchell.

In *People v. Mitchell*, 2012 IL App (1st) 100907, the Illinois Appellate Court reversed the trial court's dismissal of Mitchell's successive post-conviction petition and remanded the case for an evidentiary hearing on the claim that his confession should have been suppressed as the product of coercion at the hands of Det. McDermott. The appellate court found that the newly discovered evidence on which the petitioner in *Mitchell* relied showed that the denial of his motion to suppress was based on the testimony of McDermott, who had "committed perjury in similar cases to persuade courts to admit into evidence coerced statements." *Mitchell*, 2012 IL App (1st) 100907 at ¶2.

The newly discovered evidence on which the petitioner in *Mitchell* relied consists of much of the same evidence on which Harris relies in his pending post-conviction cases. That evidence, as described by the court in *Mitchell*, "relate(d) to the pattern of extensive criminal conduct committed by police at Area 2." *Mitchell*, 2012 IL App (1st) 100907 at ¶33. The *Mitchell* court specifically referenced the 2006 Report of the Special State's Attorney. The Court noted,

> In 2006, special prosecutors reported about a pattern of criminal conduct committed by officers at Area 2, including McDermott. The special prosecutors specifically reported that they found convincing evidence, sufficient to prove guilt beyond a reasonable doubt, that McDermott battered suspects and committed perjury about the suspects' alleged confessions.
>
> *Mitchell*, 2012 IL App (1st) 100907 at ¶60.

The *Mitchell* court also concluded that the newly discovered evidence established that the petitioner had been prejudiced, in that "evidence of McDermott's prior perjury probably would change the result on retrial." *Mitchell*, 2012 IL App (1st) 100907 at ¶61. See also at ¶ 62 ("The evidence of McDermott's perjury in similar cases involving alleged confessions significantly shifts the balance of credibility in the contest between McDermott's testimony and [Mitchell's] and [his mother's] testimony about the voluntariness of his statements.")

-13-

On remand for further post-conviction proceedings, the Circuit Court of Cook County granted Mitchell's request for leave to issue a subpoena *duces tecum* on the United States Attorney's Office for McDermott's grand jury testimony and related documents in *United States v. Burge*, No. 08 CR 846. In response to that subpoena, the United States Attorney's Office declined to provide Mitchell's attorneys with McDermott's federal grand jury transcripts, citing Federal Rule of Criminal Procedure 6(e) and 28 C.F.R. § 16.26. (Dkt. 434, Ex. 2.) As a result, Mitchell filed a "Petition to Intervene to Release Grand Jury Transcripts of Michael McDermott," asking that this Court order the United States Attorney's Office to release McDermott's grand jury testimony to Mitchell's attorneys subject to an appropriate protective order.

On January 17, 2014, this Court issued a Memorandum Opinion and Order granting Mitchell's petition in part. (Attached as Appendix G) This Court found that Mitchell had sufficiently demonstrated: 1) that "to avoid a possible injustice, he needs grand jury materials wherein McDermott either admits to perjury or to physical abuse of a detainee"; 2) that "(t)he need for secrecy here does not outweigh the injustice that would result from denying Mitchell the transcript excerpt"; and 3) that because "Mitchell's request is limited to two grand jury sessions and the court's order winnows that down to thirteen pages of transcript from one session . . . this is no 'general fishing expedition into the grand jury proceedings.'" (January 17, 2014 Memorandum Opinion at 3 and 7) This Court also found that "McDermott's grand jury admissions go beyond information presented at the Burge trial and in the special prosecutor's report." (Memorandum Opinion at 5) This Court therefore ordered that "the U.S. Attorney's Office shall provide Mitchell with pages 16 through 28 of McDermott's grand jury testimony from September 25, 2008, as it relates to McDermott's interactions with Alfonso Pinex because it is directly relevant to Mitchell's claim that McDermott has mistreated detainees and perjured himself." (Memorandum Opinion at 1). Subsequently, on January 24, 2014, this Court issued a lengthy and detailed protective order regarding McDermott's grand jury testimony. (Attached hereto as Appendix J)

-14-

**Conclusion**

Like Keith Mitchell, Ralph Harris alleges that his murder convictions rested largely on coerced confessions that were the involuntary product of "intimidating and threatening" behavior by Det. McDermott, and that "McDermott perjured himself at the suppression hearing on the confession when McDermott denied coercing Mitchell into confessing." (Memorandum Opinion of January 17, 2014, at 1-2, attached as Appendix G)

For the same reasons that this Court granted, in part, Mitchell's request to intervene and to obtain the requested materials for use in his pending state post-conviction proceedings, this Court should similarly grant Ralph Harris's request to intervene, and order the United States Attorney's Office to release to Harris's lawyers, under an appropriate protective order, at a minimum, the same materials the United State's Attorney's Office was required to provide to Mitchell's lawyers.

Respectfully submitted,

/s/ Joey L. Mogul

JOEY L. MOGUL
Attorney at Law
1180 N. Milwaukee Ave.
Chicago, IL  60642
(773) 235-0070

CHARLES HOFFMAN
Supervisor
Office of the State Appellate Defender
First Judicial District
203 N. LaSalle, 24th Floor
Chicago, IL  60601
(312) 814-5472

ATTORNEYS FOR RALPH HARRIS