UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 08 CR 846 |
| | ) | |
| JON BURGE | ) | Judge Lefkow |

**SEPARATE APPENDIX**
**TO**
**RALPH HARRIS'S MOTION TO INTERVENE TO OBTAIN THE GRAND**
**JURY TRANSCRIPTS OF GOVERNMENT WITNESS MICHAEL**
**MCDERMOTT AND RELATED DOCUMENTS IN THE POSSESSION OF**
**THE UNITED STATES ATTORNEY'S OFFICE**

JOEY L. MOGUL
Attorney at Law
1180 N. Milwaukee Ave.
Chicago, IL 60642
(773) 235-0070

CHARLES HOFFMAN
Supervisor
Office of the State Appellate Defender
First Judicial District
203 N. LaSalle, 24th Floor
Chicago, IL 60601
(312) 814-5472

ATTORNEYS FOR RALPH HARRIS

# APPENDIX A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CRIMINAL DIVISION

FILED
Judge Dennis Porter #1512

JUL 23 2014

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | Post-Conviction |
| v. | ) | 95-CR-2759501 |
| | ) | |
| RALPH HARRIS, | ) | Hon. Dennis J. Porter, |
| | ) | Judge Presiding. |
| Defendant-Petitioner. | ) | |

### ORDER

Petitioner, Ralph Harris, seeks post-conviction relief from the judgment of conviction entered against him on October 25, 1999. Following a bench trial, petitioner was convicted of first degree murder and attempted armed robbery. Ill. Rev. Stat., 1995 Ch. 38, para. 9-1; Ill. Rev. Stat. 1995, Ch. 38, par. 8-4. Subsequently, the trial court sentenced petitioner to death for first degree murder and to an extended term of 28 years of imprisonment for attempted armed robbery. On January 10, 2003, petitioner's death sentence was commuted to life imprisonment. As grounds for post-conviction relief, petitioner claims that: (1) his confession was coerced; (2) he received ineffective assistance of counsel; (3) the State committed a *Brady* violation.

### BACKGROUND

Petitioner conviction stemmed from the events that took place on August 17, 1992 in Chicago, Illinois. On that date, petitioner shot Davis Ford while he attempted to rob him. At trial, petitioner's confession to the murder of David Ford was admitted into evidence. *People v. Harris*, No. 1-05-0320 (1st Dist. 2005) (unpublished order under Supreme Court Rule 23). The parties stipulated that the bullets removed from Ford's body were all .380 caliber. *Id.* The State presented evidence that six live .380 cartridges, three gun holsters, and an I.D. card belonging to

petitioner were recovered by police from a basement room in petitioner's parents' house in which petitioner sometimes slept. *Id.*

## PROCEDURAL HISTORY

On direct appeal, petitioner claimed that his trial counsel provided ineffective assistance for failing to seek reconsideration of the denial of his pretrial motion to suppress statements based upon mental and physical coercion by police. *People v. Harris*, No. 1-05-0320 (1st Dist. 2005) (unpublished order under Supreme Court Rule 23). Petitioner contended that counsel should have sought reconsideration in the light of petitioner's testimony during his Patterson trial describing the physical and mental abuse he suffered from the police. *Id.* The Appellate Court affirmed petitioner's conviction and sentence. *Id.*

Petitioner sought leave to appeal to the Illinois Supreme Court. On December 1, 2005, his petition was denied. *People v. Harris*, 217 Ill. 2d 528 (2005).

On March 12, 2002, petitioner filed a *pro-se* post conviction petition raising numerous constitutional violations. The Office of the State Appellate Defender was appointed to file an amended petition.

On May 14, 2009, petitioner, with the assistance of counsel, filed the instant amended petition where he claims that: (1) his confession was coerced; (2) he received ineffective assistance of counsel; and (3) the State committed a *Brady* violation.

On September 17, 2009, the court appointed the Special Prosecutor in this case. On February 16, 2010, the State filed its Motion to Dismiss Amended Petition for post-Conviction Relief. On June 12, 2013, petitioner filed "Petitioner's Motion to Adopt, in the Present case, The *Brady* Claim and pleadings in Support of That Claim Pending in Petitioner's Companion Post-Conviction Proceedings in 95 CR 2759801." In turn, on July 24, 2013, the State filed the "State

2

Supplement to Its Original Motion to Dismiss Addressing Petitioner's Brady Claim." On October 04, 2013, Petitioner filed his Response to State's Motion to Dismiss Amended Petition for Post-Conviction Relief. On April 25, 2014, the State filed its Reply in support of the Motion to Dismiss. On May 20, 2014, the court heard the arguments and took the matter under advisement.

## ANALYSIS

The Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et seq.*, provides a remedy for defendants who have suffered substantial violations of their federal or state constitutional rights. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). The Act sets forth three stages of review. *People v. Domagala*, 2013 IL 113688 (2013). Unless the petition presents a "gist" of a valid constitutional claim, the trial court may dismiss the petition as frivolous and patently without merit during the first stage of post-conviction review. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). A petition is frivolous and patently without merit when the petition has no arguable basis in either fact or law. *People v. Hodges*, 234 Ill. 2d 1, 23 (2009).

At the second stage, the trial court must determine whether the petition and any accompanying documents make a substantial showing of a constitutional violation. 725 ILCS 5/122-1(a)(1) (West 2006). When making this determination, the trial court must assume that the allegations in affidavits or other documentation are true. *People v. Ward*, 187 Ill. 2d 249, 255 (1999) (citing *People v. Caballero*, 126 Ill. 2d 248, 259 (1989)). If a defendant does not make a substantial showing of a constitutional violation, the petition is dismissed. *Edwards*, 197 Ill. 2d at 246. If a substantial showing of a constitutional violation is made, the petition is advanced to the third stage, where the trial court conducts an evidentiary hearing. 725 ILCS 5/122-6. Factual disputes raised by the pleadings that require determination of the truth or falsity of the supporting

3

documents cannot be made at a hearing on the motion to dismiss at the second stage, but can only be resolved by an evidentiary hearing. *People v. Coleman*, 183 Ill. 2d 366, 381 (1998).

At the outset, it is universally recognized that a post-conviction proceeding is not a direct appeal, but rather is a collateral attack on a prior judgment. *People v. Barrow*, 195 Ill. 2d 506, 519 (2001). Under the Act, a petitioner enjoys no entitlement to an evidentiary hearing. *People v. Cloutier*, 191 Ill. 2d 392, 397 (2000). A hearing is required, however, when the petitioner makes a substantial showing, based on the record and supporting affidavits, that a violation of constitutional rights occurred at trial or sentencing. *People v. Johnson*, 191 Ill. 2d 257, 268 (2000).

## I.    Coerced Confession

Petitioner claims that his statement where he confessed that he had shot Davis Ford while attempting to rob him was coerced by police brutality. In support of his claim petitioner has attached numerous documents and has referenced his previous testimony in in *People v. Harris*, No. 27598, where he testified about the abuse he suffered on August 29, and August 30, 1995, while incarcerated at Area 2. The Illinois Supreme Court has held that a defendant has presented sufficient evidence at the pleading stage to entitle him to a post conviction, evidentiary hearing for a torture claim when: (1) the officers allegedly involved are identified in other allegations of torture; (2) he has consistently claimed he was tortured; (3) his claims are "strikingly similar" to other claims of torture; and (4) the defendant's allegations are consistent with OPS findings of systemic and methodical torture at Area 2 under Jon Burge. *People v. Wrice*, 2012 IL 111860, ¶ 43 *citing People v. Patterson*, 192 Ill. 2d 93, 145 (2000).

In the instant case, petitioner has made a substantial showing that his constitutional rights were violated. Accordingly, petitioner's claim that his confession was coerced is advanced to a third stage evidentiary hearing.

4

## II.    Ineffective Assistance of Counsel

Petitioner claims that his trial counsel was ineffective for failing to: (1) support the pretrial motion to suppress statements; (2) impeach Detective McDermott's testimony; and (3) investigate and introduce evidence at trial of Detective's McDermott's use of coercion to attack the reliability of the statements made by petitioner.

In examining petitioner's claims of ineffective assistance of counsel, this court follows the two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under this standard, petitioner must show that counsel's representation fell below an objective standard of reasonableness, and that but for this deficiency, there is a reasonable probability that counsel's performance was prejudicial to the defense. *People v. Hickey*, 204 Ill. 2d 585, 613 (2001). "Prejudice exists when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *People v. Erickson*, 183 Ill. 2d 213, 224 (1998) (citations omitted). At the first stage, a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced. *People v. Tate*, 2012 IL 112214, quoting *People v. Hodges*, 234 Ill. 2d 1, 17 (2009). A petitioner's failure to make the requisite showing of either deficient performance or sufficient prejudice defeats a claim of ineffectiveness. *People v. Morgan*, 187 Ill. 2d 500, 529-30 (1999).

Significantly, effective assistance of counsel in a constitutional sense means competent, not perfect, representation. *People v. Easley*, 192 Ill. 2d 307, 344 (2000). Notably, courts indulge in the strong presumption that counsel's performance fell within a wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 690 (2001). Moreover, "the fact that another attorney might have pursued a different strategy is not a factor in the competency

5

determination." *People v. Palmer*, 162 Ill. 2d 465, 476 (1994) (citing *People v. Hillenbrand*, 121 Ill. 2d 537, 548 (1988)).

Further, counsel's strategic decisions will not be second-guessed. Indeed, to ruminate over the wisdom of counsel's advice is precisely the kind of retrospection proscribed by *Strickland* and its progeny. *See Strickland*, 466 U.S. at 689 ("[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight"); *see also People v. Fuller*, 205 Ill. 2d 308, 331 (2002) (issues of trial strategy must be viewed, not in hindsight, but from the time of counsel's conduct, and with great deference accorded counsel's decisions).

Here, petitioner has made a substantial showing that his constitutional rights were violated, and, accordingly, petitioner's claim is advanced to a third stage evidentiary hearing.

**III.    *Brady* Violation**

Petitioner claims that the State suppressed evidence that Detective McDermott had previously tortured other Area Two suspects. Due process prohibits the suppression by the State of information or materials favorable to the petitioner and material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *United States v. Bagley*, 473 U.S. 667, 682 (1985). "Moreover, the disclosure obligation applies to impeachment evidence as well." *People v. Pecoraro*, 175 Ill. 2d 294, 305 (1997). The standard for materiality under *Brady* is whether there is a reasonable probability that disclosure of the evidence to the defense would have altered the outcome of the proceeding. *People v. Sanchez*, 169 Ill. 2d 472, 486 (1996); *Bagley*, 473 U.S. at 682. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Bagley*, 473 U.S. at 682.

6

In order to succeed on a claimed *Brady* violation, the petitioner bears the burden to show that: (1) the evidence is favorable to the petitioner because it is either exculpatory or impeaching; (2) the evidence was either willfully or inadvertently withheld from the petitioner by the State; and (3) withholding the evidence resulted in prejudice to the petitioner. *People v. Rapp*, 343 Ill. App. 3d 414, 417 (3d. Dist. 2003).

In *People v. Mitchell*, 2012 IL App (1st) 100907, the court addressed the issue whether the State committed a *Brady* violation when it failed to disclose evidence of the pattern of torture and perjury committed by Detective McDermott at Area 2. Relying on *People v. Orange*, 195 Ill. 2d 437 (2001) and *People v. Mahaffey*, 194 Ill. 2d 154 (2000), *overruled on other grounds* in *People v. Wrice*, 2012 IL 111860, the court dismissed the *Brady* claim. *People v. Mitchell*, 2012 IL App (1st) 100907 *citing People v. Orange*, 195 Ill. 2d at 456 ("any apparent nexus between alleged incidents of abuse of other suspects by Area 2 officers and defendant's claims did not arise until several years after defendant's suppression motion, and it was only at that later time that investigations were initiated into interrogation practices at Area 2. Therefore, defendant cannot properly claim that the State violated the *Brady* rule by failing to disclose information that was unavailable"). Accordingly, petitioner has failed to make a substantial showing of a constitutional violation of his rights and his claim fails.

