## BEFORE THE TORTURE INQUIRY AND RELIEF COMMISSION

In re:

Claim of Tony Anderson                                          TIRC Claim No. 2011.014-A

### CASE DISPOSITION

      Pursuant to 775 ILCS 40/45(c) and 2 Ill. Adm. Code 3500.385(b), it is the decision of the Commission that, by a preponderance of the evidence, there is sufficient evidence of torture to conclude the Claim is credible and merits judicial review for appropriate relief. This decision is based upon the Findings of Fact and Conclusions set forth below, as well as the supporting record attached hereto.

### Findings of Fact

1. In April. 1990, Claimant Tony Anderson ("TA") was arrested on auto theft charges and taken to Area 2 of the Chicago Police Department, where he was questioned by Detectives Michael McDermott and Anthony Maslanka.[1]

2. During that questioning McDermott held a gun to TA's head and threatened to blow his brains out. Maslanka jabbed TA with a nightstick in his thighs and back until TA was crying and agreed to confess.

3. TA made an oral statement confessing to numerous offenses committed in March and April, 1990.

4. TA was later indicted in 13 different cases. In 90 CR 11984 he was convicted of attempted murder in a bench trial and sentenced to 25 years. In 90 CR 11985 he took a jury trial and was convicted of armed robbery and sentenced to 25 years concurrent. He then entered guilty pleas in 11 other cases[2], including a murder for which he received 50 years, also concurrent.

5. A written motion to suppress his statements was made as to all 13 cases. The written motion, filed in 1990, is consistent with his TIRC Claim, and TA testified at the

---

[1] Although Jon Burge had been transferred from Area 2 to Area 3 at this point, both McDermott and Maslanka had worked under Burge at Area 2.

[2] The prosecution used his confession at the time of the entry of the guilty pleas in 1991. People v. Anderson, 375 Ill.App.3d 121, 128, 872 N.E.2d 581 (1Dist.2007)

hearing consistently with his TIRC Claim. (Transcript of Proceedings dated May 5,1991 at 264-65, 288) The judge denied the motion based upon his view of the credibility of the witnesses given the evidence before him at that time.

6.  Since the motion to suppress was heard in 1991, the following evidence has emerged:

    a.  In 1990 the Office of Professional Standards of the Chicago Police Department concluded after an internal investigation that there had been systemic abuse at Area 2 for over 10 years. The Report was not released publicly until 1992.

    b.  On November 12, 1991, Jon Burge was suspended, and charges were later brought against him before the Police Board of the City of Chicago. In connection with that hearing the City of Chicago made a judicial admission that Burge put a gun to Shaded Munin's head and played Russian roulette.[3] In his testimony at Burge's federal perjury trial, McDermott, who was forced to testify after a grant of immunity, admitted that he testified before the federal grand jury that he was present when this took place.[4] On February 11, 1993, the Police Board separated Burge from his position as a Commander with the Department of Police after finding him guilty of abusing Andrew Wilson at Area 2 in 1982.

    c.  In 2002 Cook County Criminal Court Chief Judge Paul Biebel appointed a Special State's Attorney to investigate allegations of torture by police officers under the command of Burge at Areas 2 and 3 to determine if criminal prosecutions were warranted. The 2006 Report concluded that in the case of Alphonso Pinex there was sufficient evidence to indict both McDermott and Maslanka for aggravated battery (beating Pinex so severely that he soiled his underwear) and for perjury and obstruction of justice (denying under oath that they had beaten Pinex). The Report also found that "[t]here are many other cases which lead us to believe that the claimants were abused".[5]

    d.  TIRC records, attached as Exhibit C, indicate that McDermott has 13 other complaints of abuse of which TIRC is aware, and he has pled the 5th Amendment privilege against self-incrimination when asked about abusing detainees.

    e.  As set forth in Exhibit D, Maslanka has 14 other complaints of abuse of which TIRC is aware. He has also taken the 5th when asked about abusing detainees, including TA specifically, as set forth in Exhibit E.

---

[3] City of Chicago's Memorandum in Opposition to Motion to Bar Testimony Concerning Other Alleged Victims of Police Misconduct dated January 22, 1992 at 11-12, attached as Exhibit A.

[4] United States v. Burge, 08 CR 846 (N.D.Ill.), Transcript of Proceedings dated June 14, 2010 at 144, 149 , attached as Exhibit B.

[5] Report of the Special State's Attorney at 16.

7. After his motion to suppress was denied, in 90 CR 11984 TA was convicted of attempted murder in a bench trial at which his confession was used, and he was sentenced to 25 years in prison. In 90 CR 11985 he was convicted of armed robbery after a jury trial, and he was sentenced to 25 years to be served concurrently with the sentence in 90 CR 11984. Thereafter, he entered guilty pleas[6] in 11 other cases, including a murder for which he received 50 years, all of the time to be served concurrently with the sentences mentioned above.

8. In 2004 TA filed a post-conviction petition regarding the guilty pleas, and it contains the same claim of coercion he raises before the TIRC. In 2005 and 2008 TA filed other post-conviction petitions raising the same coercion claim. All of the post-conviction petitions were dismissed on procedural grounds without reaching the merits of the claims.

Conclusions

1. TA's Claim qualifies for summary referral pursuant to 2 Ill. Adm. Code 3500.370 in that:
    a. TA has consistently claimed since his motion to suppress to have been tortured in the manner alleged in his TIRC Claim;
    b. His Claim is strikingly similar to other claims of torture contained in the Reports of the Chicago Police Department's Office of Professional Standards, and the Report of the Special State's Attorney, regarding their investigation of Jon Burge and police officers under his command;
    c. The officers accused are identified in other cases alleging torture; and
    d. The Claim is consistent with the Office of Professional Standards' findings of systematic and methodical torture at Area 2 under Jon Burge.

