IN THE CIRCUIT COURT OF COOK COUNTY
CRIMINAL DEPARTMENT, CRIMINAL DIVISION

In re:                                    )     Claim of Tony Anderson
ILLINOIS TORTURE INQUIRY                  )     2011.014-A
AND RELIEF COMMISSION                     )     (relates to Case Nos. 90 CR 11979, 11980,
                                          )     11982, 11983, 11984, 11985, 11986, 11987,
                                          )     11988, 11989, 11990, 11991, and 660648)

NOTICE OF FILING

To:   The Honorable Timothy C. Evans          Anita Alvarez
      Chief Judge                             Cook County State's Attorney
      Circuit Court of Cook County            50 W. Washington St.
      50 W. Washington Street, Suite 2600     5th Floor
      Richard J. Daley Center                 Richard J. Daley Center
      Chicago, IL 60602                       Chicago, Illinois 60602

      Hon. Stuart A. Nudelman                 David B. Owens
      Brian J. Stefanich                      The Exoneration Project at the University
      Office of the Special State's Attorney      of Chicago Law School
      55 W. Wacker Drive, Suite 1400         6020 S. University Ave.
      Chicago, IL 60601                      Chicago, IL 60637
      bstefanich@orourkeandmoody.com         dbowens@uchicago.edu

      PLEASE TAKE NOTICE that on May 21, 2015, the undersigned caused to be filed with
the Clerk of the Circuit Court of Cook County, Criminal Department, 50 W. Washington St., 10th
floor, Chicago, IL, pursuant to 775 ILCS 40/45(c), the "ORDER FOLLOWING REFERRAL TO
THE COMMISSION BY CHIEF JUDGE EVANS" of the Illinois Torture Inquiry and Relief
Commission in the following Claim.  A copy of the Order is attached hereto and herewith served
upon you:

          Claim of Tony Anderson             TIRC Claim No. 2011.014-A
                                             Criminal Case Nos. 90 CR 11979, 11980, 11982
                                             11983, 11984, 11985, 11986, 11987, 11988,
                                             11989, 11990, 11991, and 660648

A copy of the complete administrative record in the case will be filed with the clerk after it is
reviewed for compliance with Illinois Supreme Court Rule 138.

Illinois Torture Inquiry and Relief Commission          Rob Olmstead
James R. Thompson Center                                 Staff Attorney
100 W. Randolph St., Suite 10-300
Chicago, IL 60601
(312) 814-1094

## PROOF OF SERVICE

Rob Olmstead, an attorney, hereby certifies that he hand-delivered a copy of this Notice and the "ORDER FOLLOWING REFERRAL TO THE COMMISSION BY CHIEF JUDGE EVANS" to the Office of Chief Judge Timothy C. Evans on May 21, 2015, 50 West Washington St., Suite 2600, Chicago Illinois and to the Cook County State's Attorney's Office on the 5th floor at 50 W. Washington St, Chicago, Illinois. A copy of the same documents were served upon the Claimant's counsel and the Special State's Attorney by placing a copy in the United States Mail before 5:30 p.m. on May 21, 2015 and additionally by e-mailing copies to dbowens@uchicago.edu and bstefanich@orourkeandmoody.com, respectively.

Rob Olmstead, TIRC Staff Attorney

# BEFORE THE TORTURE INQUIRY AND RELIEF COMMISSION

In re:
Claim of Tony Anderson

TIRC Claim No. 2011.014-A

### ORDER FOLLOWING REFERRAL TO
### THE COMMISSION BY CHIEF JUDGE EVANS

Tony Anderson was arrested on April 18, 1990 for auto theft. Taken to the police station at 11th and State, he invoked his right to silence, and may have invoked his right to counsel. Anderson was then taken to Area 2 detective headquarters by Detective Michael McDermott.

McDermott testified he was told by the police at 11th and State that Anderson was "eager to talk" – despite Anderson's invocation of the right to silence. At Area 2, Anderson signed a confession to a murder and confessed to other crimes under questioning by detectives from Areas 2 and 3. He was also identified in lineups by victims and witnesses from several of the crimes.

Anderson filed a motion to suppress, claiming that his confessions were procured by torture. Anderson claimed McDermott held a gun to his head, and that Detective Anthony Maslanka jabbed him with a nightstick in his thighs and back until Anderson agreed to confess. Anderson's motion was denied, with the judge finding the police officers more credible than Anderson.

Anderson was convicted of attempted murder and armed robbery in one trial, and a separate armed robbery in another. A third trial was scheduled for Monday, August 5, 1991, but Anderson's lawyer failed to appear. The lawyer was found in his apartment two days later, intoxicated, injured, and immobile, and sent to a hospital. The judge cautioned Anderson that he had severe reservations about the capacity of the lawyer to represent Anderson. Nevertheless, two days later, on Friday, August 7, the lawyer arrived in court. That day, apparently without further consultation with his attorney, Anderson pled guilty to a murder and ten additional crimes, in a negotiated plea. He was sentenced to 50 years in prison.

Anderson filed a claim of torture with the Illinois Torture Inquiry and Relief Commission (the "Commission" or "TIRC"), raising facts consistent with his testimony in his motion to suppress. On May 20, 2013, the Commission filed a Case Disposition, referring Anderson's claim to the Circuit Court of Cook County for judicial review. *See* 775 ILCS 40/1 *et seq.* (the "TIRC Act").

After the case was referred to the Circuit Court, counsel for Anderson and for the Special State's Attorney[1] did not agree as to which of Anderson's thirteen convictions had been referred to Court by the Commission. The Chief Judge of the Circuit Court, Hon. Timothy C. Evans, entered an Agreed Order on July 15, 2014, asking the Commission to clarify the Case Disposition.

The Special State's Attorney and counsel for Anderson have now agreed on the referral of seven of the 13 cases, and continue to disagree about six others. The Commission decides today that

---

[1]    Hon. Stuart Nudelman has been appointed the Special State's Attorney for this case.

12 of the 13 cases – all of the cases except for an attempted escape charge as to which there was no confession – are referred to the Circuit Court.

## I. STATUS OF AGREEMENT AND DISAGREEMENT
## BETWEEN THE STATE AND THE CLAIMANT AS TO THE CASES.

In each of the seven cases that the Special State's Attorney and Anderson agree should be referred to court, the confession was either introduced at trial or mentioned in the plea colloquy:

| Case Number | Offense | Trial/Plea | Incident/Date |
|---|---|---|---|
| 90 CR 11979 | 1st-degree murder | Plea | Cox shooting—3/30/90 |
| 90 CR 11984 | Attempt murder, armed robbery | Bench Trial | 11613 S. Halsted Trak Auto — 4/15/90 |
| 90 CR 11987 | Armed robbery | Plea | L. Chheda  — 4/8/90 |
| 90 CR 11989 | Armed robbery | Plea | Honnecker — 3/8/90 |
| 90 CR 11990 | Armed robbery | Plea | Halsted liquor — 4/13/90 |
| 90 CR 11991 | Armed robbery | Plea | Beauty shop: Ford Gilliam/Carter— 4/4/90 |
| 90 CR 660648 | Armed robbery | Plea | Stefani, Suranski @ gas station-4/17/90 |

In the remaining six cases, there is either uncertainty about whether a confession occurred, or whether a confession was used to obtain the conviction. In these cases, there remains a disagreement between the State and Anderson.

| Case No. | Offense | Trial /Plea | Incident/Date | Statement Made? | Statement Used? |
|---|---|---|---|---|---|
| 11980 | Armed robbery | Plea | Brand/Cephus/ Mattie 3/30/90 | Anderson contends oral statement | No document reflects introduction in proceeding |
| 11982 | Atmpd. escape | Plea | 4/20/90 | NO | No statement alleged. |
| 11983 | Atmpd. first –degree murder | Plea | Lazzarotto shooting 4/7/90 | YES | Included in Official Statement of Facts. |
| 11985 | Armed robbery | Jury Trial | 7354 S. Stony Island Trak Auto  4/15/90 | YES | ASA said would be introduced if Anderson testified |
| 11986 | Atmptd. 1st-degree murder | Plea | Jerome Wright shooting 3/17/90 | Anderson contends oral statement | No document reflects introduction in proceeding |
| 11988 | Armed Robbery | Plea | Marva Hall/Huerta 3/23/90 | Anderson contends oral statement | No document reflects introduction in proceeding |

## II. SUMMARY OF THE COMMISSION'S DETERMINATION.

The determination of which cases should be referred to court turns on the application of the TIRC Act's requirements that the claimant was "tortured into confessing to the crime for which the person was convicted and the tortured confession was used to obtain the conviction." 775 ILCS

40/5(1). The six matters that are still disputed, identified in the last chart, can be divided into fact patterns raising three questions. These questions, and the Commission's answers, are:

| CASE | FACT PATTERN | QUESTION | TIRC ANSWER |
|---|---|---|---|
| 11985 | ASA told the court the State would not seek to introduce the confession at trial unless the defendant took the stand. | Was a confession "used to obtain the conviction" when the defendant was discouraged from testifying at trial because of the prospect that it would be used to cross-examine him? | Yes, on the facts of this case. |
| 11980 11983 11986 11988 | Defendant confessed and pled guilty, but there was no reference in the plea colloquy to the confession. | Was a confession "used to obtain the conviction" when the defendant has pled guilty, if the prosecutor did *not* refer to the confession in the plea colloquy? | Yes, on the facts of this case. |
| 11982 | Defendant did not confess to the crime, but guilty pleas to cases where defendant had confessed were negotiated and entered at the same time. | Was a person "tortured into confessing to the crime for which . . . [he] was convicted and the tortured confession . . . used to obtain the conviction in another case could have affected the defendant's decision to plead guilty? | No, because he wasn't "tortured into confessing to the crime for which . . . [he] was convicted. |

## III. FACTUAL BACKGROUND PRIOR TO THE CLAIM OF TORTURE BEFORE TIRC.

A.    Anderson's Arrest and Interrogation.

On April 18, 1990, two police officers followed a car in Chicago. The officers testified that they checked the car's registration, and found it to be stolen. The officers stopped the car and questioned Tony Anderson, his wife, and Robert Allen (a/k/a Reginald Bragg). The officers found a gun in a coat in the back seat, at Allen's feet.[2/]

Anderson and Allen were arrested for auto theft and taken to the police station at 11th and State. Anderson was read his rights. Anderson claimed he invoked his right to silence and repeatedly asked to call family to contact a lawyer. One of the arresting officers, Patrick Brosnan, testified that Anderson did invoke his right to silence. Brosnan did not recall if Anderson asked for a phone call, but conceded that "he may have."

All questioning did not stop. Instead, Anderson was taken to Area 2 detective headquarters, where he was questioned about a number of crimes *other* than the allegedly stolen auto. Detectives from both Areas 2 and 3 questioned Anderson. Anderson claims he was threatened by Det.

---

[2/]    *See People v. Allen*, 268 Ill. App. 3d 279, 282, 645 N.E.2d 263 (1st Dist. 1994)(discussing the arrest). Anderson has claimed that the car was not stolen, and that the auto theft charge was dropped.

McDermott and beaten by Det. Maslanka, and was coerced into making incriminating statements. He also claims he repeatedly asked to make a phone call to obtain counsel.

At Area 2, Anderson made one or more statements implicating himself in many offenses committed in March and April 1990. Files reviewed by the Commission show that Anderson signed a written confession to the murder of Leonard Cox, and confessed to at least eight other crimes. In addition, Robert Allen signed a written statement implicating Anderson in the murder. At least 16 witnesses identified Anderson. Anderson was indicted on over 100 charges in 13 separate cases.

B.    The Motion to Suppress.

On behalf of Anderson, the public defender filed a written motion to suppress. The motion claimed that Anderson had (a) invoked his right to silence and counsel, (b) been struck in the ribs by a stick, and (c) been threatened with a gun to his head, but (d) had not been advised of his rights.

Judge Karnezis held a suppression hearing beginning on March 19, 1991, and concluding on May 1, 1991.[3] In the hearing, Detective Brosnan testified that Anderson invoked his right to silence at the police station at 11th and State, where he was questioned on the auto theft charge.[4]  Dets. McDermott and Gallagher testified that they took Anderson to Area 2, where detectives from Areas 2 and 3 questioned him about other crimes.[5]  Det. McDermott testified that officers at the State Street police station did *not* tell him that Anderson had invoked the right to remain silent. Rather, they said Anderson was "eager to talk." *See* Exhibit 2. All officers denied Anderson was abused.[6]

Anderson testified that he repeatedly asked to make a call to his family to obtain counsel. He said that he was not threatened or hit at 11th and State, but was coerced into making incriminating statements at Area 2, where he was questioned throughout the night. He testified that McDermott placed a gun to his head and threatened to "blow [his] damn brains out" if he did not confess. Anderson also said that Maslanka jabbed him in the chest, rib, and back with his night stick, estimating he was hit "over 12 times," because he was crying in pain.[7]

---

[3]    The suppression hearing was described in an appeal of a post-conviction proceeding. *People v. Anderson*, 2006 WL 3833003 (1st Dist. Dec. 22, 2006), *op. withd'n on denial of reh'g and substituted*, 375 Ill. App. 3d 121, 872 N.E.2d 581 (1st Dist.), *leave to appeal denied,* 226 Ill.2d 589, 879 N.E.2d 932 (2007).

[4]    *See* Exhibit 1 for Brosnan's testimony about the right to silence (5/1/91 Tr. at 123).

[5]    Detective McDermott said the transfer was around 9 p.m.; Det. Gallagher said around midnight.

[6]    McDermott's testimony is at 4/29/91 Tr. at 53; Gallagher's testimony at 4/30/91 Tr. at 103.

[7]    All of the details of Anderson's testimony may not be credible.  (5/1/91 Tr. at 3 *et seq.*)  For example, Anderson said that he was not permitted to use the bathroom until he was transferred to the County Jail. He also testified that no one advised him of his *Miranda* rights. Further, Anderson was given a physical examination prior to his admission to the county jail, but no bruises were present at that time.

At the close of the hearing, Judge Karnezis denied Anderson's motion to suppress, finding that his statements were given "freely and voluntarily without coercion or threat or compulsion of any kind." The Court found that based on the totality of evidence, defendant "was advised of his rights numerous times" and was "not in anyway threatened or abused." The Court also noted that "the evidence we choose to accept * * * [is] the testimony of the police officers indicating that he was at no time abused or physically threatened." 375 Ill. App. 3d at 127.

