# EXHIBIT D

TIRC summary of complaints made against Detective James Boylan

Complaint Source: CR 180833
Date of Incident: Nov. 20, 1990
Date Complaint Made: Dec. 03, 1990
Summary of Complaint: Rhonda Hampton, brother of murder suspect Millard Morrow, complained that Detectives Boylan and Michael McDermott, in the course of serving an arrest warrant on Morrow, stole $500 and jewelry during the arrest. The complaint was assigned to be investigated by Sgt. Thomas McKenna, a supervisor in the same unit as Boylan and McDermott. The detectives and other arresting officers denied the allegations and McKenna noted that family of Morrow had also filed CR 17799 against McDermott and Boylan after Morrow's last unrelated arrest. After Hampton declined to take a polygraph examination, McKenna classified the allegation as not sustained. (Note: CR 17799 was not among the Boylan complaints produced to TIRC).

Complaint Source: CR 182810
Date of Incident: March 6, 1991
Date Complaint Made: N/A
Summary of Complaint: Jenelle Simmons alleged Boylan, accompanied by his partner Det. Michael McDermott, improperly towed and impounded her car, called her a bitch and used other vulgarities in her presence. The complaint was assigned to be investigated by Sgt. Thomas McKenna, a supervisor in the same unit as Boylan and McDermott. Boylan denied using improper language, but acknowledged towing the car, as it had been identified by license plate as being used in a robbery. McDermott was exonerated of the improper tow allegation and the charge of swearing at the complainant was deemed not sustained.

Complaint Source: CR 185669
Date of Incident: July 12, 1991
Date Complaint Made: July 14, 1991
Summary of Complaint: Lovenia Moore alleged detectives Boylan, McDermott, George Basile and Jack Wilkins entered her apartment and searched it without a warrant after they learned her car had been used in an armed robbery. The complaint was assigned to be investigated by Sgt. Lawrence Augustine, a supervisor in the same unit as Boylan and McDermott. Detectives reported Moore invited them in and signed a consent-to-search form. Augustine reported when he questioned Moore, she "related that at no time did she protest or order the detectives to cease or order them from her home." The detectives were exonerated of the complaint.

Complaint Source: CR 186154
Date of Incident: July 31, 1991, 9:30 p.m.
Date Complaint made: August 1, 1991, 1:10 a.m.
Summary of Complaint: Police officer John L. Griffin, Sr. alleged that Boylan had fired his weapon at Griffin's son, John L. Griffin, Jr., after Boylan cut off Griffin Jr. in traffic and the two became involved in a road rage incident. Griffin, Jr. alleged that after he honked at Boylan for cutting him off on the Dan Ryan Expressway, Boylan began deliberately braking in front of him. Griffin Jr. admitted to pulling ahead of Boylan, grabbing a rock, and throwing it at Boylan's car. Both agree Boylan then pulled over and, when Griffin, Jr. drove by him, Boylan fired three shots at Griffin, Jr.'s car, striking it twice. Boylan contended Griffin, Jr. had not thrown a rock, but rather lifted his arms with a gun and fired twice at him, and that

Griffin, Jr. had swerved his car at him when he drove past. Boylan contended he saw a muzzle flash. After Boylan fired at Griffin, Jr., he returned to his car and chased Griffin, Jr., who exited the expressway and ditched his car at 98th and Michigan, running away to call his father, Griffin, Sr. Griffin Sr., rather than calling on-duty officers, arrived at the scene of the abandoned car and disarmed Boylan. Both agree Boylan produced his badge. As Griffin, Sr. was interacting with Boylan, Griffin, Jr. returned to the scene and broke a bottle over Boylan's head, knocking him unconscious momentarily. Griffin, Jr. maintained Boylan was fighting with his father; Boylan denied it. Griffin, Sr. maintained he did not see his son approaching with the bottle. Witnesses said they saw Griffin, Sr. either push or strike Boylan to keep him from getting back up. Griffin, Sr. filed a complaint with OPS because, he claimed, Area 2 fellow officers of Boylan were placed in charge of the investigation and did not follow proper procedure and detained Griffin, Sr. for 12 hours. He claimed that when Boylan's fellow detectives towed Boylan's car, it was undamaged, but after seizure had a hole in a headlight, which detectives attributed to Griffin, Jr. firing a pellet gun at Boylan (a pellet gun was found in Boylan Jr.'s trunk). He further alleged investigators should have criminally charged Boylan and, in violation of department policy, took no blood or urine samples from Boylan, who he alleged smelled of alcohol. An Internal Affairs investigator, Sgt. Robert Bokowski, acknowledged he cancelled a request for an evidence technician to administer a breathalyzer test on Boylan that night because he "found that Boylan had received [at Christ Hospital] stitches in his head and had been admitted to the hospital * * * because of possible internal injuries. The undersigned gave the E.T. a disregard *** [because] a Breathalyzer would be impossible to administer under the circumstances" because no portable Breathalyzer was available. Boylan's fellow detectives, Wilkins and Basile, filed reports attesting they "observed no indications that Detective Boylan was intoxicated or had been drinking."[1] However, during the course of treatment, hospital officials drew Boylan's blood, which later showed an alcohol content of 0.18 percent, above the legal intoxication limit. Griffin, Sr., was found to have brought an unregistered firearm to the incident. Investigators sustained against Boylan charges of "unlawful or unnecessary use or display of a weapon", "disrespect to or maltreatment of any person" for chasing Griffin, Jr., and intoxication. They also sustained charges against Griffin, Sr. of "disrespect to or maltreatment of any person" for pushing and kneeing Boylan to the ground, and "any action which impedes the Department's efforts to achieve its policy and goals or brings discredit upon the Department," for having an unregistered gun. Boylan received a 15-day suspension and Griffin, Sr. contested his 5-day suspension. It is not clear what punishment, if any, Griffin, Sr. received. Griffin, Jr. was charged with aggravated battery; it was not clear if he was convicted.

