IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 08 CR 846 |
| v. | ) | |
| | ) | Hon. Joan H. Lefkow, |
| JON BURGE | ) | United States District Judge |
| | ) | |

**PETITION TO INTERVENE TO REQUEST GRAND JURY TRANSCRIPTS OF
GOVERNMENT WITNESS MICHAEL MCDERMOTT**

Dwayne Bruce, by and through his undersigned counsel and pursuant to Federal Rule of
Civil Procedure 24, respectfully moves to intervene in this matter in order to request that this
Honorable Court order the United States Attorney's Office to release transcripts of Detective
Michael McDermott's grand jury testimony in this matter. In support, Mr. Bruce states as follows:

**I.       BACKGROUND**

Former Chicago police detective Michael McDermott testified before a grand jury in this
matter. McDermott admitted to the physical abuse of a detainee and to perjury. That testimony is
directly relevant to Petitioner Dwayne Bruce's post-conviction claim, currently pending in state
court, that he is innocent and that his conviction is the product of McDermott's pattern of
mistreating detainees and witnesses and then perjuring himself.

Bruce was convicted of first-degree murder and armed robbery in connection with the 1993
shooting death of Tedrin West in Chicago. Ex. A, *People v. Bruce*, 2020 IL App (1st) 180515-U.
Bruce has always maintained that the evidence against him was false and fabricated by police
officers, including by McDermott.

In 2020, the Illinois Appellate Court ordered the Circuit Court of Cook County to conduct
a post-conviction evidentiary hearing on Bruce's actual innocence claim. *See* Ex. A. At that
hearing, Bruce will present evidence of his innocence, including that the evidence used against

him at trial was fabricated by Detective McDermott consistent with his pattern and practice of official misconduct. McDermott will be called to testify at the evidentiary hearing.

Following a demonstration of "good cause," the state post-conviction court granted Bruce leave to pursue certain discovery as to McDermott's pattern and practice of misconduct, including leave to petition this Court for the release of McDermott's grand jury testimony in this matter. Ex. B, Crim. Disposition Sheet, *People v. Bruce*, No. 95 CR 1212404 (Sept. 10, 2025).

In order to avoid a significant injustice in the state court proceedings, Bruce respectfully requests the release of McDermott's grand jury transcripts in this matter, subject to any protective order the Court deems appropriate. This Court has previously granted access to McDermott's grand jury transcripts to similarly-situated state post-conviction petitioners Keith Mitchell (dkt. 438), Ralph Harris (dkt. 445), Tony Anderson (dkt. 457), and Ebony Reynolds (dkt. 471).

## II.  MCDERMOTT'S GRAND JURY TRANSCRIPTS SHOULD BE DISCLOSED

Federal Rule of Criminal Procedure 6(e) provides for grand jury secrecy, but allows for the disclosure of grand jury materials in order to avoid possible injustice in another judicial proceeding. *See* Fed. R. Crim. P. 6(e).

> Rule 6(e)(3)(C)(i)(I) of the Federal Rules of Criminal Procedure provides that matters occurring before the grand jury may be disclosed 'when so directed by a court preliminarily or in connection with a judicial proceeding.' The rule allows motions for disclosure of grand jury matters after the conclusion of criminal proceedings to be filed in the district court where the grand jury convened— although disclosure is available only where the material is related directly to identifiable litigation, pending or anticipated, and the party requesting the information demonstrates a compelling need for the material.

*United States v. Campbell*, 294 F.3d 824, 827 (7th Cir. 2002) (citing *United States v. Baggot*, 463 U.S. 476, 480 n. 4 (1983); *Illinois v. Abbott & Associates, Inc.*, 460 U.S. 557, 564-67 & n. 9 (1983); *Douglas Oil Company of California v. Petrol Stops Northwest*, 441 U.S. 211, 222-25 (1979); *Dennis v. United States,* 384 U.S. 855, 870 (1966); *United States v. Puglia*, 8 F.3d 478, 480 (7th

2

Cir. 1993)) (emphasis removed). "[P]arties seeking disclosure of grand jury transcripts must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Matter of Grand Jury Proceedings, Special Sept., 1986*, 942 F.2d 1195, 1198 (7th Cir. 1991) (citing *Douglas Oil Co.*, 441 U.S. at 222). Mr. Bruce satisfies all three components of that standard.

### A.     The requested material is needed to avoid possible injustice

Mr. Bruce seeks McDermott's grand jury testimony to avoid an injustice in his state post-conviction proceedings. As noted, the grand jury testimony in this matter is the only known instance of McDermott admitting to abusing a detainee and lying about it under oath, failing to report misconduct by other officers, and lying to relevant police oversight bodies about the abuse he witnessed another officer, Jon Burge, commit. Disclosure of McDermott's grand jury testimony is necessary in order to allow Bruce to present evidence of McDermott's pattern of abuse and dishonesty, impeach him if he contradicts his grand jury testimony, and refresh his recollection if he claims not to remember his prior acts or testimony.

Illinois courts have consistently held that "evidence of systemic police misconduct is sufficient to support [a] defendant's claim of actual innocence." *People v. Tyler*, 2015 IL App (1st) 123470, ¶ 20. *See also People v. Patterson*, 192 Ill. 2d 93, 145 (2000) (Illinois Supreme Court decision ordering evidentiary hearing on claim of coerced confession for "trial court to determine whether (1) any of the officers who interrogated defendant may have participated in systemic and methodical interrogation abuse present at Area 2 and (2) those officers' credibility at the suppression hearing might have been impeached as a result."). Bruce intends to use McDermott's grand jury testimony at the evidentiary hearing for precisely that purpose, in addition to impeaching him and/or refreshing his recollection.

This Court has previously ruled that the grand jury transcripts "have to do with McDermott's interactions with Pinex," a detainee. Dkt. 438 at 3. The Court granted the request to release the grand jury transcripts because "further evidence of McDermott's misdeeds, which would bolster Mitchell's claim that his confession was coerced, is highly relevant and necessary to his success on his petition for post-conviction relief." *Id*. at 4. Similarly, Judge Feinerman of this District concluded that access to McDermott's grand jury transcripts was necessary to avoid a possible injustice where the transcript may be necessary to "impeach McDermott or refresh his recollection" and to "test his credibility," making the grand jury transcripts necessary "to avoid misleading the trier of fact" in the other matter. *Mitchell v. City of Chicago*, 18 C 7357, 2019 WL 3287844, at *2 (N.D. Ill. July 22, 2019) (quoting *Douglas Oil*, 441 U.S. at 222 n.1). This Court has also concluded that McDermott's grand jury testimony includes "admissions [that] go beyond information" that is otherwise publicly available. Dkt. 438 at 5. Bruce thus seeks access to McDermott's grand jury transcripts.

Bruce also seeks the transcripts of McDermott's grand jury testimony in order to impeach him should he deviate from that testimony, refuse to testify, or claim to lack a recollection of the events. Disclosure of grand jury matters is proper to assure the reliability of a witness's testimony and to refresh a witness's recollection. *See id*. at 5; *Lucas v. Turner*, 725 F.2d 1095, 1104-06 (7th Cir. 1984); *Williams v. O'Meara*, No. 82 C 278, 1987 WL 10305, at *2 (N.D. Ill. April 30, 1987).

Just like the prior petitioners that have come before this Court seeking release of the grand jury transcripts, Bruce seeks disclosure in order to present the state post-conviction court with relevant evidence and avoid a serious injustice. Ultimately, McDermott's credibility is among the most important issues that the state court will adjudicate. This Court has explained, in the analogous situation presented by Keith Mitchell, that McDermott's credibility "is a highly relevant

consideration, especially in light of the fact that McDermott has previously perjured himself and even gave testimony at the Burge trial that was inconsistent with his grand jury testimony." *Id*. The grand jury transcripts are necessary to avoid an injustice in Bruce's state court proceedings.