## CONCLUSION

For all the foregoing reasons, the court advances petitioner's claim of coerced confession and ineffective assistance of counsel to a third stage evidentiary hearing. The court finds that petitioner has failed to make a substantial showing of a constitutional violation with regards to the rest of his claims and they are hereby dismissed. The court therefore, grants respondent's motion to dismiss in part and the petition for post-conviction relief is hereby granted in part and dismissed in part.

ENTERED: *Dennis J. Porter*

Hon. Dennis J. Porter
Circuit Court of Cook County
Criminal Division

DATED: JUL 2 3 2014



ENTERED
JUDGE DENNIS PORTER - 1512
JUL 2 3 2014
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

8

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CRIMINAL DIVISION

<div style="float:right; border:1px solid;">
FILED

Judge Dennis Porter #1512

JUL 2 3 2014

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK
</div>

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, ) | |
| ) | |
| Plaintiff-Respondent, ) | |
| ) | Post-Conviction |
| v. ) | 95CR2759801 |
| ) | |
| RALPH HARRIS, ) | Hon. Dennis J. Porter, |
| ) | Judge Presiding. |
| Defendant-Petitioner. ) | |

## <u>ORDER</u>

Petitioner, Ralph Harris, seeks post-conviction relief from the judgment of conviction entered against him on March 24, 1999. Following a jury trial, petitioner was convicted of first degree murder, attempt first degree murder, and attempt armed robbery. Ill. Rev. Stat., 1995 Ch. 38, para. 9-1; Ill. Rev. Stat., 1995 Ch. 38, para.12-4.2-A; Ill. Rev. Stat. 1995, Ch. 38, par. 8-4(38-18-2). Subsequently, the trial court sentenced petitioner to death for first degree murder, 60 years of imprisonment for attempt first degree murder and a consecutive term of 15 years for attempt robbery. On January 10, 2003, petitioner's death sentence was commuted to life imprisonment.

As grounds for post-conviction relief, petitioner claims that: (1) his trial counsel was ineffective; (2) his appellate counsel was ineffective; (3) his right to a fair trial was violated because his conviction was based on exaggerating, misleading and unproven testimony of firearm identification witnesses; (4) his confession was coerced; (5) he received ineffective assistance of counsel for failing to investigate and introduce evidence of Detective McDermott's history of coercing suspects; (6) the State committed a *Brady* violation by failing to provide the

defense with information about the physical coercion of petitioner and evidence of a pattern and practice of police brutality at Area 2.

## BACKGROUND

The Appellate Court has thoroughly set out the facts of this case. *People v. Harris*, No. 1-05-0323 (1st Dist. 2005) (unpublished order under Supreme Court Rule 23). The pertinent facts to this petition are as follows. Petitioner's conviction stemmed from the events that took place on August 17, 1992 in Chicago, Illinois. On that date, petitioner shot and killed William Patterson while he attempted to rob him. Petitioner shot James Patterson, William's brother, but he survived. At trial, James Patterson testified that initially heard two gunshots fired from outside the front of his house. He then saw petitioner standing over his brother as he lay on the grass. Petitioner fired another shot at James which grazed the left side of the abdomen. James had previously positively identifies petitioner in a line-up.

Another eyewitness, Brenda Smith, testified that she saw petitioner with a gun in his hand approaching William. As she ran downstairs, she heard a gunshot. She ran to the front of her house where she saw William on the ground. She saw petitioner approximately 4 to 5 feet away as he ran past her. She had previously identified petitioner in a line-up.

Detective Hamilton testified that on August 30, 1995, he spoke with petitioner and informed him that two witnesses had identified him as the offender who shot William Patterson. Detective Hamilton also told petitioner that the weapon used in the Patterson shootings had been used in three other homicides in the Chatham neighborhood in the summer of 1992. When Detective Hamilton later questioned petitioner regarding the Patterson shootings, petitioner stated: "I'm not saying I didn't do this one, I just don't remember that one."

Detective Hamilton wrote out petitioner's statement regarding several other murders that occurred on July 22, 1992, August 2, 1992, and August 17, 1992. Petitioner read through and signed each one. Specifically, petitioner admitted his involvement in the armed robberies and the murders of Thomas Hodges, Jimmy Bramlett, and Davis Ford, and stated that he wanted to be known as the "Chatham killer." Assistant States Attorney Leslie Quad corroborated Detective's Hamilton testimony regarding petitioner's statements.

Richard Fournier, an expert in firearm identification, testified that the bullets recovered from the bodies of Bramlett, Hodges, Ford and Patterson, were to a reasonable degree of scientific certainty, fired from the same gun to the exclusion of other guns. FBI Special Agent Gerald Wilkes testified that four of the live .380 caliber bullets recovered from the basement of petitioner's parents' home at 8554 S. Muskegon, and two fired shell casings recovered at the scene of the Patterson shootings had identical head stamps and were manufactured by Winchester. During cross-examination, Fournier acknowledged that Winchester manufactured millions of bullets each year.

Petitioner testified that he was arrested on August 29, 1995. Petitioner stated that after he was handcuffed, Detective McDermott rolled him over, put a gun on his face and stated, "Didn't we tell you that we are going to kill you or lock you up forever?" Petitioner testified he was placed in an interview room by detectives Hamilton and Bagdon. He was then handcuffed to a loop attached to a wall in room with no windows. Petitioner testified that on several occasions, Detectives McDermott and Boylan entered the interview room and proceeded to physically and verbally assault him. Petitioner stated that Detective McDermott grabbed him in the throat and pushed him up against the wall, and punched him in the stomach while threatening to send him to prison forever. Detective Hamilston then entered the room and questioned him regarding some

3

murders. Petitioner stated that he did not want to talk, and wished to speak with a lawyer. Detective Hamilton left and Detectives McDermott and Boylan returned. They struck and chocked petitioner and ordered that he cooperate because they knew he had information regarding the murders. Before leaving they threatened to "get" petitioner and, also, to lock up petitioner's girlfriend.

After the detectives left, ASA Quade entered the room with another detective. Petitioner informed ASA Quade that he wanted an attorney and she immediately stopped the interview. Fifteen minutes later, detective Hamilton entered the room and told him that Detectives McDermott and Boylan "really wanted him," and that Detective Hamilton could not help him unless he cooperated. When Detective Hamilton questioned petitioner regarding the other murders, petitioner refused to answer and the detective left the room.

Petitioner testified that Detectives McDermott and Boylan entered the room a third time and Detective McDermott twisted petitioner's arm causing agonizing pain. He then choked petitioner and punched him in the ribs, telling him that he was going to do what the police wanted him to do. After they left, Detective Hamilton returned with several pieces of blank paper. He told petitioner that they were going to lock up his girlfriend if he did not cooperate. Detective Hamilton then questioned petitioner regarding the other murders, but left the room after petitioner refused to talk.

Petitioner testified that Detectives McDermott and Boylan returned a fourth time, and Detectives McDermott pulled out a gun and stated that it could "take your head clean off in this room." He pointed the gun in petitioner's face and asked Detective Boylan, "Do you think that we can kill him?" Detectives McDermott pulled a pocket knife out his pocket and said, "Well, we can say he had a knife on him and then I could shoot him." Detectives McDermott grabbed

4

petitioner by the throat, put the gun to the side of his head and stated, "I am going to kill you." He stuck the gun in petitioner's mouth. Petitioner was frightened. He never informed ASA Quade of these threats because there was always a detective present when she entered the room. Petitioner stated that he signed two pieces of blank papers.

Before the State's cross-examination of petitioner, the court allowed the prosecutor to refer to victims, dates and places of various 1995 offenses for which petitioner was under investigation at the time of his arrest without revealing the nature of those offenses.

In rebuttal, petitioner's fiancée, Angela Clark, testified that at the time of petitioner's arrest, she did not hear the police threaten petitioner. When she spoke with petitioner three days after his arrest, he never mentioned any mistreatment at the hands of police officers.

Detective Boylan testified that neither he nor Detective McDermott choked, punched, grabbed or hit petitioner or threaten him with a handgun. He denied having a vendetta against petitioner as a result of the Rudy Wilson case. Detective McDermott testified that he assisted in arresting petitioner. Detective McDermott stated that at the time of petitioner's arrest he scuffled with petitioner and pulled out his gun but he denied threatening to kill petitioner. When he first spoke with petitioner at the station, he questioned him regarding 1992 incident involving James Brown. Detective McDermott next spoke with petitioner on august 30, 1995, to verify an address and he did not have any further conversations with petitioner. Detective McDermott testified that he did not threaten petitioner with a gun or pull out a pocket knife. He testified that he did not stick a gun in petitioner's mouth, or otherwise hit, slap, kick or punch him. He also testified that petitioner was not handcuffed while in the room because he was cooperative with police.

5

**PROCEDURAL HISTORY**

On direct appeal, petitioner claimed that: (1) the trial court erred in admitting evidence of petitioner's other crimes, and (2) the prosecutor's remarks during closing argument deprived him of a fair trial by shifting the burden of proof to the defense. *People v. Harris*, No. 1-05-0323 (1st Dist. 2005) (unpublished order under Supreme Court Rule 23). The Appellate Court affirmed petitioner's conviction and sentence. *Id.*

Petitioner sought leave to appeal to the Illinois Supreme Court. On December 1, 2005, his petition was denied. *People v. Harris*, 217 Ill. 2d 528 (2005).

On March 12, 2002, petitioner filed a *pro-se* post conviction petition raising numerous constitutional violations. The Office of the State Appellate Defender was appointed to file an amended petition.

On December 9, 2011, petitioner, with the assistance of counsel, filed the instant amended petition where he claims that: (1) his trial counsel was ineffective; (2) his appellate counsel was ineffective; (3) his right to a fair trial was violated because his conviction was based on exaggerating, misleading and unproven testimony of firearm identification witnesses; (4) his confession was coerced; (4) he received ineffective assistance of counsel for failing to investigate and introduce evidence of Detective McDermott's history of coercing suspects; (5) the State committed a *Brady* violation by failing to provide the defense with information about the physical coercion of petitioner and evidence of a pattern and practice of police brutality at Area 2; (6) the cumulative impact of counsel's errors deprived petitioner of his right to a fair trial.

On September 17, 2009, the court appointed the Special Prosecutor in this case. On July 26, 2012, the State filed its Motion to Dismiss Amended Petition for post-Conviction Relief. On

October 16, 2013, Petitioner filed his Response to State's Motion to Dismiss Amended Petition for Post-Conviction Relief. On March 25, 2014, the State filed its Reply in support of the Motion to Dismiss. On May 20, 2014, the court heard the arguments and took the matter under advisement.

## ANALYSIS

The Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et seq.*, provides a remedy for defendants who have suffered substantial violations of their federal or state constitutional rights. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). The Act sets forth three stages of review. *People v. Domagala*, 2013 IL 113688 (2013). Unless the petition presents a "gist" of a valid constitutional claim, the trial court may dismiss the petition as frivolous and patently without merit during the first stage of post-conviction review. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). A petition is frivolous and patently without merit when the petition has no arguable basis in either fact or law. *People v. Hodges*, 234 Ill. 2d 1, 23 (2009).

At the second stage, the trial court must determine whether the petition and any accompanying documents make a substantial showing of a constitutional violation. 725 ILCS 5/122-1(a)(1) (West 2006). When making this determination, the trial court must assume that the allegations in affidavits or other documentation are true. *People v. Ward*, 187 Ill. 2d 249, 255 (1999) (citing *People v. Caballero*, 126 Ill. 2d 248, 259 (1989)). If a defendant does not make a substantial showing of a constitutional violation, the petition is dismissed. *Edwards*, 197 Ill. 2d at 246. If a substantial showing of a constitutional violation is made, the petition is advanced to the third stage, where the trial court conducts an evidentiary hearing. 725 ILCS 5/122-6. Factual disputes raised by the pleadings that require determination of the truth or falsity of the supporting

7

documents cannot be made at a hearing on the motion to dismiss at the second stage, but can only be resolved by an evidentiary hearing. *People v. Coleman*, 183 Ill. 2d 366, 381 (1998).