2. In addition, the other available evidence set forth above indicates that the Claim is credible and merits judicial review.

3. While the complaints of physical abuse and coercion against the accused officers are allegations and not judicial findings, they are nevertheless relevant in deciding whether abuse occurred in a specific case. People v. Patterson, 192 Ill.2d 93, 114-15,735 N.E.2d 616 (Ill.Sup.Ct. 2000); People v. Cannon, 293 Ill. App.3d 634, 640, 688 N.E.2d 693 (1 Dist. 1997); People v Cortez Brown, 90 CR 23997 (Transcript of Proceedings dated May 22, 2009 at 8, Ruling by Judge Crane) (evidence against Burge subordinates of abuse in cases other than Brown's was "staggering" and "damning"), attached as Exhibit F.

---

[6] The confessions were used at the time of the entrance of the guilty pleas as part of the prosecution's factual basis to support the pleas.

4.  While invocation of the 5th Amendment is not an admission of guilt, in a civil proceeding such as this a negative inference can be drawn from that fact. 2 Ill. Adm. Code 3500.375 (g).

DATED: May 20, 2013

Cheryl Starks
Chair
Illinois Torture Inquiry and
Relief Commission

4

<u>EXHIBIT A</u>:

City of Chicago's Memorandum in Opposition to Motion to Bar Testimony
Concerning Other Alleged Victims of Police Misconduct dated January 22, 1992

BEFORE THE POLICE BOARD OF THE CITY OF CHICAGO

IN THE MATTER OF CHARGES FILED AGAINST )
POLICE COMMANDER JON BURGE, )  Case No. 1856
STAR NO. 338, CHICAGO POLICE DEPARTMENT )

IN THE MATTER OF CHARGES FILED AGAINST )
POLICE DETECTIVE PATRICK O'HARA, )  Case No. 1857
STAR NO. 2888, CHICAGO POLICE DEPARTMENT )

IN THE MATTER OF CHARGES FILED AGAINST )
POLICE DETECTIVE JOHN YUCAITIS, )  Case No. 1858
STAR NO. 7744, CHICAGO POLICE DEPARTMENT )

## MEMORANDUM IN OPPOSITION TO MOTION
## TO BAR TESTIMONY CONCERNING OTHER
## ALLEGED VICTIMS OF POLICE MISCONDUCT

Respondents' attempt to bar the testimony of seven additional victims of torture tactics at Area II headquarters ignores the overwhelming precedent supporting the admission of similar acts under circumstances much less compelling than these. The testimony regarding similar acts sets forth detailed accounts of torturous treatment which are almost identical to the torture suffered by Andrew Wilson. The testimony reveals an astounding pattern or plan on the part of respondents to torture certain suspects, often with substantial criminal records, into confessing to crimes or to condone such activity. The similar acts testimony would clearly be admissible in a federal or state court, and it should be admissible in this proceeding.[1]

_____

[1] Indeed, in a January 16, 1992 hearing in which Judge Shadur dismissed respondents' federal lawsuit, Judge Shadur stated that he knew of nothing that would foreclose the Police Board from considering this evidence. See Exh. A at 13-15.

SP 019631

feared for his life at the hands of the police officers. When he finally agreed to testify about the abuse he suffered, he did so only on the condition that Wilson's lawyers would move him out of Illinois. In addition, because he was afraid and did not know who he could trust, he did not file an OPS complaint. His mother, however, did file an OPS complaint in connection with his torture at the hands of the police officers. OPS reached a finding of "not sustained."

5.  Shadeed Mumin

On October 30, 1985, Shadeed Mumin was pulled over and arrested by two police officers in an unmarked car. He was taken to Area II and placed in a small room upstairs. Burge entered the room and told Mumin to get up and turn around to the wall. Mumin was then handcuffed behind him to a ring or hook on the wall such that he could not sit down. Burge told Mumin that he wanted to know about the robbery, and Mumin replied that he had no knowledge of what Burge was talking about. Burge told Mumin he would talk before Mumin left there and tightened Mumin's handcuffs. The handcuffs were painful and cut off Mumin's circulation. Burge then left the room.

Burge returned after a half hour and loosened the handcuffs, asking Mumin if he was ready to talk. When Mumin said he didn't know what Burge was talking about, Burge became angry and pushed him into a wall. He then removed Mumin's handcuffs, took him to an office down the hall and handcuffed him. Burge said, "You're not going to talk, huh?" and Mumin

replied that he didn't know what Burge was talking about. Burge said, "Do you know that we can bury you in the penitentiary?" Mumin replied that he still didn't know what Burge was talking about.

Burge then told Mumin that they really wanted his son, and Mumin repeated that he didn't know what Burge was talking about. Burge became angry and pulled out a fully loaded .44 Magnum. He took out all the bullets except for one, spun it, placed it to Mumin's head and snapped it three times slowly. Burge told Mumin he was "damned lucky" that Burge didn't kill him and that he wanted to know about the "fucking robbery."

Burge became angry, jumped up from the desk and snatched a brownish, plastic typewriter cover. He said, "You'll fucking talk or I'll kill you," and placed the cover over Mumin's head. Burge held the cover over his head and pushed it down in his face so he couldn't breathe. Mumin, who was handcuffed behind his back, passed out. Burge put it on his head three times. The third time, Mumin hollered and Burge took the cover off and laughed. Burge asked him if he was ready to sign a statement and Mumin told him he would do anything. Burge told Mumin that if he told anybody, nobody would believe him because there were no marks on him and that he had better sign the statement.