C.    The Trials.

Anderson went to trial in two of the cases. In 90 CR 11984, Anderson was found guilty of attempted murder, armed violence, and armed robbery at a Trak Auto store three days before his arrest. Anderson's oral confession was used against him.[8] Anderson was sentenced to three concurrent terms of 25 years imprisonment.[9]

At the beginning of the trial in 90 CR 11985, Anderson's lawyer said he had just been informed an oral statement was made by Anderson and asked if it would be introduced. The Asst. State's Attorney said that it would not, unless Anderson testified. (See Ex. 3.) Anderson did not testify, so the confession was not introduced. Anderson was convicted and sentenced to 25 years, concurrent to the sentence imposed in 11984.

D.    The Conduct of Retained Counsel Prior to Entry of the Guilty Pleas.

Trial was set for Monday, August 5, 1991, before Judge Karnezis in the first degree murder case, No. 11979. Thomas Hoffa, who had been retained as counsel by Anderson's family, did not appear. After Hoffa did not appear on Tuesday, August 6, Judge Karnezis issued a bench warrant.[10]

On Wednesday, an Asst. State's Attorney and the Judge reported that they had spoken with Hoffa's neighbor, who said that Hoffa was injured, his face was swollen, and he appeared to be sedated and unable to go to court. An investigator from the State's Attorney's office was in Hoffa's

---

[8]    McDermott testified that Anderson said that he and Allen drove to the store armed with a gun, that a scuffle broke out between Allen and Scott Volk, and that Allen placed the gun to the back of Volk's head and fired once. McDermott also testified that Anderson told him that shooting Volk "wasn't necessary."

Anderson's confession was corroborated. Volk testified Anderson grabbed Volk by the arm and led him to the back of the store while Allen held a gun to the back of Volk's head. Volk said Anderson punched him in the face at least five times. Allen shot Volk; Anderson then took the keys to the cash drawer from Volk. The gun in the car was identified as the gun used in the robbery. Two employees of the store also identified Anderson. See People v. Anderson, slip op. at 3, 6-7 No. 91-1867 (1st Dist. July 12, 1994).

[9]    Allen was also convicted in 11984, see People v. Allen, 260 Ill. App. 3d 1113, 675 N.E.2d 659 (Table)(1st Dist. 1994), as well as in other robberies. See People v. Allen, 268 Ill. App. 3d 279, 645 N.E.2d 263 (1st Dist. 1994); People v. Allen, 268 Ill. App. 3d 947, 645 N.E.2d 270 (1st Dist. 1994).

[10]    Excerpts of the transcript from August 5, 6, and 7 are attached as Exhibit 4.

apartment, and said that Hoffa had a gash on the side of his head. Hoffa was described as bruised, disoriented, intoxicated, and unable to move. The investigator called an ambulance, and reported that the paramedics thought Hoffa would be hospitalized for a while. *Id.* at 9.

Judge Karnezis addressed Anderson:

> I don't know what to tell you, Mr. Anderson.
>
> It would be this Court's opinions, and it is just my opinion, that Mr. Hoffa is not now nor will he be in the near future in a position to represent you in this case.
>
> I am– So you know, I am very hesitant to, you know, to get between, as it were, an attorney and his client. I don't know that that is really my function. But, I wanted you to be aware of a lot more facts than we were aware of yesterday. [8/7/90 Tr. at 6-7 (emphasis added).]

Judge Karnezis then commented on the consequences of an absent lawyer, and asked if Anderson wanted Hoffa to continue to represent him. Anderson said that he did.

Judge Karnezis and the ASA said they had last spoken with Hoffa on Friday, August 2. The ASA said that Hoffa had not heard if Anderson would plead guilty, and that Hoffa assumed the case would be tried. *Id.* at 7. Judge Karnezis continued the case to August 9 for an update. *Id.* at 11.[11/]

E.    The Guilty Pleas.

On Friday, August 9, 1991, Hoffa appeared in Court. The transcript reflects no on-the-record inquiry into Hoffa's condition. Hoffa said he had conferred with the prosecutor on July 26, and with Anderson on July 30, but there was no statement concerning any consultation after August 2.

Anderson then pled guilty to charges in the eleven remaining cases.[12/] The ASA said there were witnesses who would identify Anderson in each case. In addition, there was evidence that Anderson possessed the gun used in the murder.[13/] The prosecutor also mentioned Anderson's

---

[11/]    Anderson's sister, Diane Collins, approached the bench to say that the family didn't realize Hoffa was unreliable. Judge Karnezis said he understood, adding "you would have to be a little goofy to retain somebody and for him not to come to court." Judge Karnezis said that if Hoffa didn't come on Friday, Anderson could ask for time to retain his own attorney, or request the Public Defender. He noted however, that the State and he had been ready for trial, and expressed impatience with the wasted time. *Id.* at 11.

[12/]    The cases included one count of first degree murder (90 CR 11979), two counts of attempted first degree murder (Nos. 11983 and 11986), eight counts of armed robbery (Nos. 11780, 11987, 11988, 11989, 11990, 11991, and 660648), and one count of attempted escape (No. 11982). *See* Exhibit 5.

[13/]    In the trial of Robert Allen in 11987, the "drug store robbery," a victim testified Anderson pointed a gun at him and removed cash from the register. *See People v. Allen*, 377 Ill. App. 3d 938, 940, 880 N.E.2d 223 (1st Dist. 2007). In a 2003 post-conviction petition, Allen admitted to participating in a series of robberies with Anderson, but claimed that Anderson instigated the robberies. 377 Ill. App. 3d at 944-45.

confession to six of the charges.[14] In exchange for Anderson's guilty plea, the State recommended a 50–year sentence for the murder; 30–year sentences for attempted murder; 30–year sentences for armed robbery; and a 5–year sentence for attempted escape, all to run concurrently (but consecutively to the sentences in 11984 and 11985).

Judge Karnezis explained the nature of the charges and the sentences, and said that there had been extensive negotiations about the plea. He also said that the first degree murder case was <u>not</u> a death penalty case. Anderson said that he understood, and he voluntarily pled guilty.

F.    The Appeal.

Anderson appealed his conviction for attempted first degree murder in 11984, but he did not appeal the denial of his motion to suppress. The conviction for attempted murder was affirmed, though another count was vacated. *People v. Anderson*, No. 91-1867 (1st Dist. July 12, 1994). Anderson did not appeal his conviction for armed robbery in 11985.

G.    The Post-Conviction Petitions.

Anderson filed four post-conviction petitions. They were all denied without a full hearing.[15]

• In 1991, Anderson moved to vacate his guilty pleas, claiming (1) they were "coerced," (2) he didn't understand he couldn't receive the death penalty, and (3) he didn't know he could receive consecutive sentences. Judge Karnezis treated the motion as a post-conviction petition and denied it as frivolous, noting that Anderson pled guilty after a full explanation and had not filed an appeal from his sentence. Anderson did not appeal the dismissal.[16]

• In 2000, Anderson alleged that he had been deprived of effective assistance of counsel when counsel "coerced" him to plead guilty by saying that if he proceeded to trial, he would receive the death penalty. Anderson also argued that counsel was ineffective for failing to file any motions, and for appearing drunk in court on the day of his guilty pleas. Judge James B. Linn dismissed the petition as frivolous, noting that Anderson had "intelligently waived his chance to have a different lawyer represent him." The Appellate Court affirmed.[17]

---

[14]    The prosecutor mentioned confessions in Nos. 11979, 11989, 11991, 11987, 11990, and 60648. In a case summary written for IDOC, the prosecutor also referred to a confession in No. 11983.

[15]    A convicted person is usually limited to one post-conviction petition. *See People v. Anderson*, 402 Ill. App. 3d 1017, 931 N.E.2d 715 (1st Dist.), *leave to appeal denied*, 238 Ill.2d 655, 942 N.E.2d 455 (2010).

[16]    Judge Karnezis initially dismissed the motion. The dismissal was reversed for procedural flaws. *See Anderson*, 375 Ill. App. 3d at 128-29. Judge Karnezis then dismissed the petition on remand. No appeal was filed from the second dismissal.

[17]    *People v. Anderson*, No. 1–00–2338, 328 Ill. App. 3d 1084, 817 N.E.2d 217 (1st Dist. 2002)(unpublished order)(claims of ineffective assistance of counsel were barred because they were identical to claims rejected in Anderson's original petition), *leave to appeal denied*, 201 Ill. 2d 576 786 N.E.2d 187 (2002).

- In 2004, Anderson sought leave to file a post-conviction petition for his guilty plea to first degree murder in 11979. Anderson alleged his confession was coerced, and that there was newly-discovered evidence that coerced confessions (including by Detectives McDermott and Maslanka) were routine at Areas 2 and 3. Judge Linn denied the motion, noting that the voluntariness of Anderson's confession had been adjudicated, all issues had been waived, and the plea had been negotiated. The Appellate Court affirmed, ruling that Anderson had waived the claim the confession was coerced by failing to raise it in an appeal or in his prior post-conviction petitions. 375 Ill. App. 3d at 142-43.[18]

- Anderson filed a motion in 2008, covering all of his guilty pleas. For the first time, he claimed actual innocence; he alleged again that his guilty pleas were made as a result of police coercion and ineffective assistance of counsel. Judge Linn denied leave to file the petition. The Appellate Court affirmed, ruling that Anderson's claim that he had been coerced by his lawyer to plead guilty had already been decided.[19] The court found the new allegations of police torture – including findings by Special Prosecutor Egan against McDermott in the Pinex case[20] – were insufficiently similar to Anderson's claim to justify a successive petition. The court also held that since Anderson had pled guilty and there was at least one eyewitness to each crime, Anderson would not have been found innocent at a trial. *Id.* at 1038-39.

## IV. THE CLAIM OF TORTURE BEFORE THE COMMISSION.

In May 2011, Anderson submitted a claim of torture to this Commission, claiming that Det. McDermott put a gun to his head and threatened to kill him if he did not confess, and that Det. Maslanka had jabbed him in his back and ribs with a police night stick until he confessed "to a crime he didn't commit . . . ." In the claim, Anderson listed convictions in case numbers 11984 and 11985.

On May 20, 2013, the Commission issued a Case Disposition finding there was "sufficient evidence of torture to conclude the Claim is credible and merits judicial review for appropriate relief." In the Case Disposition, the Commission referred to the fact that Anderson had been convicted in 13 cases. The Commission noted that Anderson's claim had been consistent since his motion to suppress; there were many claims of misconduct against Dets. McDermott and Maslanka;

---

[18] The Appellate Court noted that Anderson pled guilty, and there was corroborating evidence. 375 Ill. App. 3d at 141. It rejected a claim that there was newly discovered evidence of Burge-related torture. *Id.* at 136. It also rejected a claim that Anderson's counsel was ineffective for failing to investigate torture under Burge, saying the pattern of torture was not widely known at the time of the plea. The Court also said Anderson waived a claim that the State failed to disclose information about other torture. *Id.* at 145-47.

[19] *Anderson*, 402 Ill. App. 3d at 1029. The Appellate Court also noted that the (allegedly tortured) confession was only mentioned by the prosecutor as supporting 6 of the 11 guilty pleas.

[20] The July 2006 Report of Special Prosecutor Egan found that there was evidence to find Dets. Maslanka and McDermott guilty beyond a reasonable doubt for aggravated battery, perjury, and obstruction of justice in the interrogation of Alphonso Pinex at Area 2 on June 28, 1985. The Report also found, however, that Anderson's claims could not be supported due to a lack of physical and medical corroboration, his failure to raise his claims in all of his post-conviction proceedings, and his failure to cooperate.

Special Prosecutor Egan's 2006 Report had found sufficient evidence to indict Detectives McDermott and Maslanka in the Pinex matter; and both detectives had taken the Fifth Amendment when asked about abusing detainees.[20] The claim of torture was referred to Chief Judge Evans of the Circuit Court of Cook County for assignment to a trial judge for further proceedings.

## V. REFERRAL OF THE CLAIM BACK TO TIRC BY THE AGREED ORDER.

On July 30, 2013, Chief Judge Evans ordered that Petitioner's Claim be referred to the Circuit Court for "all proceedings consistent with the Illinois Torture Inquiry and Relief Commission Act." Chief Judge Evans' referral order listed case numbers 90 CR 11984 and 11985.

Anderson's counsel filed a motion in the Circuit Court concerning the scope of the referral. Following briefing, Chief Judge Evans entered an Agreed Order referring the claim back to TIRC "for the purpose of determining whether the issues raised in the Motion, a copy of which is attached to and made a part of this order, require clarification of the TIRC's Disposition of the Claim."[21]

## VI. CURRENT POSITIONS OF THE PARTIES BEFORE THE COMMISSION.

After the matter was referred by the Chief Judge, TIRC staff requested that the parties submit supplemental filings. Anderson's counsel appeared before the Commission on Sept. 17, 2014, and filed additional papers. The Commission also subpoenaed records from the Chicago Police Dept.

As noted above, the Special State's Attorney and counsel for Anderson have now agreed that case numbers 90 CR 11979, 11984, 11987, 11989, 11990, 11991, and 660648 should be referred to

---

[20]     The Case Disposition noted that there was some credible evidence Anderson was tortured, and that the claim merited judicial review.  In addition to the evidence noted in May 2013, the fact that Det. McDermott testified that he was told that Anderson was "eager to talk," when Det. Brosnan testified that Anderson had asserted his right to silence, raises a question as to whether police testimony about the interrogation at Area 2 may not have been truthful. While officers are free under many circumstances to resume interrogation about a different crime after the invocation of the right to silence, *see Michigan v. Mosley*, 423 U.S. 96 (1975), they are not generally free to resume interrogation after the invocation of the right to counsel, *see, e.g., People v. Schuning*, 399 Ill. App. 3d 1073, 928 N.E.2d 128 (2d Dist. 2010)(analyzing cases).  The varying testimony about Anderson's invocation of his rights makes more credible his claims that he (1) repeatedly requested a phone call to family to contact a lawyer, and (2) was threatened and coerced.

The Commission makes no judgment that Anderson was innocent of any of the crimes, or that he is in general a credible witness. Nevertheless, the circumstances support the conclusion that, under the standard provided by the TIRC Act, Anderson's claim of torture merits judicial review.

[21]     Anderson asked C.J. Evans to amend the July 30 referral Order to include all 13 cases. Special Prosecutor Nudelman's argued that the referral should be limited to 11984, 11979, 11987, 11989, 11990, 11991, and 660648.  Anderson's Reply asked that 11985 also be referred.  Before C.J. Evans, Anderson agreed that cases where a confession was not mentioned in the plea colloquy could be deemed as not referred. Counsel for Anderson have advised TIRC they did not intend to waive the referral of those cases, but were willing to accept a partial referral as a compromise.  They argue here that all should be referred.

the Circuit Court by the Commission. Counsel still disagree on cases 11980, 11982, 119893, 11985, 11986, and 11988 (shown in the chart on the bottom of p.2).