Complaint Source: CR 188744
Date of Incident: Nov. 13, 1991
Date of Complaint: Nov. 14, 1991
Summary of Complaint: Cersenia Blackburn alleged Boylan and detectives Michael Baker and Michael McDermott illegally entered her home without a search warrant to arrest her son, Anthony Holman, kicking in her door and then beating both her and her son, and continuing to abuse her son at the police station. Detectives claimed the entry was a legal "hot pursuit" entry of Holman, and that they used force only when Blackburn and Holman attacked them. Investigators deemed the charges not sustained.

---

[1] August 1, 1991, report by Detective Jack Wilkins. Basile's report likewise said he "did not notice anything relevant to intoxication on Boylan's part, nor did it appear as if he had been drinking."

Updated 8.10.2021

Complaint Source: CR 189861
Date of Incident: January 14, 1992
Date of Complaint: January 14, 1992
Summary of Complaint: Paulette Rodriguez, her brother Dwayne Williams and her mother Betty Williams alleged that Boylan and Det. Jack Wilkins struck Dwayne Williams without provocation. Boylan reported that they had gone to interview Dwayne Williams as a witness to a homicide and he first gave a false name, attempted to leave, and then struck Wilkins, and they used no more force than necessary to subdue him. Photographs of a mark to Wilkins' face were made part of the file. The charges against detectives were deemed unfounded.

Complaint Source: 92-CV-7186
Date of Incident: Unknown
Date of Lawsuit Filed: October 28, 1992
Summary: Northern District Court Docket records reflect a prisoner filed a pro se civil lawsuit against Detective McDermott and Boyland that was dismissed on May 27, 1993 as time-barred. Online records do not contain a copy of the complaint or other court documents.

Complaint Source: CR 198285
Date of Incident: January 27-28, 1993
Date of Complaint: January 28, 1993
Summary of Complaint: Yvonne Carroll alleged that Detectives Boylan and McDermott physically abused her juvenile son in that McDermott pushed her son's head against a radiator and Boylan slapped him in the face and stood on his ankles. She also alleged they didn't allow him to call his parents, nor did they provide him with a juvenile officer. The detectives denied any physical abuse and, after initially recommending the failure to provide a juvenile officer be sustained, the Office of Professional Standards revised its finding to "not sustained" after paperwork was produced showing a juvenile officer had been assigned.

Complaint Source: 200499
Date of Incident: May 11, 1993
Date of Complaint: May 12, 1993
Summary of Complaint: Sherry Adams alleged that Boylan used excessive force while serving a search warrant for another person. She alleged he grabbed her arm and held her against a door after she refused to let him search, but welcomed other officers. Boylan acknowledged pushing her aside when she tried to block his way, but denied grabbing her by the arm, as did several other officers. Because medical reports and photographs showed a five-fingertip bruise on Adams' arm, the Office of Professional Standards investigator recommended that a charge of lying to investigators be sustained against Boylan, but all other charges either be not sustained or deem him exonerated. It is not clear from reports submitted to TIRC if the lying charge was ultimately sustained or contested, or whether any discipline resulted.