**B.      The need for disclosure is greater than the need for continued secrecy**

Bruce's need for the grand jury testimony greatly outweighs any need for continued secrecy. As this Court has previously explained, "[t]he need for grand jury secrecy is diminished once the grand jury has fulfilled its duties or when the criminal case is concluded." *Id*. at 6 (citing *U.S.* v. *Calabrese*, No. 06 CR 239, 2010 WL 3613973, at 5 (N.D. Ill. Sept. 8, 2010); *In re Petition of Moore*, No. 80 C 450, 1985 WL 2357, at 3 (N.D. Ill. Aug. 20, 1985)).

In Bruce's case, his need for the grand jury transcripts is substantial and the interest in maintaining their secrecy is slight. Bruce needs the transcripts to avoid an injustice as set forth above. On the other hand, "[t]he Burge trial has concluded; Burge was sentenced in January 2011, the Seventh Circuit affirmed his conviction, and the Supreme Court denied his petition for a writ of *certiorari*. The United States Attorney has already petitioned for grand jury material to be released to third parties in this case, and the court has granted those petitions." *Id*. at 7 (citations omitted). In addition, as noted above, the Court has ordered the transcripts released to the similarly-situated individuals. Dkts. 438, 445, 457, and 471. For these reasons, Bruce's substantial need for the grand jury material greatly outweighs any secrecy interests.

**C.      Bruce's request is structured to cover only the needed materials**

Bruce's request is not a fishing expedition into grand jury proceedings. Rather, Bruce seeks only McDermott's grand jury testimony—testimony the United States Attorney has previously petitioned to have released to other third parties and that this Court has previously determined to be relevant to similarly-situated state post-conviction petitioners. Dkts. 438, 445, 457, and 471. Moreover, Bruce has no objection to the entry of a protective order, so long as he is allowed to use

5

the disclosed material at the evidentiary hearing in his pending state court proceedings.

### D. This Court can and should grant this request

Bruce is aware that, in the most recent instance of a petitioner seeking access to the grand jury materials, the United States Attorney's Office took the position that the request was more appropriately brought before the Chief Judge rather than this Court in light of Local Rule of Criminal Procedure 6.1. Dkt. 468. In spite of that objection, this Court granted the request. Dkt. 471. Any argument from the Government that this motion should be filed before the Chief Judge would be meritless. Local Criminal Rule 6.1 specifies that "[t]he chief judge shall supervise the operations of the grand jury…." LCR 6.1. Local Criminal Rule 6.2, in turn, specifies that access to grand jury transcripts and other materials "maintained by the clerk … shall be available only on order of the chief judge." LCR 6.2. Bruce is not seeking any grand jury materials from the Clerk of this Court. Rather, as noted above, he is asking for the same relief this Court has entered multiple times already: an order directing the United States Attorney's Office to release McDermott's grand jury materials. This Court has the discretion to rule on this motion, as it has in the other instances cited above. *Carlson v. United States*, 837 F.3d 753, 763 (7th Cir. 2016) ("'wide discretion must be afforded to district court judges in evaluating whether disclosure is appropriate.'")(quoting *United States v. John Doe, Inc. I*, 481 U.S. 102, 116 (1987)). For the reasons cited above, Bruce respectfully requests that the Court grant this request.

## III. CONCLUSION

Dwayne Bruce has consistently alleged that Detective McDermott unlawfully coerced witnesses into incriminating him for a crime that he did not commit. He now has the opportunity to prove it at a hearing in state court. But to do so, he needs Detective McDermott's grand jury testimony. Bruce seeks the grand jury transcripts to avoid injustice, has set forth a particularized need that outweighs any secrecy concerns, and has made a discrete and limited request. Wherefore,

Mr. Bruce respectfully requests that this Honorable Court order the disclosure of McDermott's grand jury testimony.

Dated: October 7, 2025                     Respectfully submitted,

                                        /s/ Karl Leonard
                                      Karl Leonard
                                      THE EXONERATION PROJECT
                                          at the University of Chicago Law School
                                      311 N. Aberdeen Street, 3rd Floor
                                      Chicago, IL 60607
                                      (312) 789-4955
                                      Karl@exonerationproject.org

                                      *Attorney for Petitioner Dwayne Bruce*

## **CERTIFICATE OF SERVICE**

I, Karl Leonard, an attorney, hereby certify that on October 7, 2025, I caused the foregoing

Petition to be filed via the Court's CM/ECF system, which effected service on all counsel of record.

　　 /s/ Karl Leonard＿＿＿＿＿＿
Karl Leonard

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 08 CR 846 |
| v. | ) | |
| | ) | Hon. Joan H. Lefkow, |
| JON BURGE | ) | United States District Judge |
| | ) | |

## <u>EXHIBIT LIST</u>

*People v. Bruce*, 2020 IL App (1st) 180515-U (1st Dist. 2020)..................................Exhibit A

Crim. Disposition Sheet, *People v. Bruce*, No. 95 CR 1212404 (Sept. 10, 2025).......Exhibit B

# EXHIBIT A

Richardson, Megan 5/29/2024
For Educational Use Only

People v. Bruce, Not Reported in N.E. Rptr. (2020)

2020 IL App (1st) 180515-U

2020 IL App (1st) 180515-U

UNPUBLISHED OPINION. CHECK COURT RULES
BEFORE CITING.

NOTICE: This order was filed under Supreme Court Rule
23 and may not be cited as precedent by any party except
in the limited circumstances allowed under Rule 23(e)(1).

Appellate Court of Illinois, First District,
FIFTH DIVISION.

The PEOPLE of the State of
Illinois, Respondent-Appellee,
v.
Dwayne BRUCE, Petitioner-Appellant.

No. 1-18-0515
|
March 27, 2020

Appeal from the Circuit Court of Cook County. No. 95
CR 12124 (04), Honorable Vincent M. Gaughan, Judge,
presiding.

**ORDER**

JUSTICE DELORT delivered the judgment of the court.

*1  ¶ 1 **Held:** The circuit court correctly dismissed
petitioner's ineffective assistance of counsel claim at the
second stage, but erred in dismissing petitioner's claim of
actual innocence. Petitioner's request for remandment to a
different judge is denied. Reversed and remanded for a third-
stage evidentiary hearing on petitioner's actual innocence
claim.

¶ 2 Following a 1997 jury trial, petitioner Dwayne Bruce
was convicted of first-degree murder and armed robbery in
connection with the shooting death of Tedrin West. Following
denial of his direct appeal and initial postconviction petition,
petitioner filed two motions for leave to file successive
petitions and a supplemental petition. The circuit court
consolidated the successive and supplemental petitions and
granted the State's amended motion to dismiss the petitions.
Petitioner appeals, contending that he made a substantial
showing of actual innocence or alternatively, ineffective

assistance of counsel, and he asks that we remand this matter
for a third-stage evidentiary hearing before a different trial
judge. We reverse the judgment of the circuit court and
remand this matter for a third-stage hearing on petitioner's
actual innocence claim.

¶ 3 BACKGROUND

¶ 4 The facts adduced at trial were thoroughly set forth in
petitioner's direct appeal. See *Bruce*, 299 Ill. App. 3d 61.
Accordingly, we will limit our discussion only to those facts
pertinent to the issues raised here.

¶ 5 Trial and Previous Appeals

¶ 6 At trial, Robyn Cherry testified that, on the evening of
May 11, 1993, when she was 12 years old, she went to a
party in the Ida B. Wells housing project with her boyfriend,
Larry McGee (who also went by the names Mark Benton
and Dwayne Taylor). At that party, they met petitioner and
some other individuals, whose names were Kenny, Courtney
Donelson, Troy, and Robert Seals.