At the outset, it is universally recognized that a post-conviction proceeding is not a direct appeal, but rather is a collateral attack on a prior judgment. *People v. Barrow*, 195 Ill. 2d 506, 519 (2001). Under the Act, a petitioner enjoys no entitlement to an evidentiary hearing. *People v. Cloutier*, 191 Ill. 2d 392, 397 (2000). A hearing is required, however, when the petitioner makes a substantial showing, based on the record and supporting affidavits, that a violation of constitutional rights occurred at trial or sentencing. *People v. Johnson,* 191 Ill. 2d 257, 268 (2000).

## I.    Ineffective Assistance of Trial Counsel

Petitioner claims that his trial counsel was ineffective for failing to: (1) to seek a *Frye* hearing on the admissibility of firearm identification evidence linking the firearm used in the Patterson crime to other murders ; (2) file a motion *in limine* to bar or limit the firearm identification testimony; (3) object to the firearms lack of foundation for the firearms identification testimony; (4) cross-examine the State's experts and present expert testimony to rebut the State's firearm identification testimony; (5) to present exculpatory testimony.

In examining petitioner's claims of ineffective assistance of counsel, this court follows the two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under this standard, petitioner must show that counsel's representation fell below an objective standard of reasonableness, and that but for this deficiency, there is a reasonable probability that counsel's performance was prejudicial to the defense. *People v. Hickey*, 204 Ill. 2d 585, 613 (2001). "Prejudice exists when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *People v. Erickson*, 183 Ill. 2d

213, 224 (1998) (citations omitted). At the first stage, a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced. *People v. Tate*, 2012 IL 112214, quoting *People v. Hodges*, 234 Ill. 2d 1, 17 (2009). A petitioner's failure to make the requisite showing of either deficient performance or sufficient prejudice defeats a claim of ineffectiveness. *People v. Morgan*, 187 Ill. 2d 500, 529-30 (1999).

Significantly, effective assistance of counsel in a constitutional sense means competent, not perfect, representation. *People v. Easley*, 192 Ill. 2d 307, 344 (2000). Notably, courts indulge in the strong presumption that counsel's performance fell within a wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 690 (2001). Moreover, "the fact that another attorney might have pursued a different strategy is not a factor in the competency determination." *People v. Palmer*, 162 Ill. 2d 465, 476 (1994) (citing *People v. Hillenbrand*, 121 Ill. 2d 537, 548 (1988)).

Further, counsel's strategic decisions will not be second-guessed. Indeed, to ruminate over the wisdom of counsel's advice is precisely the kind of retrospection proscribed by *Strickland* and its progeny. *See Strickland,* 466 U.S. at 689 ("[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight"); *see also People v. Fuller,* 205 Ill. 2d 308, 331 (2002) (issues of trial strategy must be viewed, not in hindsight, but from the time of counsel's conduct, and with great deference accorded counsel's decisions).

9

### A. Failure to Request a *Frye* hearing

Petitioner contends that his trial counsel was ineffective for failing to request a *Frye* hearing on the admissibility of firearm identification evidence linking the firearm used in the Patterson crime to other murders that were the subject of petitioner's incriminatory statements. In support of his claim petitioner has attached Exhibits 16, 18-25 that include several publications and cases as well as the Report of Firearm Identification Expert John R. Nixon.

Initially, the court notes that the documents petitioner has attached are dated long after petitioner's trial in 1999. Counsel's competency is determined from the totality of counsel's conduct at trial. *People v. Eddmonds*, 101 Ill. 2d 44, 69 (1984). Accordingly, petitioner's exhibits were not available to petitioner's counsel at the time of his trial and it is undisputed that no Frye hearing has been conducted in Illinois concerning the admissibility of firearm identification evidence.

In addition, under the general acceptance test of *Frye*, scientific evidence is admissible if the methodology underlying the opinion is sufficiently established to have gained general acceptance in the particular field in which it belongs. *Frye v. United States*, 293 F. 1013, 1014. (D.C. Cir. 1923). A court may determine the general acceptance of a scientific principle or methodology in either of two ways: (1) based on the results of a *Frye* hearing; or (2) by taking judicial notice of unequivocal and undisputed prior judicial decisions or technical writings on the subject. *People v. McKown*, 226 Ill. 2d 245 at 254. General acceptance is met where the underlying method used to generate the opinion is reasonably relied upon by the experts in the relevant field. *People v. Simmons*, 213 Ill. 2d 523, 530 (2004). The *Frye* standard is limited to scientific methodology that is considered "new" and "novel." *People v. McKown*, 226 Ill. 2d 245, 257 (2007).

10

In the instant case, counsel's decision not to request a *Frye* hearing was justified. The methodology used by the State's experts to produce the opinions regarding the firearms evidence is reasonably relied upon by experts in the firearms identification field. The record indicates that the State's experts, Richard Fournier and Gerald Wilkes, examined the bullets a through a comparison microscope to compare striation patterns. This method is a generally accepted method for generating an opinion. *See People v. O'Neal*, 118 Ill. App. 2d 116, 122 (1st Dist. 1969). A properly qualified ballistics expert may offer his opinion as to whether a bullet was fired from a gun in question. *People v. Fisher*, 340 Ill 2163 (1930). Here, Wilkes opined that the bullets recovered in the Patterson, Bramlett, and Ford cases were fired from the same barrel. Fournier opined that the bullets recovered in the Patterson, Bramlett, Hodges and Ford cases were fired from the same gun. As such, since the expert's opinions regarding the firearms evidence were based on a methodology generally accepted by the experts in the firearms identification field, counsel's decision not to request a Frye hearing was not unreasonable.

In addition, petitioner cannot establish that counsel's alleged deficient performance prejudiced his defense. Even if counsel would have requested a *Frye* hearing, his request would have been denied since the methodology used to produce the opinions regarding the firearms identification is not new or novel. *See People v. McKown*, 226 Ill. 2d 245, 257 (2007). Therefore, petitioner has utterly failed to show that his trial counsel's performance arguably fell below an objective standard of reasonableness and that he was arguably prejudiced by such performance.

**B. Failure to File a Motion *in Limine***

Petitioner claims next that counsel was ineffective for failing to file a motion *in limine* to bar the admission of the ballistic evidence. An attorney's decision to file or not to file a motion is

11

regarded as a matter of trial strategy, *People v. Green*, 36 Ill. 2d 349, 351 (1967), which must be given great deference. *Strickland*, 466 U.S. at 688. Counsel's decision not to file a motion *in limine* can be characterized as tactical decisions within the judgment of defense counsel. *See People v. Shlimon*, 232 Ill. App. 3d 449, 457 (1st Dist. 1992). When counsel is planning a trial strategy, judgments must be made and any errors in judgment do not constitute ineffective assistance of counsel. *People v. Stewart*, 104 Ill. 2d 463 (1984).

Here, counsel's decision not to file a motion *in limine* to bar the admission of the ballistic evidence is nothing more than a decision within the bounds of trial strategy and, therefore, petitioner has failed to show that counsel's performance was arguably deficient. In addition, petitioner cannot establish that he was prejudiced by counsel's alleged deficient performance. Specifically, petitioner cannot show that even if counsel would have filed a motion *in limine* , the result of his trial would have been different. The evidence against petitioner consisting in the identifications made by James Patterson and Brenda Smith, as well as the properly admitted evidence of the 1992 homicides establishing petitioner's identity as the person who shot William Patterson was overwhelming. *People v. Harris*, No. 1-05-0323 (1st Dist. 2005) (unpublished order under Supreme Court Rule 23). Therefore, petitioner cannot show that counsel's decision not to file a motion *in limine* was unreasonable or that it prejudiced his defense.

### C. Failure to Object to the Lack of Foundation for the Expert Opinions

Petitioner contends next that his trial counsel was ineffective for failing to object to the State's failure to provide sufficient foundation for the opinion testimony of the firearms experts. Petitioner argues that even if firearms identification evidence is generally admissible under *Frye* it may be excluded in a particular case if the proponent of the evidence fails to lay a proper foundation for its introduction.

Petitioner's claim is meritless because decisions regarding "what matters to object to and when to object" are matters of trial strategy. *People v. Perry*, 224 Ill. 2d 312, 344 (2007). As such, it will be left undisturbed. See *People v. Childress*, 191 Ill. 2d 168, 177 (2000) (trial counsel's strategic choices are virtually unchallengeable). Indeed, "[t]he evaluation of counsel's conduct cannot properly extend into areas involving the exercise of professional judgment, discretion or trial tactics." *People v. Franklin*, 135 Ill. 2d 78, 118-19 (1990) (citations omitted).

In addition, petitioner has failed to establish that counsel's alleged deficient performance prejudiced his defense. The appellate court held that the evidence in petitioner's case was overwhelming. *People v. Harris*, No. 1-05-0323 (1st Dist. 2005) (unpublished order under Supreme Court Rule 23). Even if counsel would have objected to the firearm identification evidence, petitioner cannot show that that the outcome of his trial would have been different if counsel had proceeded as petitioner suggests. Thus, counsel's decision not to object to the firearm identification trial testimony does not amount to ineffective assistance of counsel.

### D. Failure to Challenge the Firearms Identification Testimony

Petitioner claims next that his trial counsel failed to properly contest the firearms identification testimony through either cross-examination or through a defense expert testimony. The decision whether or not to cross-examine or impeach a witness is a matter of trial strategy which cannot support a claim of ineffective assistance of counsel. *People v. Pecoraro*, 175 Ill. 2d 294, 326 (1997). Here, counsel's decision not to cross-examine the expert testimony regarding the ballistic evidence was simply a matter of trial strategy and was consistent with counsel's theory asserted at trial. At trial, counsel argued that the firearm identification testimony was irrelevant to prove that petitioner murdered William Patterson in the context of petitioner's testimony that he did not commit the murder. Counsel argued that while the shootings of

13

Patterson, Hodges, Bramlett and Ford were committed with the same type of bullets, this fact was irrelevant to petitioner's case since he wasn't the shooter.

Moreover, the record reflects that counsel cross-examined the State's expert witnesses on other issues relevant to his theory asserted at trial. Specifically, counsel sought testimony that millions of bullets are produced every year and there are five different firearm manufacturers that produce gun barrels with the exact same class characteristics as the bullets recovered in the four homicides. Thus, counsel was not ineffective for failing to cross-examine the State's firearms identification testimony.

Similarly, petitioner's claim that counsel was ineffective for failing to call a defense expert witness is meritless. Whether to call a particular witness is a matter of trial strategy. *People v. Flores*, 128 Ill. 2d 66, 85-6 (1989) (citations omitted). Such a claim cannot form the basis for a claim of ineffective assistance of counsel unless the trial strategy is so unsound that counsel can be said to have entirely failed to conduct any meaningful adversarial testing of the State's prosecution. *People v. Jones*, 323 Ill. App. 3d 451, 457 (1st Dist. 2001). Here, counsel's election not to call en expert to contest the State's use of firearms identification evidence was again a matter of trial strategy. Considering counsel's theory at trial, the court refuses to deem counsel's strategic decision unsound. Instead, counsel's decision not to call an expert was justified since counsel was arguing that the ballistic evidence was irrelevant to petitioner's case. Therefore, petitioner has failed to establish that counsel's performance was arguably deficient. *See Tate*, 2012 IL 112214.

**E. Failure to Present Exculpatory Evidence**

Petitioner claims that his counsel was ineffective for failing to present testimony from three witnesses that did not identify petitioner in a lineup as the person responsible for the armed

14

robbery of Willie Williams and Gladys Williams. Petitioner contends that in November 1992, Willie Williams, Gladys Williams, and Gladys Harris viewed a lineup and did not identify petitioner as the offender. Petitioner claims that these three eyewitnesses described the Chatham robber as an older man with a fuller face than petitioner. Petitioner argues that since counsel's theory at trial was misidentification, and that the eyewitness identification by James Patterson and Brenda Smith was weak, counsel's failure to introduce this evidence was unjustified.

Defense counsel's failure to adequately prepare for trial or to conduct adequate investigations may support an ineffectiveness claim. *People v. Witherspoon*, 55 Ill. 2d 18, 21 (1973); *People v. Coleman*, 267 Ill. App. 3d 895, 900 (1st Dist. 1994). However, "a particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland v. Washington*, 466 U.S. 668, 691 (1984). Indeed, "to prevail on a claim of ineffective assistance for failure to investigate, petitioner must show that substantial prejudice resulted and that there is a reasonable probability the final result would have been different had counsel properly investigated." *People v. Rush*, 294 Ill. App. 3d 334, 342-43 (5th Dist. 1998).