Mumin testified to these facts at an October 5, 1988 hearing on his Motion to Suppress. See Exh. E.

testimony of the parade of police officers who will testify
that they saw and heard nothing.  Indeed, as the testimony of
the similar victims shows, respondents counted on the fact that
their testimony would be believed over that of a convict when
they persisted in their pattern of torture.  They should not be
permitted now to hide behind their allegations of prejudicial
effect to secure exclusion of that telling evidence.

### Conclusion

    For the alternative and independent reasons stated
above, respondents' motion to bar testimony concerning other
alleged victims of police misconduct should be denied.

Dated:  January 22, 1992        Respectfully submitted,


                                _____
                                Daniel E. Reidy
                                June K. Ghezzi
                                JONES, DAY, REAVIS & POGUE
                                225 West Washington Street
                                Chicago, Illinois 60606
                                (312) 782-3939

                                Special Corporation Counsel to
                                LeRoy Martin, Superintendent of
                                Police

SP 019662

<u>EXHIBIT B</u>:

Excerpts of Testimony of Michael McDermott in
<u>United States v. Burge</u>, 08 CR 846 (N.D. Ill.)

1

```
1                    IN THE UNITED STATES DISTRICT COURT
                        NORTHERN DISTRICT OF ILLINOIS
2                              EASTERN DIVISION

3    UNITED STATES OF AMERICA,          )
                                        )
4              Plaintiff,               )
                                        )
5              vs.                      )    No. 08 CR 846
                                        )
6    JON BURGE,                         )    Chicago, Illinois
                                        )    June 14, 2010
7              Defendant.               )

8                              EXCERPT OF
          TRANSCRIPT OF PROCEEDINGS - Michael McDermott testimony
9          BEFORE THE HONORABLE JOAN HUMPHREY LEFKOW, and a jury

10   APPEARANCES:

11   For the Government:     HON. PATRICK J. FITZGERALD
                             219 South Dearborn Street
12                           Chicago, Illinois  60604
                             BY:  MR. M. DAVID WEISMAN
13                                MS. APRIL PERRY

14                           DEPARTMENT OF JUSTICE
                               CIVIL RIGHTS DIVISION
15                             CRIMINAL SECTION
                             601 D Street NW
16                           Room 5339
                             Washington, DC  22314
17                           BY:  MS. ELIZABETH L. BIFFL

18
     NOTE:  THIS IS A PARTIAL TRANSCRIPT.  IN THE EVENT OF AN
19   APPEAL, PLEASE CHECK TO SEE IF A FULL TRANSCRIPT IS ON FILE.
     IF ONE IS, USE THE PAGINATION OF THAT TRANSCRIPT.
20

21                        PAMELA S. WARREN, CSR, RPR
                            Official Court Reporter
22                     219 South Dearborn Street, Room 1928
                            Chicago, Illinois  60604
23                            (312) 294-8907

24

25
```

** TRANSCRIPT EXCERPT **

McDermott - redirect by Perry                144

1   A.  Yes, ma'am.

2   Q.  There was an open-ended question asked, what type of abuse

3   you saw, and you brought up Mu'min.  Is that right?

4           MR. BEUKE:  Objection, Judge --

5           THE COURT:  Overruled.

6           MR. BEUKE:  -- asked and answered.

7   BY THE WITNESS:

8   A.  Yes.

9   BY MS. PERRY:

10  Q.  Now you have complained that you didn't really get a chance

11  to explain what happened in Mu'min's case.  But isn't it true,

12  sir, that you were asked an open-ended question to tell the

13  truth in the grand jury everything you had seen take place?

14          MR. BEUKE:  Objection, Judge.

15          THE COURT:  Overruled.

16  BY THE WITNESS:

17  A.  Yes.

18  BY MS. PERRY:

19  Q.  And you did explain everything you had seen take place, is

20  that right?

21  A.  Yes.

22  Q.  And during that explanation you explained how you saw Jon

23  Burge point a gun at Mr. Mu'min, is that right?

24  A.  Yes.

25  Q.  And you explained how he put some kind of plastic material

** TRANSCRIPT EXCERPT **

McDermott - redirect by Perry                 149

1   BY MS. PERRY:

2   Q.  Sir, were you asked this question, and did you give this

3   answer?

4           "Question:  What happened after that, after he pointed

5   the gun at him?"

6           MR. BEUKE:  Page, counsel?

7           MS. PERRY:  17.

8   BY MS. PERRY:

9   Q.      "Answer:  He approached Shadeed Mu'min, and he put

10  something over his head.

11          "Question:  Do you recall what he put over Mu'min's

12  head?

13          "Answer:  It appeared to be something that was, you

14  know, transparent, plastic of some sort."

15          MR. BEUKE:  Objection, Judge.  That's not impeaching

16  as to anything he said.

17          THE COURT:  Overruled.

18  BY MS. PERRY:

19  Q.  Were you asked those questions, and did you give those

20  answers?

21  A.  Yes.

22  Q.  And that item that you saw Jon Burge put over Shadeed

23  Mu'min's head that, sir, could have been a typewriter cover,

24  isn't that correct?