A.      Anderson's Position.

      Counsel for Anderson argue that all 13 cases should be referred to Court. They say:[22]

- Anderson did confess in 11985, and was deterred from taking the stand because of the State's assertion that it would introduce the confession. *See* Exhibit 3. Further, there is no procedure for TIRC to un-refer 11985, which has been referred to Court.

- A confession is "used to obtain" a conviction whenever that confession could have been admitted in any proceeding — whether or not the confession was to the crime of conviction.

- As a factual matter, Anderson was charged in all 13 cases because of his coerced statement. The confession could have been used against him in any of the cases.

- Anderson is serving sentences for all 13 cases, so a determination of torture would affect his release in each case – even cases where the confession was not used.

- There was a single negotiation leading to a single agreement covering all 11 guilty pleas.

- The Commission should in any event refer all of the cases to Court so the Court can determine whether a claim is torture-related, under 775 ILCS 40/50(a).

B.      Special State's Attorney's Position.

      Counsel for the Special State's Attorney argue that the only cases that should be referred are those in which (1) Anderson actually confessed to the crime for which he was convicted; and (2) the State used that confession in that case, either by submitting it as evidence at trial or submitting it as part of the factual basis of a guilty plea. In an Aug. 10, 2014 Position Statement, they argue:

- Any confession made by Anderson to the armed robbery in case 11985, was not introduced,[23] so no confession was used to obtain the conviction.

- By referring the claim of torture back to TIRC for clarification, the Agreed Order created a procedure to "unrefer" 11985.

- The 5 cases in which Anderson pled guilty but no confession was mentioned in the factual basis should not be referred to court, because a confession was not "used to obtain the conviction." Also, it is not clear from the record that Anderson confessed to those crimes.

---

[22]      Anderson filed a Brief with the Commission on Aug. 1, 2014, and supplemented it with filings on Sept. 17, 2014, and Dec. 3, 2014.

[23]      While *People v. Anderson*, 375 Ill. App. 3d at 991 n.1, suggests "that in the present case no inculpatory statements were made by defendant with regard to the Halsted store robbery," it appears from Exhibit 3 that Anderson made a statement that was not introduced as evidence.

- There wasn't a global plea. The plea colloquy shows that the parties and the court "discussed each and every one of these cases. We discussed the facts in each case." See Ex. 5 at A17. Since the factual basis and sentence were separate, all cases need not be referred.

- Courts view guilty pleas as final. A defendant gives up his right to challenge a coerced confession by pleading guilty. Since Anderson's convictions for the eleven guilty pleas rest on his admission of guilt in open court, the claims should not be referred to court.[24]

### VII. COMMISSION'S ANALYSIS OF THE QUESTIONS PRESENTED.

A.   The Statutory Background.

1.   The TIRC Act is an Extraordinary Remedy.

The Commission starts from the premise that the TIRC Act is a special remedy designed to address claims of torture related to Jon Burge and officers who had been under his supervision:

> Sec. 10. Purpose of Act. This Act establishes an extraordinary procedure to investigate and determine factual claims of torture . . . . [775 ILCS 40/10.]

The Commission was created to address these claims even if they had not succeeded in prior appeals or post-conviction proceedings. *See* 775 ILCS 40/50 (relief in TIRC proceeding is separate from any other post-conviction proceeding).[25]

2.   Any Claim Must Fall within the Definition of a Claim of Torture.

Under the TIRC Act, the Commission has jurisdiction to investigate claims of torture. The statute contains the following definition of a "claim of torture:"

> (1)   "Claim of torture" means a claim on behalf of a living person convicted of a felony in Illinois asserting that he was <u>tortured into confessing to the crime for which the person was convicted and the tortured confession was used to obtain the conviction</u> and for which there is some credible evidence related to allegations of torture committed by Commander Jon Burge or any officer under the supervision of Jon Burge. [775 ILCS 40/5(1) (emphasis added).]

---

[24]   The Special State's Attorney cites *McMann v. Richardson*, 397 U.S. 759, 771 (1970); *United States v. Johnson*, 878 F. Supp. 1135, 1138 (N.D. Ill. 1995), and *People v. Bowman*, 335 Ill. App. 3d 1142, 1151 (5th Dist. 2002). *See also Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Although the State noted an argument that none of the guilty plea cases present a "claim of torture" because the defendant's in-court admissions (and not his confession) were used to obtain his convictions, the State agreed that the 6 guilty pleas in which the confession was part of the factual basis for the plea could be referred to court in this case.

[25]   The fact that Anderson did not list all 13 claim numbers is not dispositive. The Commission does not believe that a claim is limited to the information placed on the initial claim form, which did not ask for all relevant data. Also, claim forms were usually filled out by convicted persons, and not lawyers.

Anderson clearly meets several of these requirements. He is a living person, convicted of a felony in Illinois, who asserts he was tortured. The questions presented as to each count are:

- Was Anderson tortured into confessing *to the crime for which he was convicted?*

- Was the *tortured confession used to obtain the conviction?*

    3.    Referral Provisions and Court Remedies.

Under the TIRC Act, the Commission can refer cases to the Circuit Court of Cook County:

> If the Commission concludes there is sufficient evidence of torture to merit judicial review, the Chair of the Commission shall request the Chief Judge of the Circuit Court of Cook County for assignment to a trial judge for consideration. [. . .] *Notwithstanding the status of any other postconviction proceedings relating to the petitioner*, if the court finds in favor of the petitioner, *it shall enter an appropriate order with respect to the judgment or sentence in the former proceedings and such supplementary orders as to rearraignment, retrial, custody, bail or discharge, or for such relief as may be granted under a petition for a certificate of innocence, as may be necessary and proper.* [775 ILCS 40/50(a) (emphasis added).]

B.    Principles of Statutory Construction.

To interpret the TIRC Act, the Commission looks to the rules of statutory construction articulated by the Illinois Supreme Court:

> When construing a statute, our primary objective is to ascertain and give effect to the intent of the legislature. [. . . ] The most reliable indicator of legislative intent is the statutory language, given its plain and ordinary meaning. [. . . ] In determining the statute's plain meaning, we consider the subject it addresses and the legislature's purpose in enacting it. [Citations omitted.]

*BAC Home Loans Serv., LP v. Mitchell*, 2014 IL 116311, ¶38, 6 N.E.3d 162 (Ill. 2014).[26]

C.    What Does the Definition of Claim of Torture Mean as Applied to These Questions?

Looking at the plain language of the statute, the Commission believes that a convicted person has claimed he was "tortured into confessing to the crime for which the person was convicted and the tortured confession was used to obtain the conviction" when:

- a person has been found guilty of a crime, either by a verdict or a guilty plea;

---

[26]    "The best indication of legislative intent is the statutory language, given its plain and ordinary meaning. . . . Where the language is clear and unambiguous, we must apply the statute without resort to further aids of statutory construction." *Krohe v. City of Bloomington*, 2013 IL 94112, ¶3, 789 N.E.2d 1211 (2003). Only when a statute is ambiguous will the court "look to aids of statutory construction, including legislative history and established rules of construction." *BAC Home Loans*, 2014 IL 116311, ¶38.

- the person has made an incriminating statement (or been said to have made an incriminating statement) relating to that crime; and

- the tortured confession was a significant element that led to the verdict or plea.

The last element is a question that must be resolved on the facts of each case.

1.    The Meaning of "Conviction."

The Commission believes that the word "conviction" in the statute includes either a verdict or a guilty plea. Illinois law defines "conviction" as including a guilty plea: "'Conviction' means a judgment of conviction or sentence entered upon a plea of guilty or upon a verdict or finding of guilty of an offense . . . ." 720 ILCS 5/2-5. *Accord*, 730 ILCS 5/5-1-5.

2.    The meaning of being "tortured into confessing to the crime for which the person was convicted."

A claim of torture cannot, under the plain language of the TIRC Act, be within the Commission's jurisdiction if it does not involve a tortured confession "to the crime for which the person was convicted."[27] A claim of torture to some other crime – even if it is used as part of the state's case against a defendant – is not within the plain language of the statute.

3.    The meaning of "the tortured confession was used to obtain the conviction."

The Commission believes that the phrase "the tortured confession was used to obtain the conviction" must turn on the facts of each case. In any particular case, the tortured confession must have been used, that is, it must have had some role in, obtaining the conviction.[28] If a tortured confession is mentioned as the only evidence supporting a guilty plea, the Commission will view it presumptively as being "used to obtain the conviction." The failure of a prosecutor to mention a tortured confession as part of the evidence supporting a plea may mean that it was not "used to obtain the conviction," but other facts in a particular case may lead to a different conclusion.

D.    The Application of the Commission's Analysis to the Disputed Cases.

1.    The Trial for Armed Robbery in No. 11985.

Anderson and the Special State's Attorney have disagreed over whether Case No. 11985, the trial for armed robbery where the confession was not introduced, should be referred to Court. The Commission agrees with Anderson that the confession was "used to obtain the conviction."

---

[27]    The Commission has defined the meaning of "tortured confession" by regulation. 20 IAC §2000.10.

[28]    *See People v. Wrice*, 2012 IL 111860, *43, 962 N.E.2d 934, 945 (2012)(introduction of tortured confession at trial is not harmless error).

Exhibit 3 shows that the State's Attorney advised Anderson's lawyer and the Judge that Anderson had made an oral statement (which was apparently a confession), and that it would be introduced if Anderson took the witness stand. The Commission believes that an express statement that a confession would be used for impeachment would deter a defendant from testifying at trial,[29] and that the deterrence would be of significant benefit to the prosecution. The Commission therefore finds that this case falls within the language "used to obtain the conviction."

2.      The Guilty Pleas in the Cases where the
   <u>Confession Was Not Mentioned in the Plea Colloquy.</u>

(a)      Anderson likely confessed to all of the
   <u>cases, except for the attempted escape case.</u>

The Commission concludes that Anderson likely confessed to all of the cases (except for the attempted escape). It reaches this conclusion for several reasons:

- Anderson has told the Commission that he did.

- The Chicago Police Department has failed to locate and produce complete records showing the scope of all of Anderson's confessions. The Department says the records of most of the non-murder cases were likely destroyed under routine procedures. Nevertheless, the absence of the records – at best – is neutral, and could be construed against the position of the State.[30]

- The existence of a document confirming a confession in a case where a confession was not mentioned in the plea colloquy, Exhibit 3, shows that Anderson's confessions were not limited to those mentioned in the plea colloquy.

- Since the charges were brought following the same interrogation, the Commission presumes that there was a confession leading to all the charges (except for the attempted escape, which occurred after the interrogation).

(b)      On the facts of this case, the confessions were used to
   <u>obtain the guilty pleas in every case except the attempted escape.</u>

The Commission agrees with the Special State's Attorney that guilty pleas are normally not subject to collateral attack in post-conviction proceedings, since the plea waives a claim that a confession was coerced. That rule does not, however, apply to TIRC proceedings, for two reasons. First, as discussed at pp. 12-13 above, the TIRC Act provides an extraordinary remedy, separate from a post-conviction remedy. Second, the plain language of the Act allows the referral to Court of a claim of torture arising from <u>any</u> "conviction" within the definition of claim of torture that merits

---

[29]      There is nothing improper, in the Commission's view, with an Assistant State's Attorney acting within the law and noting that a (non-coerced) confession that is not being introduced could be used to impeach the defendant if the defendant takes the stand. The question here is one of the meaning of statutory language.

[30]      The Commission does *not* believe that City officials are acting in bad faith in failing to locate these records. (The Department has produced some records from non-murder cases that were of similar age.)

judicial review. Since the word "conviction" is defined by Illinois statutes as including guilty pleas, *see* p. 14 above, TIRC's jurisdiction is not limited to claims of torture arising from trials.

Referral is particularly appropriate here, since the circumstances surrounding Anderson's guilty pleas, *see* pp. 5-7 above, suggest that Anderson was not represented by competent counsel at the time of his plea.[31/] Given the unusual facts, it is a fair inference that Hoffa was not prepared for trial of the murder case on August 5th or 9th, and may have had an incentive to advise Anderson to plead guilty to all outstanding charges that was not based solely on Anderson's best interests.

It is also clear that the plea agreement for all charges was interrelated. They all arose from the same conference, and were entered at the same time. *See* Exhibit 4. The fact that each charge was reviewed separately does not change the relationship. The Commission therefore finds that all of the guilty pleas in cases where Anderson confessed should be referred to Court.

CONCLUSION

For the reasons stated above, the Commission clarifies its Case Disposition and refers Case Numbers 90 CR 11979, 11980, 11983, 11984, 11985, 11986, 11987, 11988, 11989, 11990, 11991, and 660648 to the Circuit Court.[32/]  Case 11982 is not within the Commission's referral.

DATE: May 20, 2015

$C \mathcal{Y} u \; S h \rho$

_____
Cheryl Starks, Chair
Illinois Torture Inquiry and Relief Commission

---

[31/]    *See McMann*, 397 U.S. at 767-73 (holding that a guilty plea waived a claim of a coerced confession depended on the effectiveness of competent counsel). This is not to say that Anderson was "coerced" into pleading guilty. As the Appellate Court noted, Anderson's claim that he believed he would get the death penalty if he didn't plead guilty is inconsistent with the record of the plea. Further, the State's offer benefitted Anderson by limiting his total sentence.

[32/]    The Commission does not express any opinion as to the scope of the remedy that the Circuit Court may grant should it find in favor of Anderson. Each party is free to argue whether the Court should vacate any judgment based on a conviction arising from the same arrest. *See* 775 ILCS 40/50(a).

-15-

# EXHIBIT 1

1    Halsted here in Chicago, Illinois, April 15th, 1990,

2    sir?

3         A    No.

4         Q    At anytime after the Defendant was advised

5    of his constitutional rights per Miranda by your

6    partner, Detective Gregory Sellers, did the Defendant

7    at anytime ask to have an attorney present, sir?

8         A    No.

9         Q    Did at anytime the Defendant, Tony

10   Anderson, tell you that he wished to remain silent?

11        A    Yes, he did, at one time, yes.

12        Q    And what point is that, sir?

13        A    We separated them after awhile and we

14   started to ask him a couple more questions and he just

15   said, I don't want to say nothing.