Complaint Source: CR 201937
Date of Incident: July 11, 1993
Date of Complaint: July 12, 1993
Summary of Complaint: Robert Reed, an uninvited guest to a graduation party for Boylan's daughter at his home, alleged he was battered and ejected from the party and that he had seen drugs at the party. He additionally claimed he returned near the party and was shot at. Investigators responding found no

Updated 8.10.2021

sign of drugs at the party or bullets fired at the locations Reed mentioned. The charges lodged by Reed, a several-time convicted felon, were deemed unfounded.

Complaint Source: Judge's rulings in 93-CV-7481, 95-CV-6755
Date of Incident: December 12, 1992
Date of Lawsuit: December 10, 1993
Summary of Lawsuit: Roosevelt Lester was arrested December 12, 1992 for murder by two patrol officers and later acquitted. He brought a civil rights lawsuit alleging the two patrol officers arrested him without probable cause, and that Detective Boylan and his partner hadn't adequately investigated his alibi. All officers filed a motion to dismiss. Lester opposed the dismissal, but asked to withdraw the charges against Boylan and his partner. The judge dismissed the charges against Boylan and his partner for failure to prosecute, and denied the dismissal against the patrol officers. The judge later ruled for defendant officers on summary judgment. *See Lester v. Brown* and *Lester v. City of Chicago*, 1994 WL 702721 (N.D. Ill., Dec. 15, 1994); 889 F.Supp 1039 (N.D. Ill., April 26, 1995); 929 F.Supp. 291 (N.D. Ill, March 28,1 996); 950 F.Supp. 879 (N.D. Ill., Jan. 13, 1997)

Complaint Source: CR 206496
Date of Incident: January 27, 1994
Date of Complaint: January 28, 1994
Summary of Complaint: Michael Simpson, a witness to a murder scene, alleged Boylan slapped him when he would not say he saw the suspect in a store, but only outside the store. He alleged Boylan squeezed his Adam's apple, punched him in the stomach and threatened to beat him all night unless he cooperated. Eventually, Simpson agreed he had seen the suspect inside the store. Boylan and his fellow interrogating detectives, McDermott and Wilkins, denied any use of threats or abuse. The charges were deemed unfounded or not sustained.

Complaint Source: CR 209322
Date of Incident: June 1, 1994
Date of Complaint: June 1, 1994
Summary of Complaint: Lloyd Adams alleged that Boylan, Sgt. Lawrence Augustine, Det. Michael Baker and Det. Michael McDermott arrived at his house and that Boylan ordered him at gunpoint to open the door. He also alleged the detectives searched the house without a warrant. The allegations were investigated by Sgt. Richard Kobel, who belonged to the same unit as the accused. The warrant allegation was deemed unfounded, because a valid warrant existed. Detectives denied anyone had drawn a weapon and said they were admitted voluntarily. The gun allegation was deemed not sustained.

Complaint Source: CR216799
Date of Incident: April 3, 1995
Date of Complaint: April 5, 1995
Summary of Complaint: James Webb alleged that when he went to Area 2 to inquire about the arrest of his brother, Det. Boylan stated "I don't give a fuck about nigger gang bangers" and used the word "fuck" repeatedly. The allegation was investigated by Sgt. Richard Kobel, who belonged to the same unit as the accused. Boylan denied using anything but professional language and Kobel reported that when he contacted Webb, Webb declined to pursue the allegation. The allegations were deemed unfounded.

Complaint Source: CR 220255
Date of Incident: August 17, 1995

Updated 8.10.2021

Date of Complaint: August 17, 1995
Summary of Complaint: Restaurant manager Daniel Abraham alleged that Boylan, while off-duty, punched him in the face after he let Boylan's daughter off work early due to a lack of business. Boylan and his daughter reported that the manager had sworn at the daughter and made sexually suggestive comments to her, and Boylan confronted him. When the manager denied any such comments, the daughter asserted them again, and the manager pushed her. Boylan stepped between them, pushing the manager back, and the manager appeared to be preparing to punch Boylan, so he punched the manager, left, and reported a battery on his daughter. When OPS investigators contacted Abraham, he stated he no longer wished to pursue his complaint. The charges were deemed not sustained.