¶ 7 McGee suggested that they rob someone. The group
agreed to do so, and left in McGee's station wagon. Shortly
before 9 p.m., they saw a black Nissan Pathfinder being
driven by Tedrin West. The group followed West to a currency
exchange, and while West was inside, McGee hid behind
the car with a gun in his hand. When West got back in the
Pathfinder, McGee put the gun to the window. He ordered
West to take the keys out of the ignition and open the
door. West complied and then McGee, petitioner, and Robert
Seals got in the Pathfinder with West and drove off. Their
companions followed in the station wagon.

¶ 8 The Pathfinder went to three different houses. At each,
McGee called out to his associates in the station wagon
that West was "playing games." Then they drove to a
deserted street. McGee and petitioner, each armed, exited
the Pathfinder with the victim. Petitioner ordered West to lie
down on the ground and then shot him in the back of the head.

¶ 9 McGee showed the others jewelry taken from West.
Cherry testified that, among these items was a chain that she

Richardson, Megan 5/29/2024
For Educational Use Only

People v. Bruce, Not Reported in N.E. Rptr. (2020)

2020 IL App (1st) 180515-U

described as a "flip-flop." According to Cherry, petitioner displayed a gold ring with a diamond-encrusted six-point star as proceeds of the robbery.

*2 ¶ 10 The group then drove back toward the Dan Ryan Expressway in a "crazy" manner and running a stop sign while en route. Two police officers tried to stop the Pathfinder twice, but that vehicle sped away after the officers exited their squad car.

¶ 11 The police later found the Pathfinder abandoned on the side of the expressway with the door open and the motor running. They impounded the Pathfinder and notified West's father, in whose name the vehicle was titled.

¶ 12 After retrieving the Pathfinder, West's father called West's mother and informed her that the Pathfinder had been found abandoned. She tried to reach West on his pager and cell phone. Initially there was no answer, but eventually a man whom she did not recognize answered. When she asked where her son was, the man said, "He's gone." When she asked where her son went, the individual replied, "He's gone, bitch," and hung up. West's mother gave the police a photograph of her son, and they found his body soon afterwards. A .38-caliber bullet and bullet fragment was recovered from West's body.

¶ 13 The police examined West's cell phone records and noted that, after the time of the murder, calls had been made to two women, each of whom had a child with petitioner. A few weeks later, police officers pulled over petitioner when he ran a red light. McGee and two other individuals were passengers in the vehicle. The officers arrested the occupants and recovered a .38-caliber revolver from the car. This gun was of the same general type as that used to kill West.

¶ 14 Months later, in December 1994, petitioner was arrested in connection with West's murder. Petitioner at that time had in his possession a ring with a diamond-encrusted six-point star and a "flip flop" chain in his possession. Petitioner said that he had purchased the chain several months prior and the ring in 1989. Petitioner recalled purchasing the chain "on the street" but could not remember where he had purchased the ring. Chicago police detective Boylan testified that family members of West identified the ring as West's.

¶ 15 Cherry testified that McGee had sent her to stay with his sister in Iowa to prevent her from speaking to the police. Cherry, however, returned to Chicago about a year later and spoke to police. Cherry told police detectives about the events surrounding the murder and that petitioner shot West. She did not know petitioner's real name at that time but gave a physical description and an address. In exchange for reduced charges, she agreed to testify about this murder and an unrelated home invasion and murder.

¶ 16 During closing arguments, defense counsel argued that Cherry did not see anything and fabricated all her testimony, and that Seals told her "the whole story." The jury found petitioner guilty of armed robbery and first-degree murder. The circuit court sentenced petitioner to consecutive terms of 100 years [1] and 6 years for the first-degree murder and armed robbery convictions, respectively.

*3 ¶ 17 On direct appeal, petitioner contended that the circuit court erred in allowing the gun into evidence, erred in allowing the detectives' hearsay statements regarding the identification of the jewelry in petitioner's possession, and abused its discretion in imposing sentence. We rejected these contentions and affirmed petitioner's convictions and sentence. *People v. Bruce*, 299 Ill. App. 3d 61 (1998).

¶ 18 Petitioner then filed a postconviction petition in which he claimed that (1) he received ineffective assistance of counsel, (2) his conviction was based upon perjured testimony, and (3) his sentence violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The circuit court dismissed his petition at the second stage, and we affirmed. *People v. Bruce*, No. 1-02-3361 (2004) (unpublished order pursuant to Supreme Court Rule 23).

¶ 19 Proceedings in this Appeal

¶ 20 In 2009, petitioner sought leave to file a successive postconviction petition. Petitioner claimed (1) actual innocence, (2) the State fabricated evidence to obtain the indictment, (3) his postconviction counsel rendered unreasonable assistance, (4) his trial counsel was ineffective for failing to interview and call various witnesses. Petitioner attached letters to petitioner from Cherry, and affidavits from his mother, the victim's brother, and Robert Seals.

People v. Bruce, Not Reported in N.E. Rptr. (2020)

2020 IL App (1st) 180515-U

¶ 21 Petitioner's mother stated in her affidavit that, when she spoke with Cherry in 2004, "Cherry stated to me that she was sorry for all the pain and suffering that she's caused my family, and that she thought that she had to do what the police told her to." West's brother stated in his affidavit that, although the recovered jewelry appeared to be his brother's, he could not positively identify them as belonging to his brother.

¶ 22 Seals stated in his affidavit that he confessed to having been involved in the murder and that two other individuals named Courtney and "Joe" were also involved. Seals also said that petitioner was neither present at nor involved in the shooting and that Cherry's statement and testimony regarding petitioner's involvement was a lie. Seals stated that he did not implicate Cherry because she was a minor at the time. Seals added that he told the police that the jewelry taken from the victim included a gold herringbone chain, a diamond anchor charm, a watch, a pager, and a cell phone, but not a gold ring with a six-pointed star or gold link bracelet.

¶ 23 On October 28, 2009, the circuit court denied petitioner's motion for leave to file a successive postconviction petition, and on August 6, 2012, we affirmed. *People v. Bruce*, 2012 IL App (1st) 093401-U. On November 28, 2012, however, our supreme court issued a supervisory order directing us to vacate our order, grant petitioner's motion, and advance his successive petition to the second stage of proceedings. *People v. Bruce*, No. 114889 (Nov. 28, 2012). We did so on January 16, 2013, and remanded the cause to the circuit court for further proceedings.

¶ 24 On April 7, 2011, during the pendency of his appeal from the denial of his 2009 motion for leave to file a successive postconviction petition, petitioner filed a motion for leave to file a *second* successive postconviction petition. Petitioner claimed actual innocence based upon a newly discovered affidavit of codefendant Donelson, as well as the prior affidavits attached to his proffered 2009 successive postconviction petition.

*4 ¶ 25 Donelson stated in his January 7, 2010, affidavit that he took part in the 1993 kidnapping, robbery, and murder of the victim, after which a gold herringbone chain with a diamond anchor charm was taken from the victim. Donelson denied being involved in the case when questioned by detectives, telling them that he had learned of the crime from

Cherry. Donelson then stated that he was "remorsefully the person responsible" for killing the victim, although Donelson claimed that he only intended to frighten the victim into revealing "where the money was at by firing a single shot from a .44 [M]agnum in the direction of [the victim's] head" while the victim was lying on the ground. According to Donelson, petitioner was "not involved in the case," but Donelson did not tell anyone because he could not do so without incriminating himself. Donelson then wrote, "After my own conviction, I sent word for [petitioner] to get at me [*sic*] so I could see what could be done to help prove his innocence. But I never heard anything back from him, so I stopped trying to reach him." Donelson said that, after his release from prison, he tried to locate petitioner and to see if Cherry had admitted that she had lied about petitioner's involvement in the case. When Donelson found out that Cherry had not recanted her testimony and that petitioner had been looking for Donelson for help with petitioner's case, Donelson stated that he was "here today as I was willing to do years ago *** to help clear an innocent man['s] life."