In the instant case, petitioner has failed to establish that counsel's alleged failure to present the potential testimony of the three witnesses would have changed the result of his trial. Whether the failure to investigate constitutes ineffective assistance of counsel is determined by the value of the evidence not presented at trial and the closeness of the evidence that was presented at trial. *People v. Montgomery*, 327 Ill. App. 3d 180, 185 (1st Dist. 2001). Here, the appellate court held that the evidence of petitioner's guilt in this case was overwhelming. *People v. Harris*, No. 1-05-0323 (1st Dist. 2005) (unpublished order under Supreme Court Rule 23). Even if counsel would have presented the testimony of the three witnesses regarding the armed

15

robbery of Willie Williams and Gladys Williams, in the instant case, the ballistic evidence, the eyewitness testimony of James Patterson and Brenda Smith, as well as the properly admitted evidence of the 1992 homicides established petitioner's identity as the person who shot William Patterson. Thus, petitioner has failed to establish that counsel was ineffective for failing to investigate and present this evidence.

## II. Ineffective Assistance of Appellate Counsel

Petitioner claims that his appellate counsel was ineffective for not raising the issue of trial counsel's incompetence. It is axiomatic that a criminal petitioner is guaranteed the effective assistance of counsel on appeal. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). However, effective assistance in a constitutional sense means competent, not perfect, representation. *People v. Easley*, 192 Ill. 2d 307, 344 (2000). In assessing claims of ineffective assistance of appellate counsel, the court follows the two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under this standard, the petitioner must show that counsel's representation fell below an objective standard of reasonableness, and that, because of this deficiency, there is a reasonable probability that counsel's performance was prejudicial to the defense. *People v. Hickey*, 204 Ill. 2d 585, 613 (2001).

To succeed on a claim of ineffective assistance of appellate counsel, petitioner must show that the failure to raise a particular issue was objectively unreasonable and that his appeal was prejudiced by the omission. *People v. Williams*, 209 Ill. 2d 227, 243 (2004). "Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong." *People v. Easley*, 192 Ill. 2d 307, 329 (2000). Thus, a

16

petitioner has not suffered prejudice from appellate counsel's decision not to raise certain issues on appeal unless such issues were meritorious. *Easley*, 192 Ill. 2d at 329.

Where a petitioner claims that appellate counsel was deficient for failing to raise the issue of trial counsel's ineffectiveness, the focus necessarily must be on trial counsel's performance. *People v. Johnson*, 183 Ill. 2d 176, 187 (1998); *People v. Coleman*, 168 Ill. 2d 509, 522-23 (1995). As discussed above, trial counsel's failure: (1) to seek a *Frye* hearing on the admissibility of firearm identification evidence; (2) to file a motion *in limine* to bar or limit the firearm identification testimony; (3) to object to the firearms lack of foundation for the firearms identification testimony; (4) to cross-examine the State's experts and present expert testimony to rebut the State's firearm identification testimony and (5) to present exculpatory evidence does not amount to ineffectivenessas petitioner has failed to meet either prong of the ineffectiveness test. Petitioner's claim fails on post-conviction review.

### III.    Unproven Expert Testimony

Petitioner claims that his right to a fair trial was violated because his conviction was based on exaggerated, misleading and unproven expert testimony. Petitioner argues that the experts provided unreliable testimony and, as such, petitioner's conviction should be vacated and a new trial ordered. However, petitioner seems to merely re-litigate his previous claim. As established previously, the methodology used by the State's experts to produce their opinions regarding the firearms evidence was reasonably relied upon by experts in the firearms identification field. See *People v. O'Neal*, 118 Ill. App. 2d at 121-24. As such, petitioner's contention has no merit and the firearm identification testimony was properly admitted at petitioner's trial.

IV. *Brady* Violation

Petitioner claims that the State suppressed evidence that Detective McDermott had previously tortured other Area Two suspects. Due process prohibits the suppression by the State of information or materials favorable to the petitioner and material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *United States v. Bagley*, 473 U.S. 667, 682 (1985). "Moreover, the disclosure obligation applies to impeachment evidence as well." *People v. Pecoraro*, 175 Ill. 2d 294, 305 (1997). The standard for materiality under *Brady* is whether there is a reasonable probability that disclosure of the evidence to the defense would have altered the outcome of the proceeding. *People v. Sanchez*, 169 Ill. 2d 472, 486 (1996); *Bagley*, 473 U.S. at 682. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Bagley*, 473 U.S. at 682.

In order to succeed on a claimed *Brady* violation, the petitioner bears the burden to show that: (1) the evidence is favorable to the petitioner because it is either exculpatory or impeaching; (2) the evidence was either willfully or inadvertently withheld from the petitioner by the State; and (3) withholding the evidence resulted in prejudice to the petitioner. *People v. Rapp*, 343 Ill. App. 3d 414, 417 (3d. Dist. 2003).

In *People v. Mitchell*, 2012 IL App (1st) 100907, the court addressed the issue whether the State committed a *Brady* violation when it failed to disclose evidence of the pattern of torture and perjury committed by Detective McDermott at Area 2. Relying on *People v. Orange*, 195 Ill. 2d 437 (2001) and *People v. Mahaffey*, 194 Ill. 2d 154 (2000), *overruled on other grounds* in *People v. Wrice*, 2012 IL 111860, the court dismissed the *Brady* claim. *People v. Mitchell*, 2012 IL App (1st) 100907 *citing People v. Orange*, 195 Ill. 2d at 456 ("any apparent nexus between alleged incidents of abuse of other suspects by Area 2 officers and defendant's claims did not

18

arise until several years after defendant's suppression motion, and it was only at that later time that investigations were initiated into interrogation practices at Area 2. Therefore, defendant cannot properly claim that the State violated the *Brady* rule by failing to disclose information that was unavailable"). Accordingly, petitioner's claim fails.

Moreover, in the instant case, petitioner has failed to establish that there is a reasonable probability that disclosure of the evidence to the defense would have altered the outcome of the proceeding when the evidence at trial against petitioner was overwhelming. *People v. Harris*, No. 1-05-0323 (1st Dist. 2005) (unpublished order under Supreme Court Rule 23).

### V. Coerced Confession

Petitioner claims that he has newly discovered evidence that proves that his confession was coerced. The Illinois Supreme Court has held that a defendant has presented sufficient evidence at the pleading stage to entitle him to a post conviction, evidentiary hearing for a torture claim when: (1) the officers allegedly involved are identified in other allegations of torture; (2) he has consistently claimed he was tortured; (3) his claims are "strikingly similar" to other claims of torture; and (4) the defendant's allegations are consistent with OPS findings of systemic and methodical torture at Area 2 under Jon Burge. *People v. Wrice*, 2012 IL 111860, ¶ 43 *citing People v. Patterson*, 192 Ill. 2d 93, 145 (2000).

In the instant case, petitioner has made a substantial showing that his constitutional rights were violated. Accordingly, petitioner's claim that his confession was coerced is advanced to a third stage evidentiary hearing. Similarly, petitioner's claim that his counsel was ineffective for failing to investigate and introduce evidence of Detective McDermott's history of coercing suspects is advanced to a third stage evidentiary hearing.

19

## CONCLUSION

For all the foregoing reasons, the court advances petitioner's claim of coerced confession and of ineffective assistance of counsel for failing to investigate and introduce evidence of Detective McDermott's history of coercing suspects to a third stage evidentiary hearing. The court finds that petitioner has failed to make a substantial showing of a constitutional violation with regards to the rest of his claims and they are hereby dismissed. The court therefore, grants respondent's motion to dismiss in part and the petition for post-conviction relief is hereby granted in part and dismissed in part.

ENTERED:

Hon. Dennis J. Porter
Circuit Court of Cook County
Criminal Division

DATED: JUL 2 3 2014

# APPENDIX B

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS ) | |
| Respondent, ) | |
| ) | |
| vs. ) | No. 95 CR 2759600 (Post-Conviction) |
| ) | |
| RALPH HARRIS, ) | Hon. Dennis J. Porter, |
| ) | Presiding Judge |
| Petitioner. ) | |

## ORDER

This cause coming to be heard on Petitioner's motion for leave to obtain documents and transcripts pursuant to subpoena duces tecum on the Office of the United States Attorney for the Northern District of Illinois in the matter of United States v. Burge, No. 08 CR 846, which are relevant to the alleged course of conduct and the credibility of potential witness Michael McDermott, it is hereby ordered that the motion is ALLOWED, and Petitioner may cause a subpoena to be issued seeking the following:

Copies of any statements made by Michael McDermott to federal prosecutors or investigators in the course of the investigation of Jon Burge in US v Burge, No. 08 CR 846, including but not limited to reports, FBI Form 302s, transcripts of McDermott's grand jury testimony, and any notes not subject to work product privilege. All such documents will be produced confidentially for attorneys' eyes only and maintained solely for use in Petitioner Ralph Harris's pending post-conviction proceedings in the Circuit Court of Cook County.

Dated _____1-8-15_____          _Dennis J Porter_____

Hon. Dennis J. Porter
Judge, Circuit Court of Cook County



0300                                                          (Rev. 8/8/11) CCCR 0066 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS

              **v.**                                      No. 95 CR 27596-01

Ralph Harris

## ▬▬▬▬ SUBPOENA DUCES TECUM

    The People of the State of Illinois to all Peace Officers in the State - GREETING:

    **WE COMMAND THAT YOU SUMMON** Records Custodian, United States Attorney's Office,

219 S. Dearborn, 5th Floor, Chicago, IL 60604, to produce the documents described below:

to appear to testify before the Honorable Judge Dennis Porter

on March 19 , 2015 in Room 606 , Circuit Court, Criminal Division

2600 S. California , Chicago , Illinois, at 9:30 a. m.

**YOU ARE COMMANDED ALSO** to bring the following:

Copies of any statements made by Michael McDermott to federal prosecutors or investigators in the course of the investigation of Jon Burge in US v Burge, No. 08 CR 846, including but not limited to reports, FBI Form 302s, transcripts of McDermott's grand jury testimony, and any notes not subject to work product privilege. All such documents will be produced confidentially for attorneys' eyes only and maintained solely for use in Petitioner Ralph Harris's pending post-conviction proceedings in the Circuit Court of Cook County,

in your possession or control.

**YOUR FAILURE TO APPEAR IN RESPONSE TO THIS SUBPOENA WILL SUBJECT YOU TO PUNISH-
MENT FOR CONTEMPT OF THIS COURT.**

Atty. No.: 20763

Name: Charles Hoffman                                    Issued by: _____
                                                                        **Signature**
Atty. for: Ralph Harris                                  ☒ Attorney

Address: 203 N. LaSalle, 24th Floor                      ☐ Clerk of Court

City/State/Zip: Chicago, IL 60601

Telephone: 312 814-5472                                  Date: January 8 , 2015

**NON-APPLICABLE - Strike out Title which does not apply - Subpoena or Subpoena Duces Tecum.**

(OVER)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

# APPENDIX C

**OFFICE OF THE STATE APPELLATE DEFENDER**

**FIRST JUDICIAL DISTRICT**

203 North LaSalle Street • 24th Floor
Chicago, Illinois 60601
Telephone: 312/814-5472 • Fax: 312/814-1447
www.state.il.us/defender • E-mail: 1stDistrict@osad.state.il.us

MICHAEL J. PELLETIER
STATE APPELLATE DEFENDER

ALAN D. GOLDBERG
DEPUTY DEFENDER

BARBARA C. KAMM
ASSISTANT DEPUTY DEFENDER

CHARLES W. HOFFMAN
SUPERVISOR

January 23, 2015

AUSA James M. Kuhn
United States Attorney's Office
219 S. Dearborn, 5th Floor
Chicago, IL 60604-2029

Dear Mr. Kuhn:

I was referred to you by Attorney Tara Thompson, who informed me
that you were the AUSA she dealt with regarding a subpoena duces
tecum issued to your office by Cook County Circuit Judge Thomas
Hennelly, in the case of People v. Keith Mitchell, 92 CR 19459, a post-
conviction proceeding pending in Cook County Circuit Court. As you
may recall, that subpoena was for documents relating to former CPD
Det. Michael McDermott's involvement as a government witness in
United States v. Jon Burge, 08 CR 846, which your office prosecuted.