25  A.  I don't know.  And I clarified it later that it -- I didn't

** TRANSCRIPT EXCERPT **

<u>EXHIBIT C</u>:

TIRC database of abuse allegations against Detective Michael McDermott

| McDermott, Michael (granted immunity in Burge federal perjury trial) | | | |
|---|---|---|---|
| Victim | Date | Allegations | Source |
| Franklin Burchette | 1984 | Threatened w/electric prod and beating; denied sleep | Affidavit and Testimony in People v. Burchette; Special State's Attorney's Case Summary |
| Shaded Mumin | 1985 | Pushed into wall; threatened with .44 magnum silver revolver to head in Russian Roulette fashion; suffocated with typewriter cover until unconscious; threatened with worse treatment and repeatedly called "nigger" | 5/13/87 Testimony in People v. Mumin; 1/22/92 Admission by City in Burge Police Board Hearing |
| Alphonso Pinex | 1985 | Severe beating | Testimony in People v. Pinex; Special State's Attorney Case Summary: would have indicted but for Statute of Limitations |
| Jerry Thompson: codefendant of Maxwell and Howard | 1986 | Kicked; beaten with flashlight to the body; slapped in the face during interrogation | 7/23/87 Testimony in People v. Maxwell, Thompson and Howard |
| Jeffrey Howard: codefendant of Maxwell and Thompson | 1986 | Kicked and slapped during interrogation | 7/23/87 Testimony in People v. Maxwell, Thompson and Howard |
| Andrew Maxwell: codefendant of Thompson and Howard | 1986 | Hit, kicked, and stomped on foot | 7/23/87 Testimony in People v. Maxwell, Thompson and Howard |
| Daniel Vaughn | 1987 | Struck and threatened | TIRC Claim Form |
| Tony Anderson | 1990 | Beaten on ribs and thighs with nightstick; gun placed to head and threatened to "blow brains out"; no food, water, or washroom during 2-day interrogation | 5/1/91 Testimony in People v. Anderson |

| David Randle | 1991 | Squeezed testicles and denied medication, denied food and drink | TIRC Claim Form |
|---|---|---|---|
| Willie Pole | 1994 | Punched in body and beaten; allowed others to continue beating | TIRC Claim Form |
| John Knight | 1996 | Slapped, choked, gun put to head and trigger pulled, threatened w/ being killed | TIRC Claim Form |
| Richard Campbell | 1998 | Beaten on chest and ribs; deprived of food and sleep | TIRC Claim Form |
| Rickey Robinson | 1998 | Threatened to drive him to an alley and shoot him. | TIRC Claim Form |
| Aubree Dungey | 1999 | Assaulted and beaten on trunk of car; threatened; handcuffed to bench for 3 days; denied washroom and water; fed only once. | TIRC Claim Form |

EXHIBIT D:

TIRC database of abuse allegations against Detective Anthony Maslanka

## Maslanka, Anthony (Star No. 16161)

| Victim | Date | Allegations | Source |
|---|---|---|---|
| Terry Harris | 1984 | Choked; arm twisted; held in underwear overnight; repeatedly threatened; sexually derogatory comments | 5/29/86 OPS Statement |
| Alphonso Pinex | 1985 | Severe beating | Testimony in People v. Pinex; OSP Statement; Special State's Attorney's Case Summary: would have indicted but for Statute of Limitations |
| Donald Terrance | 1988 | Beaten | Terrance Civil Complaint |
| Eric Johnson: released in 2011 after pleading guilty to lesser charges in return for time-served | 1990 | Struck on face; knocked to ground; kicked in stomach, chest and face | Special State's Attorney's Case Summary |
| Tony Anderson | 1990 | Beaten on ribs and thighs with nightstick; gun to head; threatened to "blow brains out" | 5/1/91 Testimony in People v. Anderson; AM has taken 5th w/specific reference to this Claim |
| Demond Weston | 1990 | Slapped; beaten, psychologically coerced | Special State's Attorney's Case Summary; People v. Weston, 271 Ill.App.3d 604 (1st Dist. 1995) |
| Cortez Brown | 1990 | Beaten, including with a flashlight on arms and chest | Special State's Attorney's Case Summary; Motion to Suppress Testimony in 90CR23997, 23998, 23999 and 91CR643; 5/22/2009 Ruling in Post-Conviction Petition |
| Marcus Wiggins: codefendant of Clemons, D. Owen and T. Green and Welton | 1991 | 13 year old shocked, beaten, and denied access to mother | OPS C.R. #193591; Special State's Attorney's Case Summary |
| Jesse Clemon: codefendant of Wiggins, Owen, and Green and Welton | 1991 | Hit with a flashlight; beaten on chest and body | Special State's Attorney's Case Summary; OPS C.R. # 193591 |
| Iamari Clemon: codefendant of | 1991 | Physically beaten | Special State's Attorney's Case Summary; OPS C.R. # 193591 |

| | | | |
|---|---|---|---|
| Wiggins, Owen and Green, and Welton | | | |
| Demoni Clemon: codefendant of Wiggins, Owen, Green, and Welton | 1991 | Shocked; threatened with a pistol | Special State's Attorney's Case Summary; OPS C.R. # 193591 |
| Clinton Welton | 1991 | 16 year old beaten w/flashlight & fists | Special State's Attorney's Case Summary; OPS C.R. # 193591; testimony in Motion to Suppress in 91CR25414 |
| Diyez Owen | 1991 | 16 yr old beaten on chest & stomach | Special State's Attorney's Case Summary; OPS C.R. # 193591 |
| Travis Richardson | 1991 | Head slammed on table | 8/11/04 Richardson Affidavit; OPS Statement |
| Tremaine Green: codefendant of Wiggins, Clemons, Owen and Welton | 1991 | Struck in eye, back and chest | Special State's Attorney's Case Summary; OPS C.R.# 193591 |
| | | | |