16        Q    At any time did either you or your partner

17   or anyone in your presence strike Tony Anderson with a

18   police stick or billyclub in the ribs or the thighs or

19   any part of his body at any time?

20        A    No.

21        Q    At anytime were there any threats or abuse

22   made against the Defendant, Tony Anderson?

23        A    No.

24        Q    At anytime did either you or your partner

PT41                           51

1  or any person in your presence, put a gun to the

2  Defendant Tony Anderson's head?

3      A    No.

4      Q    At anytime did either you or any of your

5  fellow officers in your presence or any that you know

6  of in anyway physically threaten or harm the Defendant

7  or psychologically coerce him in any manner as you

8  were talking to him, sir?

9      A    No.

10     MR. OWEN:  I have nothing further, Judge.

11                  CROSS EXAMINATION

12                       BY

13                  MR. HEENAN:

14     Q    Detective Brosnan, good afternoon?

15     A    Good afternoon.

16     Q    You first came in contact with Tony

17  Anderson earlier that day, correct?

18     A    That's correct.

19     Q    At the arrest of Mr. Anderson, correct?

20

21     Q    Did you advise Mr. Anderson at that time of

22  these rights?

23     MR. OWEN:  Objection, Judge.

24     THE COURT:  I'll let him answer that?

PT42                    ___5

1    THE WITNESS:  No.

2    MR. HEENAN:

3        Q    To your knowledge no one else had advised

4    him of Tony Anderson's rights at the time of his

5    arrest, correct?

6    MR. OWEN:  Objection, Judge, beyond the scope,

7    Judge, there's no conversations.

8    THE COURT:  Yeah, overruled.

9    THE WITNESS:  No, we just informed him why he was

10   being arrested.

11   MR. HEENAN:

12       Q    You did not transport Mr. Anderson to 11th

13   and State, is that right?

14       A    No.

15       Q    So, you next see Mr. Anderson at what time?

16       A    It was approximately an hour after the

17   arrest, the stop, approximately, could have been less,

18   fifteen minutes.

19       Q    What time would that be approximately?

20       A    I believe it was

21       Q    And where is Mr. Anderson when you see him

22   then at this?

23       A    He's on the tenth floor at 1121 S. State in

24   the squadroom cuffed to the wall.

PT43

1    Q    And what's the dimensions of that room?

2    A    Approximately fourteen by nineteen.

3    Q    Now, you indicated both Anderson and Allen

4  were handcuffed together?

5    A    That's correct.

6    Q    Together?

7    A    No, they were each handcuffed to a ring,

8  the same ring.

9    Q    One ring, they were both handcuffed to it?

10    A    Yes.

11    Q    And were they allowed anything to eat or

12  drink during this period of time?

13    MR. OWEN:  Objection, Judge.

14    THE COURT:  Overruled.

15    MR. HEENAN:

16    Q    That they were in that room?

17    A    Yeah, we let them go to the washroom and

18  get a drink of water.

19    Q    How did they get a drink of water?

    MR. OWEN:  Objection, Judge.

    THE COURT:  Overruled.

    THE WITNESS:  He was uncuffed and the water

21  fountain is right next to where the ring was.

24

PT 44

```
1           MR. HEENAN:

2           Q     Now, detective, how long did Mr. Anderson

3    remain in that room handcuffed, to your knowledge?

4           A     Two hours, maybe three.

5           Q     And your conversations with Mr. Anderson

6    lasted for how long a period of time?

7           A     Off and on, twenty minutes, you know,

8    through the period.

9           Q     Were you present at the reading of the

10   rights in that room?

11          A     Yes, yes, I was, sir.

12          Q     Now, you indicated that Mr. Anderson did

13   not speak orally answer to each right, isn't that

14   correct?

15          A     To my knowledge, in some, I remember him

16   nod being, he could have said yes, too, or you know,

17   but I did hear him say yes, on a number of occasions,

18   also.

19          Q     How many rights did Mr. Anderson merely

20   nod, during by nodding?

21          MR. OHLE:  Objection.

22          THE COURT:  Objection sustained.

23          MR. HEENAN:

24          Q     Well, how many rights did Mr. Anderson not
```

PT45                          203

1    respond to orally?

2        MR. OWEN:  Objection, Judge.

3        THE COURT:  Sustained.

4        MR. HEENAN:

5        Q    Okay, you indicated that he responded by

6    nodding, how did he know?

7        MR. OWEN:  Objection, Judge.

8        THE COURT:  Overruled.  Indicating in an up and

9    down motion with his head.

10       MR. HEENAN:

11       Q    And how many rights was it that he

12   responded to in that manner?

13       MR. OWEN:  Objection, Judge.

14       THE COURT:  Sustained.

15       MR. HEENAN:

16       Q    Other than nodding, how did he respond to

17   the rights?

18       MR. OWEN:  Objection, Judge.

19       THE COURT:  Through that now let him answer one.

20

21       THE WITNESS:

22       MR. HEENAN:

23       Q    Do you recall how many of the rights he

24   answered yes to?

1     MR. OWEN: Objection, Judge.

2     THE COURT: Sustained.

3     MR. HEENAN:

4     Q   Well, you indicated that Mr. Anderson

5 informed you that he wished to remain silent, exercise

6 his right to remain silent, correct?

7     A   Yes, sir.

8     Q   Was that while the rights were read to him?

9     A   Yes, sir, I believe it was.

10    Q   And he indicated that to you, spoke that to

11 you, correct, spoke those words or a summary that he

12 wished to remain silent?

13    A   Detective Sellers was reading him his

14 rights in front of him, sir, I was on the other side

15 of the room, not on the --

16    Q   Mr. Anderson said as to remaining silent,

17 what?

18    A   That he wanted to remain silent.

19    Q   How many rights was he asked or informed

20       to you that he wished to remain

21 

22       those rights?

23    Q   Yes.

24    A   Read again.

PT47

1 Q How many?

2 A. None.

3 Q How long did you speak to him after, how

4 long a period of time did you speak to him after he

5 indicated to you that he wished to remain silent?

6 A What do you mean by speak to him, sir?

7 Q Conversations of any sort?

8 A Conversation of any sort?

9 Q Yes.

10 A Asked him if he wanted to go to the

11 washroom after a period of time, asked him other, you

12 know, just general questions, was that you said a

13 hundred and eighty pounds, I believe, you know, things

14 like that, sir, just general conversations.

15 Q What time was it that he indicated to you

16 that he wished to remain silent?

17 MR. OWEN: Objection, Judge.

18 THE COURT: Overruled.

19 THE WITNESS: I could give you an approximate

20 ........ twenty-five minutes

21 ........ office, which was, I believe,

22 ........ approximately twenty-

23 twenty-five minutes after we straightened everything

24 out and got specifics out of the way and articles.

PT48

Q    Just, detective, if you could?

A    Twenty-five minutes, sir, I would reply.

Q    Six?

A    6:45, 6:40.

Q    Mr. Anderson asked for a phone call, is that correct?

A    I don't specifically recall that, sir, he may have.

Q    He asked to call his home, isn't that correct?

A    I don't specifically remember that, sir, he may have.

Q    Was Mr. Anderson given an opportunity to make a phone call while he was in that room with you?

MR. OWEN:  Objection, Judge, beyond the scope of the motion.

THE COURT:  Well, I don't know about that, overruled.

You might have to repeat the question again.

THE WITNESS:  I can't really recall, sir, if he was when I was in the room.

49

1      MR. HEENAN:

2          Q.     Was he given any food, Mr. Anderson, was he

3      given --

4          A.     No.

5          Q.     Were you present when Mr. Anderson was

6      removed from that room?

7          MR. OWEN:   Objection, Judge.

8          THE WITNESS:   Yes.

9          MR. HEENAN:

10         Q.     Who?

11         MR. OWEN:   Objection, Judge.

12         THE COURT:   Sustained.

13         MR. HEENAN:   I have no further questions, thank

14     you detective.

15                      RE-DIRECT EXAMINATION

16                      BY

17                      MR. OWEN:

18         Q.     Detective, when you indicated that the

19     Defendant wished to remain silent, is that at the

20     time you

23     asked him about the certain questions about the

24     vehicle, and also his name, his address and other

1  particular information that we now needed, he

2  responded to those questions and periodically in

3  regards to asking him his height, weight, date of

4  birth, we also asked him about the car and where he

5  got it and he indicated, you know, from a friend and

6  things like that, and as we got further into the

7  conversations, which was a short period of time, he

8  then said, I don't want to say anything further.

9      Q      And your questions were directed, then,

10  concerning the vehicle with which the Defendant had

11  been arrested while being a passenger, is that

12  correct?

13      A      That's correct, the vehicle and the weapon

14  that was recovered in that vehicle.

15      Q      And again at no time did you ever ask the

16  Defendant any questions concerning the robbery at the

17  Trak Auto store, is that correct, sir?

18      A      No, sir.

19      THE COURT: Say anything further.

20

21

22

23                    (Witness excused.)

24

PT51

# EXHIBIT 2

1   A. That's correct.

2   Q. -- prior to getting to the Area 2 Office,

3 is that correct?

4   A. Yes.

5   Q. Now, did you speak to other officers at

6 11th and State?

7   A. Yes, I did.

8   Q. Were you informed by those other officers

9 that Mr. Anderson had indicated that he wished to

10 remain silent, that he had indicated that to other

11 officers at 11th and State?

12   A. Just the opposite.  As I recall, they said

13 he was eager to talk.

14   Q. Okay.

15   Now, who was it that said to you that he --

16 that he, Mr. Anderson, was eager to talk?

17   MR. OWEN:  Objection, Judge.

18   THE COURT:  He may answer.

19   A. There was several detectives.  I couldn't

20 tell you the name, but it would be the detectives who

21 arrested him said something along the line that he

22 wants to talk.

23   MR. BRENAN:

24   Q. What time was it, sir, that those officers

15

248    248

1   told that you Mr. Anderson was eager to talk?

2          A.     The time we were there.  I can't

3   specifically say, from 9:00, 10:00, that evening.

4          Q.     What time was it that you left 11th and

5   State, if you recall?

6          MR. OWEN:  Objection, Judge.

7          THE COURT:  I am sorry.  The question was, what

8   time did they leave 11th and State?

9          MR. HEENAN:  Yes.

10         THE COURT:  Overruled.

11         A.     I couldn't specifically say.  I know it was

12  in the vicinity -- in the area of 9:00, 10:00, that

13  night.

14         MR. HEENAN:

15         Q.     Now, you indicated at the Area 2 Offices at

16  111th Street, you had an ongoing or continuing

17  interview or conversations with Mr. Anderson?

18         A.     Yes, sir.

19         Q.     And it wasn't until -- strike that.

20         What time was it that you advised him of

21  his rights at Area 2, 111th Street Station?

22         A.     Shortly after we arrived, and I would say

23  approximately, 11:00.  It was before midnight.

24         Q.     And you were the officer that advised Mr.

                        249                      249

1  Anderson?

2      A.    Yes, sir.

3      Q.    Was Detective Gallagher present at the time

4  of this?

5      A.    Yes, he was.

6      Q.    Those rights were given or spoken to Mr.

7  Anderson, correct?

8      A.    Yes.

9      Q.    They were not given to Mr. Anderson in any

10 type of written form, is that correct?

11     A.    Not then, no.

12     Q.    Now, did you have a conversation with Mr.

13 Anderson after giving him those rights?

14     A.    Yes, I did.

15     Q.    Now, this conversation, ongoing

16 conversation lasted for how long in total period of

17 time?

18         MR. OWEN:    I'm going to object.  I believe that

19 again their motion lies to this particular statement.

20         THE COURT:   We understand that, we understand

21 it.  Respectfully, we're going to overrule the

22 objection.  You may answer.

23     A.    I was there the entire night.  Initially,

24 when we talked to him, we spoke and then periodically

17                      250

EXHIBIT 3

1  whole thing in now and we are not asking the Court to do
2  that.  Whatever Your Honor wishes the State to do.  I
3  know it's indicated that it would allow the State -- or
4  at least start today and indicate that it would allow or
5  deny the motion.  Whatever Your Honor wishes the State
6  will abide by it.  I am sure Your Honor will follow the
7  law in making its ruling.
8      THE COURT:  I will take a look at that case and I
9  will reserve ruling as to limiting any presentation by
10  the State of facts involved in the other matter.
11          What else?
12      MR. HEENAN:  Judge, next is my question as to the
13  tendering of the alleged statement by Mr. Anderson
14  that was not tendered previously to today.  My motion
15  in limine is to keep evidence of that statement out of
16  the trial.  If the Court is going to allow it in, I would
17  need time to properly prepare this and, also, have a
18  motion to suppress that statement.
19      THE COURT:  State, is there any statement in this
20  case?
21      MR. OWEN:  Judge, there is an oral statement to a
22  detective.  I think Your Honor knows, Judge, we won't
23  even put it in, in the interest of fairness to the
24  Defendant.  I assumed that he had this, Judge.  If he

8

1    hasn't had it, I am not going to use it.

2        THE COURT:  You are not going to put on any evidence

3    as to that?

4        MR. OWEN:  No.

5        THE COURT:  I would only caution you that you make

6    sure you make that clear to your witness so that we

7    don't have any slips.

8        MR. OWEN:  All right.  Judge, I would indicate,

9    though, that if the Defendant should testify in this

10   matter --

11       THE COURT:  That's different.  That's different.

12       MR. OWEN:  I want that clear.

13       THE COURT:  I am sure Mr. Heenan knows that.

14       MR. HEENAN:  I believe the Court is indicating if

15   Mr. Anderson should testify in this matter, then the

16   Court would have -- the State has indicated that they

17   would renew their motion to present evidence to somehow

18   rebut any testimony of Mr. Anderson.

19       THE COURT:  And we would consider that at that

20   point.  Sure.  Sure.  What else?

21       MR. HEENAN:  Judge, if the Court recalls, the Court

22   heard a motion to quash arrest and suppress evidence.

23   I understand there was one arrest and the Court has --

24       THE COURT:  Yes.

     9

EXHIBIT 4

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT-CRIMINAL DIVISION

THE PEOPLE OF THE          )
STATE OF ILLINOIS,         )     CASE NO.   90 CR 11979, 80, 82,
                           )                83, 86, 87, 88, 89,
             Plaintiff,    )                90, 91, and 90CR60648
                           )
      vs.                  )     Criminal
                           )
TONY ANDERSON A/K/A         )     Charge:
JOSEPH MC KENZIE,          )
                           )
             Defendant.    )

            REPORT OF PROCEEDINGS had before the Honorable

THEMIS N. KARNEZIS, Judge of said court on the 5th day of

August, A.D. 1991.