Complaint Source: CR 223280
Date of Incident: Dec. 14, 1995
Date of Complaint: Dec. 15, 1995
Summary of Complaint: William Coddens alleged that Boylan cut him off in traffic, stopped several times abruptly in front of him and then threatened him with his gun, placing it against his forehead. Boylan reported that he simply merged at a construction site and Coddens began tailgating him until Boylan stopped behind a bus. Coddens got out with a pipe wrench and approached his car, so Boylan announced his office and pulled his gun, ordering him to drop the wrench, which Coddens did. Coddens acknowledging producing the wrench "for protection," but said he did so only after Boylan exited his car first and reached into his jacket for something unknown. A passenger in Coddens' van corroborated Coddens' account. The allegations against Boylan were deemed not sustained, and Coddens was charged with aggravated assault.

Complaint Source: CR 234042
Date of Incident: January 26, 1997
Date of Complaint: January 28, 1997
Summary of Complaint: An anonymous caller reported to DCFS that Boylan had kicked and punched Boylan's 16-year-old son. Youth officers visited the son and his siblings who showed no signs of abuse and reported Boylan had not hit the son that day or any sibling ever. The charges were deemed unfounded.

Complaint Source: CR 234715
Date of Incident: Feb. 19, 1997
Date of Complaint: Feb. 20, 1997
Summary of Complaint: Simuel Hall and other residents of a home in Lansing alleged that four or more detectives searched their home for a murder suspect and $13,000 in cash was discovered missing after they left. The complainants named four detectives by name, including Boylan. It was later determined that two of the accused detectives were not even present at the warrant-authorized search. The charges were deemed unfounded or not sustained.

Complaint Source: CR 240344
Date of Incident: August 25, 1997
Date of Complaint: September 26, 1997
Summary of Complaint: David Kaiser complained Boylan was driving negligently and erratically, trying to pass on the right, so he attempted to block Boylan from passing. When Boylan did pass, Kaiser acknowledged, he threw golf tees at Boylan's car. Boylan then blocked Kaiser's car with his car and got out. The two dispute whether Boylan showed a badge, but Kaiser then began wrestling with Boylan and choking Boylan with his tie. When Boylan identified himself as a police officer, Kaiser let go and waited

Updated 8.10.2021

to be arrested by police. The allegation was investigated by Sgt. Ronald Palmer, of the same unit as Boylan. Palmer spoke with witnesses from three nearby Beverly businesses who painted Kaiser as the aggressor. The allegations were deemed not sustained and unfounded.

Complaint Source: CR 244066
Date of Incident: March 15, 1998
Date of Complaint:
Summary of Complaint: Elaine Lee alleged that Boylan and other detectives improperly searched her home without a warrant, used abusive language, threatened to kill her son when they found him, and improperly took a registered gun during the search. The allegations were investigated by Sgt. Stanley Zaborac, assigned to the same unit as one of the accused detectives, Daniel Brannigan. It was determined that the detectives had a valid arrest warrant and that the gun seized had actually been reported stolen from the son's uncle. The investigation exonerated detectives on some charges and deemed other allegations unfounded or not sustained.

Complaint Source: CR 270234
Date of Incident: March 30, 2001
Date of Complaint: March 30, 2001
Summary of Complaint: Chicago Police Officer Daryl Hudson alleged that Boylan, a sergeant, put false information into a report about a reprimand Boylan gave him. Other officers and supervisors gave differing accounts as to what occurred to trigger the reprimand, and the allegations were deemed unfounded.

Complaint Source: CR 282873
Date of Incident: July 29, 2002
Date of Complaint: August 1, 2002
Summary of Complaint: Martin Logan alleged that after police (including Boylan) arrested him, they refused to let him secure his apartment and it was subsequently burglarized. The incident was investigated by Lt. James O'Connell, of the same unit as Boylan and other accused officers. He interviewed building security for the residential building where complainant was arrested, and they reported they secured the complainant's door with a key and even pushed on it to assure it was locked before Logan was taken away. The officers were exonerated.

Complaint Source: CR 286096
Date of Incident: November 20, 2002
Date of Complaint: November 30, 2002
Summary of Complaint: An anonymous caller reported she had seen Boylan smoke marijuana on vacation. Boylan was drug tested upon his return to work December 4, 2002, and the results were negative. Boylan was exonerated.

Complaint Source: 290176
Date of Incident: June 17, 2003
Date of Complaint: June 17, 2003
Summary of Complaint: Herman Brantley alleged that Boylan punched him on the mouth, repeatedly struck him with a flashlight and struck him on the side of the head with a radio. Boylan and other officers reported they were investigating a call of shots fired and Boylan went to question Brantley when Brantley attacked him. Boylan acknowledged hitting Brantley in the side of the head with his radio in

Updated 8.10.2021

self-defense, but denied punching or using a flashlight. The investigation deemed Boylan exonerated on some charges, and found remaining allegations unfounded.