¶ 26 On June 20, 2011, the circuit court denied petitioner's motion for leave to file a third postconviction petition. On July 29, 2013, however, we vacated the circuit court's order and remanded the matter with instructions to consolidate petitioner's third postconviction petition with the second postconviction petition that was already in the second stage of proceedings. *People v. Bruce*, 2013 IL App (1st) 112187-U.

¶ 27 On February 3, 2015, petitioner filed a supplemental postconviction petition, which included a second affidavit from Seals and an affidavit from Cherry. Seals's affidavit, dated October 18, 2013, initially noted that he was 14 years old at the time of the offense and reiterated that he participated in the robbery and murder of West, along with McGee, Donelson, Cherry, and an individual named "Joe." Seals stated that petitioner did not participate in the crimes and was not in the vehicle when the group drove to the eventual crime scene, but that the police pressured Seals into naming petitioner as one of the assailants. Seals stated that he did not remember who had the gun, and when he heard the gun go off during the robbery, he drove off in the victim's truck. Seals added that he is not sure where "these events" took place because he was not familiar with the neighborhood at the time. Seals added that he confessed to police because he was threatened with being tried as an adult and a lengthy potential prison sentence. Seals added that he never told police that

Richardson, Megan 5/29/2024
For Educational Use Only

People v. Bruce, Not Reported in N.E. Rptr. (2020)

2020 IL App (1st) 180515-U

Cherry was involved because she was 12 years old at the time and he did not want her to "get in trouble." Seals further stated that he signed a statement but did not know whether the statement implicated petitioner.

¶ 28 Seals recalled that a gold herringbone chain with an attached diamond anchor, a watch, pager, and cell phone were taken from the victim, but Seals did not recall a gold ring with a six-pointed star and a gold link bracelet having also been taken. Seals added that Cherry's statement and testimony that petitioner was the shooter was a lie.

¶ 29 Seals stated that he was sentenced to juvenile detention in 1995 for these offenses and was unaware until his release from detention that petitioner had been tried and convicted for these crimes. Seals explained that he was arrested in 1997 and charged with an unrelated murder to which he pleaded guilty in 2005. In 2006, Seals provided his first affidavit so that petitioner could "prove his innocence."

¶ 30 Cherry's affidavit, dated May 9, 2017, stated that, she was questioned "very aggressively" at the police station regarding West's murder. She added that, although she was 12 years old at the time, she was threatened with being charged as an adult and sentenced to a possible natural life sentence. Detectives asked her to identify a "[six] pointed star ring that was encrusted with diamonds." Cherry stated that she had seen petition in possession of the ring before 1993 and that it was not taken from West. Cherry stated that she told the police this, but they "insisted that this was taken from [West]." Cherry said that neither her trial testimony that the ring had been taken from West nor her testimony identifying the gun was true.

**\*5** ¶ 31 On August 31, 2017, the State moved to dismiss petitioner's consolidated petitions. On February 5, 2018, the circuit court heard arguments on the State's motion. Following arguments, the court noted that Donelson admitted shooting the victim "with a .44[-caliber firearm]," which contradicted the State's evidence that .38-caliber bullet fragments were recovered at the scene. The court said that there was a "world of difference between those two weapons" and that fact undermined Donelson's credibility. As to Cherry, the court observed that, despite recanting certain parts of her trial testimony, she did not recant her testimony that petitioner was the shooter. The court then granted the State's motion to dismiss. This appeal follows.

¶ 32 ANALYSIS

¶ 33 Petitioner alleges that the circuit court erred in granting the State's motion to dismiss his consolidated successive postconviction petitions at the second stage of proceedings. Petitioner first contends that he made a substantial showing of actual innocence based upon the affidavits of Donelson, Seals, and Cherry. In the alternative, petitioner contends that he made a substantial showing that his trial counsel rendered ineffective assistance for failing to interview and call Seals. Finally, petitioner asks that we reverse the court's granting of the State's motion to dismiss and remand this matter for third-stage proceedings before a different trial judge because petitioner claims that the judge unfairly prejudged the credibility of witnesses. We begin our analysis with petitioner's alternative claim of error.

¶ 34 The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 et seq. (West 2010) (Act) allows a petitioner to challenge a conviction or sentence for violations of federal or state constitutional rights. People v. Pendleton, 223 Ill. 2d 458, 471 (2006). An action for postconviction relief is a collateral proceeding rather than an appeal from the underlying judgment. People v. Williams, 186 Ill. 2d 55, 62 (1999). Principles of res judicata and waiver will limit the range of issues available to a postconviction petitioner " 'to constitutional matters which have not been, and could not have been, previously adjudicated.' " People v. Scott, 194 Ill. 2d 268, 273-74 (2000) (quoting People v. Winsett, 153 Ill. 2d 335, 346 (1992)). Accordingly, rulings on issues that were previously raised at trial or on direct appeal are res judicata, and issues that could have been raised in the earlier proceedings, but were not, will ordinarily be deemed waived. Id. at 274; 725 ILCS 5/122-3 (West 2016).

¶ 35 In a noncapital case, postconviction proceedings contain three stages. People v. Tate, 2012 IL 112214, ¶ 9. At the first stage, the circuit court independently reviews the petition, taking the allegations as true, and determines whether the petition is frivolous or patently without merit. Id. A petition may be summarily dismissed as frivolous or patently without merit only if the petition has no arguable basis either in law or in fact. Id. If the court does not summarily dismiss the petition, it advances to the second stage, where counsel

**People v. Bruce, Not Reported in N.E. Rptr. (2020)**

2020 IL App (1st) 180515-U

may be appointed to an indigent petitioner, and where the State may respond to the petition. *Id.* ¶ 10. At this stage, the court determines whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. *Id.* If no such showing is made, the petition is dismissed. Otherwise, the petition is advanced to the third stage for an evidentiary hearing. *Id.*

¶ 36 Here, the petition was dismissed at the second stage of proceedings. During the second stage of proceedings, a petitioner bears the burden of making a substantial showing of a constitutional violation. *People v. Domagala,* 2013 IL 113688, ¶ 35. This stage, however, only tests the legal sufficiency of the petition. Unless the allegations in the petition are positively rebutted by the record, they are taken as true, and the question to be resolved at the second stage is whether those allegations establish a constitutional violation. *Id.* "In other words, the 'substantial showing' of a constitutional violation that must be made at the second stage [citation] is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven* at an evidentiary hearing, would entitle petitioner to relief." (Emphasis in original.) *Id.* We review the circuit court's dismissal of a postconviction petition at the second stage *de novo. People v. Pendleton,* 223 Ill. 2d 458, 473 (2006).

**\*6** ¶ 37 Notably, however, the Act contemplates the filing of only one petition without leave of court, and any claim not presented in an original or amended petition is waived. *People v. Sanders,* 2016 IL 118123, ¶ 24 (citing 725 ILCS 5/122–1(f), 122–3 (West 2014)). As a result, successive postconviction petitions are "highly disfavored." *People v. Bailey,* 2017 IL 121450, ¶ 39.