As you may also recall, your office voluntarily complied with that
subpoena, with the exception of providing McDermott's grand jury
testimony, which was then litigated before Judge Lefkow in the Burge
case. Judge Lefkow granted, in part, Ms. Thompson's request for
McDermott's grand jury testimony, and issued a protective order
limiting its use to the Mitchell case, along with other restrictions.

I'm writing to you because I represent Ralph Harris, who is the
petitioner in several pending post-conviction matters in Cook County
Circuit Court, under case numbers 95 CR 27596, 27598 and 27600.
Like Mitchell's case, Harris's cases also involve allegations against
Det. McDermott. More specifically, Harris alleges that McDermott
and his partner, Det. Boylan, as part of a pattern and practice of
physically and emotionally abusing custodial suspects at Area 2
Chicago Police Headquarters, coerced purported confessions from
Harris, which were introduced into evidence against him at his trials
in the above-mentioned state prosecutions.

Based on the allegations contained in Harris's post-conviction
petitions, the presiding judge in those cases, the Honorable Dennis
Porter, has issued a subpoena duces tecum to your office, that is in all
respects identical to the subpoena duces tecum issued by Judge
Hennelly in the Mitchell case.

For your convenience, I have enclosed a copy of our motion requesting issuance of the subpoena duces tecum in Harris's cases. Appended to that motion is a copy of the subpoena issued in the Mitchell case, the pleadings filed by Mitchell in the Burge case, Judge Lefkow's order granting Mitchell's petition to intervene and releasing a portion of the grand jury materials Mitchell sought, and a copy of Judge Lefkow's protective order.

I have also enclosed a copy of Judge Porter's order of January 8, 2015, granting Harris's request for issuance of a subpoena duces tecum, and a copy of the subpoena itself, which is returnable on March 19, 2015.

I would greatly appreciate it if you could review these materials at your earliest convenience and contact me so that we can discuss how best to proceed in this matter. If you are not the person in your office to whom these materials should have been sent, please forward them to the appropriate person.

Sincerely,

CHARLES W. HOFFMAN
Supervising Attorney

# APPENDIX D



**U.S. Department of Justice**

*United States Attorney*
*Northern District of Illinois*

James M. Kuhn Sr.
*Assistant United States Attorney*

| | |
|---|---|
| *Dirksen Federal Courthouse* | *Phone:312-353-1877* |
| *219 South Dearborn Street, Fifth Floor* | *Fax: 312-886-3501* |
| *Chicago, Illinois 60604* | *james.kuhn@usdoj.gov* |

January 27, 2015

Charles W. Hoffman
Office of the State Appellate Defender
203 North LaSalle Street, 24th Floor
Chicago, Illinois 60601

      Re:    Subpoena to United States Attorney's Office in *People of the State of Illinois v.*
             *Ralph Harris*, No. 95 CR 27596 (Circuit Court of Cook County)

Dear Mr. Hoffman:

      The above subpoena has been referred to this office for a determination whether any requested materials can be disclosed or testimony authorized under the federal regulations applicable to such subpoenas, 28 C.F.R. §§ 16.21, *et seq.* Federal law prohibits any disclosure until Department of Justice approval has been obtained. Before a decision whether to approve disclosure can be made, you must submit the "relevancy statement" required by 28 C.F.R. § 16.22(c), (d). That statement, preferably in affidavit form, must set forth a summary of the testimony or information that is sought and explain its relevance to the proceeding in which the subpoena was issued.

      We hope to be able to provide as complete disclosure as the federal regulations permit. Please send the relevancy statement to the undersigned and include any information that may be helpful in processing your request. In the event you are not satisfied with the administrative decision of the Department of Justice regarding disclosure, sovereign immunity precludes a state court from compelling compliance with the subpoena. Instead, judicial review of the decision is available exclusively by way of a suit in federal court under the Administrative Procedure Act, 5 U.S.C. § 701, *et seq. See Edwards v. U.S. Department of Justice*, 43 F.3d 312 (7th Cir. 1994).

      Thank you for your cooperation. If there are any questions, please contact the undersigned.

                                Very truly yours,

                                ZACHARY T. FARDON
                                United States Attorney

                                By:

                                JAMES M. KUHN, Sr.
                                Assistant United States Attorney

# APPENDIX E

## OFFICE OF THE STATE APPELLATE DEFENDER
### FIRST JUDICIAL DISTRICT

203 North LaSalle Street • 24th Floor
Chicago, Illinois 60601
Telephone: 312/814-5472 • Fax: 312/814-1447
www.state.il.us/defender • E-mail: 1stDistrict@osad.state.il.us

MICHAEL J. PELLETIER
STATE APPELLATE DEFENDER

ALAN D. GOLDBERG
DEPUTY DEFENDER

BARBARA C. KAMM
ASSISTANT DEPUTY DEFENDER

CHARLES W. HOFFMAN
SUPERVISOR

February 27, 2015

James Kuhn, Sr.
Assistant United States Attorney
Office of the United States Attorney
Northern District of Illinois, Eastern Division
219 S. Dearborn, Fifth Floor
Chicago, IL 60604

Re: Relevancy statement in support of subpoena *duces tecum* issued
to the United States Attorney's Office in *People v Harris*, No. 95 CR
27596 (Cir. Ct. of Cook County)

Dear Mr. Kuhn:

In response to your letter of January 27, 2015, enclosed please find for
your consideration, a relevancy statement pursuant to 28 C.F.R.
§16.22(c) & (d), in connection with the subpoena *duces tecum* served
on your office in the above-captioned state post-conviction proceeding.

As you may recall, about a year ago, an identical subpoena was served
on your office by the petitioner in *People v Mitchell*, No. 92 CR 19459
(Cir. Ct. of Cook County), another pending state post-conviction
proceeding with similar allegations of a coerced confession involving
former Area 2 Detective Michael McDermott, who was a Government
witness in the case of *United States v. Burge*, 08 CR 846 (N.D. Ill.) My
understanding is that your office complied with that subpoena, with
the exception of providing the petitioner with copies of McDermott's
federal grand jury testimony. That subpoena was later the subject of
litigation by way of the petitioner's motion to intervene in the *Burge*
case.

In *Mitchell*, Judge Lefkow issued a memorandum opinion and
order granting Mitchell's petition to intervene, and further ordered
that a portion of McDermott's requested grand jury testimony be
provided to Mitchell, for attorney's eyes only, in order to permit your
office to seek a protective order. (Memorandum Opinion and Order of
January 17, 2014, attached to this letter). A week later, Judge
Lefkow issued such a protective order. (Protective Order of January
24, 2014, attached to this letter).

To avoid potential litigation, and in light of Judge Lefkow's order regarding Mitchell's identical subpoena, please be advised that we would consider it to be full compliance with our subpoena if we were given those materials that were voluntary supplied by your office in response to Mitchell's subpoena, along with that portion of McDermott's grand jury testimony ordered to be turned over to Mitchell by Judge Lefkow. We would, of course, also have no objection to a similar protective order being entered in our case.

If you have any questions, or wish to discuss this matter further, my direct telephone number is 312 814-6375. Thank you for your attention to this matter.

Sincerely,

CHARLES W. HOFFMAN
Supervising Attorney
Counsel for Ralph Harris

Attachments:
Judge Lefkow orders of 1/17/14/ and 1/24/14

## AFFIDAVIT OF RELEVANCY OF ATTORNEY CHARLES HOFFMAN

Charles Hoffman, after being duly sworn under penalty of perjury, and pursuant to 28 CFR § 16.22(c) & (d), subscribes and swears to the following:

**Background and Procedural History of Ralph Harris's Pending State Post-Conviction Proceedings.**

1. On August 29, 1995, Ralph Harris was arrested on criminal sexual assault and armed robbery charges. Following lengthy custodial interrogations at Area 2 Chicago Police Headquarters over the next two days, police and prosecutors purportedly elicited from Harris a number of confessions that were later introduced into evidence over defense objection in various Cook County prosecutions of Harris, including his prosecution for the murders of David Ford (95 CR 27596) and William Patterson (95 CR 27598), and for the aggravated criminal sexual assault and armed robbery of Rhonda Thompson (95 CR 27600).

2. Prior to Harris's separate trials in the Ford, Patterson and Thompson cases, the defense filed an omnibus amended motion to suppress his purported confessions in all of his pending cases, on the ground that they were the involuntary product of physical and mental coercion at the hands of Area 2 Detectives Michael McDermott and James Boylan. That motion, which was denied following a pretrial evidentiary hearing, specifically alleged, *inter alia*, that McDermott and Boylan struck Harris with their fists in his stomach, neck, and head; placed a gun to his head and in his mouth; and hit him with a phonebook. (Amended Motion attached as Appendix A)

3. Harris was subsequently convicted of the murders of Ford and Patterson and sentenced to death. His convictions in both cases were upheld on direct appeal,

-1-

although his death sentences were commuted to natural life imprisonment by former

Illinois Governor George Ryan. Harris was also convicted of the aggravated criminal

sexual assault and armed robbery of Rhonda Thompson, and sentenced to a total of 120

years' imprisonment. His convictions and sentences in the Thompson case were

affirmed on direct appeal. Harris later filed a state post-conviction petition in the

Thompson case, which ultimately provided no relief.

4.     Harris currently has state post-conviction proceedings pending in the Ford

and Patterson cases. He also has a pending motion for leave to file a successive post-

conviction petition in the Thompson case. In each of those cases, Harris has alleged,

*inter alia*, that newly discovered evidence of the pattern and practice of the abuse of

custodial suspects at Area 2 by detectives under the command or formerly under the

command of Jon Burge — such as Det. Michael McDermott — entitles him under

constitutional principles of due process of law to new trials; or, in the alternative, to

a new hearing on his omnibus motion to suppress his purported confessions.

5.     On July 23, 2014, Cook County Circuit Court Judge Dennis Porter entered

orders in the Ford and Patterson cases denying, in part, the State's motions to dismiss,

and granting evidentiary hearings on Harris's coerced confession claims. (Orders

attached as Appendices B and C) On January 8, 2015, Judge Porter entered an order

granting Harris leave to serve a subpoena *duces tecum* on the United States Attorney's

Office for the Northern District of Illinois, seeking the following documents:

> Copies of any statements made by Michael McDermott to federal
> prosecutors or investigators in the course of the investigation of
> Jon Burge in US v Burge, No. 08 CR 846, including but not limited
> to reports, FBI Form 302s, transcripts of McDermott's grand jury

testimony, and any notes not subject to work product privilege. All such documents will be produced confidentially for attorneys' eyes only and maintained solely for use in Petitioner Ralph Harris's pending post-conviction proceedings in the Circuit Court of Cook County.