<u>EXHIBIT E</u>:

Detective Anthony Maslanka pleading the Fifth Amendment privilege
against self-incrimination

1    IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
            COUNTY DEPARTMENT-CRIMINAL DIVISION

2

3    THE PEOPLE OF THE STATE OF    )
     ILLINOIS,                      )

4

5             Petitioner,    )
                          )

6     vs.                     )   No. 90 CR 23997

7    CORTEZ BROWN, a/k/a       )
     VICTOR SAFFORLD,         )   Post Conviction

8            Respondent.    )

9    ------------------------------)

10              REPORT OF PROCEEDINGS had at the hearing

11   of the above-entitled cause before the Honorable

12   CLAYTON CRANE, judge of said Court, on the 18th day of

13   May, 2009, at the hour of 11:20 a.m.

14     PRESENT:
             HON. LISA MADIGAN
15          Attorney General of Illinois, by
          MR. VINCENZO CHIMERA and
16         MR. PAUL BERVID and
          MR. ERIC LEVIN
17            Appearing on behalf of the Plaintiff;

18

19       MR. LOCKE BOWMAN and
          MR. FLINT TAYLOR and
20       MS. JOEY MOGUL and
          MS. SARAH GELSOMINO
21          Appearing on behalf of the Defendant.

22

23   Paul W. O'Connor
    Official Court Reporter
    Circuit Court of Cook County
24   County Department

1

1       ANTHONY MASLANKA,

2    called as a witness herein, having been first duly

3    sworn, was examined upon oral interrogatories and

4    testified as follows:

5                   DIRECT EXAMINATION

6                   By Mr. Taylor:

7    Q.   Your name, sir?

8    A.   Anthony Maslanka, M-A-S-L-A-N-K-A.

9    Q.   You understand you're under oath?

10          THE COURT:  Sustained.  Ask him some

11   questions.

12          MR. TAYLOR:  Q   Did you previously work for

13   the Chicago Police Department under the command of John

14   Burge at Area Two?

15          THE WITNESS:  A   Upon advice of counsel, I

16   respectfully decline to answer this question and invoke

17   my constitutional rights and privileges against self

18   incrimination.  As guaranteed by the Fifth Amendment to

19   the United States Constitution.  By Article One,

20   Section 10 of the constitution of the State of

21   Illinois.  On the grounds that any answer I may give in

22   whole or in part to such question may tend to

23   incriminate me.

24          MR. TAYLOR:  May we have an agreement that in

143

1  the future he won't have to read that entire statement,

2  he can just invoke his Fifth Amendment right and maybe

3  shorten the process a little bit.

4           Is that all right with you, counsel?

5           MR. RODDY:  That would be fine.

6           MR. TAYLOR:  Q   Did you also have as a

7  supervising sergeant at Area Two, sergeant John Byrne?

8           THE WITNESS:  A   Like to invoke my Fifth

9  Amendment right.

10      Q.   While at Area Two, were you involved in a

11  series of cases where suspects under your supervision

12  and interrogation were abused and tortured?

13      A.   I like to invoke my Fifth Amendment rights.

14      Q.   Specifically with regard to the following

15  individuals, did you participate in or witness with

16  John Paladino or sergeant John Byrne, the abuse or

17  torture of any of the following suspects:  Alphonso

18  Pinex, Donald Torrence, Keith Eric Johnson, Tony

19  Anderson, Roosevelt Taylor, Steve Zahora, Jessie and

20  Damony Clemons.  Any of those individuals?

21      A.   I like to invoke my Fifth Amendment right.

22      Q.   Could you tell us your -- in 1990 could you

23  tell us your height, your weight, your hair color?

24      A.   I like to invoke my Fifth Amendment right.

144

<u>EXHIBIT F</u>:

Detective James O'Brien pleading the 5th Amendment privilege
against self-incrimination

1      IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
2         COUNTY DEPARTMENT-CRIMINAL DIVISION

3   THE PEOPLE OF THE STATE OF    )
    ILLINOIS,                  )
4                           )
             Petitioner,   )
5                         )
    vs.                  )   No. 90 CR 23997
6                       )
    CORTEZ BROWN, a/k/a      )   Post Conviction
7    VICTOR SAFFORLD,       )
8          Respondent.    )
9   ----------------------------)

10              REPORT OF PROCEEDINGS had at the hearing
11  of the above-entitled cause before the Honorable
12  CLAYTON CRANE, judge of said Court, on the 18th day of
13  May, 2009, at the hour of 11:20 a.m.

14    PRESENT:
15        HON. LISA MADIGAN
         Attorney General of Illinois, by
         MR. VINCENZO CHIMERA and
16       MR. PAUL BERVID and
         MR. ERIC LEVIN
17           Appearing on behalf of the Plaintiff;
18

19       MR. LOCKE BOWMAN and
         MR. FLINT TAYLOR and
         MS. JOEY MOGUL and
20       MS. SARAH GELSOMINO
21           Appearing on behalf of the Defendant.

22
    Paul W. O'Connor
23  Official Court Reporter
    Circuit Court of Cook County
24  County Department

1    all your answers still be the same, you're asserting

2    your Fifth Amendment right?

3         THE WITNESS:  Yes, sir, I would continue to

4    assert my Fifth Amendment right to not answer any of

5    those questions.