        APPEARANCES:

            HONORABLE JACK O'MALLEY,
                State's Attorney of Cook County, by:

                MR. JOEL DE GRAZIA and
                MS., ADRIENNE MEBANE,
                Assistant State's Attorneys,
                for the People of the State of Illinois.

Shirley E. Thompson
Official Court Reporter
2650 South California Ave.
Chicago, Il.  60608

WHEREUPON the following proceedings were had,
to wit:

THE CLERK:  The People of the State of Illinois
versus Tony Anderson.

THE COURT:  Pass it.

(Case passed and recalled.)

THE COURT:  Good morning, ladies and gentlemen.  My
name is Themis Karnezis.  You have been called here today,
possibly prematurely, because I was assuming about an
hour ago that the attorney, one of the attorneys would be
present.

We have not yet seen that attorney so there
is not much we can do until that individual arrives.  I
would ask if you would bear with us for just a few
moments.

If that individual is not present then I will
release you for lunch and have you come back after you
have had lunch.

What can I say?  I am here.

We will take a brief recess.

MR. DE GRAZIA:  Thank you, Judge.

(Whereupon a short recess was had
and the case was reconvened.)

THE COURT:  Well, I don't know where he is.  I'm

2

going to ask you ladies and gentlemen to please return
here at approximately one-thirty or so. Maybe even a
little later. One forty-five. This is room 606.

        Please don't forget the room number.

        Thank you very much.

                (Whereupon a luncheon recess was
                had and the case was reconvened.)

    THE COURT: Good morning, or good afternoon,
Mr. Anderson:

    MR. ANDERSON: Afternoon.

    THE COURT: Have you talked with your attorny at all,
sir?

        I don't know where he is.

    MR. ANDERSON: He was supposed to be here today.

    THE COURT: We have been waiting. We have had the
respective jurors up here at eleven forty-five and I had
them sitting and waiting and have called the number we
have and it's an answering machine but we haven't heard
anything.

        As soon as he comes we are ready to go. I
don't know what to tell you, okay.

    MR. ANDERSON: All right.

    THE COURT: Okay. Thank you.

                (Case passed and recalled.)

3

THE COURT: Okay. The People of the State of Illinois versus Tony Anderson.

The matter was set for trial today.

State, have you heard from Mr. Anderson's attorney?

MS. MEBANE: No, Your Honor, and I did in fact call him and leave a third message and that was an hour and a half ago.

THE COURT: I don't know what to tell you, Mr. Anderson. I'm going to hold this on until tomorrow.

That's all I can do.

State, I assume you indicated to your people to be available?

MS. MEBANE: That's correct. They will all be available.

THE COURT: I don't know what else we can do. Just hold on until tomorrow.

State, I don't know what else you can do but attempt to contact Mr. Hoffa and I believe Mr. Anderson's people are in the courtroom. I don't know where he is. I don't know what happened.

That's not right, you know. I mean we are not unreasonable but I feel at least we deserve a phone call or something to know what's going on.

MS. MEBANE: Your Honor, the State has prepared at this time a rule to show cause.

THE COURT: That's fine. We will consider that tomorrow.

You can bring it up with you tomorrow and we will consider the only appropriate action to be taken.

Thank you very much. That will be the order.

MS. MEBANE: Thank you, Your Honor.

(Whereupon the matter was continued to August 6, 1991.)

```
 1   STATE OF ILLINOIS   )
                         )  SS:
 2   COUNTY OF COOK      )

 3           IN THE CIRCUIT COURT OF COOK COUNTY
             COUNTY DEPARTMENT-CRIMINAL DIVISION
 4
     THE PEOPLE OF THE     )
 5   STATE OF ILLINOIS     )  Case No. 90 11979-83
                           )            90 11986-91
 6              -          )            90 66048
                           )  Before: JUDGE THEMIS N.
 7          vs             )                  KARNEZIS
                           )  August 6, 1991
 8   TONY ANDERSON         )

 9                     CONTINUANCE

10   RECORD OF PROCEEDINGS had in the hearing of the

11   above-entitled cause.

12   APPEARANCES:

13              HON. JACK O'MALLEY,
                     State's Attorney of Cook County, by
14         MS. ADRIENNE MEBANE,
                     Assistant State's Attorney,
15                   appeared on behalf of the People of
                     the State of Illinois;
16
           MR. RANDOLPH N. STONE,
17                   Public Defender of Cook County, by
           MR. JEFFREY GINSBURG,
18                   Assistant Public Defender,
                     appeared on behalf of the Defendant.
19

20
     ROCHINA V. CHOLEWA
21   Official Court Reporter
     2650 S. California
22   Chicago, Illinois 60608

23

24
```

1



| | LIST OF WITNESSES | DX | CX | RDX | RCX | RDX |
|---|---|---|---|---|---|---|
| 1 | | | | | | |
| 2 | continuance------------------------------------------3 | | | | | |
| 3 | | | | | | |
| 4 | | | | | | |
| 5 | | | | | | |
| 6 | | | | | | |
| 7 | | | | | | |
| 8 | | | | | | |
| 9 | | | | | | |
| 10 | | | | | | |
| 11 | | | | | | |
| 12 | | | | | | |
| 13 | | | | | | |
| 14 | | | | | | |
| 15 | | | | | | |
| 16 | | | | | | |
| 17 | | | | | | |
| 18 | | | | | | |
| 19 | | | | | | |
| 20 | | | | | | |
| 21 | | | | | | |
| 22 | | | | | | |
| 23 | | | | | | |
| 24 | | | | | | |

1    THE COURT:  Tony Anderson, please.

2              How are you doing, Mr. Anderson?  Did

3    you by any chance speak with your attorney.

4        DEFENDANT ANDERSON:  My wife supposedly got in

5    touch with him yesterday.

6        THE COURT:  And?

7        DEFENDANT ANDERSON:  He should be here today.

8        THE COURT:  Very good.  What we are going --

9    State, have you talked with Mr. Hoffa?

10       MS. MEBANE:  No, your Honor.

11       THE COURT:  Bench warrant.  Prepare it right

12   now.

13             I want people out on the street

14   yesterday to get him.  I want him here.

15       MS. MEBANE:  Yes, your Honor.

16       THE COURT:  Prepare a bench warrant.

17

18             *    *    *    *    *    *

19

20       THE COURT:  Bring out Mr. Anderson, please.

21             Okay, Mr. Anderson.  I don't know

22   what to say.  I just, I am at a loss as to what to

23   do.

24             I have asked Mr. Ginsburg to ask your

1    family if they have talked with him and they have

2    advised Mr. Ginsburg that they spoke with him on

3    Thursday but have not spoken with him since.

4                    They have made numerous calls and we

5    have.

6                    Now you know I have -- I don't know

7    what to do.  I am just -- The only thing I can do is

8    just hold it on day to day.  That is all I can do

9    until we get him in here.

10                    We will just hold it on, hold it on

11   to tomorrow, 8/7/'91 as to all matters.

12                    I will make it Order of Court.  The

13   record is clear there is no problem with the term in

14   this case.  8/7/'91.

15                    Hold on one second.  Please bring him

16   back out here.  Bring out Mr. Anderson; back out.

17                    Mr. Anderson, I don't know, you know,

18   I didn't allow you a chance to say anything.

19                    About the only thing that I can think

20   of doing is to recall Mr. Heenan and put him back

21   into the case.  I mean he is at least very familiar

22   with all your cases.

23                    Now I don't know what your view or

24   your feeling is about that.

4

1    DEFENDANT ANDERSON: Well I would like to have a
2  few more days to get in touch with him because this
3  is wrong with what he is doing.
4    THE COURT:  To get in touch with Mr. Hoffa?
5    DEFENDANT ANDERSON:  Right.
6    THE COURT:  Okay.  You know, I don't know what
7  else I can say.
8           Okay.  We will see how it goes.  We
9  are trying very hard to get in touch with him, too;
10  okay.
11    DEFENDANT ANDERSON: Uh-hum.
12    THE COURT:  Okay.  We will wait a couple days, I
13  guess.  Maybe tomorrow, 8/7 as to all of them, the
14  six that will be the order.
15           (Which were all the proceedings had
16              at the hearing of the above-entitled
17              cause. Case continued to 8/7/'92.)
18
19
20
21
22
23
24

5

1

2

3   STATE OF ILLINOIS )
                       )    SS:
4   COUNTY OF COOK     )

5              I, ROCHINA V. CHOLEWA, Official

6   Court Reporter of the Circuit Court of Cook County,

7   County Department-Criminal Division, do hereby

8   certify that I reported in shorthand the proceedings

9   had in the above-entitled cause, that I thereafter

10  caused to be transcribed into typewriting the above

11  Report of Proceedings which I hereby certify is a

12  true and correct transcript of the proceedings had

13  before the Honorable THEMIS N. KARNEZIS, Judge of

14  said Court.

15

16

17              Official Court Reporter of the

18              Circuit Court of Cook County

19

20

21

22

23

24

6

1   DATE OF HEARING:   August 7, 1991

2   PAGE NUMBERS:  1 to 12

3

4   LIST OF WITNESSES       DX    CX    RDX    RCX    RDX

5   Continuance------------------------------------------3

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

2

1      THE COURT: Mr. Tony Anderson.

2          Please have a seat, Mr. Anderson.

3          This matter comes on call having been held

4  on call from day to day, set for trial on Monday.

5          There was no appearance by Mr. Hoffa, Mr.

6  Anderson's attorney.

7          We held it on to Tuesday. Once again there

8  is no appearance by Mr. Hoffa and I might indicate

9  also no phone calls or no communications from Mr.

10  Hoffa, at least to me.

11          It is my understanding that there was some

12  communication with someone yesterday by Assistant

13  State's Attorney Mebane.

14          Is that correct, Miss Mebane?

15  MS. MEBANE: That is correct.

16  THE COURT: Would you please advise the court as

17  to the nature of that communication?

18  MS. MEBANE: Your Honor, I talked with Mr. Jim

19  Mahoney, who is the next door neighbor of Thomas

20  Hoffa, the attorney in the Anderson case.

21          He informed me that Thomas Hoffa was using

22  his telephone and Thomas Hoffa did not have a

23  telephone.

24          He originally indicated to me when I first

1  called Mr. Hoffa was out of his apartment.

2          I left a message for him to give to Mr.

3  Hoffa.  He did later come back or called me back and

4  he indicated on his second call  that Mr. Hoffa had

5  some injuries and that his face was swollen and

6  there was some bruises on his face and that he

7  believed him to be sedated and unable to appear  in

8  court.

9          Mr. Mahoney indicated to me at that time

10  that he would make every effort to appear in court

11  today with Mr. Hoffa.

12          Since then I have had some further

13  conversations with Mr. Mahoney on today's date.

14      THE COURT:  Would you please advise the Court as

15  to the nature of those communications?

16      MS. NEBANE:  Mr. Mahoney called me and he

17  indicated that our investigator was there.

18          I also spoke with Mr. Mahoney's wife who

19  indicated our investigator was in fact there in Mr.

20  Hoffa's apartment.

21          I told them that if they would be kind

22  enough to let our investigator, let her use their

23  telephone I would like to speak with her.

24          I spoke with our investigator who indicated

4

1   Mr. Hoffa was in his apartment; he did have a gash

2   in the side of his head, he did have bruises and

3   swelling to his face, that he was intoxicated, that

4   he was disoriented, and that he was unable to move

5   or walk.

6            She did indicate to me that she also had

7   called an ambulance to take Mr. Hoffa to the

8   hospital.

9        THE COURT:  Okay.  When was that communication?

10

11       MS. MEBANE:  Your Honor, that communication was

12   approximately forty-five minutes ago; about 10:15

13   A.M..

14       THE COURT:  So to the best of your knowledge Mr.

15   Hoffa is going to be taken to a hospital?

16       MS. MEBANE:  That is correct, your Honor.

17       THE COURT:  Did your investigator indicate

18   whether his inability to move about was due to a

19   physical injury or was she -- did she not know?

20       MS. MEBANE:  Your Honor, she was not sure, but

21   she did believe it was due to the intoxication

22   because he was oriented.  She was not able to

23   ascertain the extent of his injuries.

24       THE COURT:  Okay.

1    I wanted to do all of this in open court,

2    Mr. Anderson, with you present, and to make you

3    aware that we -- we, meaning myself-- I have had

4    communication with Mr. Hoffa -- no communications

5    with Mr. Hoffa. I did not talk with him.

6    I did this morning speak very briefly with

7    Mr. Mahoney, who apparently is a neighbor and friend

8    of Mr. Hoffa's.

9    He indicated to me that Mr. Hoffa had

10   suffered some type of injury.

11   He did not know what the injury was; he did

12   not know how he had suffered the injury.

13   He indicated to me that Mr. Hoffa was

14   unable to come to court today.

15   I indicated that I wanted to talk to Mr.

16   Hoffa.

17   I don't know what to tell you, Mr.

18   Anderson.

19   It would be this Court's opinions, and it

20   is just my opinion, that Mr. Hoffa is not now nor

21   will he be in the near future in a position to

22   represent you in this case.

23   I am-- So you know, I am very hesitant to,

24   you know, to get between, as it were, an attorney

6

1    and his client.  I don't know that that is really

2    my function.  But, I wanted you to be aware of a lot

3    more facts than we were aware of yesterday.

4         I believe yesterday one of your family

5    members indicated to the Assistant State's Attorneys

6    or the Assistant Public Defender their last

7    communication with Mr. Hoffa was Thursday of last

8    week.  So, almost a week ago.

9         I believe I also, and, Miss Mebane, can you

10   confirm this -- Well, did you not talk to Mr. Hoffa

11   on Friday?

12        MS. MEBANE:  I did speak with him last Friday.

13        THE COURT:  What did he indicate to you at that

14   time?

15        MS. MEBANE:  He told me that he had not heard

16   from his client as to whether or not he would be

17   pleading guilty; that he assumed it would be going

18   to trial and we should have the case ready.

19        I told him we would in fact be ready to try

20   the case.

21        THE COURT:  Well, I don't know what your

22   position is, Mr. Anderson.

23        DEFENDANT ANDERSON:  Give him a chance to get

24   here.

1       THE COURT: Give him a chance to get here?

2   Fine.

3           How about if I continue it for about a

4   year?

5           You don't care. Time is nothing. But it

6   sure is something to the Court.

7           We have a court here that we have to try

8   and work with and we have certain procedures and we

9   set aside certain days to have cases tried.

10          When somebody does not give us any

11  information and does not even show us the courtesy

12  of a call that disrupts the Court.