¶ 38 Even so, there are two bases upon which the bar against successive petitions is relaxed. The first is when the petitioner satisfies the cause and prejudice test. *Sanders,* 2016 IL 118123, ¶ 24. The second method is when the petitioner demonstrates actual innocence by producing evidence that is (1) newly discovered, (2) not discoverable earlier through the exercise of due diligence, (3) material and not merely cumulative, and (4) of such conclusive character that it would probably change the result on retrial. *Sanders,* 2016 IL 118123, ¶ 24 (citing *People v. Edwards,* 2012 IL 111711, ¶ 32; *People v. Morgan,* 212 Ill. 2d 148, 154 (2004)). The new evidence must support total vindication or exoneration,

not merely a reasonable doubt of the petitioner's innocence. *People v. Collier,* 387 Ill. App. 3d 630, 636 (2008) ("[T]he hallmark of 'actual innocence' means 'total vindication,' or 'exoneration.' ").

### ¶ 39 Ineffective Assistance of Counsel

¶ 40 Petitioner contends in the alternative that he made a substantial showing that his trial counsel rendered ineffective assistance for failing to interview and call Seals. Petitioner argues that, had the jury heard Seals's statements in his affidavits that petitioner was not present or involved in the murder, there is a reasonable probability that the outcome would have been different.

¶ 41 Claims of ineffective assistance of counsel are governed by the familiar standard set forth in *Strickland v. Washington,* 466 U.S. 668 (1984), and adopted by the supreme court in *People v. Albanese,* 104 Ill. 2d 504 (1984). *People v. Petrenko,* 237 Ill. 2d 490, 496 (2010). To establish ineffective assistance, a petitioner must show both that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the petitioner. *Id.* Deficient performance is performance that is objectively unreasonable under prevailing professional norms, and prejudice is found where there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Petrenko,* 237 Ill. 2d at 496-97; *Strickland,* 466 U.S. at 690, 694. The failure to establish either prong of the *Strickland* test is fatal to the claim. *People v. Clendenin,* 238 Ill. 2d 302, 317-18 (2010) (citing *Strickland,* 466 U.S. at 697).

¶ 42 Matters of trial strategy, however, are generally immune from claims of ineffective assistance of counsel except where the trial strategy results in no meaningful adversarial testing. *People v. West,* 187 Ill. 2d 418, 432-33 (1999). In other words, the effective assistance of counsel merely refers to "competent, not perfect," representation. *People v. Stewart,* 104 Ill. 2d 463, 491-92 (1984). Thus, mistakes in trial strategy, tactics, or judgment will not "of themselves" render a trial counsel's representation constitutionally defective. *Id.* For these reasons, we must be highly deferential to trial counsel as to trial strategy, and we must evaluate counsel's performance from her perspective at the time and not "through the lens of

Richardson, Megan 5/29/2024
For Educational Use Only

People v. Bruce, Not Reported in N.E. Rptr. (2020)

2020 IL App (1st) 180515-U

hindsight." *Id.* A defendant bears the burden of overcoming the strong presumption that his counsel's decision was the product of sound trial strategy. *People v. Gacy*, 125 Ill. 2d 117, 126 (1988).

**\*7** ¶ 43 Generally, whether to call a particular witness is a matter of trial strategy (*People v. Flores*, 128 Ill. 2d 66, 85-86 (1989)), and strategic choices made after thorough investigation of law and facts relevant to plausible options are "virtually unchallengeable" (*Strickland*, 466 U.S. at 690). An exception to this rule is when counsel's chosen strategy is so unsound that counsel entirely fails to conduct any meaningful adversarial testing. *People v. Reid*, 179 Ill. 2d 297, 310 (1997). Failure to call a witness will not support an ineffective assistance of counsel claim where the circumstances show that the testimony would likely have been harmful or would have had no probative value to a determination of guilt or innocence. *People v. Ashford*, 121 Ill. 2d 55, 74-75 (1988). Additionally, a defense attorney may choose not to call a witness who could be subject to severe impeachment (*People v. Smado*, 322 Ill. App. 3d 329, 335 (2001)), or if he reasonably believes that under the circumstances the individual's testimony is unreliable or would likely have been harmful to the defendant (*Flores*, 128 Ill. 2d at 106).

¶ 44 In this case, taking petitioner's allegations as true, Seals's affidavits stated that Cherry was present at the time of the offense but that he did not inform the police of this because at the time, Cherry was (like Seals) a minor and Seals did not want to get Cherry "into trouble." At trial, however, the defense theory was that Cherry was told of the offense by Seals and had entirely fabricated her testimony ("made this all up"), *i.e.*, that Cherry was *not* present at the robbery and murder of West. Had petitioner's trial counsel called Seals to testify, and had Seals in fact testified consistent with his affidavits, it would have undermined the defense theory and allowed the jury to conclude that Cherry's trial testimony regarding petitioner's involvement in the robbery and shooting death of West was credible. Since Seals's testimony would likely have been harmful, the failure to call him as a witness was not ineffective assistance of counsel. *Ashford*, 121 Ill. 2d at 74-75. Petitioner has failed to overcome the "strong presumption" that his counsel's decision was the product of sound trial strategy. *Gacy*, 125 Ill. 2d at 126. Since petitioner has not made a substantial showing of both prongs of the *Strickland* test, his ineffective assistance claim necessarily fails. *Clendenin*, 238 Ill. 2d at 317-18. The

circuit court therefore did not err in dismissing his successive postconviction petitions on the claim of ineffective assistance of counsel.

¶ 45 Actual Innocence

¶ 46 Petitioner contends that the circuit court erred in granting the State's motion to dismiss his claim of actual innocence. Petitioner argues that he made a substantial showing of actual innocence based upon Donelson's affidavit confessing to West's murder, Seals's affidavits stating that petitioner was not present at the scene, and Cherry's affidavit recanting portions of her trial testimony. Petitioner states that this material warrants an evidentiary hearing.

¶ 47 Although Donelson admitted in his affidavit to murdering the victim, he stated that he shot "in the direction of" West's head with a .44 Magnum, despite the fact that a .38-caliber bullet fragment was recovered from West's body. Since this allegation is positively rebutted by the record, we need not take it as true. See *Domagala*, 2013 IL 113688, ¶ 35.

¶ 48 Cherry's affidavit—in which she recanted her trial testimony that the ring had been taken from West and her testimony identifying the gun recovered from petitioner as the murder weapon—is similarly unsupportive of petitioner's actual innocence claim. Although she recanted her identification of the gun recovered from petitioner as the murder weapon and the ring petitioner allegedly told her was part of the proceeds from the robbery of West, Cherry did not recant her identification of petitioner as the individual who shot West in the back of the head while he was lying on the ground.

**\*8** ¶ 49 Seals's affidavit, however, stated that petitioner was not present at the scene nor involved in the offense. Thus, it flatly contradicted Cherry's unrecanted trial testimony identifying petitioner as the shooter. And while Seals stated in his 2011 affidavit that the gold six-pointed ring was not taken from the victim, the victim's mother testified that the ring belonged to her son. Nonetheless, we may not make credibility determinations at the second stage; rather, we only examine if petition's well-pled allegations of a constitutional violation, *if proven at an evidentiary hearing*, would entitle him to relief. *Domagala*, 2013 IL

Richardson, Megan 5/29/2024
For Educational Use Only

**People v. Bruce, Not Reported in N.E. Rptr. (2020)**

2020 IL App (1st) 180515-U

113688, ¶ 35. Therefore, taking into account this proposed evidence, the circuit court erred in rejecting petitioner's actual innocence claim. Petitioner is therefore entitled to a third-stage evidentiary hearing on this claim.