(Order attached as Appendix D)

**The Subpoenaed Documents Are Relevant to Harris's Pending State Post-Conviction Proceedings to Corroborate His Allegations of Abuse at the Hands of Det. McDermott and to Provide Potential Impeachment of McDermott.**

6.     In support of his post-conviction allegations of newly discovered evidence against Det. McDermott, Harris relied, in part, on the 2006 Report of Cook County Special State's Attorney Edward Egan ("Report"), which concluded that McDermott's conduct toward another custodial suspect at Area 2 – Alphonso Pinex – and McDermott's lying about that conduct under oath at Pinex's motion to suppress hearing, were criminal acts (aggravated battery, perjury and obstruction of justice), and that but for the expiration of the statute of limitations, McDermott should have been prosecuted for those crimes. (Report at 290)(The Report can be found online at http://chicagojustice.org/foi/relevant-documents-of-interest/report-of-the-special-stat es-attorney-critique-of-that-report)

7.     Harris also relied on the transcript of McDermott's immunized testimony at the federal criminal trial of former Area 2 Commander Jon Burge, in which McDermott admitted to threatening suspects and perjuring himself during investigations into his misconduct. More specifically, in that testimony McDermott admitted that he had not been truthful in his sworn testimony at the hearing on Pinex's motion to suppress his confession, by failing to mention that he had struck Pinex in the chest and knocked him down into a chair in an interrogation room at Area

2, before beginning his interrogation. When asked by Burge's defense counsel why he hadn't been truthful, McDermott responded, "Because [Pinex] was a murderer and I didn't want him to get off." *United States v. Burge*, 08 CR 846 (N.D. Ill) (Report of Proceedings of June 14, 2010, at 103-12)

8.      Based on information and belief, McDermott testified twice before the grand jury that indicted Jon Burge for perjury and obstruction of justice. *United States v. Burge*, 08 CR 846 (N.D. Ill) (Report of Proceedings of June 14, 2010, at page 37) ("Q. And you have testified before the grand jury twice, is that right? A. Yes."). It appears that in his grand jury testimony, McDermott made admissions regarding his misconduct that he apparently sought to retract during his testimony at Burge's trial. *United States v. Burge*, 08 CR 846 (N.D. Ill) (Report of Proceedings of June 14, 2010, at pages 18-21, 24, 30-33, 111-112, 118, 134-137, 149-151)

9.      Based on the publicly available material regarding McDermott's involvement in the Burge prosecution, undersigned counsel for Harris in good faith believes that in his testimony before the federal grand jury and in statements he made to federal investigators, McDermott may have made admissions of misconduct regarding Alphonso Pinex that would corroborate the Cook County Special State's Attorney findings. For example, it can be deduced that during his grand jury testimony, McDermott admitted to lying about his abuse of Pinex. Obtaining McDermott's federal grand jury testimony is especially vital because that testimony may have been the only time McDermott has been forthcoming about his history of abusing suspects.

10.     For example, with regard to Alfonso Pinex, McDermott "acknowledge[d] in front of the federal grand jury that he had in fact lied and perjured himself . . . during the course of giving testimony" at Pinex's motion to suppress. McDermott also "incriminated himself by admitting that he had abused Mr. Pinex without provocation" during his grand jury testimony. *United States v. Burge*, 08 CR 846 (N.D. Ill) (Report of Proceedings of June 14, 2010, at pages 92-93, 96). At Burge's trial, however, McDermott tried to retract those admissions, testifying instead that Pinex claimed that "there was abuse done during the interrogation, and I answered honestly that there was not." *Id.* at 104; see also *id.* at 104-05 (denying that he ever struck Pinex during his interrogation); *id.,* at 14 ("[McDermott's] testimony is different than what he has said at grand jury . . . .").

11.     In his immunized testimony at Burge's trial, McDermott also admitted that when he gave a statement to OPS Investigator Veronica Tillman regarding allegations of abuse made by Area 2 custodial suspect Shadeed Mu'min, McDermott "wasn't completely truthful." *United States v. Burge*, 08 CR 846 (N.D. Ill) (Report of Proceedings of June 14, 2010, at page 131). McDermott admitted that he had "lied" to Investigator Tillman "about a couple things." *Id.,* at 39. He acknowledged he had witnessed Burge do something "inappropriate" to Mu'min, and as a sworn law enforcement officer, should have done something about it, but did not. *Id.*

12.     Illinois courts of review have held that a police officer's history of abusive practices is relevant and admissible to establish, *inter alia,* the officer's course of conduct during custodial interrogations, as well as to impeach the officer's credibility should he deny engaging in such abuse. *See, e.g., People v. Patterson,* 192 Ill.2d 93, 145

(2000); *People v. Banks*, 192 Ill. App. 3d 986, 994 (1st Dist. 1989) (Evidence that Area 2 detectives beat another suspect during his interrogation is relevant as it "tends to show the conduct that these two police officers employ in interrogating suspects who are in custody, and such evidence is therefore probative as to the conduct they employed in the present case to obtain defendant's confession.");*People v. Cannon*, 293 Ill. App. 3d 634, 640 (1997) ("(E)vidence of other similar acts could be used to impeach the credibility of the Area 2 police officers who will testify at the hearing."). *See also People v. Phillips,* 95 Ill. App. 3d 1013, 1019-23 (1st Dist. 1981); *People v. Lenard,* 79 Ill. App. 3d 1046 (1st Dist. 1979).

13.     Because of the importance to Harris's pending post-conviction proceedings of McDermott's admitted perjury in the Pinex case, his admission to lying during the investigation of his misconduct in the Mu'min case, and any other admissions of misconduct McDermott may have made to the federal grand jury or federal investigators in connection with the Burge prosecution, undersigned counsel for Harris in good faith believes that the materials sought pursuant to subpoena to the United States Attorney's Office are relevant and material to those proceedings. Harris seeks those materials so that at the evidentiary hearing ordered in his post-conviction proceeeedings, he can corroborate his allegations that he was coerced by McDermott, and can impeach McDermott's credibility should McDermott testify at the evidentiary hearing and deny the allegations of coercion.

14.     Undersigned counsel for Harris has a copy of McDermott's publicly available trial testimony in the Burge case, but is unable to obtain transcripts of McDermott's grand jury testimony or any related statements or admissions made

-6-

by McDermott to federal investigators in connection with the Burge case, without the Government's compliance with the subpoena *duces tecum* issued to the United States Attorney's Office by order of the Circuit Court of Cook County in Harris's pending post conviction cases.

15.     Especially instructive on the relevancy to Harris's pending post-conviction proceedings of McDermott's federal grand jury testimony and other statements he made in connection with his involvement in the Burge case is the opinion of the Illinois Appellate Court in *People v. Mitchell*, 2012 IL App (1st) 100907.  In *Mitchell*, the appellate court reversed the trial court's dismissal of the petitioner's successive post-conviction petition and remanded the case for an evidentiary hearing on the claim that the petitioner's confession should have been suppressed as the product of coercion at the hands of Det. McDermott.  The appellate court found that the newly discovered evidence on which the petitioner in *Mitchell* relied showed that the denial of his motion to suppress was based on the testimony of McDermott, who had "committed perjury in similar cases to persuade courts to admit into evidence coerced statements."  *Mitchell*, 2012 IL App (1ˢᵗ) 100907 at ¶2.

16.     The newly discovered evidence upon which the petitioner in *Mitchell* relied consists of much of the same evidence on which Harris relies in his pending post-conviction cases.  That evidence, as described by the court in *Mitchell*, "relate(d) to the pattern of extensive criminal conduct committed by police at Area 2." *Mitchell*, 2012 IL App (1ˢᵗ) 100907 at ¶33.  The *Mitchell* court specifically

referenced the 2006 Report of the Special State's Attorney. The Court noted,

> In 2006, special prosecutors reported about a pattern of criminal
> conduct committed by officers at Area 2, including McDermott.
> The special prosecutors specifically reported that they found
> convincing evidence, sufficient to prove guilt beyond a
> reasonable doubt, that McDermott battered suspects and
> committed perjury about the suspects' alleged confessions.

> *Mitchell*, 2012 IL App (1st) 100907 at ¶60. (emphasis added)

The *Mitchell* court also concluded that the newly discovered evidence established

that the petitioner had been prejudiced, in that "evidence of McDermott's prior

perjury probably would change the result on retrial." *Mitchell*, 2012 IL App (1st)

100907 at ¶61. See also at ¶ 62 ("The evidence of McDermott's perjury in similar

cases involving alleged confessions significantly shifts the balance of credibility in

the contest between McDermott's testimony and [Mitchell's] and [his mother's]

testimony about the voluntariness of his statements.")

## Conclusion

17.    Harris's request for McDermott's federal grand jury transcripts and

related documents are relevant to his pending state post-conviction proceedings

because: (1) should McDermott invoke his Fifth Amendment right against self-

incrimination at Harris's post-conviction evidentiary hearing (as he did before the

Cook County Special Grand Jury investigating the Area 2 torture scandal) rather

than expose himself to perjury and obstruction of justice charges by testifying

falsely, his prior grand jury testimony would be admissible as substantive evidence

to corroborate Harris's allegations of abuse; and (2) should McDermott testify at the

evidentiary hearing and deny misconduct, his prior grand jury testimony would be admissible as impeachment; and (3) McDermott's grand jury testimony may be necessary to refresh his recollection as to misconduct he is alleged to have committed more than 20 years ago.

18.     The contents of this affidavit are true and correct to the best of my knowledge and belief.

_____

Charles Hoffman

SUBSCRIBED and SWORN TO before me
this 26th day of February, 2015.

_____

NOTARY PUBLIC

Official Seal
Carol M Chatman
Notary Public State of Illinois
My Commission Expires 08/14/2016

# APPENDIX F



**U.S. Department of Justice**

*United States Attorney*
*Northern District of Illinois*

| | | |
|---|---|---|
| James M. Kuhn Sr. | *Dirksen Federal Courthouse* | *Phone:312-353-1877* |
| *Assistant United States Attorney* | *219 South Dearborn Street, Fifth Floor* | *Fax: 312-886-3501* |
| | *Chicago, Illinois 60604* | *james.kuhn@usdoj.gov* |

March 2, 2015

Charles W. Hoffman
Office of the State Appellate Defender
203 North LaSalle Street, 24th Floor
Chicago, Illinois 60601

> Re: Subpoena to United States Attorney's Office in *People of the State of Illinois v. Ralph Harris*, No. 95 CR 27596-01 (Circuit Court of Cook County) dated January 8, 2015

Dear Mr. Hoffman:

This office has received your subpoena dated January 8, 2015, requesting statements made by Michael McDermott in the course of the investigation on *United States v. Burge*, No. 08 CR 846 (N.D. Ill.). There was no relevancy statement accompanying the subpoena, but upon our request you furnished a relevancy statement and letter that was received on February 27, 2015. Based on that submission, we determined that the requested documents are relevant to your legal proceeding.

Taking into the consideration the subpoena, the relevancy statement, and the factors listed in 28 C.F.R. § 16.26, it has been determined that any responsive documents located cannot be produced pursuant to 28 C.F.R. § 16.26(b)(1) and Fed. R. Crim. P. 6(e). Therefore, we will not be producing any documents in response to your subpoena.

This will be our complete disclosure as the federal regulations permit. In the event you are not satisfied with this decision once actual disclosure is made, judicial review of the decision is available exclusively by way of a separate suit filed in federal court under the Administrative Procedure Act, 5 U.S.C. § 701, *et seq*. *See Edwards v. U.S. Department of Justice*, 43 F.3d 312 (7th Cir. 1994); *United States v. Williams*, 170 F.3d 431 (4th Cir. 1999).

If there are any questions, please contact the undersigned Assistant United States Attorney at (312) 353-1877.

Very truly yours,

ZACHARY T. FARDON
United States Attorney

By: _____

JAMES M. KUHN, Sr.
Assistant United States Attorney

# APPENDIX G

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT

UNITED STATES OF AMERICA,    )
                             )
              Plaintiff,     )          Case No: 08 CR 846
                             )
       v.                    )          Judge Joan H. Lefkow
                             )
JON BURGE,                   )
                             )
              Defendant.     )

## MEMORANDUM OPINION & ORDER

Keith Mitchell has petitioned to intervene in the above-captioned case pursuant to Federal

Rule of Civil Procedure 24 and seeks transcripts of the grand jury testimony of a former Chicago

police officer, Michael McDermott. (Dkt. 434.) Mitchell asserts the grand jury transcripts are

necessary to his success in his postconviction proceedings in Illinois state court. For the

following reasons, Mitchell's petition is granted and the Office of the United States Attorney for

the Northern District of Illinois shall release to Mitchell some, but not all, of the grand jury

testimony he seeks. Specifically, the U.S. Attorney's Office shall provide Mitchell with pages 16

through 28 of McDermott's grand jury testimony from September 25, 2008 as it relates to

McDermott's interactions with Alfonzo Pinex because it is directly relevant to Mitchell's claim

that McDermott has mistreated detainees and perjured himself.

## BACKGROUND

Keith Mitchell was convicted about 20 years ago of murder and aggravated battery, largely

on the basis of what he asserts was a coerced confession. Mitchell asserts that in 1992, when he was

15, then-Chicago police detective McDermott questioned him outside of the presence of Mitchell's

mother or a lawyer, intimidating and threatening Mitchell into confessing. He further asserts that

McDermott perjured himself at the suppression hearing on the confession when McDermott denied coercing Mitchell into confessing and testified that Mitchell asked to confess outside of his mother's presence.