6         THE COURT:  Okay.  Cross?

7         MR. CHIMERA:  No questions, judge.

8         MR. TAYLOR:  Thank you, judge.

9         THE COURT:  Thank you.

10        THE WITNESS:  You're welcome.

11        MR. BOWMAN:  Petitioner's next witness is

12   James O'Brien, who I believe is in the back.

13            (Witness sworn)

14            JAMES O'BRIEN,

15   called as a witness herein, having been first duly

16   sworn, was examined upon oral interrogatories and

17   testified as follows:

18            DIRECT EXAMINATION

19            By Mr. Bowman:

20   Q.    Could you please state your name, sir.

21   A.    Detective James O'Brien, O-B-R-I-E-N.

22   Q.    Mr. O'Brien, are you currently employed as a

23   detective in the Chicago Police Department?

24   A.    Yes, sir I am.

35

1  Q. Mr. O'Brien, in September of 1990, did you

2 work as a violent crimes detective at Area Three third

3 watch?

4  A. Counsel, at this time upon advice of counsel,

5 I respectfully decline to answer this question and

6 invoke my constitutional rights and privileges against

7 self imcrimination as guaranteed by the Fifth Amendment

8 to the United States Constitution. And by Article One,

9 Section 10 of the Constitution of the State of

10 Illinois.

11  Q. I have a few more questions to ask you, sir.

12 And I think we can probably just boil that statement

13 down to assert the fifth.

14    Specifically on September 21st and

15 September 22, 1990, was John Byrne the third watch

16 supervising sergeant?

17  A. Again I revert to my previous answer and

18 assert my Fifth Amendment right.

19  Q. On September 21st, and September 22, 1990,

20 was John Burge your commanding officer?

21  A. Again counsel, I revert to my previous answer

22 and invoke my Fifth Amendment right.

23  Q. On September 21st and 22nd, 1990, did you

24 participate in the interrogation of Cortez Brown, then

36

1    known as Cortez Brown, in fact Victor Safforld?

2        A.    Again counsel, I revert to my previous answer
3    and invoke my Fifth Amendment right.

4        Q.    Did John Byrne directly supervise this
5    investigation?

6        A.    Again counsel, I revert to my previous answer
7    and invoke my Fifth Amendment right.

8        Q.    Did John Byrne participate in this
9    investigation?

10       A.    Again, I revert to my previous answer and I
11   invoke my Fifth Amendment right.

12       Q.    Did John Burge directly supervise this
13   investigation?

14       A.    Again counsel, I revert to my previous answer
15   and invoke my Fifth Amendment right.

16       Q.    Did John Burge participate directly in this
17   investigation?

18       A.    Again, I revert to my previous answer and
19   invoke my Fifth Amendment right.

20       Q.    During the course of the interrogation of
21   Cortez Brown, Victor Safforld, on September 21st and
22   22nd, 1990, did you, sir, pin Mr. Brown against the
23   wall of an interrogation room with the weight of your
24   body?

1      A.   Again counsel, I revert to my previous answer
2  and invoke my Fifth Amendment right.

3      Q.   At that time, did you refuse to honor
4  Mr. Brown's request that questioning cease until he
5  could have a lawyer present?

6      A.   Again counsel, I revert to my previous answer
7  and invoke my Fifth Amendment right.

8      Q.   Did you fail at that time to give Victor
9  Safforld known as Cortez Brown, his Miranda rights?

10     A.   Again counsel, I revert to my previous answer
11  and invoke my Fifth Amendment right.

12     Q.   Did you tell Mr. Brown, Mr. Safforld, that
13  everybody else involved in the matters under
14  investigation was pinning both the Curtis Simms murder
15  and the Delvin Boelter murder on him?

16     A.   Again counsel, I revert to my previous answer
17  and invoke my Fifth Amendment right.

18     Q.   Did you tell Mr. Brown that if he did not
19  confess to the Simms murder and Boelter murder, he
20  wouldn't be coming back?

21     A.   Again counsel, I revert to my previous answer
22  and invoke my Fifth Amendment right.

23     Q.   Did you slap Mr. Brown on the side of his
24  head with your open hand?

1  A. Again counsel, I revert to my previous answer
2 and invoke my Fifth Amendment right.

3  Q. Did you strike Victor Safforld then known as
4 Cortez Brown, with a flashlight?

5  A. Again counsel, I revert to my previous answer
6 and invoke my Fifth Amendment right.

7  Q. Did you strike Victor Safforld with fists in
8 the chest and sides of the body?

9  A. Again counsel, I revert to my previous answer
10 and invoke my Fifth Amendment right.

11  Q. Did you do all of these things that I just
12 asked you in order to coerce Victor Safforld into
13 confessing to the murder of Curtis Simms against his
14 will?

15  A. Again counsel, I revert to my previous answer
16 and invoke my Fifth Amendment right.

17  Q. As of September 21st, and 22nd, 1990, had you
18 learned, sir, that in the course of conducting
19 interrogations under the command of John Burge, how to
20 physically abuse a suspect in such a way that no mark
21 of the physical abuse would be left on the suspect's
22 body?

23  A. Again counsel, I revert to my previous answer
24 and invoke my Fifth Amendment right.

1      Q.    When you struck Mr. Brown, Victor Safforld,

2  with your hand, your fists and a flashlight, did you

3  strike him in such a way that no mark of your physical

4  abuse would be left on his body?

5      A.    Again counsel, I revert to my previous answer

6  and invoke my Fifth Amendment right.

7      Q.    On November 8th, 1991, did you lie under oath

8  at the motion to suppress hearing in this very case,

9  when you denied any of the things that I have asked you

10  about?

11     A.    Again counsel, I revert to my previous answer

12  and invoke my Fifth Amendment right.

13          MR. BOWMAN:  If I may briefly approach.  I

14  have a deposition, just to be clear, I have a

15  deposition of Mr. O'Brien that we are going to move

16  into evidence.  These matters I'm going to place before

17  him were not covered in that deposition.