13          That means that there are days when I am

14  supposedly being paid and I am not working. That is

15  not right. That is not right to you as a person of

16  the State of Illinois or your family or the other

17  individuals who have cases pending in this

18  courtroom.

19          The only thing I can suggest is that when--

20  You want Mr. Hoffa to continue to represent you, Mr.

21  Anderson?

22      DEFENDANT ANDERSON: Yes.

23      THE COURT: Knowing everything you have heard?

24      DEFENDANT ANDERSON: Yes.

1   THE COURT: Very good. Friday, for an updated

2 report.

3     I am going to ask the State to follow up

4 with their investigator. The bench warrant is still

5 there.

6   MS. MEBANE: Yes, your Honor.

7     I told them to hold off.

8   THE COURT: Just hold off on that. We can do

9 that at any time. That is no problem. That is

10 easy.

11     That is an administrative, administerial

12 task that we can do at any time.

13   MR. DeGRAZIA: The paramedics seem to think he

14 will be there for a while.

15   THE COURT: Fine.

16     Yes, ma'am, your name?

17   MS. COLLINS: Diane Collins.

18     I would just like you to know that is my

19 brother, okay, and he hired Mr. Hoffa and we had no

20 idea that --

21   THE COURT: I am sure you didn't or you wouldn't

22 have hired him.

23   MS. COLLINS: So we are trying to see if he can

24 represent him still or give us enough time to get

1    someone else because we didn't know.

2         You know what I mean?

3    THE COURT: And, Miss Collins, I am not for a

4    minute, I mean you would have to be a little goofy

5    to retain somebody and for him not to come to court.

6    That is why you pay him.

7    MS. COLLINS: We didn't think he was unreliable

8    like that. We didn't know that.

9    THE COURT: I understand.

10        I am not for one minute indicating that is

11   the case.

12        We will continue it to Friday and wait to

13   hear what we can find out on Friday and hopefully on

14   Friday we can have some indication as to Mr. Hoffa's

15   condition and his availability.

16   MS. COLLINS: Okay. That is the only option

17   that he has.

18        I mean Friday, if he doesn't come what

19   other options would he have?

20   THE COURT: Who? Mr. Anderson?

21   MS. COLLINS: Yes.

22   THE COURT: Pick an option.

23   MS. COLLINS: I don't know. I am asking.

24   THE COURT: He can ask for another attorney. He

```
1    can ask for time to retain his own attorney.

2             He can request the Public Defender.

3             He can do just about anything.

4        MS. COLLINS:  Okay.

5        THE COURT:  But you understand my position and

6    the State's position?  They were ready to go.  All

7    their people were here.

8             I was ready.  The Court was free for at

9    least two days where we felt it might take two days

10   to try the case and we were available to try the

11   case; okay?

12       MS. COLLINS:  Okay.

13       THE COURT:  Friday.  All I can tell you is

14   Friday we will see where things stand.

15       MS. COLLINS:  Thank you.

16       THE COURT:  That will be order; 8/9/91.

17

18                    (Which were all the proceedings had

19                     at the hearing of the above-entitled

20                     cause.  Case continued to 8/9/91.)

21

22

23

24
```

11

# EXHIBIT 5



FILED

MAY 28 1992

AURELIA PUC...
CLERK OF THE CIRCUIT CO...
CRIMINAL DIVISION

1　　　　　　　　　IN THE CIRCUIT COURT OF COOK COUNTY
2　　　　　　　　　COUNTY DEPARTMENT-CRIMINAL DIVISION

3　　THE PEOPLE OF THE　　　　）
　　STATE OF ILLINOIS,　　　　）
4　　　　　　　　　　　　　　　）　CASE NO.　9Ø 11979
　　　　　　　　　　　　　　　　）
5　　　　　　　Plaintiff,　　 ）　Criminal
　　　　　　　　　　　　　　　　）
6　　　　vs.　　　　　　　　　 ）　Charge:　Murder
　　　　　　　　　　　　　　　　）
7　　TONY ANDERSON,　　　　　　）
　　　　　　　　　　　　　　　　）
8　　　　　　　Defendant.　　　 ）

9

10　　　　　　　　　　　　　CHANGE OF PLEA

11　　　　　　　REPORT OF PROCEEDINGS of the hearing had before

12　　the HONORABLE THEMIS N. KARNEZIS, Judge of said Court

13　　on the 9th day of August, A.D. 1991.

14　　　　　APPEARANCES:

15　　　　　　　　HONORABLE JACK O'MALLEY,
　　　　　　　　　　　State's Attorney of Cook County, by:
16
　　　　　　　　　　MS. ADRIENNE MEBANE,
17　　　　　　　　　Assistant State's Attorney,
　　　　　　　　　　for the People of the State of Illinois.
18
　　　　　　　　　　MR. THOMAS HOFFA,
19　　　　　　　　　for the Defendant.

20

21

22

23　　Shirley E. Thompson
　　　Official Court Reporter
24　　265Ø South California Ave.
　　　Chicago, Illinois 6Ø6Ø8

A1

```
 1              WHEREUPON the following proceedings were had,
 2   to-wit:
 3          THE CLERK:  The People of the State of Illinois
 4   versus Tony Anderson.
 5          THE COURT:  What are we doing, Mr. Hoffa?
 6          MR. HOFFA:  Your Honor, pursuant to our conference
 7   of July 26th and my conference with Mr. Anderson on July
 8   30th Mr. Anderson wishes to change his pleas from not
 9   guilty to guilty.
10          THE COURT:  You can have a seat over there.  I'm
11   going to need all these files.
12              Are these in any kind of order?
13          THE CLERK:  Yes, sir.
14          THE COURT:  Okay, let's see what we have here. I
15   need this one, this one, this one, --
16              Okay.  Mr. Anderson, I have before me numerous
17   files and we will go through those with you individually.
18              First, and I am going through them numerically
19   but that may not make sense chronologically.  Well, how
20   about if I do it chronologically?
21              I think you have -- I had a list
22   chronologically, didn't I?  Let me see.
23          MR. HOFFA:  Your Honor, on July 26th, I had --
24          THE COURT:  Yes.  That was your sheet, was that
```

A2

1    chronologically, Mr. Hoffa?

2         MR. HOFFA:  Yes, it was.

3         THE COURT:  Now, if I can find that.  I can't.

4              Well, let me do it this way.  Let me do it

5    according to what I have written up here.

6              First of all, case number 90 - 11989 which

7    states in pertinent parts as follows:

8              It states that on or about March 8th, 1990 at

9    and within the County of Cook you, Tony Anderson,

10   committed the offense of armed robbery in that you by the

11   use of force and by threatening the use of force while

12   armed with a dangerous weapon took United States currency

13   and food stamps from the person and presence Gloria

14   Honnecker (phonetic).

15             To that charge do you wish to enter a plea?

16        MR. ANDERSON:  Yes.

17        THE COURT:  Do you wish to enter a plea?

18        MR. ANDERSON:  Guilty.

19        THE COURT:  What is the plea?

20        MR. ANDERSON:  Guilty.

21        THE COURT:  Case number 90 - 11986 states in a

22   pertinent part as follows:

23             It states that on or about March 17th, 1990 at

24   and within the County of Cook you, Tony Anderson,

A3

1    committed the offense of attempt first degree murder in

2    that you without lawful justification with the intent to

3    commit the offense of first degree murder intentionally

4    and knowingly attempted to kill Jerome Wright by shooting

5    him in the body with a handgun.

6            To that count of that indictment do you wish

7    to enter a plea?

8        MR. ANDERSON:  Yes, guilty.

9        THE COURT:  Also count two of that -- what's the

10   State's position?  There's also charges of -- there's also

11   a count of armed robbery in that one?

12       MS. MEBANE:  Your Honor, as to the remaining charges

13   the State would nolle.

14       THE COURT:  Very good.  Thank you.

15           Next is 90 - 11988 which states that on or

16   about March 23rd, 1990 at and within the County of Cook

17   you committed the offense of armed robbery in that you by

18   the use of force or by threatening the imminent use of

19   force took, while armed with a dangerous weapon, took

20   United States currency from the person and presence of

21   Marva Hill (phonetic).

22           To that count of that indictment do you wish to

23   enter a plea?

24       MR. ANDERSON:  Guilty.

A4

1    THE COURT: Okay. Likewise as to the remaining

2  counts of that indictment, State?

3    MS. MEBANE: Your Honor, as to the remaining counts

4  the State would nolle´.

5    THE COURT: Very good.

6    MS. MEBANE: There is a armed robbery and I believe

7  there´s two victims there.

8    THE COURT: Okay, as to Count Two we will go through

9  that one also.

10    Count Two states that on that same date you

11  committed that same offense in that you by the use of

12  force or by threatening the imminent use of force while

13  armed with a dangerous weapon you took United States

14  currency from the person and presence of Michelle Huerta,

15  H-U-E-R-T-A.

16    To that count do you wish to enter a plea?

17    MR. ANDERSON: Guilty, Your Honor.

18    THE COURT: Thank you.

19    In case number 90 11980 which states that on

20  or about March 30, 1990 at and within the County of Cook

21  you, Tony Anderson, committed the offense of armed robbery

22  in that you by the use of force or by threatening the

23  imminent use of force, while armed with a dangerous weapon

24  took United States currency and jewelry from the person

A5

1    and presence of Verget Brand, B-R-A-N-D.

2         To that count of that indictment, do you wish

3    to enter a plea?

4       MR. ANDERSON: Guilty.

5       THE COURT: Thank you.

6         What's the State's position as to the remaining

7    counts of that indictment.

8       MS. MEBANE: Your Honor, I have others here.

9         Your Honor, I believe Count One may be an

10   armed violence count.

11       THE COURT: Yes.

12        Count two is the armed robbery that I have just

13   read.

14       MS. MEBANE: Armed robbery as to a Demetrius Cephus?

15       THE COURT: Yes.

16       MS. MEBANE: And a third --

17       THE COURT: A third count as to Mattie Cephus.

18       MS. MEBANE: After that Your Honor, as to all other

19   counts the State would nolle pros.

20       THE COURT: Okay. As to those additional counts,

21   Mr. Anderson, those counts I just read would your plea be

22   the same?

23         Your plea as to those counts; as to the armed

24   robbery of Demetrius Cephus, C-E-P-H-U-S and Mattie,

A6

1    M-A-T-T-I-E, Cephus.

2           What is your plea as to those counts?

3      MR. ANDERSON:  Guilty.

4      THE COURT:  Thank you.

5          Next is 90 - 11979 which states that on or about

6    March 30 of 1990 at and within the County of Cook you,

7    Tony Anderson, committed the offense of first degree

8    murder in that you without lawful justification

9    intentionally and knowingly shot and killed Leonard Cox

10    with a gun.

11          To that count of that indictment do you wish to

12    enter a plea?

13      MR. ANDERSON:  Yes.  Guilty.

14      THE COURT:  In case number 90 - 11991 it states that

15    on or about April 4th, 1990 at and within the County of

16    Cook you, Tony Anderson, committed the offense of armed

17    robbery in that you by threatening the imminent use of

18    force and while armed with a dangerous weapon took United

19    States currency and jewelry from the person and presence

20    of Stephanie Carter.

21          To that count do you wish to enter a plea?

22      MR. ANDERSON:  Guilty.

23      THE COURT:  Also, the next count indicating the same

24    offense committed against an Anita Ford Gilliam, F-O-R-D

A7

1    G-I-L-L-I-A-M.

2            To that count do you wish to enter a plea?

3        MR. ANDERSON: Guilty.

4        THE COURT: Is that sufficient State or do you want

5    me to go through all of them?

6        MS. MEBANE: That's sufficient, Your Honor.

7        THE COURT: Very good.

8            That would be as to Counts two and three.

9            The next is Indictment number 90 - 11983 which

10   states that on or about April 7th, 1990 at and within the

11   County of Cook you, Tony Anderson, committed the offense

12   of attempt first degree murder in that you without lawful

13   justification and with the intent to commit the offense

14   of first degree murder intentionally and knowingly

15   attempted to kill Jeanette Lazzarotto, L-A-Z-Z-A-R-O-T-T-

16   O, by shooting her in the neck with a gun.

17           To that count of that indictment do you wish to

18   enter a plea?

19       MR. ANDERSON: Guilty.

20       THE COURT: In case 90 - 11987 it states that on or

21   about April 8th, 1990 at and within the County of Cook

22   you, Tony Anderson, together with another individual

23   committed the offense of armed robbery in that you and

24   each of you by the use of force and by threatening the

1    imminent use of force, while armed with a dangerous

2    weapon took jewelry and United States currency from the

3    person and presence of Lalit, L-A-L-I-T, Chheda, C-H-H-E-

4    D-A.

5            To that count of that indictment do you wish to

6    enter a plea?

7        MR. ANDERSON: Guilty.

8        THE COURT: In case 90 - 11990 which in it's

9    pertinent parts states that on or about April 15, 1990 at

10    and within the County of Cook you, Tony Anderson,

11    committed the offense of armed robbery in that you by the

12    use of force or by threatening the imminent use of force

13    while armed with a dangerous weapon took United States

14    currency from the person and presence of Caroline Byrd.

15            To that count of that indictment do you wish to

16    enter a plea?

17        MR. ANDERSON: Guilty.

18        THE COURT: In case number 90 C6 60648, -- I think

19    that may be an Information.

20        MS. MEBANE: It's an Information, Judge.

21        THE COURT: That's an Information, not an Indictment,

22    and that states in a pertinent part as follows:

23            It states that on or about April 17th, 1990 at

24    and within the County of Cook you, known in this case

1   anyway as Joseph McKenzie, committed the offense of armed

2   robbery in that you while armed with a dangerous weapon,

3   that is a .25 caliber semiautomatic pistol took Five

4   Hundred Thirty Dollars in United States currency from the

5   person and presence of Randy Stefani, S-T-E-F-A-N-I, by

6   the use of force or by threatening the imminent use of

7   force.

8           To that count of that Information do you wish to

9   enter a plea?

10      MR. ANDERSON: Yes. Guilty, Your Honor.

11      THE COURT: And finally, case number 90 - 11982.

12          That Indictment states in a pertinent part as

13  follows:

14          That on or about April 20, 1990 at and within

15  the County of Cook you, Tony Anderson, committed the

16  offense of attempt escape in that you while charged with

17  the felony of murder and with the intent to commit the

18  offense of escape took a substantial step toward the

19  commission of that escape, that is you attempted to

20  escape from the Chicago Police Department Central

21  Detention by physically and forcibly attempting to flee

22  from Central Detention when the door was open to admit

23  another prisoner.