¶ 50 In addition, although petitioner has asked that we remand this matter for further proceedings before a different judge, we reject that request. Petitioner argues that the circuit judge "unfairly prejudged" Donelson's credibility when the judge stated that the factual error concerning the caliber of the murder weapon in Donelson's affidavit undermined Donelson's "credibility." Although, as noted above, it is error to make any credibility determinations at the second stage of postconviction proceedings (see *id.*), a trial judge's rulings alone are almost never a valid basis for a claim of bias or partiality (*Eychaner v. Gross*, 202 Ill. 2d 228, 280 (2002)). To support a claim of judicial bias requires either an extrajudicial source or a "deep-seated favoritism or antagonism" at trial. (Internal quotation marks removed.) *Id.* at 280-81 (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Petitioner cites no extrajudicial source of bias and the isolated comment from the trial judge cannot reasonably be considered a deep-seated favoritism toward the State or antagonism toward petitioner. We therefore reject petitioner's request.

¶ 51 CONCLUSION

¶ 52 The circuit court correctly dismissed at the second stage petitioner's ineffective assistance of counsel claim, but erred in dismissing petitioner's claim of actual innocence. We therefore reverse and remand for a third-stage hearing on that claim. We reject petitioner's request that we direct that further proceedings be heard by a different trial judge.

¶ 53 Reversed and remanded for further proceedings.

Presiding Justice Hoffman and Justice Rochford concurred in the judgment.

**All Citations**

Not Reported in N.E. Rptr., 2020 IL App (1st) 180515-U, 2020 WL 1514585

---

### Footnotes

1    Defendant later filed a *pro se* petition for relief pursuant to section 2-1401 of the Code of Civil Procedure alleging that the 40-year extended term portion of his sentence was void. On appeal, we vacated the 40-year term and modified his sentence to reflect a 60-year sentence for first-degree murder. *People v. Bruce, 2012 IL App (1st) 101109-U, ¶ 28*.

---

**End of Document**                                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT B

# CRIMINAL DISPOSITION SHEET

| Sheet #<br>**0001** | Defendant Sheet#<br>1 of 2 | | Branch/Room/Location<br>Criminal Division, Courtroom 303<br>2650 South California Avenue, Chicago, IL 60608 | | | Court Interpreter | |
|---|---|---|---|---|---|---|---|
| Case Number<br>95CR1212404 | IR#<br>0868914 | Defendant Name<br>DWAYNE BRUCE | | Attorney<br>JENNIFER BLAGG | | Court Call/Time<br>9:00 AM | |
| CB/DCN# | | EM | Case Flag | Bond# | Bond Type | Court Date<br>9/10/2025 | Bond Amount<br>$0.00 |
| CHARGES | | | * IN CUSTODY 04/22/2025 * | COURT ORDER ENTERED | | | CODES |

A11CCD | AML/ST

W- McDermott present via zoom

Pet's successive document
moton - granted as
a whole.

BFP 10/8/25 &

| CHARGES | COURT ORDER ENTERED |
|---|---|
| C001 720-5/9-1(A)(1)<br>MURDER/INTENT TO KILL/INJ<br>07/21/1997 Illinois Department of Corrections | |
| C002 720-5/9-1(A)(2)<br>MURDER/STRONG PROB KILL/I<br>05/15/1997 Verdict of Guilty | |
| C003 720-5/9-1(A)(3)<br>MURDER/OTHER FORCIBLE FEL<br>05/15/1997 Verdict of Guilty | |
| C004 720-5/9-1(A)(3)<br>MURDER/OTHER FORCIBLE FEL<br>05/15/1997 Verdict of Guilty | |
| C005 720-5/18-2(A)<br>ARMED ROBBERY<br>07/21/1997 Illinois Department of Corrections | |
| C006 720-5/10-2(A)(3)<br>AGG KIDNAPING/INFLICT HAR<br>05/15/1997 Verdict of Guilty | |
| C007 720-5/10-2(A)(3)<br>AGG KIDNAPING/INFLICT HAR<br>05/15/1997 Verdict of Guilty | |
| C008 720-5/10-2(A)(3)<br>AGG KIDNAPING/INFLICT HAR<br>05/15/1997 Verdict of Guilty | |
| C009 720-5/10-2(A)(3)<br>AGG KIDNAPING/INFLICT HAR<br>05/15/1997 Verdict of Guilty | |
| C010 720-5/10-2(A)(3)<br>AGG KIDNAPING/INFLICT HAR<br>05/15/1997 Verdict of Guilty | |

JUDGE:

JUDGE'S NO.:

RESPONSIBLE FOR CODING AND COMPLETION BY DEPUTY CLERK:

VERIFIED BY:

# CRIMINAL DISPOSITION SHEET

Defendant Sheet#
2 of 2

| Sheet # | | Court Interpreter |
|---|---|---|
| 0001 | | |

| Case Number | Defendant Name | Branch/Room/Location | |
|---|---|---|---|
| 95CR1212404 | DWAYNE BRUCE | Criminal Division, Courtroom 303 2650 South California Avenue, Chicago, IL 60608 | |

| CB/DCN# | IR# | Attorney | Court Date | Court Call/Time |
|---|---|---|---|---|
| | 0868914 | JENNIFEFR BLAGG | 9/10/2025 | 9:00 AM |

| | EM | Bond# | Bond Type | Bond Amount |
|---|---|---|---|---|
| | | | | $0.00 |

| CHARGES | Case Flag | | |
|---|---|---|---|

* IN CUSTODY 04/22/2025 *    COURT ORDER ENTERED

**CHARGES**

CODES

C011 720-5/10-2(A)(3)
AGG KIDNAPNG/INFLICT HAR
05/15/1997 Verdict of Guilty

RESPONSIBLE FOR CODING AND COMPLETION BY DEPUTY CLERK:    VERIFIED BY:

JUDGE'S NO.:

JUDGE:

Printed: 9/10/2025 9:19 AM

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT – CRIMINAL DIVISION

| | | |
|---|---|---|
| DWAYNE BRUCE | ) | |
| | ) | |
| *Petitioner-Defendant,* | ) | No. 95 CR 12124 04 |
| | ) | |
| v. | ) | The Honorable Laura Ayala-Gonzalez, |
| | ) | Judge Presiding. |
| PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | |
| *Respondent-Plaintiff.* | ) | |

*granted a while as /* [handwritten annotation]

## PETITIONER'S SUCCESSIVE DISCOVERY MOTION

Now comes Petitioner, DWAYNE BRUCE, by and through his attorneys, THE EXONERATION PROJECT at the University of Chicago Law School and BLAGG LAW, and hereby respectfully supplements his motion for discovery and renews his request that this Honorable Court grant him leave to conduct discovery in anticipation of the evidentiary hearing ordered in this matter. Mr. Bruce asks the Court to grant him discovery in the following form:

1. On August 28, 2025, Petitioner sought leave to request an order from the Northern District of Illinois releasing Detective McDermott's grand jury testimony in the Jon Burge prosecution (*United States v. Burge*, No. 08-cr-846, N.D. Ill.).

2. The State opposed this request for two reasons. First, the State did not believe it was necessary for Mr. Bruce to seek this discovery because there is ample publicly available impeachment evidence that can be used against Det. McDermott at the third-stage evidentiary hearing, including paperwork from the Cook County State's Attorney's Office ("CCSAO"), which shows that Det. McDermott was suspended without pay from the CCSAO based on a finding that he committed perjury. Ex. A, Det. McDermott CCSAO Paperwork.

3. Second, the State argued that the grand jury testimony was not relevant to Mr. Bruce's actual innocence claim because none of the witnesses in Mr. Bruce's case have alleged

that Det. McDermott physically abused them.

4.        The Court held arguments on Petitioner's request on September 2, 2025. During arguments, the Court agreed with the State that Det. McDermott's grand jury testimony did not seem necessary for Mr. Bruce's upcoming third-stage evidentiary hearing because, at that point, none of the witnesses signed affidavits averring that Det. McDermott was physically abusive.