In May 2012, the Illinois Appellate Court reversed in part the trial court's denial of Mitchell's petition for postconviction relief and granted Mitchell a post-conviction evidentiary hearing on whether Mitchell's confession should have been suppressed. *See People* v. *Mitchell*, 972 N.E. 2d 1153, 2012 IL App (1st) 100907, 362 Ill. Dec. 120 (2012). The circuit court then granted Mitchell permission to subpoena the United States Attorney's Office for this district for documents relating to McDermott's statements or testimony in connection with the above-captioned case, which Mitchell did. The United States Attorney's Office declined to provide Mitchell with McDermott's grand jury transcripts, citing Federal Rule of Criminal Procedure 6(e) and 28 C.F.R. § 16.26. (Dkt. 434, Ex. 2.) Mitchell now seeks to intervene in this case to obtain the grand jury transcripts.

Following the December 18, 2013 hearing (*see* dkt. 436), the court reviewed the transcripts *in camera*. *See Lucas* v. *Turner*, 725 F.2d 1095, 1103-04 (7th Cir. 1984) (district court required to review grand jury testimony to determine relevant portions, if any). A portion of the transcripts deals with McDermott's interactions with an individual named Alfonzo Pinex when Pinex was brought in for questioning at the Area 2 police station, to which McDermott was assigned. The questioning of Pinex is one subject of a report published by special prosecutors assigned to investigate crimes committed by police at the Area 2 station. According to the report, there was "convincing evidence, sufficient to prove guilt beyond a reasonable doubt, that McDermott battered suspects and committed perjury about the suspects' alleged confessions." *See Mitchell*, 972 N.E. 2d at 1163. The report details Pinex's abuse at the Area 2 station. (*See* dkt. 434, Ex. 6 at, *e.g.*, 279 ("McDermott started

2

to hit Pinex in his ribs [when Pinex was at the police station for questioning] and grabbed his legs so that Pinex could not move.").)

## LEGAL STANDARD

Rule 6(e) provides for grand jury secrecy. Fed. R. Crim. P. 6(e). Title 28 of the Code of Federal Regulations, section 16.26, works in conjunction with Rule 6(e), providing that the Department of Justice will not disclose materials in response to a demand if so disclosing would violate Rule 6(e). 28 C.F.R. § 16.26 (2014). Rule 6(e) allows the court to authorize disclosure of a grand jury matter in connection with a judicial proceeding, but the party seeking disclosure must meet a "deliberately stringent" three-part test to overcome the "distinct interests served by safeguarding the confidentiality of grand jury proceedings." *Matter of Grand Jury Proceedings, Special Sept., 1986*, 942 F.2d 1195, 1198 (7th Cir. 1991). The party seeking disclosure must show that (1) the material he seeks is necessary to avoid a possible injustice in another judicial proceeding; (2) the need for disclosure is greater than the need for continued secrecy; and (3) his request is structured to cover only materials so needed. *Douglas Oil Co. of Ca.* v. *Petrol Stops NW*, 441 U.S. 211, 221, 99 S. Ct. 1667, 60 L. Ed. 2d 156 (1979).

## ANALYSIS

### I.    Material needed to avoid possible injustice

Mitchell has demonstrated that to avoid a possible injustice, he needs grand jury materials wherein McDermott either admits to perjury or to physical abuse of a detainee. Having reviewed the grand jury transcripts, the court concludes that the relevant portions have to do with McDermott's interactions with Pinex.

3

In ruling on Mitchell's appeal, the Illinois Appellate Court specifically pointed to a Special State's Attorney report that includes information about McDermott's acts in the Pinex case (*see* dkt. 434, Ex. 6), and stated that "evidence of McDermott's perjury in similar cases involving alleged confessions" as "significantly shift[ing] the balance of credibility in the contest between McDermott's testimony and [Mitchell and his mother's] testimony about the voluntariness of his statements." *Mitchell*, 972 N.E. 2d at 1164. In fact, the court found "that the new evidence of McDermott's perjury probably would change the result of the motion to suppress [Mitchell's] statements," which would likely have changed the course of the case, given that the state "had no case against [Mitchell] at all" without testimony from prosecution witnesses who said he confessed to the murder. *Id.* Thus, further evidence of McDermott's misdeeds, which would bolster Mitchell's claim that his confession was coerced, is highly relevant and necessary to his success on his petition for postconviction relief.[1]

The government argued generally at the December 18 hearing that Mitchell already has all the evidence he needs about McDermott because he was examined and cross-examined at the trial of Jon Burge the Burge trial (*see* dkt. 396 at 55-209), so any lack of truthfulness or past abuse is already in the public record. The court acknowledges that McDermott was impeached at the Burge trial with his grand jury testimony regarding Pinex, and he did admit some physical contact with Pinex at trial. (*See* dkt. 434, Ex. 4 at 26-35.) The court also acknowledges that the report by the

---

[1] As Mitchell notes, the Illinois Rules of Evidence do not apply to postconviction hearings, *see* Ill. R. Evid. 1101(b)(3), and a court hearing a petition for postconviction relief may receive proof "by affidavits, depositions, oral testimony, or other evidence." 725 Ill. Comp. Stat. 5/122-6. Moreover, the Illinois Supreme Court has stated that "hearsay evidence is admissible during a motion to suppress." *People* v. *Patterson*, 735 N.E. 2d 616, 628, 192 Ill. 2d 93, 249 Ill. Dec. 12 (2000).

4

special prosecutor who was appointed and ordered to investigate arrests, including Pinex's, points to McDermott's misdeeds. (*See id.*, Ex. 6.) Regardless, having reviewed the grand jury transcripts *in camera*, the court finds that McDermott's grand jury admissions go beyond information presented at the Burge trial and in the special prosecutor's report. The court thus disagrees with the government's argument that Mitchell already has all the information he needs in the public record.

Mitchell also argues that he needs McDermott's grand jury testimony to assure the reliability of the grand jury witness's testimony if McDermott testifies at Mitchell's evidentiary hearing. The Seventh Circuit has explained that this is a proper use for grand jury testimony. *See Lucas*, 725 F.2d at 1104. Mitchell has shown here that this is a highly relevant consideration, especially in light of the fact that McDermott has previously perjured himself and even gave testimony at the Burge trial that was inconsistent with his grand jury testimony. (*See generally* dkt. 434, Ex. 4.)

As Mitchell points out, the Seventh Circuit has also noted that grand jury testimony may be used to refresh a witness's recollection. *Lucas*, 725 F.2d at 1105; *see also Williams* v. *O'Meara*, No. 82 C 278, 1987 WL 10305, at *2 (N.D. Ill. Apr. 30, 1987) (affirming magistrate judge's decision to release grand jury testimony where witness indicated during deposition he could not remember something but that his grand jury testimony could help jog his memory). Given that the events in question here occurred roughly two decades ago and McDermott gave his grand jury testimony over five years ago, it is reasonable to conclude that McDermott might need to rely on grand jury testimony to refresh his memory.

Additionally, it is possible that McDermott will refuse to cooperate or will invoke his Fifth Amendment rights not to testify. In the case of a hostile or uncooperative witness, grand jury testimony is "properly discoverable." *Williams*, 1987 WL 10305, at *2. Moreover, this testimony

5

may help Mitchell to impeach McDermott if he does choose to testify. McDermott demonstrated at the Burge trial that he is wont to give inconsistent answers to similar questions. Having the grand jury testimony will help to reduce this risk.

## II.  Whether the need for disclosure is greater than the need for continued secrecy

At the hearing in December, the government argued that even though more than five years have passed since McDermott's grand jury testimony and the Burge case has concluded, secrecy is still an important consideration. The court must balance Mitchell's need for the grand jury testimony against the "need for continued secrecy." *Lucas*, 725 F.2d at 1106 (citing *Douglas Oil*, 441 U.S. at 222). Among the reasons for grand jury secrecy are to ensure "that prospective witnesses come forward voluntarily; that one who testifies before a grand jury does not fear reprisal, and, therefore, testifies 'fully and frankly'; that the indicted does not flee (because he is not aware of the indictment) or 'try to influence individual grand jurors to vote against he indictment'; and that individuals exonerated by the grand jury are not publicly ridiculed." *West* v. *United States*, No. 08 CR 669, 2010 WL 1408926, at *3 (N.D. Ill. Apr. 5, 2010) (quoting *United States* v. *Sells Eng'g, Inc.*, 463 U.S. 418, 424, 103 S. Ct. 3133, 77 L. Ed. 2d 743 (1983)). Moreover, "[t]he grand jury as a public institution serving the community might suffer if those testifying today knew that the secrecy of their testimony would be lifted tomorrow." *United States* v. *Proctor & Gamble Co.*, 356 U.S. 677, 682, 78 S. Ct. 983, 2 L. Ed. 2d 1077 (1958).

Where the "secrecy considerations are less relevant, the burden on [the moving party] is not as strong." *West*, 2010 WL 1408926, at *5 (citing *Douglas Oil*, 441 U.S. at 223). The need for grand jury secrecy is diminished once the grand jury has fulfilled its duties or when the criminal case is concluded. *See, e.g., United States* v. *Calabrese*, No. 06 CR 239, 2010 WL 3613973, at *5 (N.D.

Ill. Sept. 8, 2010); *In re Petition of Moore*, No. 80 C 450, 1985 WL 2357, at *3 (N.D. Ill. Aug. 20, 1985). Even as secrecy considerations lessen, however, "the requirement that [the petitioner] show that the materials are necessary to avoid injustice is only diminished; it is not abrogated altogether." *Hernly* v. *United States*, 832 F.2d 980, 985 (7th Cir. 1987); *see also Lucas*, 725 F.2d at 1107.

The need for secrecy here does not outweigh the injustice that would result from denying Mitchell the transcript excerpt. The Burge trial has concluded; Burge was sentenced in January 2011 (*see* dkt. 362), the Seventh Circuit affirmed his conviction, and the Supreme Court denied his petition for a writ of *certiorari*. *See United States* v. *Burge*, 711 F.3d 803 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 315 (2013). The United States Attorney has already petitioned for grand jury material to be released to third parties in this case, and the court has granted those petitions. (*See* dkts. 376, 383, 409, 414.) For these reasons, and because Mitchell has demonstrated substantial need for the grand jury material, the court finds that the secrecy interests do not outweigh the need for disclosure.

### III. Structuring of the request

Mitchell's request is limited to two grand jury sessions and the court's order winnows that down to thirteen pages of transcript from one session. In other words, this is no "general fishing expedition into the grand jury proceedings." *United States* v. *Balogun*, 971 F. Supp. 1215, 1232 (N.D. Ill. 1997) (denying request for testimony of witnesses appearing before grand jury, transcripts of all statements made to grand jury by prosecutors, record of votes cast by members of grand jury, and all documents submitted to grand jury). Mitchell presents compelling reasons for this request, as discussed above.

7

Moreover, the court has reviewed these transcripts *in camera* and has determined which portions are relevant to Mitchell's argument that McDermott's pattern of mistreating individuals in custody, namely, portions that have to do with McDermott's treatment of Pinex. This further cabins the disclosures to be made to Mitchell and ensures he will only receive materials for which there is a "compelling necessity." *Procter & Gamble*, 356 U.S. at 682.

Finally, the court appreciates the government's argument that granting Mitchell's request could potentially open the floodgates to other grand jury material request. Though the government's institutional concern is well-taken, administrative convenience cannot prevail over Mitchell's compelling arguments for release of the grand jury testimony.

## ORDER

For the foregoing reasons, Mitchell's petition to intervene (dkt. 434) is granted and Mitchell shall receive a portion of the grand jury materials he seeks. The United States Attorney is directed to provide Mitchell's attorney, by January 31, 2014, with pages 16 through and including 28 of McDermott's grand jury testimony from September 25, 2008.[2] The materials shall be for attorney's eyes only until January 25, 2014 to permit the government to submit a proposed protective order.