18          THE COURT:  All right.

19          MR. BOWMAN:  Q   I'm going to hand up at this

20  time Mr. O'Brien, what's been marked for identification

21  as Petitioner's Exhibit No. 53, a complaint register

22  involving an individual by the name of Steven Riley.

23          My question, on April 4, 1989, while

24  under the command of John Burge at Area Three, did you

40

1   repeatedly strike Steven Riley with a flashlight during
2   the course of arresting him?

3      A.   Again counsel, I revert to my previous answer
4   and invoke my Fifth Amendment right.

5      Q.   I'm now placing before you, sir, what's been
6   previously marked as Petitioner's Exhibit No. 69. An
7   affidavit of an individual named Richardson.

8      My question, on September 28, 1991,
9   while under the command of John Burge at Area Three,
10   did you slam on a table Mr. Travis Richardson's head in
11   an effort to cause him to confess to a crime under
12   investigation?

13      A.   Again counsel, I revert to my previous answer
14   and invoke my Fifth Amendment right.

15      Q.   I'm placing before you now, what has been
16   previously marked as Petitioner's Exhibit No. 70. An
17   Office of Professional Standards interview of one
18   Michael Peterson.

19      My question, on September 28, 1991,
20   while under the command of John Burge at Area Three,
21   did you choke, punch, kick and attempt to burn with a
22   cigarette, Mr. Michael Peterson, in an effort to cause
23   him to confess to a crime under investigation?

24      A.   Again counsel, I revert to my previous answer

41

1     and invoke my Fifth Amendment right.

2            MR. BOWMAN: With respect to the other

3     matters involving Mr. O'Brien, we will stand on the

4     record that's made in the deposition, which has been

5     marked for identification as Petitioner's Exhibit

6     No. 5.

7            THE COURT: Mr. O'Brien, if you were asked

8     any additional questions with reference to your

9     employment with the city as a detective, would your

10    answer still be the same, you invoke your Fifth

11    Amendment right?

12           THE WITNESS: Yes your Honor, it would.

13           THE COURT: Any cross.

14           MR. CHIMERA: No.

15           MR. BOWMAN: That's all I have.

16           THE WITNESS: Thank you, your Honor.

17           MR. BOWMAN: At this time we call Petitioner.

18             (Witness sworn)

19

20

21

22

23

24

EXHIBIT G:

Transcript of Proceedings dated May 22, 2009 in People v. Brown
90 CR 23997: Ruling by Judge Crane

1

1      STATE OF ILLINOIS )
                    ) SS:
2      COUNTY OF C O O K )

3       IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
             COUNTY DEPARTMENT-CRIMINAL DIVISION
4

      THE PEOPLE OF THE     )
5      STATE OF ILLINOIS,    )
                        )
6                Plaintiff, )
                        ) No. 90 CR 23997
7         vs.            )
                        ) Charge:
8      CORTEZ BROWN a/k/a   )
      VICTOR SAFFORLD,    )
9                        )
                Defendant. )
10

11             REPORT OF PROCEEDINGS of the

12    hearing had before the HONORABLE CLAYTON J.

13    CRANE, on the 22nd day of May 2009, in Chicago,

14    Illinois.

15

16         APPEARANCES:

17               OFFICE OF THE ATTORNEY GENERAL, by
               MR. VICENZO CHIMERA, PAUL BERVID
18             and ERIC LEVIN,
               Assistant Attorney Generals,
19             on behalf of the People;

20               MR. LOCKE BOWMAN, MR. FLINT
               TAYLOR, MS. JOEY MOGUL and
21             MS. SARAH GELSOMINO,
                on behalf of the Defendant.
22

    Sandra Battaglia
23    Official Court Reporter
    Criminal Division
24    C.S.R. #084-003168

3

1       THE COURT:  Okay.  The next matter before

2   the Court is the People of the State of Illinois

3   versus Cortez Brown also known as Victor

4   Safforld.  You can take a seat over there.

5           Okay.  Hopefully this is the last

6   time in this issue.  Counsels, announce your

7   names for the record from the Petitioner's table

8   first.

9       MR. BOWMAN:  My name is Locke Bowman on

10  behalf of Victor Safforld.

11      MR. TAYLOR:  Flint, F-L-I-N-T, Taylor on

12  behalf of Mr. Safforld.

13      MS. MOGUL:  Joey Mogul, M-O-G-U-L, on

14  behalf of Mr. Safforld.

15      MS. GELSOMINO:  Sarah Gelsomino,

16  G-E-L-S-O-M-I-N-O, on behalf of Victor Safforld.

17      MR. LEVIN:  Eric Levin, L-E-V-I-N, on

18  behalf of the Attorney General's Office.

19      MR. BERVID:  Paul Bervid, B-E-R-V-I-D, also

20  on behalf of the Illinois Attorney General's

21  Office.

22      MR. CHIMERA:  Good morning, your Honor.

23          Vincenzo Chimera, C-H-I-M-E-R-A,

24  from the Attorney General's Office.

4

1    THE COURT:  Thank you.

2            I indicated today that I would

3    have my ruling.  My ruling is not in writing.  I

4    ran out of time.  But I shall give the ruling.

5    And I am sure that's what most people are

6    concerned about.

7            This Court had the ability to

8    observe the interest, bias, and credibility of

9    the various witnesses who testified in this

10   matter.  This Court took into account only

11   competent, relevant, and material evidence.