24          To that count of that indictment do you wish to

A10

1    enter a plea?

2         MR. ANDERSON: Guilty.

3         THE COURT:  Before I accept your pleas of guilty in

4    these various matters I want to advise you of your rights

5    and attempt to determine if you understand them.

6              I have read the various counts of these various

7    indictments and/or informations to you.

8              Do you understand them?

9         MR. ANDERSON:  Yes.

10        THE COURT:  Do you understand that on a plea of

11   guilty to these counts of these indictments you could be

12   sentenced as follows:

13             As to the charge of first degree murder the

14   possible penalties are not less twenty nor more than sixty

15   years in the Illinois Department of Corrections or under

16   certain circumstances an extended term of not less than

17   sixty nor more than one hundred years in the Illinois

18   Department of Corrections.

19             As to the -- State, this is not a possible --

20   That was not a possible death penalty?

21        MS. MEBANE:  No, Your Honor.

22        THE COURT:  Okay.  All right.

23             As to the counts of the charges of armed

24   robbery, the penalty is -- strike that.

A11

1          Armed robbery and attempt murder, the possible

2   penalties on those charges are not less than six nor more

3   than thirty years in the Illinois Department of

4   Corrections or under circumstances an extended term of

5   not less than thirty nor more than sixty years.

6          Do you understand that?

7      MR. ANDERSON:  Yes.

8      THE COURT: As to the count of attempt escape, I

9   believe that is a Class -- would that be a Class Four?

10     MR. HOFFA:  Your Honor, that's a Class Three.

11     MS. MEBANE:  Class three.

12     THE COURT:  Class three.  You're correct.  The

13  possible penalties would be not less than two nor more

14  than five years or under certain circumstances an

15  extended term of not less than five nor more than ten

16  years.

17         On any of those cases you would be entitled

18  to good time credit of one day for each day served and

19  upon your release you would be subject to a period of

20  mandatory supervised release.

21         As to the Class X felonies I believe it is

22  a three year period of mandatory supervised release.

23  How about the first degree murder, is that also a three

24  years or is that four years?

A12

1        MR. HOFFA:   Three years.

2        THE COURT:  Three years mandatory supervised

3  release.  As to the Class Three felony a one year period

4  of mandatory supervised release.

5        Do you understand that?

6        MR. ANDERSON:  Yes.

7        THE COURT:  The only other possible penalty as to

8  the murder, attempt first degree and Class X, the other

9  Class Xs the armed robberies, would be a fine of up to

10  Ten Thousand Dollars.

11        As to the attempt escape the possible penalties

12  would also be probation or conditional discharge not to

13  exceed thirty months.  Periodic imprisonment not to

14  exceed eighteen months and a fine of up to Ten Thousand

15  Dollars.

16        Do you understand that?

17        MR. ANDERSON:  Yes.

18        THE COURT:  Do you understand that as to each of

19  these matters you have a right to plead not guilty?

20        MR. ANDERSON:  Yes.

21        THE COURT:  Do you understand that by pleading guilty

22  you are going to be giving up certain rights.  One of

23  those is your right to a jury trial.

24        Do you understand that?

A13

1      MR. ANDERSON: Yes.

2      THE COURT: And you know what a jury trial is, do you

3  not, Mr. Anderson?

4      MR. ANDERSON: No. Tell me what it is, Judge?

5      THE COURT: Okay. A jury trial is where twelve

6  people from the community sit in those chairs right in

7  front of you, that you're looking at right now and they

8  decide --

9      Well, what do you think they do, those twelve

10  people?

11      MR. ANDERSON: Decide if you're guilty.

12      THE COURT: After they hear all the evidence they

13  decide one way or the other, correct?

14      MR. ANDERSON: The evidence, yes.

15      THE COURT: Now, you understand that by pleading

16  guilty there will be no jury trial. Do you understand

17  that?

18      MR. ANDERSON: Yes.

19      THE COURT: There will be no bench trial where a

20  judge decides.

21      Do you understand that?

22      MR. ANDERSON: Yes.

23      THE COURT: Okay. Has he executed jury waivers,

24  counsel?

1    MR. HOFFA: Not yet, Your Honor.

2    THE COURT: Okay. Are you choosing to waive -- you

3    understand that by pleading guilty and continuing in that

4    plea or please there will be no jury trial, right?

5    MR. ANDERSON: Yes.

6    THE COURT: Okay. Now, are you, Mr. Anderson, giving

7    up your right to a jury trial?

8    MR. ANDERSON: Yes.

9    THE COURT: Okay. Will you please have him execute

10   jury waivers as to each matter then, counsel.

11   MR. HOFFA: Very well, Your Honor.

12   THE COURT: Okay. We should have the blanks

13   somewhere, blank jury waiver forms.

14   THE CLERK: They are there up on that ledge.

15                    (Whereupon the Defendant executed

16                     jury waivers in open court.)

17   THE COURT: Mr. Anderson, we have before us waivers

18   of jury as to each of these matters signed by you in open

19   court before me. This is your wish, is that correct?

20   MR. ANDERSON: Yes.

21   THE COURT: Okay. Now, you understand that in

22   addition to giving up that right you're going to be giving

23   up some other rights.

24       You're going to be giving up your right to

A15

1   remain silent.  Your right to confront the witnesses

2   against you.  Your right to cross examine them.  Your

3   right to present evidence on your own behalf.  Your right

4   to object to unreasonable searches and seizures and your

5   right to object to identification testimony.

6           Do you understand that?

7           Yes?

8       MR. ANDERSON:  Yes.

9       THE COURT:  Okay.  In short there's not going to be

10  any trial whatsoever.  There's not going to be a jury

11  trial.  There's not going to be a bench trial.  No

12  witnesses are going to be called.

13          Do you understand that?

14      MR. ANDERSON:  Yes.

15      THE COURT:  Now, you are aware of the fact that --

16  well no, let me preface that.

17          Are you pleading guilty in each of these cases

18  freely and voluntarily?

19      MR. ANDERSON:  Yes.

20      THE COURT:  Has anybody threatened you in any way?

21      MR. ANDERSON:  No.

22      THE COURT:  Anybody forcing you to plead guilty?

23      MR. ANDERSON:  No.

24      THE COURT:  You are aware of the fact that there were

A16

1    some discussions, very lengthy discussions, between your

2    attorney, Mr. Hoffa, the assistant State's Attorney and

3    later I became involved in those discussions.

4           You understand that?

5    MR. ANDERSON: Yes.

6    THE COURT: At that time we discussed each and every

7    one of these cases. We discussed the facts in each case.

8    We discussed your background and it's no secret, which we

9    were somewhat familiar with and we discussed the total --

10   all of these cases and your background.

11          Do you understand that?

12   MR. ANDERSON: Yes.

13   THE COURT: And after those discussions the State

14   indicated that if you chose to plead guilty in these

15   matters that they would recommend a sentence as to the

16   murder of fifty years; as to the attempt first degree

17   murder and armed robbery counts a sentence of thirty

18   years and as to the attempt escape a sentence of five

19   years with all of those sentences to run concurrent or

20   together with each other but with that sentence of fifty

21   years to run -- and thirty years and all those to run

22   consecutive to sentences previously imposed in some other

23   cases.

24          Do you understand that?

A17

1     MR. ANDERSON: Yes.

2     THE COURT: Did anybody make you any other promises?

3     MR. ANDERSON: No.

4     THE COURT: Any threats?

5     MR. ANDERSON: No.

6     THE COURT: Now, State, if you wish you can make a

7     factual statement. If not I can make it from my notes

8     from the conference. Whichever you prefer.

9     MS. MEBANE: I´ll make it, Your Honor.

10    THE COURT: Go ahead.

11    MS. MEBANE: As to case number 90 11989 the State

12    would be proceeding on Count One, an armed robbery count.

13    The State would nolle all other counts.

14         The evidence would show that on the date of

15    March 8th, 1990 at four-twenty p.m. the Defendant before

16    the Court, Tony Anderson, entered a store located at

17    1008 East 76th Street in Chicago, Illinois, Cook County.

18         He initially entered the store, made a purchase.

19    After making the purchase he displayed a .25 caliber

20    handgun and announced a robbery.

21         Present in the store at that time was was one

22    Gloria Honecker who was working in that store. He

23    pointed that gun at Gloria Honecker, cocked the weapon and

24    demanded money. At that time he took One Hundred and

A18

1    Forty-nine Dollars United States currency and food stamps

2    and he left the area.

3           He was later arrested, Your Honor, and

4    identified in a lineup. The witnesses were present and

5    would also identify him in open court if the matter were

6    to go to trial.

7           Also, Your Honor, later after being advised of

8    his rights he made an oral admission to the incident that

9    occurred on March 8th, 1990.

10    THE COURT: As to that count of that indictment are

11    those the facts to which you are pleading guilty,

12    Mr. Anderson?

13    MR. ANDERSON: Yes.

14    THE COURT: Okay. Next, State.

15    MS. MEBANE: As to case number 90 11986 the State

16    proceeding on Count One of that particular charge, Count

17    One being an attempt first degree murder. The State is

18    nolle´ing all other counts.

19           The evidence would show that on the date of

20    March 17th, 1990 at four forty-three p.m. the Defendant

21    before the Court known as Tony Anderson, was at a location

22    of 7543 South Ingleside, Chicago, Cook County, Illinois.

23    That he was with another male at that particular time;

24    an unknown male black.

A19

1           That he at that time approached the victim in an

2   alley, the victim being Jerome Wright, who would identify

3   the Defendant in open court.  There were no other

4   witnesses present at the time.

5           Tony Anderson displayed a handgun, a ,25 caliber

6   handgun and shot the victim in the side.  As the victim

7   was attempting to leave from that location.  Tony Anderson

8   pursued him and shot him again in the stomach.  After

9   that, Your Honor, the Defendant then fled.

10          He was later apprehended.  At which time when he

11  was apprehended a .25 caliber handgun was, in fact,

12  recovered.  He was identified in a lineup by the witness

13  present at the time of this particular incident on the

14  date of March 17th, 1990.

15      THE COURT:  As to the facts -- as to that Count of

16  that Indictment, Mr. Anderson, are those the facts to

17  which you are pleading guilty?

18      MR. ANDERSON:  Yes.

19      THE COURT:  Next.

20      MS. MEBANE:  As to case number 90 - 11988 the State

21  proceeding in this particular case as to counts --

22      THE COURT:  I think it is two and three.

23      MS. MEBANE:  Two and three, correct, Your Honor.

24          Counts Two and Three, the State nolleing all

A20

1   other counts.

2          On the date of March 23rd of 1990 at six

3   o'clock p.m. the Defendant was at a location of 2928

4   East 87th Street in Chicago, Illinois, Cook County.

5          That he along with another male black entered

6   a Clark gas station at that particular location. Then he

7   displayed a handgun and announced a robbery. The gun he

8   displayed was a .25 caliber handgun;

9          That there were, in fact, a number of witnesses.

10   Present among those witnesses were Marvin Hill and a

11   Rochelle Huerta, H-U-E-R-T-A;

12          That those particular people, those two named

13   individuals worked at that Clark gas station;

14          That after he displayed the weapon he took Two

15   Hundred Dollars United States currency from the presence

16   of the individuals. They were then forced into a rear

17   room. Before he left he also took an amount of

18   cigarettes.

19          He was positively identified in a lineup by the

20   witnesses present at that particular time. The weapon

21   that was used was later recovered from the person or

22   presence of the Defendant on a later date.

23          All of the events occurred in Chicago, Illinois,

24   Cook County.

A21

1          The Defendant would, in fact, be identified in

2   open court by all of the witnesses.

3          THE COURT:  As to the facts -- as to those counts of

4   that indictment, Mr. Anderson, are those the facts to

5   which you are pleading guilty?

6          MR. ANDERSON:  Yes.

7          THE COURT:  Thank you.

8              Next?

9          MS. MEBANE:  As to case 90 - 11980, I believe that

10  is the next one, is that correct, Your Honor?

11         THE COURT:  Yes.

12         MS. MEBANE:  The State, Your Honor, would take a

13  plea as to Counts Two, Three and Four in that particular

14  case.

15         THE COURT:  Correct.

16         MS. MEBANE:  The State nolles all other counts.

17             On the date of March 30th, 1990 at approximately

18  twelve-thirty p.m. in Chicago, Illinois, Cook County at a

19  location of 6215 South Wabash the Defendant, Tony

20  Anderson, who would be identified in open court by all of

21  the State's witnesses, approached the victim. The victims

22  were Bert Ram, Mattie Cephus and Demetrius Cephus, C-E-P-

23  H-U-S.

24             He approached the individuals as they were about

A22

1  to enter their apartment. He placed a handgun to the

2  neck Bert Ram. He was then joined by a second male black

3  when they then forced their way into the apartment.

4        Once inside the apartment they made sure they

5  had all the occupants in one location. At that time they

6  took United States currency and jewelry belonging to the

7  occupants of the apartment and inquired as to the where-

8  abouts of Leonard Cott (phonetic).

9        The Defendant, Your Honor, on a later date was,

10 in fact, identified in a lineup by the witnesses present

11 at that particular time. He took from that location

12 approximately Two Hundred and Fifty Dollars currency and

13 miscellaneous jewelry.

14       He would be identified here in open court by

15 all the witnesses present at that time.

16     THE COURT: As to the facts of that case are those --

17 or to those counts of that indictment are those the facts

18 to which you are pleading guilty, Mr. Anderson?

19     MR. ANDERSON: Yes.

20     THE COURT: Thank you.

21     MS. MEBANE: Your Honor, I believe 90 11979 is the

22 next, is that correct?

23     THE COURT: Correct.

24     MS. MEBANE: Your Honor, as to that particular case

1    the State is proceeding as to Counts One and Two.  As to

2    all remaining counts, Your Honor, including another count

3    of murder the State would be making a motion to nolle

4    pros.

5          Your Honor, the evidence would show that on the

6    date of March 30th, 1990 in Chicago, Illinois, Cook

7    County, at the location of 7313 South Green, the Defendant

8    before the Court, Tony Anderson, was present at that

9    particular location.

10         That also present at that location with him

11    was another male black; that he and this other male black

12    went to the door of an apartment at the location of 7313

13    South Green which was open and faced one Leonard Cox,

14    the deceased in this particular case.

15         The Defendant who is before you at that time

16    displayed a handgun.  A .25 caliber black weapon.  He

17    stated to Leonard Cox, "Nobody move" and then fired two

18    shots from the gun striking the victim, Leonard Cox in

19    the left chest causing the victim's death.