5.        Mr. Bruce renews his discovery request and attaches a second affidavit from Courtney Donelson, Mr. Bruce's co-defendant at the original trial, averring that Det. McDermott was physically abusive towards him during the investigation of this case. Ex. B, Donelson Second Affidavit. In his affidavit, Mr. Donelson identifies Det. McDermott as a pointy-nosed Chicago Police Detective who hit him, kicked him, and beat him over the head with a phone book during interrogations in this case. *Id.* at ¶¶ 6-7.

6.        Mr. Bruce reiterates that good cause exists for this request. Mr. Bruce has been granted a third-stage evidentiary hearing on his actual innocence claim, which includes evidence of Det. McDermott's pattern and practice of misconduct that is consistent with misconduct that he committed in this case. During a third stage evidentiary hearing, a petitioner is entitled to present relevant evidence in support of his claims. *See People v. Thompkins*, 181 Ill. 2d 1, 15 (1998).

7.        At issue here is whether witnesses were coerced by Det. McDermott, among other Chicago Police Detectives. Det. McDermott's testimony regarding his use of coercion and his commission of perjury is relevant to whether he had a pattern and practice or *modus operandi* of doing so. Courts have held that even one incident of similar misconduct by identical officers can be highly corroborative because it demonstrates *modus operandi*, intent, plan, motive or can be offered to impeach the officers' credibility. *See People v. Banks*, 192 Ill.App.3d 986, 994, 549 N.E.2d 766, 771-72 (1st Dist. 1989). Even without allegations of physical violence, the evidence

2

is relevant to McDermott's credibility. "A defendant may always question a witness on matters affecting his credibility and bias." *People v. Bannister*, 236 Ill. 2d 1, 11, 923 N.E.2d 244, 250 (2009). Moreover, the CCSAO paperwork explains why the CCSAO suspended Det. McDermott. The paperwork does not address Det. McDermott's grand jury testimony in the Burge prosecution, and is no substitute for obtaining his grand jury testimony, which would be admissible as substantive evidence at the evidentiary hearing.

8.     Mr. Bruce respectfully requests that the Court reconsider its previous findings and grant his discovery request regarding Det. McDermott's grand jury testimony.

9.     Mr. Bruce also requests that the Court grant leave for Mr. Bruce to subpoena the Chicago Police Department and the CCSAO for investigation files and documents relating to Case No. 93-12844 (RD No. 404356), which is the August 31, 1993, armed robbery of Raven Davis (also listed as Doss) that Robin Cherry pled guilty to in exchange for her testimony implicating Mr. Bruce as the perpetrator in this case. At the time Cherry implicated Mr. Bruce, she faced potential charges for both the armed robbery and the murder of Tedrin West.

10.     A court has the inherent authority to order discovery in post-conviction proceedings where the petitioner has shown "good cause." *See People v. Johnson*, 205 Ill.2d 381, 408, 793 N.E.2d 591, 607-08 (2002); *see also People ex. rel. Daley v. Fitzgerald*, 123 Ill. 2d 175, 183 (1988); *People v. Jakes*, 2013 IL App (1st) 113057, ¶ 25.

11.     Mr. Bruce has good cause to request these investigative files. Robin Cherry provided testimony at Mr. Bruce's original trial implicating Mr. Bruce as one of the perpetrators in exchange for more lenient sentencing in her own pending criminal matters. It is critical that Mr. Bruce be afforded the opportunity to review the case files from Cherry's pending criminal action from the time that she provided a statement against Mr. Bruce and ultimately testified against him.

3

12.     Moreover, it is not possible to access this desired material through any other source.

*People v. Smith*, 352 Ill.App.3d 1095, 1113, 817 N.E.2d 982, 999 (1st Dist. 2004).

### CONCLUSION

WHEREFORE, for the reasons stated above, Petitioner requests that this Court grant his

requests for discovery.

DATED:   September 9, 2025                       Respectfully submitted,

                                                 /s/ Megan Richardson
                                                 Counsel for Petitioner

Megan Beth Richardson                    Jennifer Blagg
Karl Leonard                             Eric Bisby
The Exoneration Project                  Blagg Law
311 N. Aberdeen, 3rd Floor               1509 W. Berwyn, Suite 201e
Chicago, IL 60607                        Chicago, IL 60640
312-736-7042                             773-859-0081
megan@exonerationproject.org             jennifer@blagglaw.net
Attorney ID: 44407                       Attorney ID: 45099

### CERTIFICATE OF SERVICE

I, Megan Richardson, certify that on September 9, 2025, I served a copy of the foregoing
Petitioner's Discovery Motion on counsel of record via email.

# EXHIBIT A

# Cook County State's Attorney Office
# Investigations Bureau

## REQUEST FOR / WAIVER OF PRE-DISCIPLINARY REVIEW BOARD HEARING

PC#  10-01        DATE:  July 16, 2010                    TIME: 12:30

INVESTIGATOR'S NAME:  Michael McDermott          STAR #:  533

SUPERVISOR PRESENTING FORM:    Michael Paoletti #435

LIST OF CHARGES:

1.) On June 14, 2010, while testifying, under oath, in the United States District Court Northern District of Illinois Eastern Division, in the United States of America vs. Jon Burge (08CR846) you admitted to lying during a interview conducted by the Office of Professional Standards which violated Special Order, Standards of Conduct, 95-2 VI.A-1, "Investigators will uphold the Constitution of the United States and the State of Illinois, obey all Federal, state and local laws in which jurisdiction the Investigator is present, and comply with court decisions and orders of courts having jurisdiction."  SUSTAINED

2.) On June 14, 2010, while testifying, under oath, in the United States District Court Northern District of Illinois Eastern Division, in the United States of America vs. Jon Burge (08CR846) you admitted to lying during a interview conducted by the Office of Professional Standards which violated Special Order, 95-2 VI A-5, Investigators will conduct themselves on and off duty in such a manner as to reflect favorably on the Office. Investigators will not engage in conduct which discredits the integrity of the Office or its employees, or which impairs the operations of the Office. Such actions will constitute conduct unbecoming an investigator."  SUSTAINED

3.) On June 14, 2010, while testifying, under oath, in the United States District Court Northern District of Illinois Eastern Division, in the United States of America vs. Jon Burge (08CR846) you admitted to lying during a interview conducted by the Office of Professional Standards which violated Special Order, 95-2 VI. A-8, "Investigators will maintain a level of moral conduct in their personal and business affairs which is in keeping with the highest standards of the law enforcement profession. Investigators will not participate in any incident involving moral turpitude which impairs their ability to perform as law enforcement officers or which could cause the Office to be brought into disrepute."  SUSTAINED

4.) On June 14, 2010, while testifying, under oath, in the United States District Court Northern District of Illinois Eastern Division, in the United States of America vs. Jon Burge (08CR846) you admitted you were not truthful during testimony provided during the People of the State of Illinois vs. Alphonso Pinex which violated Special Order, Standards of Conduct, 95-2 VI A1, "Investigators will uphold the Constitution of the United States and the State of Illinois, obey all Federal, state and local laws in which jurisdiction the Investigator is present, and comply with court decisions and orders of courts having jurisdiction."  SUSTAINED

Illinois Eastern Division, in the United States of America vs. Jon Burge (08CR846) you admitted you were not truthful during testimony provided during the People of the State of Illinois vs. Alphonso Pinex which violated Special Order, 95-2 VI A-5, Investigators will conduct themselves on and off duty in such a manner as to reflect favorably on the Office. Investigators will not engage in conduct which discredits the integrity of the Office or its' employees, or which impairs the operations of the Office. Such actions will constitute conduct unbecoming an Investigator." SUSTAINED

6.) On June 14, 2010, while testifying, under oath, in the United States District Court Northern District of Illinois Eastern Division, in the United States of America vs. Jon Burge (08CR846) you admitted you were not truthful during testimony provided during the People of the State of Illinois vs. Alphonso Pinex which violated Special Order, 95-2 VI. A-6, "Investigators will maintain a level of moral conduct in their personal and business affairs which is in keeping with the highest standards of the law enforcement profession. Investigators will not participate in any incident involving moral turpitude which impairs their ability to perform as law enforcement officers or which could cause the Office to be brought into disrepute." SUSTAINED

### DISCIPLINARY ACTION:

Based on the sustained charges, effective Sunday, July 18, 2010, Investigator Michael McDermott is suspended without pay pending discharge from the position of Investigator with the Cook County State's Attorney's Office.