Date: January 17, 2014

U.S. District Judge Joan H. Lefkow

---

[2] Having determined that Mitchell is entitled to this portion of the grand jury transcripts, the court does not reach Mitchell's additional argument that the U.S. Attorney's denial of his request was arbitrary and capricious pursuant to the Administrative Procedures Act.

# APPENDIX H

FILED

JUN 1 0 1998

AURELIA PUCINSKI
CLERK OF THE CIRCUIT COURT.
CRIMINAL DIVISION

STATE OF ILLINOIS      )
                       )  SS
COUNTY OF COOK         )

IN THE CIRCUIT COURT OF COOK COUNTY
CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS      )
                                     )
            -vs-                     )      No.  95-CR-27594-600
                                     )           95-CR-27818
RALPH HARRIS                         )           95-CR-27821
                                     )           95-CR-28738
                                     )

AMENDED MOTION TO SUPPRESS STATEMENTS

Now comes the defendant, RALPH HARRIS, by his attorney,
RITA A. FRY, Cook County Public Defender, by GEORGE GRZECA and
STEPHANIE HIRSCHBOEK, Assistant Public Defenders, and moves
this Honorable Court to suppress as evidence herein any and all
oral or written communications, confessions, statements, or
admissions, whether inculpatory or exculpatory, made by the
defendant prior to, at the time of, or subsequent to his arrest
in the above-entitled cause.

In support of this motion, the defendant states as follows:

1.    That the defendant was arrested by the Chicago Police
Department.

2.    That subsequently the defendant was interrogated by
law enforcement officials or a person or persons acting on
their behalf, including

3.    That the statements sought to be suppressed were
obtained as a result of interrogation which continued after the
defendant had elected to remain silent and/or had elected to
consult with an attorney prior to further questioning in



violations of the 5th and 14th Amendments to the Constitution of the United States. The detective's show him polaroids (photos) of Patrick Brunt with their arms around him and telling the defendant that he would bury him.

4. That the statements sought to be suppressed were obtained as a result of interrogation which took place outside the presence of counsel and after the defendant had been formally charged with an offense and after the appearance of counsel had been entered of record in violation of the 6th and 14th Amendments to the United States Constitution, in case No. 95-CR-28738.

5. That the statements sought to be suppressed were obtained as a result of physical coercion illegally directed against the defendant and that such statements were therefore, involuntary in violation of the 5th & 14th Amendments to the United States Constitution. To wit: Detective Boylan, Star# 20321 and Detective McDermott, Star# 20364, hit the defendant with their fists in the stomach, and also about the head and neck. They also placed a gun to his head and mouth and hit him with a phone book.

6. That the statements sought to be suppressed were obtained as a result of psychological and mental coercion illegally directed against the defendant and that such statements were, therefore, involuntary in violation to the 5th and 14th Amendments to the United States Constitution. To wit: Detective Yucaitis, Star# 20434, told the defendant that he would arrest and charge his girlfriend Angie Clark who



was present at the station. He also told the defendant that after her arrest he would have their children placed with the Department of Children and Family Services.

DJP 6-10-98 ~~7. That the statements sought to be suppressed were~~ obtained as the product of and as the result of confronting the accused with certain evidence which had been obtained in violation of the defendant's Fourth Amendment protection against illegal search and seizure.

8. That the statement sought to be suppressed were obtained as the product of and as the direct and proximate result of confronting the accused with the certain material misrepresentations in violation of the 5th and 14th Amendments ~~to the United States Constitution.~~

9. Therefore, that any and all communications, confessions, statements, admissions, or tests executed by the the defendant were elicited in violation of his constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the State of Illinois.

WHEREFORE, the defendant prays:

1. That the Court conduct a pretrial hearing to determine if the nature of such statements were voluntary, and;

27

2.    That this Court suppress as evidence herein any and all communications, confessions, statements, admissions, gestures, or tests, inculpatory or exculpatory, written or oral, made by him at the time of and/or subsequent to him being taken into custody.

Respectfully submitted,

RITA A. FRY
Public Defender of Cook County

BY:  GEORGE GRZECA
Assistant Public Defender 30295

STEPHANIE HIRSCHBOECK
Assistant Public Defender 30295

# APPENDIX I

1   STATE OF ILLINOIS )
                        } SS.
2   COUNTY OF C O O K )

3          IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
                 COUNTY DEPARTMENT - CRIMINAL DIVISION

4   IN RE:                      )
                                )
5                               )
    SPECIAL GRAND JURY          )
6   OF COOK COUNTY              )
                                )
7                               )
                                )
8                               )
                                )
9

10

11

12           REPORT OF PROCEEDINGS had before the

13   Special Grand Jury of Cook County on the 27th day of

14   October, 2004.

15

16   SPECIAL PROSECUTORS:
       MR. ROBERT BOYLE
17     MR. EDWARD EGAN

18

19

20

21

22

23   Faye A. Roberson
     Official Court Reporter
     Circuit Court of Cook County
24   County Department - Criminal Division

                            1

1     might ask you, would your answers be the same as those

2     that you have read into the record for the last two

3     questions?

4          A.  Yes, sir.

5          MR. BOYLE:  Do you understand that you are here

6     pursuant to a subpoena which was served upon you, that

7     that subpoena continues and upon notice to your counsel,

8     if the Special Prosecutor and/or the Grand Jury wishes

9     you to reappear that you're obligated to reappear?

10         A.  Yes.

11         MR. BOYLE:  And would you so instruct the witness,

12     please.

13         THE FORELADY:  You are instructed that the subpoena

14     that brought you here today remains in effect and upon

15     due notice from the Grand Jury through the Special

16     Prosecutor you will be required to return.

17         A.  Okay.

18         MR. BOYLE:  Thank you.

19               (Witness excused.)

20         THE FORELADY:  Raise your right hand.

21               (Witness duly sworn.)

22         MR. BOYLE:  Be seated, please.

23           Sir, your first and last name for the

24     record, and would you spell your last name.

1       A.   Michael McDermott, M-c-D-E-R-M-O-T-T.

2       MR. BOYLE:  And what is your current resident

3  address, Mr. McDermott?

4       A.   Upon advice of counsel, I respectfully decline

5  to answer this question and invoke my constitutional

6  rights and privileges against self-incrimination as

7  guaranteed by the Fifth Amendment to the United States

8  Constitution and by Article 1, Section 10 of the

9  Constitution of the State of Illinois, on the grounds

10  that any answer I may give in whole or in part to such

11  question may tend to incriminate me.

12       MR. BOYLE:  Sir, have you served as a police officer

13  for the City of Chicago?

14       A.   Upon advice of counsel, I respectfully decline

15  to answer this question and invoke my constitutional

16  rights and privileges against self-incrimination as

17  guaranteed by the Fifth Amendment to the United States

18  Constitution, by Article 1, Section 10 of the

19  Constitution of the State of Illinois on the grounds that

20  any answer I may gave in whole or in part to such

21  question may tend to incriminate me.

22       MR. BOYLE:  Would your answers to any other

23  questions or succeeding questions which I or Judge Egan

24  or the Grand Jurors may ask you be the same as those two

6

1    that you -- your two answers which you read into the

2    record relative to the last two questions?

3        A.   Yes.

4        MR. BOYLE:  Kind of a long question, but you'd give

5    the same answer, right?

6        A.   Yes, sir.

7        MR. BOYLE:  Do you understand that your subpoena --

8    the subpoena which was served upon you and which you

9    appeared upon before the Grand Jury today continues and

10   upon notice to your lawyer if the Special Prosecutor or

11   the Grand Jury requires your appearance back here, that

12   you will return?

13       A.   Yes, sir.

14       MR. BOYLE:  And would you so instruct the witness,

15   please.

16       THE FORELADY:  You're instructed that the supboena

17   that brought you here today remains in effect and upon

18   due notice from the Grand Jury through the Special

19   Prosecutor you will be required to return.

20       A.   Yes, ma'am.

21       MR. BOYLE:  Thank you.

22                    (Witness excused.)

23

24

                            7

# APPENDIX J

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | No. 08 CR 846 |
| JON BURGE | ) | |
| | ) | |
| Defendant, | ) | Judge Joan H. Lefkow |
| v. | ) | |
| | ) | |
| KEITH MITCHELL | ) | |
| | ) | |
| Intervenor. | ) | |

## PROTECTIVE ORDER FOR MATERIALS
## PRODUCED BY THE UNITED STATES ATTORNEY'S OFFICE

This matter having been presented to this court by petition filed by intervenor Keith Mitchell, and this court having ruled on January 17, 2014, that the United States Attorney produce pages 16 through 28 of Michael McDermott's September 25, 2008 grand jury testimony pursuant to the terms of this protective order,

IT IS ORDERED that pages 16 through 28 of Michael McDermott's September 25, 2008 grand jury testimony may be disclosed subject to the terms and conditions of this protective order.

This protective order applies to all responsive documents identified above. The protection granted by this order shall encompass the entire disclosure. Any material containing protected information that is provided to counsel for intervenor is to be

identified on the outside of the sealed parcel containing the protected information with a legend stating: "PROTECTED MATERIAL ENCLOSED". Upon receiving the protected material, counsel for intervenor is responsible for abiding by the terms and conditions of this protective order.

Counsel for the intervenor will be provided with a single copy of protected material, except as otherwise agreed to by the United States Attorney. The protected material is only for use in the case entitled *People of the State of Illinois v. Keith Mitchell*, No. 92 C 19459 (Circuit Court of Cook County). Intervenor's attorney may provide one copy of any protected material to the State's Attorney only after the State's Attorney has agreed in writing to abide by the terms of this protective order, and may otherwise make additional copies only to be filed with a brief or other document or material to be filed with the court.

Disclosure of the material or information contained therein is to be limited to: (1) the court; (2) counsel for intervenor and any professional, paralegal and clerical personnel who are engaged in assisting counsel in *People v. Mitchell*, No. 92 C 19459; (3) any person not employed by, or under contract with the intervenor who is retained by the attorneys for the intervenor as a consultant or expert witness to assist in *People v. Mitchell*, No. 92 C 19459; and (4) any other person whom the court has deemed to be entitled to view the protected material.

No protected material that is incorporated into a brief or as an exhibit to any court filing shall be filed with the court unless (1) it is filed under seal, or (2) written notice has

2

been provided to the United States Attorney and the United States Attorney does not object to the filing.   If the United States Attorney objects, then the filing party and the United States Attorney shall meet and confer, and if unable to resolve the objection, the matter shall be brought before this court for resolution.

No protected material may be disclosed to a consultant or expert witness unless the individual has been designated in writing to the United States Attorney at least five (5) business days in advance of any disclosure of protected material to such individual. If objection is timely made, no protected material may be divulged to a consultant or expert without court approval.   Disclosure shall not be made, in any event, to any consultant or expert unless the consultant or expert has signed a non-disclosure agreement with the retaining attorney.   This non-disclosure agreement shall, at a minimum, require the individual to abide by the terms of this protective order and prohibit both the use, and the disclosure, of any information or knowledge received subject to this protective order except in connection with *People v. Mitchell*, No. 92 C 19459.

Protected material received by counsel for the intervenor, or the information contained therein, is to be used only for the subject matter of *People v. Mitchell*, No. 92 C 19459.   Within fourteen calendar days after a final decision on the merits in *People v. Mitchell*, No. 92 C 19459, all protected documents in the possession of intervenor's counsel and the State's Attorney shall be returned to the United States Attorney, or with the prior written agreement of the United States Attorney, retained under the terms of this

protective order for such period as may be agreed. In the absence of such agreement and for good cause shown, the brief period for retention of this material may be extended by order of the court.

This order does not prevent the United States Attorney from asserting any other legally cognizable privilege to withhold any document or information. Upon agreement of the parties, or by further order of court, the terms of this protective order will apply to subsequently disclosed documents properly marked.

This order is considered an order of a court of competent jurisdiction for purposes of the Privacy Act, 5 U.S.C. § 552a(b)(11).

Any allegations of abuse or violation of this order will be considered by the court either for purposes of determining whether it should enter sanctions, including a contempt of court order, or for purposes of determining whether or not the matter should be referred for appropriate possible disciplinary proceedings, or both.

Date: January 24, 2014

_____
UNITED STATE DISTRICT JUDGE

4