12           Although there are over 100

13   exhibits recovered in this case, those matters

14   which were considered by the Court as concerns

15   those various exhibits which were admitted were

16   only to the limited purpose for which each

17   exhibit was admitted.  Those issues of hearsay

18   were not considered.  Those issues of opinion

19   were not considered.

20           This is a third stage

21   postconviction hearing.  The issue is whether or

22   not the Petitioner in this matter incurred a

23   substantial denial of his constitutional right

24   during the initial prosecution of this case.

1    This narrows down to whether the statement that

2    the Petitioner gave implicating himself was

3    voluntary or that his will was overborne by the

4    actions of the police causing him to confess.

5              This hearing was essentially a new

6    motion to suppress statements.  At this hearing,

7    the only person that was in the room who

8    testified was the Petitioner.  The present or

9    past detectives were silent.  I am taking that

10   silence into consideration.

11             As concerns September 21st, 1990,

12   there were some circumstantial witnesses.  Those

13   included the Assistant -- two Assistant State's

14   Attorneys, one of each -- each one who took a

15   statement in this matter, and the court

16   reporter.

17             They indicated in their testimony

18   they saw no visual signs of any harm caused to

19   the defendant, and the defendant did not

20   complain of any harm.  It is also fair to note

21   that in the pictures taken of the defendant on

22   that particular day, I can't see any visual

23   signs.  I am not a doctor.

24             He was wearing long pants.  He had

6

1    a long-sleeve shirt on.  He was dealing with

2    experienced -- very experienced detectives.

3                 Much was made of the fact that the

4    defendant -- the Petitioner, excuse me, in this

5    particular matter -- Petitioner may no

6    complaints.  The fact of the matter is, the

7    Petitioner is staying in the custody of the

8    Chicago Police Department after he makes the

9    statement.  He is not going home with the

10   State's Attorneys.

11                On the other hand, Mr. Safford is

12   not a good witness.  I have been exposed to

13   Mr. Safford, known as Cortez Brown by me, for

14   an extended period of time.  I found him to be a

15   mature, streetwise individual.  He sure didn't

16   testify that way.

17                I don't know what he was like 19

18   years ago.  I can only glean that from his

19   testimony and from his behavior at the time of

20   the original incident.

21                When he was interviewed by

22   Sergeant Baker, he lied about his age.  He used

23   13.  That's the magic number to get you treated

24   as an individual.  He didn't give the right

7

1   name.  He figured maybe nobody would be able to

2   track him down.

3               I will indicate that Sergeant

4   Baker was the best witness in this case.  I

5   believed absolutely everything he said.  The

6   defendant did sign that statement.  That is the

7   defendant's signature.  He was given his rights.

8               The Petitioner's various

9   explanations of the events that occurred in the

10  room don't help his case.  The issues where did

11  you get hit, how did you get hit, what did you

12  get hit with, seem to adjust themselves based

13  upon where he was testifying.

14              Given that, I understand the

15  original ruling in this case.  I understand who

16  the witnesses were, and I understand what the

17  outcome of that ruling was.

18              In this hearing, I had an

19  advantage over the judge in that hearing.  I

20  also had a disadvantage over the judge in that

21  hear.  The disadvantage I had in this hearing

22  was I have no testimony from the other

23  individuals in that room.  My advantage is I

24  have some additional evidence as to the

8

1    behaviors of some, if not all, of the detectives
2    in this case.

3              That evidence is staggering.  That
4    evidence is damning.  The Petitioner has met his
5    burden.  Petition granted.  Motion for new
6    trial.

7              Court is in session.
8         THE SHERIFF:  Court is still in session.
9         THE COURT:  Court will be in recess for
10   five minutes.

11             If you want to celebrate or
12   whatever you want to do, go outside.  I
13   apologize for making the Sims' family victims
14   again.

15

16             ( WHEREUPON the case was passed
17             and later recalled. )
18

19        THE COURT:  Cortez Brown.
20             Bring out Mr. Brown, okay -- if
21   they are not up here -- or Mr. Safford.
22        MR. BERVID:  They are not in the hallway.
23   I know that.
24        THE COURT:  Okay.

9

1    THE SHERIFF:  They all went downstairs.  Do

2    you need them back up?

3        THE COURT:  Yes.  Tell them I want them

4    right now.

5            Okay.  This matter is -- we need a

6    date.

7        MS. MOGUL:  Good morning again, your Honor.

8            Joey Mogul and Sarah Gelsomino on

9    behalf of Mr. Safforld.

10           Your Honor, we would ask -- and I

11   have discussed this with Mr. Chimera -- if we

12   can set this down for next Friday.

13       THE COURT:  Does that work for you?

14       MR. CHIMERA:  That's fine.  By agreement,

15   Judge.

16       THE COURT:  By agreement to next Friday,

17   which is the 29th.  Okay.  See everybody back

18   here then.

19

20           ( WHEREUPON the above-entitled

21             cause was continued to

22             5-29-09 in Courtroom 600. )

23

24

10

1

2    STATE OF ILLINOIS )
                        ) SS.
3    COUNTY OF C O O K )

4

5              I, SANDRA BATTAGLIA, Official

6    Shorthand Reporter of the Circuit Court of Cook

7    County, County Department, Criminal Division, do

8    hereby certify that I reported in shorthand the

9    proceedings had at the hearing of the

10   above-entitled cause, and that the foregoing is

11   a true and correct transcript of the proceedings

12   had.

13

14

15

16

17   Official Shorthand Reporter
     C.S.R. #084-003168
18   Circuit Court of Cook County
     County Department
19   Criminal Division

20   Dated this ___3rd___ day of

21   ___June___, 2009

22

23

24