20         There would be testimony from witnesses who were

21    present at the time of this incident, Your Honor, as to

22    what occurred.

23         They would also identify the Defendant, Tony

24    Anderson, in open court.

A24

1          Your Honor, in addition to that on the date of

2     April 18th, 1990 he was, in fact, arrested and found in

3     his possession and presence was, in fact, the same .25

4     caliber handgun used in this particular incident.

5          The Defendant, Your Honor, also on that

6     particular date -- strike that.  On the date of April

7     19th, 1990 was, in fact, identified in a lineup and after

8     being advised of his rights, Your Honor, he did admit to

9     participation in the robbery that involved this particular

10    victim and this event that occurred on that particular

11    date which, in fact, Your Honor, involved the death of

12    the victim in this particular case.

13        THE COURT:  As to that count of that indictment are

14    those the facts to which you are pleading guilty,

15    Mr. Anderson?

16        MR. ANDERSON:  Yes.

17        THE COURT:  Next.

18        MS. MEBANE:  As to case number 90 - 11991 the State

19    would call to testify in that particular case a number of

20    witnesses, Your Honor, and the testimony of those

21    witnesses would be that on the date of April 4th, 1990 at

22    approximately seven oh five p.m. at the location at 1855

23    East 87th Street the Defendant in this courtroom,

24    Mr. Tony Anderson, entered the premises of Allison's

1  Beauty Salon along with another male black under the
2  pretense of purchasing some items.
3          At that particular time the Defendant looked
4  around the store and observed patrons in the store; that
5  after approximately five minutes he displayed a .25
6  caliber black handgun. He announced that it was a
7  robbery. He made all of the individuals who were in the
8  store lay down on the ground at which point in time he
9  took from all of those individuals the jewelry they had on
10  their persons.
11          He also took various amounts of United State
12  currency from those individuals He also, Your Honor,
13  after placing a gun to the head of one Amazon Smiley, the
14  owner of that particular establishment, he had her open
15  the safe and did, in fact, take various amounts of money
16  from that safe at that particular time.
17          Your Honor, I should indicate is, in fact,
18  proceeding as to, as I believe we earlier indicated,
19  Counts Two and Three of this particular case. The State
20  is nolleing all other counts.
21      THE COURT: Thank you.
22      MS. MEBANE: Your Honor, the Defendant and his
23  codefendant at that time did, in fact, flee. He was, in
24  fact, later apprehended, Your Honor, and recovered from

A26

1    his presence was a .25 caliber handgun used in this

2    particular incident.

3            In addition to that, Your Honor, he was, in

4    fact, identified in a lineup by eight of the individuals.

5    One of those identifications, Your Honor, being a

6    tentative identification.  The other seven identifications

7    being positive identifications as to this Defendant's

8    participation in that particular act.

9            In addition to that, Your Honor, after being

10   advised of his rights he, in fact, made a statement that

11   he was, in fact, involved in this incident as to those

12   counts.

13       THE COURT:  As to those counts of that indictment,

14   Mr. Anderson, are those the facts to which you are

15   pleading guilty?

16       MR. ANDERSON:  Yes.

17       MS. MEBANE:  As to the next case, number 90 11983

18   the State is proceeding as to --

19       THE COURT:  I think it is Count One.

20       MS. MEBANE:  Count One of that particular indictment

21   and the State is nolleing all others.

22            On the date of April 7th, 1990 at approximately

23   two-forty p.m. at a location of 8658 South Ashland the

24   Defendant before the Court was, in fact, present in that

A27

1    location being in Chicago, Illinois, Cook County;

2          That present at that location which is known as

3    Pot-O-Gold Liquors with another male black entered that

4    particular establishment on that date.  Walked up the

5    counter pretending to make a purchase.  At this time the

6    Defendant before the Court produced a small black handgun,

7    .25 caliber; strike that.

8          That the accomplice produced a small black

9    handgun and requested that the person operating the store

10    tender to him a certain amount of money;

11          That when she refused the Defendant produced a

12    second small handgun; small caliber handgun, and

13    approached the victim at the time and at that particular

14    time, while his codefendant was, in fact, struggling with

15    that victim, that being one Jeanette L-A-Z-A-R-O-T-T-O,

16    shot her in the back of the neck with that particular gun

17    causing great bodily injury to her.  Causing her to be

18    hospitalized for approximately a period of eight days,

19    Your Honor.

20          The Defendant would, in fact, be identified in

21    open court by the witnesses present at the time of this

22    particular offense.

23    THE COURT:  As to that count of that indictment are

24    those the fact to which you are pleading, Mr. Anderson?

A28

1    MR. ANDERSON: Yes.

2    MS. MEBANE: As to case number 90 - 11987 the State

3    is proceeding as to Count Two of that particular

4    indictment. The State nolleing all other charges.

5    On the date of April 8th, 1990 at approximately

6    five-twenty p.m. at a location of 1358 West 95th Street

7    in Chicago, Illinois, Cook County, the Defendant before

8    the Court, Tony Anderson, along with one Robert Allen

9    entered a store at that particular location. That

10   employee working in that store at that time was an

11   Al Chheda and a Gaysene Henderson, C-H-H-E-D-A, and

12   Gaysene is G-A-Y-S-E-N-E.

13   That at that particular time they walked around

14   the store and pretended as if they were making a

15   purchase. At first they approached Gaysene and took

16   from the register where she was working United States

17   currency. They prior to that produced a handgun. The

18   Defendant before the Court produced a small black

19   handgun. He and the codefendant also, both of them,

20   Your Honor, produced handguns while in the store.

21   The victims were, if fact, taken to the back

22   room where he was told to remain until he and the

23   Defendant's partner left; that there was also money

24   taken from the second cash register; that one being

A29

1   operated by Gaysene Henderson.

2          Both Defendants displayed weapons at that time

3   and took United States currency from the registers.

4          The Defendant before the Court was positively

5   identified in a lineup by Mr. Chheda and the Defendant,

6   after having been advised of his rights, did admit to his

7   participation in this particular crime.

8      THE COURT:  As to those counts of that indictment are

9   those the facts to which you are pleading guilty,

10  Mr. Anderson?

11     MR. ANDERSON:  Yes.

12     MS. MEBANE:  As to case number 90 - 11990, as to

13  that particular indictment the State is proceeding as

14  to Count One.

15         On the date of April 13th, 1990 at three-

16  nineteen p.m. at a location of 11127 South Halsted in

17  Chicago, Illinois, Cook County, this Defendant before

18  the Court, Tony Anderson, that he along with another male

19  black entered the liquor store at that particular

20  location;

21         That a .25 caliber black handgun was displayed

22  and that a robbery was announced.

23         The victim in this case was forced to the rear

24  of the store where the victim was threatened and searched.

A30

1    The Defendant at that time forced the victim into the

2    bathroom and began to tear away her clothes.  A customer

3    entered the store and the offenders fled taking with them

4    approximately Four Hundred Dollars United States currency

5    and miscellaneous jewelry.

6          On a later date, Your Honor, the Defendant was

7    identified in a lineup by all the witnesses who were

8    present.  He also after being advised of his rights made

9    an oral statement as to his involvement in this particular

10   robbery.

11         He would, in fact, be identified by all

12   witnesses present at the time of that particular robbery.

13      THE COURT:  As to that count of that indictment are

14   those the facts to which you are pleading guilty,

15  Mr. Anderson?

16      MR. ANDERSON:  Yes.

17      THE COURT:  Thank you.

18       Next.

19      MS. MEBANE:  As to case number 90 C6 60648, as to

20   that particular information, Your Honor, the State would

21   be proceeding as to Count One.

22      THE COURT:  It's Count One, isn't it?

23      MS. MEBANE:  That's correct, Your Honor.  The State

24   would be proceeding as to Count One.

A31

1    Your Honor, on the date of April 17th, 1990 at

2    approximately one-seventeen p.m. the Defendant before the

3    Court, Joseph McKinzie, also known as Tony Anderson, was

4    at a location of 1301 West 127th Street, Calumet Park,

5    Cook County, Illinois;

6    That on that particular date he along with a

7    codefendant along with another male black entered a Clark

8    gas station and displayed a handgun.

9    The particular Defendant before the Court

10   displayed a .25 caliber black small handgun.

11   He then took from the victim present at that

12   particular location, a Randy Stefani, S-T-E-F-A-N-I and

13   Steven Muranski, M-U-R-A-N-S-K-I, first he took them into

14   an office, Your Honor, and handcuffed them to a pipe while

15   his co-offender took money from the cash register and

16   safe.

17   On a later date, Your Honor, the Defendant was

18   apprehended. He did, in fact, after being advised of his

19   rights, make a verbal confession or admission to his

20   involvement in this particular incident.

21   He was also identified by all witnesses present

22   in a lineup on that particular date, Your Honor. He would

23   be identified in open court by all witnesses as to that

24   particular offense.

A32

1    THE COURT:  As to that count of that indictment are

2  those the facts to which you are pleading guilty, sir?

3    MR. ANDERSON:  Yes.

4    MS. MEBANE:  As to case number 90 11982 the State

5  would be proceeding as to Count One.  The State is

6  nolleing all other counts.

7    On the date of April 20th, 1990 at 307 a.m. at

8  location of 1121 South State Street, Chicago, Illinois,

9  Cook County, the Defendant before the Court, Tony

10  Anderson, was, in fact, present.  At that time he was in

11  custody and charged with a felony and being detained

12  awaiting charges -- awaiting a preliminary hearing on

13  those particular charges.

14    After he requested to make a phone call he was

15  removed from his cell and brought to a secured area of the

16  station.  As a prisoner was being brought into that

17  secured area this Defendant before the Court, Tony

18  Anderson, physically and forcibly tried to escape from

19  the secured area by trying to knock down and run past

20  a number of police officers in that particular area.

21    If all witnesses were called to testify they

22  would identify the Defendant in open court.  He was, in

23  fact, subdued by Chicago police Sergeant Cray.

24    All of the events occurred in Chicago, Illinois,

A33

1  Cook County.

2         As to each and every case he would be identified

3  in open court by all witnesses.

4     THE COURT:  As to that count of that indictment,

5  Mr. Anderson, are those the facts to which you are

6  pleading guilty?

7     MR. ANDERSON:  Yes.

8     THE COURT:  I believe that concludes as far as

9  the facts.

10        Now, Mr. Anderson, knowing and understanding

11 that there will be no trial, no witnesses will be called,

12 are you persisting in continuing in your pleas of guilty

13 to the various counts of these various indictments or

14 informations?

15    MR. ANDERSON:  Yes.

16    THE COURT:  The record will reflect that the

17 Defendant has been advised of the consequences of his

18 pleas of guilty and after being so advised he continues

19 in the same.

20        The pleas will therefore be accepted and there

21 will be a finding of guilty in the manner and form as

22 charged in each indictment and or information and there

23 will be judgement on the finding as to case numbers

24 90-11989, the count of armed robbery; 11986, count of

A34

1  attempt first degree murder; 11988, counts of armed

2  robbery; likewise as to 11980; as to 11979, first degree

3  murder; as to 11991, counts of armed robbery; as to 11983

4  to the count -- to the charge of attempt first degree

5  murder, 11987, the count of armed robbery; 11990, likewise

6  to armed robbery; as to 60648, likewise armed robbery and

7  11982 the count of attempt escape.

8      And as to each of those there will be a

9  judgement entered on the finding.

10     On a prior date we had ordered presentence

11  investigation in an unrelated matter.  Do both sides

12  agree that the presentence will stand as the presentence

13  investigation as to these matters?

14     MS. MEBANE:  State would agree, Your Honor.

15     MR. HOFFA:  The Defense would agree.

16     THE COURT:  Both sides ready in aggravation and

17  mitigation?

18     MS. MEBANE:  Yes, Your Honor.

19     THE COURT:  State?

20     MS. MEBANE:  The State would rely on the conference.

21     THE COURT:  Mr. Hoffa?

22     MR. HOFFA:  Your Honor, I would like to point out

23  to the Court in just a few words that I think that

24  Mr. Anderson recognizes the evidence that is arraigned

A35

1    against him by the State.  I think that he is penitent

2    for these crimes for which he was involved.

3         I've nothing further to say, Your Honor.

4    THE COURT:  Mr. Anderson, is there anything you would

5    like to say before this Court imposes sentence?

6    MR. ANDERSON:  No.

7    THE COURT:  I am sorry.

8    MR. ANDERSON:  No.

9    THE COURT:  Giving due consideration to the facts

10   of all of these cases, giving due consideration of all of

11   the other information presented to us both in aggravation

12   and mitigation during the conferences we feel that the

13   agreed dispositions are fair and reasonable.

14        We, therefore, sentence you as follows:

15        As to case number 90-11979 -- well, I might

16   precede that by saying this:

17        As to each of these sentences which I am now

18   going to state they will all be concurrent with each

19   other but each of them will be consecutive --

20   MS. MEBANE:  I have the numbers for you, Your Honor.

21        90 CR 11984, --

22   THE COURT:  And 85?

23   MS. MEBANE:  Yes.

24   THE COURT:  11985; consecutive to the sentences

A36

 1    previously imposed in those cases and those sentences

 2    will be as follows:

 3            90 11979, fifty years Illinois Department of

 4    Corrections.

 5            90 11980, 83, 86, 87, 88, 89, 90, 91 and

 6    66048, thirty years Illinois Department of Corrections

 7    and as to case number 90 11982, five years in the

 8    Illinois Department of Corrections.

 9            I want to advise you that you have a right to

10    appeal the decision of this Court.

11            In order to perfect that right you must file

12    within thirty days a written motion asking to have the

13    judgment of this Court vacated and set aside. If that

14    motion is granted your pleas will be vacated and a trial

15    will be set.

16            If you are indigent a free copy of the

17    transcript of these proceedings will be provided. Also

18    an attorney.

19            Any points not set out in the Motion to vacate

20    your pleas of guilty will be deemed waived.

21            Do you understand that, Mr. Anderson?

22        MR. ANDERSON: Yes.

23        THE COURT: The filing of a Motion to Vacate your

24    pleas of guilty is a precursor. It must be filed prior to

                            A37

1    you filing a Notice of Appeal in these matters.

2         Do you understand that?

3    MR. ANDERSON: Yes.

4    THE COURT: That will be the order. Thank you.

5         State, I'm going to respectfully suggest that

6    I'm going to get these mittimuses back unless we

7    specifically make them clear as to what we are doing

8    unless you can make them as clear as possible in your

9    pen letters.

10         (Conclusion of hearing.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

A38