You are currently charged with the above listed charges. The disciplinary action sought is also listed. You have the right to request a hearing before a Pre-Disciplinary Review Board where the evidence relative to the charges will be presented and where you will have an opportunity to present facts which you may feel relate to or mitigate these charges. During this hearing you are entitled to have FOP Council representation or counsel of your choosing. After the hearing the Review Board will recommend whether the charges should result in a finding of sustained or not sustained and if sustained will make a recommendation for disciplinary action to the Chief Investigator. Upon receipt of this notice, you have five (5) working days to waive or elect such a hearing and to return this form personally to your immediate supervisor.

**\*\*CHECK ONE BOX ONLY\*\***

☒ <u>REQUEST FOR A PRE-DISCIPLINARY REVIEW BOARD HEARING</u>
   I am formally requesting that I be granted a hearing before a Pre-Disciplinary Review Board. I understand that after the hearing the Board will make a non-binding recommendation to the Chief Investigator.

☐ <u>WAIVER OF PRE-DISCIPLINARY REVIEW BOARD HEARING</u>
   In full understanding that the listed discipline is being sought against me for the listed charges, I waive my right to a Pre-Disciplinary Review Board and accept this disciplinary action.

_____                          _____ #485  8/14/10
Accused Investigator's Signature                    Witnessing Supervisor's Signature

cc:    Fraternal Order of Police Labor Council            _____ #383  16 June 10
       Accused Investigator

Witness: _____ 7/16/10
         _____ 7/16/10
         _____ 7/16/10

# EXHIBIT B

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT – CRIMINAL DIVISION

DWAYNE BRUCE )
)
*Petitioner-Defendant,* )
)
v. )
)
PEOPLE OF THE STATE OF ILLINOIS, )
)
*Respondent-Plaintiff.* )

No. 95 CR 12124 04

The Honorable Laura Ayala-Gonzalez, Judge Presiding.

## AFFIDAVIT OF COURTNEY DONELSON

I, Courtney Donelson, under oath and penalty of perjury, state and swear as follows:

1. My name is Courtney Donelson. My birthday is February 4, 1975. I was convicted of murder, kidnapping and robbery in relation to the murder of Tedrin West. Dwayne Bruce was my co-defendant at trial.

2. I provided an affidavit to Dwayne Bruce's attorneys from the public defender's office in January 2010. That affidavit is true and accurate and attached as Exhibit A.

3. As I said before, Dwayne Bruce had nothing to do with this crime. He is innocent.

4. Around the time of Tedrin West's murder, Dwayne Bruce and I lived in the same neighborhood. I knew him from the neighborhood, but we were not close.

5. I met with Dwayne Bruce's post-conviction attorneys on August 29, 2025. I am providing this second affidavit to give additional information based on things that I discussed during the August 29th meeting.

6. Over the span of about a year, I was interrogated several times about West's murder. During the final interrogation (the interrogation that occurred before I was arrested for Tedrin West's murder), I was questioned by numerous detectives. I remember that one detective had a pointy nose. The other detective had curly hair that looked kind of like Gene Wilder's hair.

7. During the interrogation, the pointy-nose detective was the bad cop, and the curly-haired one played the good cop. The detective with the pointy nose kept telling me to say that Dog killed Tedrin West, but I refused because I was there, and I knew that no one who went by Dog had anything to do with Tedrin West's murder. I was not going to cooperate and say that Dog did this just because the police wanted me to because I knew that was not what happened. I did not understand why they kept bringing Dog up anyways. The pointy nose was physical with me when I would not give a statement and

cooperate. He kicked me, he slapped me, and he hit me over the head with a phone book. After that, the detective with the curly hair would come in and act nice and ask questions.

8. I did not tell my attorney about what happened during my interrogation because I did not think he would care. I knew I was guilty. I figured my fate was sealed. I tried to block what happened to me from my mind and move on.

9. When I spoke to the public defender's office about Dwayne Bruce in 2010, I did not tell them about what happened during my interrogation because they never asked me about it.

10. I could not initially remember the names of the police officers who interrogated me, but when Dwayne Bruce's post-conviction lawyers ran a list of names past me, I remembered the detective with the pointy nose was named McDermott and the detective with the curly hair was named Boylan.

11. I have not been pressured to sign this affidavit or promised anything in exchange for signing this affidavit. If called to testify, I will testify consistently with this affidavit.


Courtney Donelson

9/3/2025
Date


Subscribed and sworn to before me, in my presence, the _3_ day of September 2025, a Notary Public in and for the state of Wisconsin.

Natasha J—
(Signature)
Notary Public
My commission expires 12-29-2026

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT – CRIMINAL DIVISION

DWAYNE BRUCE                                )
                                            )
        *Petitioner-Defendant,*             )        No. 95 CR 12124 04
                                            )
    v.                                      )        The Honorable Laura Ayala-Gonzalez,
                                            )        Judge Presiding.
PEOPLE OF THE STATE OF ILLINOIS,            )
                                            )
        *Respondent-Plaintiff.*             )

## NOTICE OF FILING

TO:     Cook County State's Attorney's Office
        Armando Sandoval
        2650 S. California Ave.
        Chicago, IL 60608
        armando.sandoval@cookcountysao.org

        PLEASE TAKE NOTICE that on September 9, 2025, I caused to be filed the attached
**SUCCESSIVE DISCOVERY MOTION** with the Clerk of the Circuit Court of Cook County,
2650 South California Avenue, 5th Floor, Chicago, IL 60608, a copy of which is hereby served
upon you.


DATED:    September 9, 2025                          Respectfully submitted,

                                                     /s/ Megan Richardson
                                                     Attorney for Petitioner


Megan Richardson                            Jennifer Blagg
Karl Leonard                                Eric Bisby
THE EXONERATION PROJECT                     BLAGG LAW
311 N. Aberdeen Street, 3rd Floor           1509 W. Berwyn Ave., Suite 201E
Chicago, IL 60607                           Chicago, IL 60640
(312) 789-4955                              (773) 859-0081
megan@exonerationproject.org                jennifer@blagglaw.net
karl@exonerationproject.org                 eric@blagglaw.net
Attorney ID: 44407                          Attorney ID: 45099

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of September, 2025, I caused a copy of the foregoing Discovery Motion to be served upon counsel of record via the Court's Odyssey e-filing system.

**TO:**    Cook County State's Attorney's office
Armando Sandoval
2650 S. California Ave.
Chicago, IL 60608
armando.sandoval@cookcountysao.org

DATED:  September 9, 2025               Respectfully submitted,

/s/ Megan Richardson
Attorney for Petitioner

Megan Richardson
Karl Leonard
THE EXONERATION PROJECT
311 N. Aberdeen Street, 3rd Floor
Chicago, IL 60607
(312) 789-4955
megan@exonerationproject.org
karl@exonerationproject.org
Attorney ID: 44407

Jennifer Blagg
Eric Bisby
BLAGG LAW
1509 W. Berwyn Ave., Suite 201E
Chicago, IL 60640
(773) 859-0081
jennifer@blagglaw.net
eric@blagglaw.net
Attorney ID: 45099